# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

WYETH,

       *Plaintiff*,

   v.

WATSON LABORATORIES, INC. *and*
WATSON PHARMACEUTICALS, INC.,

      *Defendants.*

Civil Action No. 08-cv-00145-JJF

**PUBLIC VERSION**

---

# WATSON PHARMACEUTICALS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(7)

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
Amy Arnott Quinlan (I.D. #3021)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com
aquinlan@morrisjames.com

*Attorneys for Defendants*

OF COUNSEL
John W. Bateman
C. Kyle Musgrove
Nicholas J. Nowak
Thomas M. Huff
KENYON & KENYON LLP
1500 K Street NW
Washington, D.C. 20005
(202) 220-4200

Originally filed: April 25, 2008
Public version filed:  May 2, 2008

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT ..................................................................................................... 3

    I.    Watson Pharmaceuticals' Motion to Dismiss
        Pursuant to Fed. R. Civ. P. 12(b)(6) ........................................................ 3

        A.   Wyeth Has Not Alleged Any Set of Facts Entitling
             It to Relief Under 35 U.S.C. § 271(e)(2)(A) ..................................... 4

        B.   Wyeth Cannot Allege Any Set of Facts Entitling
             It to Relief Under 35 U.S.C. § 271(e)(2)(A) ..................................... 5

    II.   Watson Pharmaceuticals' Contingent Motion to Dismiss
        Pursuant to Fed. R. Civ. P. 12(b)(7) ........................................................ 6

CONCLUSION ................................................................................................... 7

i

# TABLE OF AUTHORITIES

## CASES

*Carino v. Stefan,* ........................................................................................... 3
376 F.3d 156 (3d Cir. 2004)

*Glaxo Group Ltd. v. Apotex, Inc.,* ............................................................... 4
376 F.3d 1339 (Fed. Cir. 2004)

*Lans v. Digital Equip. Corp.,* ....................................................................... 3
252 F.3d 1320 (Fed. Cir. 2001)

*Pfizer Inc. v. Ranbaxy Labs. Ltd.,* ............................................................... 5
321 F.Supp.2d 612 (D.Del. 2004)

*SmithKline Beecham Corp. v. Geneva Pharms., Inc.,* ........................... 4, 5, 6
287 F.Supp.2d 576 (E.D. Pa. 2002)

*SmithKline Beecham Corp. v. Pentech Pharms., Inc.,* .......................... 4, 5, 6
2001 U.S. Dist. LEXIS 1935 (N.D. Ill. Feb. 20, 2001)

## STATUTES AND RULES

35 U.S.C. § 271(e)(2)(A) ........................................................... passim

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 6

Fed. R. Civ. P. 12(b)(7) .................................................................. 1, 2, 6

Fed. R. Civ. P. 19 ............................................................................. 1, 6

**INTRODUCTION**

Defendant Watson Pharmaceuticals, Inc. ("Watson Pharmaceuticals") moves for
dismissal of Wyeth's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7).

Wyeth's complaint asserts that both Watson Laboratories, Inc. and Watson
Pharmaceuticals are liable for direct infringement pursuant to 35 U.S.C. § 271(e)(2)(A) as a
result of the filing of Abbreviated New Drug Application No. 79-218 ("ANDA 79-218") for a
generic version of Wyeth's LYBREL® birth control pill.  Liability for infringement under 35
U.S.C. § 271(e)(2)(A) can attach only to the party that submitted the ANDA.  Wyeth's complaint
clearly alleges that "Watson Labs," not Watson Pharmaceuticals, filed ANDA 79-218.
Therefore, Wyeth's complaint does not allege a critical fact necessary to state a claim under 35
U.S.C. § 271(e)(2)(A) against Watson Pharmaceuticals.

Furthermore, despite Wyeth's conclusory pleadings to the contrary, Watson
Pharmaceuticals did not control the filing of ANDA 79-218 by Watson Laboratories, Inc. (a
Nevada Corporation) ("Watson Labs Nevada").  As a result, Wyeth's complaint does not
allege—and Wyeth cannot prove—any facts that are legally sufficient to support allegations of
infringement against Watson Pharmaceuticals under 35 U.S.C. § 271(e)(2)(A).  For each of the
foregoing reasons, Wyeth's complaint as to Watson Pharmaceuticals should be dismissed
pursuant to Fed. R.Civ. P. 12(b)(6).

Separately, Watson Pharmaceuticals moves for dismissal of Wyeth's claims pursuant to
Fed. R. Civ. P. 12(b)(7) and 19 because this Court lacks personal jurisdiction over Watson Labs
Nevada.  Watson Labs Nevada submitted ANDA 79-218.  Thus, while Watson Labs Nevada is a

necessary party for the action, this Court does not have jurisdiction to make it appear. [1]  (*See*

*Motion and Brief in Support of Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to*

*Fed. R. Civ. P. 12(b)(2)*, filed concurrently herewith by Watson Labs Nevada.)  As such,

alternatively, this Court should dismiss the present proceeding against Watson Pharmaceuticals

under Fed. R. Civ. P. 12(b)(7).

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought pursuant to 35 U.S.C. § 271(e)(2)(A) by

Wyeth against "Watson Laboratories, Inc." and Watson Pharmaceuticals.  Wyeth alleges that

both "Watson Laboratories, Inc." and Watson Pharmaceuticals have directly infringed U.S.

Patent No. 6,500,814 ("the '814 patent") by filing ANDA 79-218 for a generic version of

Wyeth's LYBREL® birth control pill.  (*See* D.I. 1)  Wyeth's complaint was filed March 12,

2008.  By stipulated order, Defendants' response to Wyeth's complaint is due April 25, 2008.

## STATEMENT OF FACTS

Watson Pharmaceuticals is a public company whose stock trades on the New York Stock

Exchange under the symbol WPI.  Watson Pharmaceuticals acts as a holding company and does

not itself manufacture, sell or distribute any products.  (Affidavit of Pamela Davis ("Davis

Aff."), attached as Exhibit 1, at ¶¶ 3, 12)

Watson Labs Nevada and Watson Laboratories, Inc. (a Delaware corporation) ("Watson

Labs Delaware") are both wholly owned subsidiaries of Watson Pharmaceuticals.  (Davis Aff. at

---

[1]  While Watson Pharmaceuticals contends that it is not subject to personal jurisdiction in this
Court, it consents to personal jurisdiction if the Court determines that a claim has been stated
against Watson Pharmaceuticals and finds that it has personal jurisdiction over Watson Labs
Nevada.  Watson Pharmaceuticals' consent to personal jurisdiction is limited only to the
present proceeding.

¶ 5)  Watson Labs Nevada filed ANDA 79-218, the ANDA that is the subject of the current action.

On March 12, 2008, Wyeth filed a complaint charging both "Watson Labs" and Watson Pharmaceuticals with infringement of the '814 patent under 35 U.S.C. § 271(e)(2)(A).  (D.I. 1 at ¶ 17)  Wyeth's complaint specifically alleges that "Watson Labs" submitted and filed ANDA 79-218, not Watson Pharmaceuticals.  (*See* D.I. 1 at ¶¶ 14, 15)

Wyeth further alleges, however, that the filing of ANDA 79-218 by "Watson Labs" was "done at the direction of, with the authorization of, with the cooperation, participation and assistance of, and at least in part for the benefit of Watson Pharmaceuticals."  (D.I. 1 at ¶ 4)  In addition, Wyeth alleges that "Watson Labs" and Watson Pharmaceuticals collaborated and continue to collaborate in seeking approval of ANDA 79-218 and that they will collaborate in the manufacture, marketing and sales of a generic version of LYBREL®.  (D.I. 1 at ¶ 16)  Wyeth's conclusory allegations in this regard are contrary to the actual facts.  (*See* Davis Aff. at ¶¶ 3, 4, 6, 7, 8, 10)

## ARGUMENT

### I.    Watson Pharmaceuticals' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

On procedural issues, the Federal Circuit applies the law of the appropriate regional circuit.  *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1326 (Fed. Cir. 2001).  In the Third Circuit, a Rule 12(b)(6) motion may be granted where the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  *See Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).

3

35 U.S.C. § 271(e)(2)(A) provides that:

> It shall be an act of infringement *to submit* an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent.
> (Emphasis added.)

The filing of an ANDA is a "highly artificial act of infringement." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1349 (Fed. Cir. 2004). A party cannot be held liable as a direct infringer under 35 U.S.C. § 271(e)(2)(A) if it did not submit the ANDA at issue. *SmithKline Beecham Corp. v. Geneva Pharms., Inc.*, 287 F.Supp.2d 576, 584-85 (E.D. Pa. 2002) ("*Geneva*"); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 2001 U.S. Dist. LEXIS 1935, *8-10 (N.D. Ill. Feb. 20, 2001) ("*Pentech*") (attached as Exhibit 2).

### A.    Wyeth Has Not Alleged Any Set of Facts Entitling It to Relief Under 35 U.S.C. § 271(e)(2)(A)

Wyeth's complaint never alleges that Watson Pharmaceuticals submitted the ANDA. Instead, Wyeth's complaint clearly alleges that ANDA 79-218 was submitted by "Watson Labs" and no one else. (D.I. 1 at ¶¶ 14, 15) For this reason alone, Wyeth's complaint against Watson Pharmaceuticals should be dismissed. *See Geneva*, 287 F.Supp.2d at 584-85; *Pentech*, 2001 U.S. Dist. LEXIS 1935, *8-10.

While Wyeth does not allege that Watson Pharmaceuticals itself submitted ANDA 79-218, Wyeth does allege, in conclusory fashion, that "Watson Labs" submitted the ANDA "at the direction of, with the authorization of, with the cooperation, participation and assistance of, and at least in part for the benefit of, Watson Pharmaceuticals." (D.I. 1 at ¶ 4) Wyeth further alleges that "Watson Labs" and Watson Pharmaceuticals collaborated and continue to collaborate in seeking approval of ANDA 79-218 and that they will collaborate in the manufacture, marketing and sales of a generic version of LYBREL®. (D.I. 1 at ¶ 16) Even if Wyeth's allegations in this regard were true, the courts in both *Geneva* and *Pentech* under similar circumstances concluded

4

that no cause of action exists under 35 U.S.C. § 271(e)(2)(A) against parties who have not themselves submitted ANDAs even if they directly support, participate in and stand to benefit from the submission of those ANDAs. *See Geneva*, 287 F.Supp.2d at 584-85; *Pentech*, 2001 U.S. Dist. LEXIS 1935, *8-10.

In *Pentech* the third party, Asahi, "collaborated" with the ANDA defendant in the research and development of the generic product that was the subject of the ANDA, provided the active ingredient of the generic product for use in clinical studies in support of the ANDA, "directed and encouraged" both the defendant and the FDA to rely on information it had submitted in support of the ANDA and stood to be the sole approved manufacturer of the generic ingredient in defendant's generic drug product upon approval of the ANDA. *See Pentech*, 2001 U.S. Dist. LEXIS 1935 at *4-5. Despite this, the court in *Pentech* found the plain language of the statute controlling, concluded that 35 U.S.C. § 271(e)(2)(A) did not allow a claim for direct infringement to be brought against anyone other than the ANDA filer, and refused to allow such a claim to be added against Asahi. *See Pentech*, 2001 U.S. Dist. LEXIS 1935 at *8-10; *see also Geneva*, 287 F.Supp.2d at 584-85.[2] Thus, Rule 12(b)(6) requires dismissal of the action against Watson Pharmaceuticals.

**B.    Wyeth Cannot Allege Any Set of Facts Entitling
It to Relief Under 35 U.S.C. § 271(e)(2)(A)**

Not only are Wyeth's allegations insufficient to support a cause of action, but Wyeth's allegations with regard to Watson Pharmaceuticals' involvement in the preparation and filing of ANDA 79-218 are simply not true. Watson Pharmaceuticals did not prepare or submit the

---

2    While some of the facts alleged by Wyeth are similar to the facts used to support a claim of inducement of infringement for filing an ANDA in *Pentech*, clearly no such cause of action was included in Wyeth's complaint. Moreover, such a claim would be futile in this Court based on this Court's determination that such a cause of action is not cognizable. *See Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 321 F.Supp.2d at 618 (Farnan, J.).

ANDA, and Watson Pharmaceuticals does not control the day-to-day operational decisions of Watson Labs Nevada. (Davis Aff. at ¶¶ 3, 4, 6, 7, 8, 10) Thus, Wyeth cannot properly allege any facts sufficient to create a claim of infringement against Watson Pharmaceuticals.

## II.     Watson Pharmaceuticals' Contingent Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7)

In addition to moving to dismiss pursuant to F.R.C.P. 12(b)(6), Watson Pharmaceuticals also moves for dismissal of Wyeth's claims pursuant to Fed. R. Civ. P. 12(b)(7) and 19 because this Court lacks personal jurisdiction over Watson Labs Nevada. As stated previously, a claim under 35 U.S.C. § 271(e)(2)(A) can only be stated against the party that submits the ANDA. *See Geneva*, 287 F.Supp.2d at 584-85; *Pentech*, 2001 U.S. Dist. LEXIS 1935, *8-10. Wyeth's allegations of infringement pursuant to 35 U.S.C. § 271(e)(2)(A) are premised (as they must be) entirely upon the submission to the FDA of ANDA 79-218. That particular ANDA was submitted to the FDA by Watson Labs Nevada. As a result, Watson Labs Nevada clearly is both 1) a necessary party and 2) indispensible to a fair resolution of issues involving infringement based entirely upon the filing ANDA 79-218. Therefore, since this Court lacks personal jurisdiction over Watson Labs Nevada for the reasons set out in Watson Labs Nevada's concurrently filed brief, the Court should also dismiss the action against Watson Pharmaceuticals due to the Court's inability to join an indispensible party.

## CONCLUSION

The present action against Watson Pharmaceuticals should be dismissed for the

foregoing reasons.

April 25, 2008

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
Amy Arnott Quinlan (I.D. #3021)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com
aquinlan@morrisjames.com

*Attorneys for Defendants*

OF COUNSEL
John W. Bateman
C. Kyle Musgrove
Nicholas J. Nowak
Thomas M. Huff
KENYON & KENYON LLP
1500 K Street NW
Washington, D.C. 20005
(202) 220-4200

# EXHIBIT   1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

WYETH,
        *Plaintiff,*

    v.

WATSON LABORATORIES, INC., *and*
WATSON PHARMACEUTICALS,
INC.,
        *Defendants.*

Civil Action No. 08-cv-00145-JJF

## AFFIDAVIT OF PAMELA DAVIS

1.     I am Pamela Davis, Director of Tax at Watson Pharmaceuticals, Inc., a Nevada corporation ("Watson Pharmaceuticals"). I am an adult and competent to testify to the following having personal knowledge or based on my review of company records.

2.     Watson Pharmaceuticals is a Nevada corporation having its principal place of business at 311 Bonnie Circle, Corona, California. (*See* Exhibits A, B)

3.     Watson Pharmaceuticals is a holding company. In particular, Watson Pharmaceuticals does not itself manufacture, sell or distribute any products, nor does it prepare or file any Abbreviated New Drug Applications ("ANDAs").

4.     Watson Pharmaceuticals did not prepare or submit ANDA No. 79-218.

5.     Watson Laboratories, Inc., a Nevada corporation ("Watson Labs Nevada") and Watson Laboratories, Inc., a Delaware corporation ("Watson Labs Delaware") are both wholly owned subsidiaries of Watson Pharmaceuticals. (*See* Exhibit C)

6.     Watson Pharmaceuticals and Watson Labs Nevada are separate corporate and legal entities. (*See* Exhibits A and D)

7.    While Watson Pharmaceuticals wholly owns Watson Labs Nevada, Watson Pharmaceuticals does not control the day-to-day operational decisions of Watson Labs Nevada.



*REDACTED*

9.    Watson Pharmaceuticals and Watson Labs Nevada each have their own separate by-laws and articles of incorporation.   (*See* Exhibits A, B, D and F)

10.    Watson Pharmaceuticals and Watson Labs Nevada enter into and perform their own contracts.

11.    Watson Pharmaceuticals and Watson Labs Delaware are separate corporate and legal entities.  (*See* Exhibits A, B, D and F)

12.    Watson Pharmaceuticals is a publicly traded stock on the New York Stock Exchange under the symbol WPI.


I certify under penalty of perjury of the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Pamela Davis

**AFFIANT**

State of California                    }
County of Riverside                   }


On _April 24, 2008_ before me, _Katherine G Kenney, Notary Public_
     Date                                 Insert Notary Public Name

Personally appeared _Pamela Davis_
                                     Name(s) of Signer(s)


who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_Katherine G Kenney_
Signature of Notary Public


KATHERINE G. KENNEY
Commission # 1783095
Notary Public - California
Riverside County
My Comm. Expires Dec 30, 2011

3

# **EXHIBIT A**

**STATE OF NEVADA**



*ROSS MILLER*
Secretary of State

SCOTT W. ANDERSON
Deputy Secretary
for Commercial Recordings

**OFFICE OF THE**
**SECRETARY OF STATE**

## Certified Copy

October 16, 2007

**Job Number:**        C20071016-0249
**Reference Number:**  00001562969-18
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number(s) | Description | Number of Pages |
|---|---|---|
| C38-1985-001 | Articles of Incorporation | 5 Pages/1 Copies |
| C38-1985-003 | Amendment | 3 Pages/1 Copies |
| C38-1985-004 | Amendment | 4 Pages/1 Copies |
| C38-1985-005 | Amendment | 2 Pages/1 Copies |
| C38-1985-006 | Amendment | 5 Pages/1 Copies |
| C38-1985-007 | Amendment | 3 Pages/1 Copies |
| C38-1985-007 | Amendment | 3 Pages/1 Copies |
| C38-1985-008 | Amendment | 3 Pages/1 Copies |

Respectfully,



ROSS MILLER
Secretary of State

By

Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILING FEE: $150.00
BY:   CT CORPORATION SYSTEM
      SUITE 1600
      ONE EAST FIRST STREET
      RENO, NEVADA 89501

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JAN 2 1985

SECRETARY OF STATE

_ 38-85

## ARTICLES OF INCORPORATION

of

## WATSON LABORATORIES, INC.

### ARTICLE I

The name of the corporation is Watson Laboratories, Inc.

### ARTICLE II

The principal office of the corporation shall be located at One East First Street, Reno, Nevada 89501.

### ARTICLE III

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

## ARTICLE IV

The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

## ARTICLE V

The corporation is authorized to issue only one class of shares of stock, par value $0.01 per share, which shall be Common Stock; and the total number of shares which the corporation is authorized to issue is Ten Million (10,000,000). The holders of the Common Stock shall not be entitled to exercise preemptive rights.

## ARTICLE VI

The members of the governing board shall be called directors of the corporation. The number of initial directors shall be six (6). The number of directors shall be established in and shall be subject to change by amendment of the Bylaws of the corporation. The names and addresses of the initial board members are as follows:

-2-

Hsi Hsiung Chao:      65 Misty Acres Road
                      Rolling Hills Estates, California   90274

Allen Y. Chao:        1585 North Milwaukee Avenue
                      Unit 2
                      Libertyville, Illinois   60048

Richard Y. Chao.      5 Ninos
                      Irvine, California   92714

Agnes Y. Kung:        65 Misty Acres Road
                      Rolling Hills Estates, California   90274

David C. Hsia:        1585 North Milwaukee Avenue
                      Unit 2
                      Libertyville, Illinois   60048

Michael J. Feldman:   8300 Sears Tower
                      233 South Wacker Drive
                      Chicago, Illinois   60606

## ARTICLE VII

Capital stock, after the amount of the subscription price has been paid in to the corporation is not subject to assessment to pay debts of the corporation.

## ARTICLE VIII

The name and address of the incorporator is as follows:

V. Miller, P. O. Box 2311, Reno, Nevada 89501

-3-

## ARTICLE IX

The corporation shall have perpetual existence.

## ARTICLE X

The shareholders of the corporation shall individually have such authority as are granted shareholders of corporations by the General Corporation Law of Nevada, including the authority to cast votes for the election or removal of Directors of the Corporation.

Dated:  January 2   ,1985

_____
V. MILLER, Incorporator

-4-

STATE OF NEVADA     )
                    )  ss:
COUNTY OF WASHOE    )

On _____ January 2, 1985 _____, personally

appeared before me, a Notary Public, _____

_____ V. Miller _____

who acknowledged that they executed the above

instrument.

Notary Public
(stamp)



KATHLEEN F ANDREWS
Notary Public - State of Nevada
Appointment Recorded in Washoe County
MY APPOINTMENT EXPIRES JUNE 4, 1988

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**SEP 11 1985**

~~~~ PRACKHAMER SECRETARY OF STATE

No. 38-85

FILING FEE: 50.00
BY: MEMEL, JACOBS, PIERNO AND
GERSH
4000 MAC ARTHUR BLVD., STE.
350
NEWPORT BEACH, CA 92660

CERTIFICATE OF OWNERSHIP MERGING
WATLAB, INC.,
a California corporation
into
WATSON LABORATORIES, INC.,
a Nevada corporation

Allen Y. Chao, President, and Agnes Y. Kung, Secretary of
Watson Laboratories, Inc., a Nevada corporation, certify that:

1. Watson Laboratories, Inc., owns all the outstanding
stock of WATLAB, INC., a corporation duly incorporated on
August 29, 1983 under the laws of the State of California.

2. The following resolutions were adopted by a majority
of the Board of Directors of Watson Laboratories, Inc.:

WHEREAS, this corporation owns one hundred percent
(100%) of the outstanding shares of WATLAB, INC., a California
corporation; and

WHEREAS, this corporation deems it to be in its best
interest to effect a merger of WATLAB, INC. into this corpo-
ration;

NOW, THEREFORE, BE IT RESOLVED, that WATLAB, INC. be
merged into this corporation pursuant to Section 78.486 of the
Nevada Corporations Law and Section 1110 of the California
Corporations Code; and

RESOLVED FURTHER, that the officers of this corpora-
tion are hereby directed to do all acts and to execute, verify,
and file all documents necessary to effectuate the merger into
this corporation pursuant to Section 78.486 of the Nevada Cor-
porations Law and Section 1110 of the California Corporations
Code of WATLAB, INC.; and

RESOLVED FURTHER, that this corporation hereby
assumes all of the liabilities of WATLAB, INC.

3. Said resolutions were adopted by unanimous written
consent of the Board of Directors of Watson Laboratories, Inc.
on __July 26__, 1985.

WATSON LABORATORIES, INC.,
a Nevada corporation

Dated: __7/16/85__          By: _____
                                Allen Y. Chao, President

Dated: __7/17/85__          By: _____
                                Agnes Y. Kung, Secretary

## VERIFICATION

I, Allen Y. Chao, verify that:

I am the President of Watson Laboratories, Inc., a Nevada corporation.

I have read the foregoing Certificate of Ownership and know the contents thereof, and acknowledge that, to my own knowledge, such contents are true.

Executed on _Aug 11_, 1985, at _Orange_ County, _California_.

I declare under penalty of perjury that the foregoing is true and correct.

_Allen Y Chao_
ALLEN Y. CHAO

STATE OF _California_ )
COUNTY OF _Orange_ ) SS.
)

On _August 15, 1985_, before me, the undersigned, a Notary Public in and for said State, personally appeared ALLEN Y. CHAO, personally known to me, or proved to me on the basis of satisfactory evidence, to be the person who executed the within instrument as the President of WATSON LABORATORIES, INC., the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature: _Caryn J. Holcomb_

(Official Seal)



## VERIFICATION

I, Agnes Y. Kung, verify that:

I am the Secretary of Watson Laboratories, Inc., a Nevada corporation.

I have read the foregoing Certificate of Ownership and know the contents thereof, and acknowledge that, to my own knowledge, such contents are true.

Executed on _July 31_ , 1985, at _~~~~_
_Calif_ County, _Los Angeles_.

I declare under penalty of perjury that the foregoing is true and correct.


_____
AGNES Y. KUNG

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_          } ss.

On _July 31  1985_ , before me, the undersigned, a Notary Public in and for said State, personally appeared _"AGNES  Y.  KUNG"_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

WITNESS my hand and official seal.

Signature _Arline R. Shearer_

SF 4234 (REV A 7/82) (CA) (INDIVIDUAL)

OFFICIAL SEAL
ARLINE R. SHEARER
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires Apr 6, 1987

(This area for official notarial seal)

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

SEP 2 8 1987

FRANK DEL PAPA, SECRETARY OF STATE

No. _____ 38-85 _____

FILING FEE: $50.00
BY: UNITED STATES CORP. CO.
ROOM E
502 EAST JOHN STREET
CARSON CITY. NEVADA 89701

Certificate of Amendment of
Articles of Incorporation
of
WATSON LABORATORIES, INC.

Pursuant to the provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:** The name of the Corporation is Watson Laboratories, Inc.

**SECOND:** The Board of Directors of the Corporation duly adopted the following resolutions on May 22, 1987:

WHEREAS, it is deemed in the best interests of the Corporation to amend the Articles of Incorporation to add a new Article XI thereto to remove directors' exposure for liability to the Corporation or to its stockholders for certain breaches of the directors' fiduciary duty and to add a new Article XII relating to the indemnification of directors, officers, employees and agents of the Corporation;

NOW, THEREFORE, BE IT RESOLVED, that in the judgment of the Board of Directors it is deemed in the best of interests of the Corporation to add Articles XI and XII to the Articles of Incorporation which shall read in full as follows:

## ARTICLE XI

No director or officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer except for liability (i) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of NRS 78.300. Any repeal or modification of this Article by the stockholders of the Corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of such repeal or modification.

## ARTICLE XII

Section 1. The corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director of the corporation, or is

or was serving at the request of the corporation as a director of another corporation, partnership, joint venture, trust or other enterprise, against any and all expenses (including attorneys' fees), judgments, fines, amounts paid in settlement, and any other liabilities to the fullest extent permitted by the General Corporation Law of the State of Nevada ("Nevada Act"), as the same exists or may hereafter be amended, and may, at the discretion of the board of directors, purchase and maintain insurance at its expense, to protect itself and such persons against any such expense, fine, amount paid in settlement or other liability, whether or not the corporation would have the power to so indemnify such person under the Nevada Act.

Section 2. The corporation may indemnify any and all persons, except those persons described in Section 1 of this ARTICLE XII, whom it has the power to indemnify under the Nevada Act, as the same exists or may hereafter be amended, against any and all expenses (including attorneys' fees), judgments, fines, amounts paid in settlement, and any other liabilities to the fullest extent permitted by the Nevada Act and may, at the discretion of the board of directors, purchase and maintain insurance, at its expense, to protect itself and such persons against any such expense, fine, amount paid in settlement or other liability, whether or not the corporation would have the power to so indemnify such person under the Nevada Act.

FURTHER RESOLVED, that the aforesaid proposed amendments be submitted to the shareholders of the Corporation for their approval at the annual meeting of shareholders.

THIRD: The total number of outstanding shares having voting power of the Corporation is 2,786,951, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 2,786,951.

FOURTH: At a meeting of stockholders held on June 1, 1987, notice of which was duly given, the amendments herein certified were adopted by the holders of 2,529,451 shares, which represent 2,529,451 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed on 13th day of July, 1987.

WATSON LABORATORIES, INC.

By: _____
              President

_____
              Secretary

STATE OF ~~CALIFORNIA~~ Illinois )
                                  )    SS.:
COUNTY OF Cook )

On ~~July~~ Sept. 16 ___, 1987, personally appeared before me, a
Notary Public, for the State and County aforesaid, Allen Y. Chao,
as President of Watson Laboratories, Inc. and ~~Agnes Y. Kung,~~
~~Secretary of Watson Laboratories, Inc.,~~ who ~~acknowledged that~~
~~they executed the above instrument.~~

"OFFICIAL SEAL"
MICHEL J. FELDMAN
Notary Public, State of Illinois
My Commission Expires Nov. 25, 1990

Notary Public

[Notarial Seal]

(227:A3)

STATE OF ~~CALIFORNIA~~ Illinois )
                                  )    SS.:
COUNTY OF Cook                    )

On ~~July~~ Sep. 16 ___, 1987, personally appeared before me, a Notary Public, for the State and County aforesaid, Allen Y. Chao, as President of Watson Laboratories, Inc. and ~~Agnes Y. Kung, Secretary of Watson Laboratories, Inc.~~, who ~~acknowledged that~~ they executed the above nstrument.

_____
Notary Public

"OFFICIAL SEAL"
MICHEL J. FELDMAN
Notary Public, State of Illinois
My Commission Expires 25, 1990

STATE OF CALIFORNIA
COUNTY OF Los Angeles
On September 11th, 1987
said State, personally appeared Agnes Yu Hwa Kung

before me, the undersigned, a Notary Public in and for

Personally known to me or proved to me on the basis of
evidence to be the person whose name
subscribed to this instrument and acknowledged
he executed the same.
WITNESS my hand and seal.

Signature Gurpreet K. Walia



OFFICIAL SEAL
GURPREET K. WALIA
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires July 9, 1991

(This area for official notarial seal)

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**AUG 27 1991**

CHERYL A. LAU  SECRETARY OF STATE

No. 38-85

FILING FEE— 100.00 TS
REC. #C20858
CT CORPORATION SYSTEM
RENO, NV
C/O VI MILLER

Certificate of Amendment
of Articles
of Incorporation
of
<u>Watson Laboratories, Inc.</u>

Pursuant to the provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

<u>FIRST</u>:  The name of the Corporation is Watson Laboratories, Inc.

<u>SECOND</u>:  The Board of Directors of the Corporation duly adopted the following resolution on April 30, 1991.

RESOLVED, that Article V of the Articles of Incorporation of the Corporation be amended to read in its entirety as follows:

"ARTICLE V.  The corporation is authorized to issue only one class of shares of stock, par value $.01 per share, which shall be Common Stock; and the total number of shares which the corporation is authorized to issue is Twenty-Five Million (25,000,000).  The holders of Common Stock shall not be entitled to exercise preemptive rights."

<u>THIRD</u>:  The total number of outstanding shares having voting power of the corporation is 3,173,188, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 3,173,188.

<u>FOURTH</u>:  At a meeting of stockholders on May 13, 1991, notice of which was duly given, the amendment herein certified was adopted by the holders of 2,794,105 shares, which represent 2,794,105 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed on June 21, 1991

WATSON LABORATORIES, INC.

By: _Allen Y. Chao_
Allen Y. Chao, President

By: _Agnes Y. Kung_
Agnes Y. Kung., Secretary

STATE OF CALIFORNIA )
                          )    SS.:
COUNTY OF RIVERSIDE )

OFFICIAL SEAL
DOLORES MARY LAND
NOTARY PUBLIC CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Oct. 18, 1993

On *August 14, 1991*, 1991, personally appeared before me, a Notary Public, for the State and County aforesaid, Allen Y. Chao, as President of Watson Laboratories, Inc. ~~and Agnes Y. Kung, as Secretary of Watson Laboratories, Inc.~~, who acknowledged that ~~they~~ executed the above instrument.

*Dolores Mary Land*
Notary Public

STATE OF __CALIFORNIA__
COUNTY OF __LOS ANGELES__                    } SS.
On this __21__ day of __JUNE__, 19 __91__, before me, the undersigned, a Notary Public in and for said County, personally appeared __AGNES Y KUNG__                                    (INDIVIDUAL)

personally known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that __SHE__ executed the same.
Witness my hand and official seal.

*Patricia Brodrick*
Notary Public in and for said County and State

PATRICIA BRODRICK
Name (Typed or Printed)

OFFICIAL SEAL
PATRICIA BRODRICK
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires April 22, 1994

3403 (R5/87)2

(This area for official notarial seal)

IJS.317

RECEIVED

AUG 27 1991

Selrance Sr...
1:20

-2-



FILING FEE- $1000.00 TS
REC. #C35693
CT CORPORATION SYSTEM
ONE E. FIRST ST. STE. 1600
RENO, NV 89501
ATTN: VI MILLER

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

FEB 20 1992

CHERYL A. LAU SECRETARY OF STATE

38-85

## CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF INCORPORATION
## OF
## WATSON LABORATORIES, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:** The name of the corporation is WATSON LABORATORIES, INC.

**SECOND:** The Board of Directors of the corporation duly adopted the following resolutions on February 14, 1992.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the shareholders of the Corporation, Article I of the Corporation's Articles of Incorporation is amended to be and read as follows:

### ARTICLE I

The name of the corporation is Watson Pharmaceuticals, Inc.

FURTHER RESOLVED, that subject to the approval of the shareholders of the Corporation, Article V of the Corporation's Articles of Incorporation is amended to be and read as follows:

### ARTICLE V

The corporation is authorized to issue a total of Fifty-Two Million Five Hundred Thousand (52,500,000) shares of stock, Fifty Million (50,000,000) shares of which shall be classified as common stock, $.0033 par value per share and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designations in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

FURTHER RESOLVED, that subject to the approval of the shareholders of the Corporation, Article XI of the Corporation's Articles of Incorporation is amended to be and read as follows:



## ARTICLE XI

No director or officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation law.

Any repeal or modification of this Article by the stockholders of the Corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of such repeal or modification.

FURTHER RESOLVED, that Article XII of the Corporation's Articles of Incorporation is amended to be and read as follows:

## ARTICLE XII

1.    To the extent not prohibited by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the Corporation, by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, has no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

2.    To the extent not prohibited by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another

2

corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the Corporation or for amounts paid in settlement to the Corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3.    To the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article XII, or in defense of any claim, issue or matter therein, he must be indemnified by the Corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4.    Any indemnification under subsections 1 and 2 of Article XII, unless ordered by a court or advanced pursuant to subsection 5 of Article XII, may be made by the Corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the Corporation; (b) the Board of Directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so orders; or (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

5.    The Corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the Corporation. The provisions of this subsection do not affect any rights to

3



advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

6.    The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article XII (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer (or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

**THIRD:**    The total number of outstanding shares having voting power of the corporation is 4,302,496, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 4,302,496.

**FOURTH:**    By written consent of the holders of a majority of the issued and outstanding stock of the corporation, dated as of February 14, 1992, pursuant to Sections 78.320, 78.385 and 78.390 of the Nevada Revised Statutes, the amendment herein certified was adopted by the holders of 2,913,408 shares, which represent 2,913,408 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed: February 14, 1992

WATSON LABORATORIES, INC.

By:    _Allen Y. Chao_
       Allen Y. Chao, President

By:    _Michel J. Feldman_
       Michel J. Feldman, Assistant Secretary

4

STATE OF CALIFORNIA  )
                     )  SS
COUNTY OF RIVERSIDE  )

   On _2/18_, 1992, personally appeared before me, a Notary Public, for the State and County aforesaid, Allen Y. Chao as President of Watson Laboratories, Inc. and Michel J. Feldman as Assistant Secretary of Watson Laboratories, Inc., who acknowledged that they executed the above instrument.

```
OFFICIAL SEAL
HELGA E. SCHROEDER
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires June 16, 1992
```

_Helga E. Schroeder_
NOTARY PUBLIC

RECEIVED
1:10 ✗
FEB 2 0 1992

Secretary of State

5

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

**JUL 1 8 1995**

38-85

DEAN HELLER SECRETARY OF STATE

No. _____

Jnw # 7677

E - 64909

## CERTIFICATE OF AMENDMENT
### OF
### ARTICLES OF INCORPORATION
### OF
### WATSON PHARMACEUTICALS, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:** The name of the Corporation is WATSON PHARMACEUTICALS, INC.

**SECOND:** The Board of Directors of the Corporation duly adopted the following resolution on May 1, 1995.

**FURTHER RESOLVED:** that subject to approval of the stockholders of the Corporation, the first two sentences of Article VI of the Articles of Incorporation of the Corporation are hereby deleted and replaced with the following:

"The members of the governing board shall be called directors of the Corporation. The number of directors of the Corporation shall be nine (9). The directors shall be divided into three classes designated as Class I, Class II and Class III, respectively. Each class shall consist, as nearly as may be possible, of one-third of the total number of directors constituting the entire board of directors. At the annual meeting of stockholders of the Corporation to be held in the year 1995, the Corporation shall designate the slate of directors to be elected by the stockholders as Class I, Class II and Class III directors, except that for such 1995 annual meeting only eight (8) directors shall be elected by the stockholders and the ninth director position (a Class I position) shall be vacant. The initial term of office of the Class I directors shall expire at the annual meeting of the stockholders held in the year 1996. The initial term of office of the Class II directors shall expire at the annual meeting of stockholders held in the year 1997. The initial term of office of the Class III directors shall expire at the annual meeting of stockholders held in the year 1998. At each annual meeting of the stockholders after the annual meeting held in the year 1995, successors to the class of directors whose term expires at the annual meeting shall be elected for a three-year term. If the number of directors is changed, any increase or decrease shall be apportioned among the classes so as to maintain the number of directors in each class as nearly as possible, but in no case shall a decrease in the number of directors shorten the term of any incumbent director. A director shall hold office until the annual meeting for the year in which his term expires and until his successor shall be elected and qualified, subject, however, to prior death, resignation, retirement, disqualification or removal from office. The annual meeting of stockholders shall be held each year on a date and at a time designated by the Board of Directors of the Corporation."

Subject to the rights, if any, of holders of any series of Preferred Stock then outstanding, any vacancy on the Board of Directors that results from an increase in the number of directors or by reason of the vacancy following the annual meeting of the stockholders held in the year 1995 may be filled by a majority of the Board of Directors then in office, provided that a quorum is present, and any other vacancy occurring in the Board of Directors may be filled by a majority of the directors then in office, even if less than a quorum. Any directors elected to fill a vacancy resulting from an increase in such class shall hold office for a term that shall coincide with the remaining term of that class. Any director elected to fill a vacancy not resulting from an increase in the number of directors shall have the same remaining term as that of his predecessor."

THIRD:    As of May 19, 1995, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is approximately 17,289,786, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is approximately 17,289,785.

FOURTH:   On July 17, 1995, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of _9,001,802_ shares of common stock, $.0033 par value per share, of the Corporation, which represent _9,001,802_ votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:    July 17, 1995

WATSON PHARMACEUTICALS, INC.

By: _____
        Allen Chao, President

By: _____
        Michel Feldman, Assistant
        Secretary

2

JUL 18 '95  12:47PM WOODBURN HEDGE                                    P 3

STATE OF ~~CALIFORNIA~~ *ILLINOIS*        )
                                          ) SS
COUNTY OF ~~RIVERSIDE~~ *COOK*            )

On July 17, 1995, Allen Chao as President of Watson Pharmaceuticals, Inc. and Michel Feldman as Assistant Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

                                  _Patricia A. Jones_
                                  NOTARY PUBLIC

                        "OFFICIAL SEAL"
                        PATRICIA A. JONES
                    Notary Public, State of Illinois
                    My Commission Expires Nov. 22, 1998

3



RECEIVED

JUL 18 1995

SECRETARY OF STATE

JUL 18 '95  12:48PM WOODBURN WEDGE                                    P.11

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUL 18 1995

38-85

DEAN HELLER SECRETARY OF STATE

Emd - 767

E - 64909

# CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF INCORPORATION
### OF
### WATSON PHARMACEUTICALS, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:**  The name of the Corporation is WATSON PHARMACEUTICALS, INC.

**SECOND:**  The Board of Directors of the Corporation duly adopted the following resolution on May 1, 1995.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the stockholders of the Corporation, Article V of the Articles of Incorporation of the Corporation is amended to be and read as follows:

### ARTICLE V

The Corporation is authorized to issue a total of One Hundred and Two Million Five Hundred Thousand (102,501,000) shares of stock, One Hundred Million (100,000,000) shares of which shall be classified as common stock, $.0033 par value per share, and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designation in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

**THIRD:**  As of May 19, 1995, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is approximately 17,289,786, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is approximately 17,289,785.

**FOURTH:**  On July 17, 1995, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of 15,045,332 shares of

JUL 18 '95  12:41PM WOODBURN WEDGE                                    P.13

                                                                     P.12

common stock, $.0033 par value per share, of the Corporation,
which represent _15,045,332_ votes, and which constitute at least
a majority of all of the voting power of the holde... of shares having
voting power.

Signed:        July 17, 1995

                              WATSON PHARMACEUTICALS, INC.

                              By: _____
                                   Allen Chao, President

                              By: _____
                                   Michel Feldman, Assistant
                                   Secretary

JUL 18 '95  12:40PM WOODBURN HEDGE

P.13

STATE OF ~~CALIFORNIA~~ *ILLINOIS*          )
                                            ) SS
COUNTY OF ~~RIVERSIDE~~ *Cook*              )

On July 17, 1995, Allen Chao as President of Watson Pharmaceuticals, Inc. and Michel Feldman as Assistant Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
PATRICIA A. JONES
Notary Public, State of Illinois
My Commission Expires Nov. 26, 1998

3

RECEIVED

JUL 18 1995

SECRETARY OF STATE

MAR 30 '96  08:14AM WOODBURN HEDGES                          312 750 8742 P.2/4

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

**MAY 30 1996**

38-85

DEAN HELLER SECRETARY OF STATE

CERTIFICATE OF AMENDMENT
OF
ARTICLES OF INCORPORATION
OF
WATSON PHARMACEUTICALS, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:**  The name of the Corporation is WATSON PHARMACEUTICALS, INC.

**SECOND:**  The Board of Directors of the Corporation duly adopted the following resolution on February 26, 1996.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the stockholders of the Corporation, Article V of the Articles of Incorporation of the Corporation is amended to be and read as follows:

ARTICLE V

The Corporation is authorized to issue a total of Five Hundred and Two Million Five Hundred Thousand (502,500,000) shares of stock, Five Hundred Million (500,000,000) shares of which shall be classified as common stock, S.0033 par value per share, and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designation in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

**THIRD:**  As of March 15, 1996, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is 36,607,903, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 36,607,903.

**FOURTH:**  On May 10, 1996, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of 19,372,801 shares of common

RECEIVED

MAY 30

MAYMAY 30 '96   08:15AM WOODBURN HEDGE                312 756 8782   P.3 69 04

stock, $.0033 par value per share, of the Corporation, which represent 19,372,801 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:        May 10, 1996

                              WATSON PHARMACEUTICALS, INC.

                              By: _____
                                  Dr. Melvin Sharoky, President

                              By: _____
                                  Michel J. Feldman, Secretary

MAY MAY 30 '96 09:15AM WOODBURN LEDGE
OF SISTERS

312 750 0782    P.4
P.04-04

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

On May 10, 1996, Dr. Melvin Sharoky, as President of Watson Pharmaceuticals, Inc. and Michel J. Feldman as Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

"OFFICIAL SEAL"
SHARON TESSITORE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/8/2000

NOTARY PUBLIC

63767/1

3

TOTAL P.04

# **EXHIBIT B**

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# **EXHIBIT C**

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# **EXHIBIT D**

*DEAN HELLER*
*Secretary of State*

*RENEE L. PARKER*
*Chief Deputy*
*Secretary of State*

*PAMELA RUCKEL*
*Deputy Secretary*
*for Southern Nevada*

**STATE OF NEVADA**



**OFFICE OF THE**
**SECRETARY OF STATE**

*CHARLES E. MOORE*
*Securities Administrator*

*SCOTT W. ANDERSON*
*Deputy Secretary*
*for Commercial Recordings*

*ELLICK HSU*
*Deputy Secretary*
*for Elections*

**Certified Copy**

March 15, 2006

**Job Number:**       C20060309-1078
**Reference Number:**  00000682867-17
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| **Document Number(s)** | **Description** | **Number of Pages** |
|---|---|---|
| C1563-1992-001 | Articles of Incorporation | 6 Pages/1 Copies |
| C1563-1992-003 | Articles of Merger | 2 Pages/1 Copies |
| C1563-1992-004 | Articles of Merger | 5 Pages/1 Copies |

Respectfully,

DEAN HELLER
Secretary of State

By

Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

FEB 2 0 1992

CHERYL A. LAU  SECRETARY OF STATE

*Ca Lah*

1563-92

RECEIPT #C    36899
C T CORPORATION SYSTEM / RENO
C T CORPORATION SYSTEM – VI MILLER
ONE EAST FIRST STREET #1600
RENO, NEVADA 89501

## ARTICLES OF INCORPORATION

### OF

### WATSON LABORATORIES, INC.

**FIRST.**     The name of the corporation is WATSON LABORATORIES, INC.

**SECOND.**     The purposes of the corporation are to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

**THIRD.**     The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

**FOURTH.**     The corporation is authorized to issue a total of 1,000 shares of stock, all of which shall be classified as common stock, $.01 par value per share. The holders of the stock shall not be entitled to exercise cumulative voting or preemptive rights.

**FIFTH.**     The governing board of this corporation shall be known as directors, and the number of directors may from time to time be increased or decreased in such manner as shall be provided by the by-laws of this corporation.

The names and post office addresses of the first board of directors, which shall be three (3) in number, are as follows:

| NAME | ADDRESS |
|------|---------|
| Allen Y. Chao | 132A Business Center Drive Corona, CA 91720 |
| David C. Hsia | 132A Business Center Drive Corona, CA 91720 |
| Alec D. Keith | 100 North Science Park Road State College, PA 16803 |

SIXTH.    The capital stock, after the amount of the subscription price or par value has been paid in, shall not be subject to assessment to pay the debts of the corporation.

SEVENTH.  The name and post office address of the incorporator signing the articles of incorporation are as follows:

| NAME | ADDRESS |
|------|---------|
| Steven M. Prebish | 30 North LaSalle Street Suite 2900 Chicago, Illinois 60602 |

EIGHTH.    The corporation is to have perpetual existence.

NINTH.    The corporation reserves the right to amend, alter, change or repeal any provision contained in the articles of incorporation, in the manner now or hereafter prescribed by statute, or by the articles of incorporation, and all rights conferred upon stockholders herein are granted subject to this reservation.

TENTH.    No director or officer of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation Law.

Any repeal or modification of this Article by the stockholders of the corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

ELEVENTH 1. To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any

2

threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the corporation, by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, has no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

2. To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or

3

settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the corporation or for amounts paid in settlement to the corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3. To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article Eleventh, or in defense of any claim, issue or matter therein, he must be indemnified by the corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4. Any indemnification under subsections 1 and 2 of Article Eleventh, unless ordered by a court or advanced pursuant to subsection 5 of Article Eleventh, may be made by the corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the corporation; (b) the board of directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so

4

orders; and (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

5. The corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the corporation. The provisions of this subsection do not affect any rights to advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

6. The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article Eleventh (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer

5

(or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

THE UNDERSIGNED, being the sole incorporator hereinbefore named, for the purpose of forming a corporation pursuant to the General Corporation Law of the State of Nevada, does make and file these articles of incorporation, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto sets his hand this 17th day of February, 1992.

Steven M. Prebish

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

On this 17th day of February, 1992, before me, a Notary Public, personally appeared Steven M. Prebish, who acknowledged that he executed the above instrument.

NOTARY PUBLIC

"OFFICIAL SEAL"
Suzette Sabonev
Notary Public, State of Illinois
Commission Expires 11/7/94

CERTIFICATE OF ACCEPTANCE OF APPOINTMENT

BY RESIDENT AGENT

The Corporation Trust Company of Nevada hereby accepts the appointment as Resident Agent of the above named corporation.

The Corporation Trust Company of Nevada

Resident Agent

By _____    Date  2-19-92
    (Assistant Secretary)
    Reuben S. Barba

6

RECEIVED

FEB 20 1992

Secretary of State

C 1626
E 087497

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUN 28 1995
1563 -92

DEAN HELLER SECRETARY OF STATE

No. _____

**ARTICLES OF MERGER**
**OF**
**ZETACHRON, INCORPORATED**
**INTO**
**WATSON LABORATORIES, INC.**

**FIRST:**    The name of the surviving corporation is **WATSON LABORATORIES, INC.** and the place of its incorporation is the State of Nevada. The name and place of incorporation of the corporation being merged into the surviving corporation is **ZETACHRON, INCORPORATED**, incorporated in the State of Pennsylvania.

**SECOND:**    An Agreement and Plan of Merger was adopted by the board of directors of each corporation that is a party of this merger.

**THIRD:**    The Agreement and Plan of Merger was entitled to be and was approved by the board of directors of **WATSON LABORATORIES, INC.**, without the approval of the stockholders thereof being required.

**FOURTH:**    The designation, number of outstanding shares, number of votes entitled to be cast and the total number of votes cast for and against the Agreement and Plan of Merger, by the stockholders of **ZETACHRON, INCORPORATED** is as follows:

| Designation | Outstanding Shares | Votes Entitled to be cast | Votes For | Votes Against |
|---|---|---|---|---|
| Common | 1,000 | 1,000 | 1,000 | None |

**FIFTH:**    The number of votes cast for the Agreement and Plan of Merger by the stockholders of **ZETACHRON, INCORPORATED** was sufficient for approval thereof by the stockholders of the corporation.

**SIXTH:**    The complete executed plan of merger is on file at the place of business of **WATSON LABORATORIES, INC.** located at 311 Bonnie Circle, Corona, CA 91720, and a copy of the plan will be furnished by **WATSON LABORATORIES, INC.,** on request and without cost to any stockholder of any corporation which is a party to this merger.

**SEVENTH:**   All corporations party to this merger have complied with laws of their respective jurisdiction of incorporation concerning this merger.

**EIGHTH:**    This merger shall be effective on June 30, 1995.

<div align="right">

**WATSON LABORATORIES, INC.**

By: _____
        Allen Chao, President

By:_____
        Michel J. Feldman,
        Assistant Secretary

</div>

State of **CALIFORNIA**  )
                ) ss.
County of Riverside )

On June 21, 1995, personally appeared before me, a Notary Public   MICHEL J. FELDMAN an ALLEN CHAO who acknowledged that they executed the above instrument.

Wendy K. Wright
Comm. #1029696
NOTARY PUBLIC CALIFORNIA
RIVERSIDE COUNTY
Comm. Expires June 12, 1998

_____
Notary Public
Wendy K. Wright

JUN 28 1995

2

*INV.*
*(# 125.-)*

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**MAY 1 9 1999**

No. *C15363-92*
*Dean Heller*
DEAN HELLER, SECRETARY OF STATE

ARTICLES OF MERGER

OF

**OCLASSEN PHARMACEUTICALS, INC.**

(a Delaware corporation)

**WITH AND INTO**

**WATSON LABORATORIES, INC.**

(a Nevada corporation)

This Agreement of Merger is entered into as of May 10, 1999 by and between Oclassen Pharmaceuticals, Inc., a Delaware corporation (the "Merging Corporation") and Watson Laboratories, Inc., a Nevada corporation (the "Surviving Corporation"). The Merging Corporation and the Surviving Corporation are hereinafter sometimes collectively referred to as the "Constituent Corporations."

## R E C I T A L S

A.    The Merging Corporation was incorporated on March 12, 1992. Its authorized capital stock consists of One Thousand (1,000) shares of common stock, $0.01 par value per share, of which 1,000 shares are issued and outstanding (the "Merging Corporation Stock"),

B.    The Surviving Corporation was incorporated on February 20, 1992. Its current authorized capital stock consists of One Thousand (1,000) shares of common stock, $10.00 par value per share, of which 1,000 shares are issued and outstanding (the "Surviving Corporation Stock")

C.    The respective Boards of Directors of Surviving Corporation and Merging Corporation deem it advisable and to the advantage of each of the Constituent Corporations that Merging Corporation merge with and into Surviving Corporation upon the terms and subject to the conditions set forth in this Agreement of Merger.

D.    The sole director of each of the Constituent Corporations and the sole shareholder of each Constituent Corporation have approved this Agreement of Merger.

E.    All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

**NOW, THEREFORE**, the parties do hereby adopt this Agreement of Merger and do hereby agree that Merging Corporation shall merge with and into Surviving Corporation on the following terms, conditions and other provisions:

354327-1

# ARTICLE I

## THE MERGER

1.    <u>The Merger</u>.  Upon the terms and subject to the conditions of this Agreement of Merger, at the Effective Time (as herein defined), Merging Corporation shall be merged with and into Surviving Corporation in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement (the "<u>Merger</u>"), whereupon the separate corporate existence of Merging Corporation shall cease and Surviving Corporation shall be the surviving corporation of the Merger.

2.    <u>Effective Time</u>.  Merging Corporation and Surviving Corporation shall cause this Agreement of Merger together with officers' certificates attached to be properly executed and filed in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement.  Merging Corporation and Surviving Corporation shall also take such further actions as may be required under the laws of the States of Delaware and Nevada in connection with the consummation of the Merger.  The Merger shall become effective on May 12, 1999 at 12:01 A.M. Pacific Time (the "<u>Effective Time</u>").

3.    <u>Articles of Incorporation and By-Laws</u>.

(a)    The Articles of Incorporation of the Surviving Corporation at the Effective Time of the Merger shall continue to be the Articles of Incorporation of the Surviving Corporation until changed as provided by law.

(b)    The By-Laws of the Surviving Corporation at the Effective Time of the Merger shall continue to be the By-Laws of the Surviving Corporation until altered or amended in accordance with the provisions thereof.

4.    <u>Directors and Officers</u>.  The directors and officers of the Surviving Corporation at the Effective Time of the Merger shall continue to be the directors and officers, respectively, of the Surviving Corporation until their successors are chosen.

5.    <u>Terms of Merger</u>.

(a)    From and after the effective time of the Merger, the Surviving Corporation shall possess all the rights, privileges, immunities, and franchises of a public, as well as of a private nature, of each of the Constituent Corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares and all other choses in action, and all and every other interest, of or belonging to or due to each of the Constituent Corporations, shall be taken and deemed to be transferred to and vested in the Surviving Corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of the Constituent Corporations shall not revert or be in any way impaired by reason of the Merger, provided, however, that the Surviving Corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the Constituent Corporations, and any claim existing or action or preceding pending by or against either of the

354327-1

Constituent Corporations may be prosecuted to judgment as if the Merger had not taken place, or the Surviving Corporation may be substituted in its place, and neither the rights of creditors nor any liens upon the property of either of the Constituent Corporations shall be impaired by the Merger.

(b)     Upon the Merger becoming effective, all shares of the Merging Corporation outstanding immediately prior to the Merger shall be canceled and retired, and no new shares of the Surviving Corporation shall be issued. The outstanding shares of the Surviving Corporation shall remain outstanding.

(c)     The Surviving Corporation shall pay all expenses of carrying the Plan into effect and accomplishing the Merger provided for herein.

(d)     The proper officers and directors of the Constituent Corporations shall execute and deliver all such documents and take all such actions as may be necessary or advisable, or as may be requested by the Surviving Corporation from time to time, in order to vest fully all the property rights of the Constituent Corporations in the Surviving Corporation and otherwise carry out this Plan.

(e)     Anything herein or elsewhere to the contrary notwithstanding, the Plan and this Merger may be abandoned by the mutual consent of the Constituent Corporations, evidenced by appropriate resolutions of their respective Board of Directors, at any time prior to the effective date of the Merger.

ARTICLE II - MISCELLANEOUS

1.     Counterparts.   This Agreement of Merger may be signed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.

2.     Amendments.  This Agreement of Merger may be amended by the parties hereto at any time before or after approval of the Merger and the Plan of Merger by the Surviving Corporation Shareholders but, after any such approval, no amendment shall be made which by law requires further approval by such shareholders unless such shareholder consent is acquired. This Agreement of Merger may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

3,     Governing Law.  This agreement shall be governed by and construed under the internal laws of the State of Delaware as applied to agreements among Delaware residents entered into and to be performed entirely within Delaware, without reference to the principles of conflicts of law or choice of laws, except to the extent that the laws of the State of Nevada would apply in matters relating to the internal affairs of the Surviving Corporation and the Merger.

354327-1

**IN WITNESS WHEREOF**, this Merger Agreement is hereby executed on behalf of each of the Constituent Corporations by their respective officers thereunto duly authorized.

OCLASSEN PHARMACEUTICALS, INC.

By: _____
Allen Chao

AND        Its:   Chairman

By: _____
Robert C. Funsten

Its:   Secretary

WATSON LABORATORIES, INC.

By: _____
Allen Chao

AND        Its:   President

By: _____
Robert C. Funsten

Its:   Secretary

354327-1

STATE OF ILLINOIS )
                  )ss:
COUNTY OF COOK. )

On May 14, 1999, personally appeared before me, a Notary Public in and for the
State and County aforesaid, Allen Chao, President and Robert C. Funsten, Secretary of
Watson Laboratories, Inc., personally known to me to be the persons whose names are
subscribed to the above instrument in the said capacity, who acknowledged that they
executed the said instrument.

_Sela L. Brown_
Notary Public

```
*OFFICIAL SEAL*
SELA L. BROWN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2001
```

356919-1

# EXHIBIT E

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

**EXHIBIT F**

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT   2

LEXSEE 2001 U.S. DIST. LEXIS 1935

**SMITHKLINE BEECHAM CORPORATION and BEECHAM GROUP, p.l.c., Plaintiffs v. PENTECH PHARMACEUTICALS, INC., Defendant.**

**Case No. 00 C 2855**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2001 U.S. Dist. LEXIS 1935*

**February 16, 2001, Decided
February 20, 2001, Docketed**

**DISPOSITION:** [*1] Smithkline's Motion for Leave to Amend Their Complaint to Add Asahi Glass as a Defendant [48-1] granted. SmithKline leave to file a Second Amended Complaint consistent with this opinion on or before February 23, 2001 granted.

**COUNSEL:** For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., plaintiffs: Richard J. O'Brien, Douglas I. Lewis, Sidley & Austin, Chicago, IL.

For SMITHKLINE BEECHAM CORPORATION, plaintiff: Ford F. Farabow, Richard Racine, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., plaintiffs: Kenneth M Frankel, York M Faulkner, Robert D. Bajefsky, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

For PENTECH PHARMACEUTICALS, INC., defendant: John Edward Rosenquist, Robert F. Green, Steven H. Sklar, Lisa D. Graver, Leydig, Voit & Mayer, Ltd., Chicago, IL.

For PENTECH PHARMACEUTICALS, INC., defendant: James S. Rubin, Attorney at Law, Ft. Lee, NJ.

For PENTECH PHARMACEUTICALS, INC., counter-claimant: John Edward Rosenquist, Robert F. Green, Steven H. Sklar, Lisa D. Graver, Leydig, Voit &

Mayer, Ltd., Chicago, IL.

For PENTECH PHARMACEUTICALS, INC., counter-claimant: [*2] James S. Rubin, Attorney at Law, Ft. Lee, NJ.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., counter-defendants: Richard J. O'Brien, Douglas I. Lewis, Sidley & Austin, Chicago, IL.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., counter-defendants: Kenneth M Frankel, York M Faulkner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

**JUDGES:** Nan R. Nolan, United States Magistrate Judge. Judge Blanche M. Manning.

**OPINION BY:** Nan R. Nolan

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Plaintiffs Smithkline Beecham Corporation and Beecham Group, p.l.c. (collectively "Smithkline") have sued Defendant Pentech Pharmaceuticals, Inc. ("Pentech") for patent infringement. Smithkline's patents cover certain crystalline forms of paroxetine hydrochloride, the active ingredient in Smithkline's anti-depressant drug Paxil(R). Smithkline moves for

leave to amend the complaint to add Asahi Glass ("Asahi"), a Japanese company, as a defendant. For the reasons explained below, Smithkline's motion is GRANTED.

## I. FACTS

The following facts are taken from Smithkline's proposed Second Amended Complaint. Smithkline is engaged in the business of research, development, [*3] manufacture, and sale of pharmaceutical products throughout the world. Second Am. Cmplt. P 4. Smithkline manufactures crystalline paroxetine hydrochloride hemihydrate in bulk form in the United Kingdom, and then tablets and sells the product in the United States under the trademark PAXIL(R). *Id.* PAXIL(R) is used to treat depression, panic disorder, and obsessive compulsive disorder. *Id.* According to Smithkline, PAXIL(R) is one of the most widely prescribed prescription drugs in the United States. *Id.* Beecham Group, p.l.c. owns *U.S. Patent No. 4,721,723 ("the '723 patent")* for an invention entitled "Anti-Depressant Crystalline Paroxetine." *Id.* PP 6, 7. Smithkline Beecham Corporation owns *U.S. Patent Nos. 5,872,132 ("the '132 patent")* and *5,900,423 ("the '423 patent")* for inventions entitled "Form of Paroxetine Hydrochloride Anhydrate." *Id.* PP 8, 9.

Pentech is a corporation organized under the laws of the State of Illinois and maintains an office in Buffalo Grove, Illinois. *Id.* P 10. Pentech is engaged in the business of developing generic pharmaceutical compounds. *Id.* Asahi Glass is a corporation organized under the laws of Japan and maintains an office [*4] at 2-1-2 Marunouchi, Chiyoda-ku, Toyko 100-8305, Japan. *Id* P 11. Asahi is engaged in the business of manufacturing and marketing pharmaceutical compounds in the United States. *Id.*

The first three counts of Smithkline's proposed Second Amended Complaint allege that under *35 U.S.C. § 271(e)(2)(A)*, Pentech infringed the *'723, '132,* and *'423* patents by submitting to the U.S. Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA") seeking approval for the commercial marketing of its paroxetine hydrochloride drug product before the expiration date of Smithkline's patents, a product the manufacture, use, import, offer for sale, or sale of which will infringe the claims of the patents. *Id.* PP 12-21.

Smithkline's proposed amendment is to bring a fourth count of patent infringement against Asahi. *Id.* PP 22-24. Smithkline alleges that Asahi collaborated with Pentech in the research and development of Pentech's generic version of Paxil(R), provided Pentech with paroxetine hydrochloride for use in clinical studies in support of Pentech's ANDA, and directed and encouraged Pentech and the FDA to rely on information that Asahi submitted [*5] to the FDA in support of Pentech's ANDA, specifically, Asahi's Drug Master File ("DMF") No. 14432 for paroxetine hydrochloride. [1] *Id.* P 23. Smithkline further alleges that Pentech relied before the FDA upon Asahi's DMF for a complete description of the paroxetine hydrochloride, including the manufacturing facilities and process, physical and chemical characteristics, and stability of the paroxetine hydrochloride made for Pentech. *Id.* Smithkline believes that the Asahi DMF describes the production of crystalline paroxetine hydrochloride which infringes Smithkline's *'723, '132,* and/or *'423* patents. *Id.* If the FDA approves Pentech's ANDA, Asahi will be Pentech's solely approved manufacturer of the paroxetine hydrochloride to be used as the active ingredient in Pentech's generic drug product. *Id.*

> 1 "A drug master file is a submission of information to the [FDA] by a person (the drug master file holder) who intends it to be used for one of the following purposes: To permit the holder to incorporate the information by reference when the holder submits an investigational new drug application under Part 312 or submits an application or an abbreviated application or an amendment or supplement to them under this part, or to permit the holder to authorize other persons to rely on the information to support a submission to FDA without the holder having to disclose the information to the person." *21 C.F.R. § 314.420.*

[*6] Smithkline alleges that under *35 U.S.C. §§ 271(b)* and *(e)(2)*, Asahi infringed and actively, knowingly, and intentionally induced the infringement of Smithkline's *'723, '132,* and *'423 patents* by submitting, causing to be submitted, assisting with, participating in, contributing to, and/or supporting the submission of an ANDA to the FDA seeking approval for the commercial marketing of paroxetine hydrochloride tablets before the expiration of Smithkline's patents, a product the manufacture, use, import, offer for sale, or sale of which will infringe the claims of Smithkline's *'723, '132,* and

*'423 patents.*

## II. DISCUSSION

Leave to amend a complaint should be freely given "when justice requires." *Fed. R. Civ. P. 15(a).* However, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir. 1992).* [2] "The opportunity to amend a complaint is futile if 'the complaint, [*7] as amended, would fail to state a claim upon which relief could be granted.'" *General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997)* (quoting *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).*

> 2  Generally, when analyzing whether leave to amend should be granted in a patent infringement case, regional circuit law, rather than Federal Circuit law, applies. *Cultor Corp. v. A.E. Staley Manufacturing Company, 224 F.3d 1328, 1332 (Fed. Cir. 2000); FilmTec Corp. v. Hydranautics, 67 F.3d 931, 935 (Fed. Cir. 1995).* However, Federal Circuit law is controlling as to issues that are unique to patent law. "[A] procedural issue that is not itself a substantive patent law issue is ... governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive jurisdiction by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000).*

### [*8] A. *Direct Infringement*

Pentech first argues that it would be futile to allow Smithkline to add a claim against Asahi pursuant to *35 U.S.C. § 271(e)(2)(A)* because no valid claim exists for alleging direct infringement by Asahi. *Section 271(e)(2)(A)* provides that "it shall be an act of infringement to submit" an ANDA if the purpose of such submission is to obtain FDA approval to commercially make, use, or sell a patented product or a product the use of which is patented before the patent expires. Pentech

maintains that as a matter of law, a person other than the ANDA filer can not be held liable for direct infringement under *section 271(e)(2)(A).*

Asahi cannot be held liable as a direct infringer under *section 271(e)(2)(a)* because Asahi did not submit the ANDA at issue. Rather, Asahi is the bulk manufacturer of the paroxetine hydrochloride active ingredient in Pentech's drug product and submitted a DMF to the FDA describing the manufacture of paroxetine hydrochloride used in Pentech's generic version of Paxil(R). Smithkline's interpretation of *section 271(e)(2)(a)* as allowing a person other than the ANDA filer to be held liable for direct infringement [*9] under that section is not supported by the plain language of the statute. The plain language of the statute controls. *VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579 (Fed. Cir. 1990).* [3] There is no reference in *section 271(e)(2)(A)* to suppliers of ingredients of generic drug products or preparers of DMFs relied on by ANDA filers. *Section 271(e)(2)(A)* unambiguously refers only to persons who submit ANDAs.

> 3  Whether Smithkline can state a claim for direct infringement against a person other than an ANDA filer under *section 271(e)(2)(A)* "clearly implicates substantive patent law," and Federal Circuit law controls.

Smithkline has not presented, and the Court has been unable to locate, any authority supporting the proposition that a person other than an ANDA filer can be held liable for direct infringement under *section 271(e)(2)(A).* None of the cases cited by Smithkline involve the precise issue raised here. The two cases cited by Smithkline-- *Smithkline Beecham Corp., v. Apotex Corp., 2000 U.S. Dist. LEXIS 10419, 2000 WL 983937* [*10] (N.D. Ill. July 17, 2000) and *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc., 101 F. Supp. 2d 1139, 1141 n.2 (S.D. Ind 2000)*--do not address the question of whether a non-ANDA filer can be held liable as a direct infringer under *section 271(e)(2)(A)* but rather merely mention that the plaintiffs in those actions alleged that non-filers were directly liable under *section 271(e)(2)(A).* Given the clear language of *section 271(e)(2)(A),* Smithkline has not provided any legitimate reason for inferring that third parties who did not file an ANDA can be directly liable under that section.

### B. *Inducement of Infringement*

Pentech next argues that Smithkline fails to allege any facts to support an allegation of active inducement. Under *35 U.S.C. § 271(b)*, "whoever actively induces infringement of a patent shall be liable as an infringer." Whether Smithkline's proposed complaint states a claim for inducement of infringement is determined by the law of the regional circuit, the Seventh Circuit. *C&F Packing Co., Inc. v IBP, Inc., 224 F.3d 1296, 1306 (Fed. Cir. 2000)*; *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 793 (Fed. Cir. 2000)*. [*11]

Pentech maintains that Smithkline impermissibly pleads only the bare legal conclusion that Asahi "induced the infringement of" Smithkline's patents. Pentech complains that Smithkline alleges no facts to support this legal conclusion. Pentech misconstrues the requirements of notice pleading. Facts need not be pled with specificity under notice pleading. *Federal Rule of Civil Procedure 8(a)* requires only an identification of the basis of jurisdiction and a "short and plain statement of the claim showing that the pleader is entitled to relief." "A plaintiff in a suit in federal court need not plead facts; he can plead conclusions." *Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995)*. The conclusions need only provide the defendant with "at least minimal notice of the claim." *Id. at 154*.

Smithkline's allegations satisfy the liberal federal pleading standards. Smithkline alleges that Asahi intentionally induced the infringement of Smithkline's '723, '132, and '423 patents by causing to be submitted, assisting with, participating in, contributing to, and/or supporting the submission of an ANDA to the FDA seeking approval for the commercial manufacture [*12] of paroxetine hydrochoride tablets before the expiration of Smithkline's patents, a product the manufacture, use, import, offer for sale, or sale of which will infringe the claims of Smithkline's patents. Second Am. Cmplt. P 24. Smithkline further alleges that Asahi collaborated with Pentech in the research and development of Pentech's generic version of Paxil(R), provided Pentech with paroxetine hydrochloride for use in clinical studies in support of Pentech's ANDA, and directed and encouraged Pentech and the FDA to rely on Asahi's Drug Master File in support of Pentech's ANDA. *Id.* P 23. Because Pentech has the requisite minimal notice of Smithkline's inducement of infringement claim, it would not be futile to allow Smithkline to amend the complaint. [4]

4  In *Torpharm v. Novopharm, 181 F.R.D. 308*

*(E.D. N.C. 1998)*, cited by Pentech, Torpharm sought leave to file an amended complaint adding Genpharm as a defendant. Torpharm's proposed amendment asserted a claim for inducement of infringement against Genpharm pursuant to *section 271(b)*. Genpharm had no involvement with the filing of the alleged direct infringer's ANDA and merely waived its exclusivity period for the direct infringer. The district court denied Torpharm's motion to amend as futile because Torpharm failed to allege any facts which showed intent to induce infringement. *Torpharm* is distinguishable from this case because Smithkline alleges that Asahi was involved in the filing of Smithkline's ANDA by collaborating with Pentech in the research and development of Pentech's generic drug product, providing Pentech with the bulk active ingredient for use in clinical studies, and by directing Pentech and the FDA to rely on Asahi's DMF in support of Pentech's ANDA. Smithkline expressly alleges that by these actions Asahi participated in the submission of Pentech's ANDA and intentionally induced the infringement of Smithkline's patents.

[*13]  **C.** *Permissive Joinder*

Smithkline's claim against Asahi also satisfies the requirements of permissive joinder. *Federal Rule of Civil Procedure 20(a)* provides that all persons may be joined in one action as defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." The claims against Pentech and Asahi arise out of the same transaction or occurrence. Specifically, the claims relate to the submission of Pentech's ANDA to the FDA supported in part by Asahi's DMF and clinical studies using Asahi's bulk paroxetine hydrochloride. The question of law common to both defendants is whether the manufacture, use, or sale of the generic drug product that Pentech is likely to sell will infringe Smithkline's patents. The resolution of that issue depends in part on whether the paroxetine hydrochloride that Asahi makes and supplies to Pentech will infringe one or more of Smithkline's patents.

Pentech relies on *Smith v. City of Chicago Police Dept., 1989 U.S. Dist. LEXIS 5653, 1989 WL 55045*

[*14] (N.D. Ill. May 9, 1989), for the proposition that joinder should be denied because joinder would afford Smithkline no "additional basis for relief." *Smith* is easily distinguishable and provides no valid ground for denying joinder here. Smith alleged that his arrest in October 1978 violated his constitutional rights. The district court held that res judicata and collateral estoppel prevented Smith from raising claims regarding his arrest against defendants. The court then denied Smith leave to join additional defendants because Smith was "absolutely foreclosed from relitigating any issues associated with his arrest, whether it be against the same parties (and their privies) or any new parties." *1989 U.S. Dist. LEXIS 5653, *21.* In contrast to *Smith*, res judicata and collateral estoppel have no application here. Smithkline is not foreclosed from litigating any issues related to Pentech's ANDA seeking FDA approval to market capsules containing a form of paroxetine hydrochloride as the active ingredient.

### III. CONCLUSION

For the reasons set forth above, Smithkline's Motion for Leave to Amend Their Complaint to Add Asahi Glass as a Defendant is GRANTED. The Court grants Smithkline leave [*15] to file a Second Amended Complaint consistent with this opinion on or before February 23, 2001.

ENTER:

Nan R. Nolan

United States Magistrate Judge

Dated: *Feb. 16, 2001*