# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WYETH,

    *Plaintiff*,

    v.

WATSON LABORATORIES, INC. *and*
WATSON PHARMACEUTICALS, INC.,
    *Defendants*.

    Civil Action No. 08-cv-00145-JJF

## PUBLIC VERSION

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)
### (*By Watson Laboratories, Inc., a Nevada Corporation*)

## BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILING TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)
### (*By Watson Laboratories, Inc., a Delaware Corporation*)

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
Amy Arnott Quinlan  (I.D. #3021)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801-1494
Tel: (302) 888-6960

*Attorneys for Defendants*

OF COUNSEL

John W. Bateman
C. Kyle Musgrove
Nicholas J. Nowak
Thomas M. Huff
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
(202) 220-4200

Originally filed:  April 25, 2008
Public version filed:  May 2, 2008

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING.................................................................. 1

SUMMARY OF THE ARGUMENT ...................................................................................... 2

FACTUAL BACKGROUND ................................................................................................. 3

ARGUMENT .......................................................................................................................... 5

I.      MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ....................... 5

      A.     The Delaware Long-Arm Statute Does Not Authorize an Exercise of
Personal Jurisdiction in this Case ......................................................................... 7

            1.     There is no basis for specific jurisdiction under section 3104(c)(3).......... 8

            2.     There is no basis for general jurisdiction under section 3104(c)(4) .......... 8

      B.     The Due Process Clause of the Constitution Prohibits an Exercise of
Personal Jurisdiction in this Case ....................................................................... 10

      C.     There is no Basis for Obtaining Personal Jurisdiction in this Case By
Piercing a Corporate Veil.................................................................................... 12

      D.     The Agency Theory Does Not Provide A Basis for Jurisdiction in this
Case...................................................................................................................... 13

II.     MOTION TO DISMISS FOR FAILING TO STATE A CLAIM ................................. 16

CONCLUSION...................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998)............................................................................. 6

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
    772 F. Supp. 1458 (D.Del. 1991)......................................................... 13, 14, 15

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987)........................................................................................ 11

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005)............................................................................ 6

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*,
    297 F.3d 1343 (Fed. Cir. 2002)............................................................................ 6

*Elf Atochem N. Am., Inc. v. Jaffari*,
    727 A.2d 286 (Del. 1999) ................................................................................ 15

*Graphic Controls Corp. v. Utah Med. Prods.*,
    149 F.3d 1382 (Fed. Cir. 1998)............................................................................ 6

*Greene v. New Dana Perfumes Corp.*,
    287 B.R. 328 (D.Del. 2002)....................................................................... 12, 13

*Hildebrand v. Steck Mfg. Co., Inc.*,
    279 F.3d 1351 (Fed. Cir. 2002)............................................................................ 6

*Intel Corp. v. Silicon Storage Tech. Inc.*,
    20 F. Supp. 2d 690 (D. Del. 1998)...................................................................... 7

*International Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945)...................................................................................... 10

*Merck & Co. v. Barr Labs., Inc.*,
    179 F. Supp. 2d 368 (D. Del. 2002)........................................................ 7, 8, 9, 10

*Off'l Comm. Unsecured Creditors v. R.F. Lafferty & Co.*,
    267 F.3d 340 (3rd. Cir. 2001) ......................................................................... 12

*Physician Endorsed LLC v. Clark*,
    374 F. Supp. 2d 395 (D. Del. 2005)...................................................... 6, 7, 10, 11

*Sears, Roebuck & Co. v. Sears plc*,
    744 F.Supp. 1297 (D.Del. 1990)................................................... 7, 10, 11, 12, 13

## CASES – Continued

*SmithKline Beecham Corp. v. Geneva Pharms., Inc.*,
    287 F. Supp. 2d 576 (E.D. Pa. 2002) ............................................................................ 16

*Smithkline Beecham Corp. v. Pentech Pharms., Inc.*,
    No. 00-C-2855-NRN, 2001 U.S. Dist. LEXIS 1935 (N.D. Ill. February 20, 2001) ......... 16

*Thomas v. Hobbs*,
    No. 04C-02-010-RFS, 2005 Del. Super. LEXIS 164 (Del. Super. Ct. Apr. 27, 2005) ..... 15

*Trustees of Arden v. Unity Constr. Co.*,
    No. 15025, 2000 Del. Ch. LEXIS 7 (Del. Ch. Jan. 26, 2000) ......................................... 15

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003) ...................................................................................... 16

*Wechsler v. Macke Intern. Trade, Inc.*,
    486 F.3d 1286 (Fed. Cir. 2007) ...................................................................................... 12

## STATUTES

35 U.S.C. § 271(e)(2)(A) ........................................................................................... 3, 16

Del. Code Ann. Tit. 6, § 18-303(a) .............................................................................. 15

Del. Code Ann. Tit. 10, § 3104(c)(3) .......................................................................... 7, 8

Del. Code Ann. Tit. 10, § 3104(c)(4) ................................................................ 7, 8, 9, 10

## RULES

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 1, 2, 6, 17

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1, 2, 5, 16, 17

iii

# INTRODUCTION

Watson Laboratories, Inc., a Nevada corporation ("Watson Labs Nevada") is the only party that committed the alleged acts at issue in this case, but it has not been served with process. Rather than delay the proceedings, it chooses to answer by moving pursuant to Federal Rule 12(b)(2) to dismiss all of the claims against it by Plaintiff, Wyeth, for lack of personal jurisdiction. Watson Laboratories, Inc., a Delaware corporation ("Watson Labs Delaware"), by contrast, *was* served with process but did not commit any of the acts at issue in the present suit. Thus, Watson Labs Delaware moves pursuant to Federal Rule 12(b)(6) to dismiss all claims brought against it by Plaintiff for failing to state a claim upon which relief could be granted.

The grounds for each motion are set forth below.

# NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement case arising from Watson Labs Nevada's filing of Abbreviated New Drug Application ("ANDA") No. 79-218. Plaintiff filed its Complaint in this case on March 12, 2008, naming Watson Pharmaceuticals, Inc. ("Watson Pharmaceuticals") and "Watson Laboratories, Inc." as defendants. (D.I. 1) By stipulated order, Defendants' time to answer the Complaint was extended to April 25, 2008. (D.I. 11)

Watson Labs Nevada has not been served in this case,[1] but rather than delay the proceedings, it is answering the Complaint by the present motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Moreover, Watson Labs Delaware moves to

---

[1] A copy of the Complaint was served on Watson Labs Delaware's registered service agent in Delaware, but this agent is not authorized to accept service on behalf of Watson Labs Nevada. (Affidavit of Charles Ebert, Ph.D. ("Ebert Aff."), attached as Exhibit 1, at ¶¶ 12, 13; Affidavit of Maria Chow Yee ("Yee Aff."), attached as Exhibit 2, at ¶ 29.)

dismiss Plaintiff's Complaint against it pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief could be granted. Defendant Watson Pharmaceuticals is concurrently responding to the Complaint in separate papers, also moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). No party has taken or served any discovery.

## SUMMARY OF THE ARGUMENT

Plaintiff Wyeth's lawsuit in this forum is critically deficient and requires a full dismissal for lack of personal jurisdiction and failing to state a claim upon which relief can be granted. In short, Wyeth's personal jurisdiction pleadings are premised on an incorrect assumption that the "Watson Laboratories, Inc." entity responsible for submitting ANDA No. 79-218 is a Delaware corporation. (*See* D.I. 1, ¶¶ 2 and 7) Multiple Watson entities are named "Watson Laboratories, Inc." However, the only "Watson Laboratories, Inc." entity that submitted the ANDA at issue in this case is a Nevada corporation that does not conduct business in and has, at most, minimal, unrelated contacts with Delaware. As a result, Plaintiff's Complaint against Watson Labs Nevada should be dismissed for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Plaintiff has served its Complaint on the registered agent of a separate "Watson Laboratories, Inc." entity that is in fact incorporated in Delaware. However, this entity had nothing to do with the ANDA filing at issue in this case and should be dismissed as a party pursuant to Fed. R. Civ. P. 12(b)(6).

2

## FACTUAL BACKGROUND

Plaintiff Wyeth filed its Complaint on March 12, 2008, alleging infringement of United States Patent No. 6,500,814 ("the '814 patent") by virtue of certain acts related to ANDA No. 79-218. (*See* D.I. 1)  The suit was filed pursuant to the Hatch-Waxman Act, which allows a patent holder to treat certain ANDA-related actions as acts of infringement and to file a patent infringement suit against parties that "submit an [ANDA] application . . ." *See* 35 U.S.C. § 271(e)(2)(A).

Wyeth's Complaint names two defendants: Watson Pharmaceuticals, Inc. ("Watson Pharmaceuticals") and an entity identified as "Watson Laboratories, Inc."  Watson Pharmaceuticals is a holding company and was not involved in preparing or submitting the ANDA at issue.  (Affidavit of Pamela Davis ("Davis Aff."), attached as Exhibit 3, at ¶¶ 3-4; Yee Aff. at ¶ 23)  A number of its subsidiaries have taken the name "Watson Laboratories, Inc.," including both Watson Labs Nevada and Watson Labs Delaware.  (Davis Aff. at ¶ 5)

Watson Labs Nevada is a Nevada corporation based out of Corona, California, whose main activities consist of developing and manufacturing pharmaceutical products and preparing and submitting various ANDAs with the FDA.  (Yee Aff. at ¶¶ 2, 5)  It prepared and filed ANDA No. 79-218, which is purported to be at issue in this case.  (*Id*. at ¶ 3)

Watson Labs Delaware, on the other hand, is primarily engaged in the development and manufacture of transdermal products (*i.e.*, products that are applied to the skin such as patches, creams, etc.).  (Ebert Aff. at ¶ 4)  Watson Labs Delaware does not file any ANDAs itself, but does perform certain laboratory work in support of ANDA filings.[2]  (*Id*. at ¶ 5)  Most pertinently

**REDACTED**

3

though, Watson Labs Delaware had **no** involvement in the preparation or submission of ANDA No. 79-218 at issue here. (*Id.* at ¶ 7)

As a basis for its personal jurisdiction pleadings, Wyeth pleads that "Watson Laboratories, Inc." is a Delaware corporation. (*See* D.I. 1, at ¶¶ 2 and 7) Furthermore, Wyeth served the Complaint on Watson Labs Delaware, and not Watson Labs Nevada. (D.I. 5; Ebert Aff. at ¶¶ 12-13; Yee Aff. at ¶ 29) However, it was Watson Labs Nevada that prepared and submitted the ANDA at issue in this case. (Yee Aff. at ¶¶ 3, 23; *see also* Ebert Aff. at ¶ 7) Although Watson Labs Nevada has not been served, both Watson Labs Nevada and Watson Labs Delaware are hereby responding with independent motions for dismissal.

Watson Labs Nevada is a Nevada corporation having its principal place of business in Corona, California. (Yee Aff. at ¶ 2) It maintains no significant contacts with the forum of Delaware. Watson Labs Nevada neither transacts nor solicits business in Delaware. (*Id.* at ¶¶ 12, 15-16) It has no employees, local telephone listing, bank accounts, or property in Delaware, it has not appointed an agent for service of process in Delaware, and it is not registered with the Secretary of State to do business in Delaware. (*Id.* at ¶¶ 10-16) ░░REDACTED░░

░░REDACTED░░—Watson Laboratories, LLC ("Watson Labs, LLC")—but this entity played no role in the preparation and submission of ANDA No. 79-218.[3] (*Id.* at ¶¶ 35-36)

───────────────

░░REDACTED░░

░░REDACTED░░ Watson Labs **Delaware** does not itself submit any ANDAs. (Ebert Aff. at ¶ 5.) Watson Labs **Delaware** does submit New Drug Applications ("NDAs") for its transdermal products, however. (*Id.* at ¶ 4.)

░░REDACTED░░



**REDACTED**

Watson Labs Nevada is filing the present motion to dismiss for lack of personal jurisdiction because of its lack of contacts with the forum of Delaware.  Watson Labs Delaware is filing the present motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because it played no part in the filing and preparation of ANDA No. 79-218.

## ARGUMENT

## I.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### (*By Watson Laboratories, Inc., a Nevada Corporation*)

There are several bases for dismissing the Complaint in this case, some of which are discussed later in this brief and in separate papers filed by Defendant Watson Pharmaceuticals. As a starting point, though, it is bedrock legal principle that a court must have personal

jurisdiction over each named defendant before it may consider any asserted claim for relief. And if jurisdiction over any defendant is lacking, a complete dismissal is required as to that party, *see* Fed. R. Civ. P. 12(b)(2), even before one considers the merits of the asserted legal claims. After a jurisdictional defense has been raised, "the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction." *Physician Endorsed LLC v. Clark*, 374 F. Supp. 2d 395, 397 (D. Del. 2005).

In the present case, Watson Labs Nevada is not a resident of the State of Delaware. Thus, when assessing the question of personal jurisdiction, this Court must focus on the following two inquiries: (1) whether the applicable long-arm statute is satisfied; and (2) whether a court's exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See*, *e.g.*, *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002).[4]

In many states, the applicable long-arm statute will confer personal jurisdiction to the fullest extent permitted by the United States Constitution, and the entire personal jurisdiction question will collapse into a Due Process inquiry. But in Delaware, the Federal Circuit has observed that "it is not clear . . . whether the Delaware long arm statute extends to the full extent that the due process clause would permit." *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1320 (Fed. Cir. 2005) (citing conflicting Delaware case

---

[4]     The law of the United States Court of Appeals for the Federal Circuit governs the issue of personal jurisdiction in patent-related cases. *See*, *e.g.*, *Deprenyl*, 297 F.3d at 1348; *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377-78 (Fed. Cir. 1998). However, in interpreting the meaning of state long-arm statutes, the Federal Circuit will "defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998).

law); *see also Intel Corp. v. Silicon Storage Tech. Inc.*, 20 F. Supp. 2d 690, 695 (D. Del. 1998)

(holding that the mandatory two-step inquiry should not be ignored out of a desire to afford

maximum jurisdictional coverage).  Accordingly, both prongs of the inquiry must be satisfied in

order to establish personal jurisdiction in this case.

### A.    The Delaware Long-Arm Statute Does Not Authorize an Exercise of Personal Jurisdiction in this Case

Pertinent portions of the Delaware long-arm statute provide:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: . . .

> (3) Causes tortious injury in the State by an act or omission in this State;

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

Del. Code Ann. Tit. 10, § 3104(c)(3) and (c)(4).

Delaware state courts interpret section 3104(c)(3) as a *specific jurisdiction* provision that

requires a nexus between the cause of action and the alleged conduct in Delaware as a basis for

jurisdiction.  *See Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1297, 1302 (D.Del. 1990).  "By

its terms, subsection (c)(3) only applies when the defendant, or an agent of the defendant,

performs some act (or omission) in the State of Delaware."  *Id*.  In contrast, section 3104(c)(4) is

interpreted as a *general jurisdiction* provision, "allowing for jurisdiction when the defendant's

contacts with the forum state are unrelated to the cause of action."  *Merck & Co. v. Barr Labs.,

Inc.*, 179 F. Supp. 2d 368, 373 (D. Del. 2002).  Section 3104(c)(4) is understood to carry a "high

standard."  *Physician Endorsed LLC*, 374 F. Supp. at 398.

### 1.    There is no basis for specific jurisdiction under section 3104(c)(3)

There can be no doubt that the specific jurisdictional requirements of 3104(c)(3) are lacking in this case. Simply put, Watson Labs Nevada has not committed—nor does Wyeth allege—any act in Delaware with relation to the preparation and submission of ANDA No. 79-218 at issue in this case. All acts relating to the preparation and submission of this ANDA took place outside of the state of Delaware. (Yee Aff. at ¶ 4)[5] Indeed, the only jurisdictional acts that Wyeth alleges as to "Watson Laboratories, Inc." are *general* jurisdictional acts that seem to rely primarily, if not entirely, on Wyeth's incorrect belief that the applicable "Watson Laboratories, Inc." entity is the Delaware corporation. (*See*, D.I. 1 at ¶¶ 3, 7). Thus, specific jurisdiction does not lie.

### 2.    There is no basis for general jurisdiction under section 3104(c)(4)

The general jurisdictional requirements of 3104(c)(4) are also lacking. Section 3104(c)(4) requires both (1) that a "tortious injury" has been alleged, and (2) that the defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in [Delaware]." Del. Code Ann. tit. 10, § 3104(c)(4); *see also Merck & Co.*, 179 F. Supp. 2d at 373. An examination of the test's second prong clearly demonstrates that general personal jurisdiction cannot be exercised under section 3104(c)(4).

First, it can in no way be said that Watson Labs Nevada "regularly does . . . business" in Delaware. To the contrary, Watson Labs Nevada transacts no business in Delaware. (Yee Aff. at ¶ 12) It has no employees, local telephone listing, bank accounts, or property in Delaware. (*Id.* at

---

[5]    Where an allegation of patent infringement is directed to the out-of-state submission of an ANDA plaintiffs will often concede the issue of specific jurisdiction. *See, e.g., Merck & Co.*, 179 F. Supp. 2d at 371.

¶¶ 10, 13)  Watson Labs Nevada does not have a registered service agent in Delaware and is not

registered with the Secretary of State to do business in Delaware.  (*Id.* at ¶¶ 11, 14)  As this Court

has held in *Merck & Co. v. Barr Labs., Inc.*, a party does not do business in Delaware for

purposes of the long-arm statute under such facts.  179 F. Supp. 2d at 373 (finding no general

jurisdiction over a Hatch-Waxman defendant under similar facts, even where the defendant had

some minimal direct sales to a Delaware pharmacy).

Second, Watson Labs Nevada, does not "regularly . . . solicit[] business" in Delaware.

Watson Labs Nevada does not advertise in Delaware at all.  (Yee Aff. at ¶ 15)  **REDACTED**

**REDACTED**

**REDACTED**    *Accord Merck & Co., 179 F. Supp. 2d at 373.*

Finally, Watson Labs Nevada does not "derive[] substantial revenue from services, or

things used or consumed" in Delaware.  **REDACTED**

**REDACTED**

9

**REDACTED**

**REDACTED**    *See Merck & Co.*, 179 F. Supp. 2d at 373

("Currently, [defendant's] Delaware revenue, comprising less than 0.13% of total revenue, is not substantial enough to warrant an exercise of general jurisdiction."). **REDACTED**

**REDACTED**    Watson Labs Nevada cannot be said to derive substantial revenue from pharmaceutical products used or consumed in Delaware.

Because Wyeth does not allege any facts supporting general jurisdiction in its Complaint, and because no such facts exist, there can be no exercise of personal jurisdiction over Watson Labs Nevada pursuant to section 3104(c)(4) of the Delaware long-arm statute. *See Physician Endorsed*, 374 F. Supp. 2d at 398 (holding that an exercise of personal jurisdiction under the "high standard" of 3104(c)(4) is improper where "[plaintiff] has alleged no facts that [defendant] regularly does or solicits business in Delaware, engages in any other persistent course of conduct in the state, or derives substantial revenue from services or things used or consumed in Delaware.").

**B.    The Due Process Clause of the Constitution Prohibits an Exercise of Personal Jurisdiction in this Case**

Even if the Delaware long-arm statute did authorize personal jurisdiction over Watson Labs Nevada (which it does not), an exercise of jurisdiction would still be improper under the Due Process Clause of the United States Constitution. Consistent with considerations of due process, personal jurisdiction can only exist over a non-resident defendant if the defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit [in that state] does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). Moreover, in cases of general jurisdiction, "the defendant's activity in the forum must be continuous and substantial." *Sears, Roebuck &*

10

*Co.*, 744 F. Supp. at 1304. This "continuous and substantial" standard is especially difficult to meet:

> In *International Shoe*, the Supreme Court indicated that the "continuous and substantial" requirement is not often met: "There have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Indeed, there appears to be only one case, *Perkins v. Benguet Consol. Mining Co.*, in which the United States Supreme Court has upheld the exercise of personal jurisdiction over a defendant where the claim was not related to the defendant's forum related activities. Accordingly, the standard for general jurisdiction is a high standard in practice.

*Id.* (internal citations omitted).

As explained above, Watson Labs Nevada has virtually *no* contacts with the state of

Delaware, much less the "continuous and substantial" level required by the Due Process Clause.

Moreover, even if Watson Labs Nevada was found to have sufficient minimum contacts with the

forum, this Court would then have to determine whether it is reasonable to exercise jurisdiction

over the defendant. In making this determination, courts weigh several factors, including:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Physician Endorsed*, 374 F. Supp. 2d at 399; *see also Asahi Metal Indus. Co. v. Superior Court*,

480 U.S. 102, 107 (1987).

In the present case, none of the factors weigh in favor of personal jurisdiction in

Delaware. Watson Labs Nevada—along with the majority of its documents and witnesses—is

located thousands of miles away in Corona, California. Moreover, Delaware does not have any

great interest in adjudicating this case. While Plaintiff is a Delaware corporation, its principal

place of business is located in Madison, New Jersey. And as explained above, the alleged acts

11

giving rise to this cause of action have virtually no relation to the state of Delaware, its laws, or its citizens. Finally, none of the remaining factors weighs in favor of Delaware, as Plaintiff may seek effective relief in any federal court with proper jurisdiction and venue, and there are no substantive state social issues at play in this case.

In sum, there is no basis for exercising personal jurisdiction in this case under either the Delaware long-arm statute or the constitutional requirements of due process.

## C.    There Is No Basis for Obtaining Personal Jurisdiction in this Case By Piercing the Corporate Veil

In rare Delaware cases, a court may obtain personal jurisdiction over a corporate party by piercing its corporate veil to reach a parent or subsidiary with a presence in the forum state. While Watson Pharmaceuticals—like many corporations—owns certain subsidiaries incorporated in Delaware, these subsidiaries maintain independent corporate identities and provide no basis for personal jurisdiction over Watson Labs Nevada in this case.

In Delaware, [6] the separate corporate identities of related corporations are strictly observed. *See, e.g., Greene v. New Dana Perfumes Corp.*, 287 B.R. 328, 341 (D.Del. 2002) ("Even though reality dictates that the wishes of the president and CEO of a parent corporation (which by definition has the voting power to control its subsidiaries) cannot be ignored, the fact of a parent-subsidiary relationship does not eliminate the separate existence of the subsidiary."). As a result, "[i]t is only the exceptional case where a court will disregard the corporate form" in Delaware. *Sears, Roebuck & Co.*, 744 F. Supp. at 1305.

---

[6]     Because corporate veil issues are not unique to patent law, they are controlled by the Third Circuit, which in turn applies state law. *E.g., Wechsler v. Macke Intern. Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) ("Since the alter ego issue is not unique to patent law, we apply the law of the regional circuit."); *Off'l Comm. Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 353 (3rd Cir. 2001) (applying state law with regard to a question of piercing the corporate veil).

In Delaware, the "piercing of the corporate veil" theory is also known as the alter ego theory. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D.Del. 1991). It has no applicability in this case. The alter ego theory applies only between a parent and a subsidiary and requires a showing of "fraud, injustice, or inequity in the use of the corporate form." *Id.* This legal requirement is interpreted "strictly" under Delaware law. *Greene*, 287 B.R. at 342. No such fraud has been, or could be, alleged against Watson Labs Nevada or its related corporate entities. Moreover, Watson Labs Nevada and Watson Pharmaceuticals each observe proper corporate formalities. (*See* Yee Aff. at ¶¶ 17, 24-34; Davis Aff. at ¶¶ 6-11) Consequently, alter ego theory does not apply. *Accord Applied Biosystems, Inc.*, 772 F. Supp. at 1464 (court observed that it "could easily reject the alter ego theory since [the two corporate entities] have preserved corporate formalities, and there is no evidence whatsoever of any fraud."); *Sears, Roebuck & Co.*, 744 F. Supp. at 1304-05 ("In order to reach a parent corporation under the alter-ego theory, the plaintiff must show fraud, injustice, or inequity in the use of the corporate form.").

### D.     The Agency Theory Does Not Provide a Basis for Jurisdiction in this Case

Another avenue sometimes pursued by plaintiffs attempting to gain jurisdiction over a non-Delaware corporation is to allege that an entity that is subject to jurisdiction in Delaware has acted as the non-Delaware corporation's agent. This agency theory "examines the degree of control which the parent exercises over the subsidiary." *Id.* at 1463. "The scope of jurisdiction under the agency theory will be defined by the scope of authority delegated to the agency." *Sears, Roebuck & Co.*, 744 F. Supp. at 1305.

Furthermore, "unlike the alter ego doctrine, the agency theory does not require a parent-subsidiary association." *Applied Biosystems*, 772 F.Supp. at 1463; *see also Sears, Roebuck & Co.*, 744 F.Supp. at 1305. Rather, in making an agency theory determination, courts look to:

13

... the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant.

*Applied Biosystems*, 772 F. Supp. at 1463 (internal citations omitted). And even if an agency relationship is found to exist, "courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for *specific jurisdictional acts* of the subsidiary." *Id.* (emphasis added).

Initially, even assuming *arguendo* that Watson Pharmaceuticals, Watson Labs Delaware and Watson Pharma act to any degree as agents of Watson Labs in Delaware, there are no "specific jurisdictional acts" by any of these parties that would provide jurisdiction over Watson Labs Nevada in the present case. Watson Labs Nevada is the **only** entity that has committed the alleged act of infringement—the preparation and submission of ANDA No. 79-218. (Yee Aff. at ¶ 23) Its parent and sister corporations have committed no specific jurisdictional acts for the purposes of this suit. Thus, the agency theory cannot supply personal jurisdiction over Watson Labs Nevada in this case.

Furthermore, as noted above and attested in the attached affidavits, Watson Labs Nevada, Watson Labs Delaware, Watson Pharmaceuticals and Watson Pharma are each independent corporate entities that observe proper corporate formalities. (*See* Yee Aff. at ¶¶ 17, 24-34; Ebert Aff. at ¶¶ 8-11; Davis Aff. at ¶¶ 6-11; Boyer Aff. at ¶¶ 4-8) Thus, the degree of control necessary for an agency relationship between Watson Labs Nevada and any of the other three entities is not present.

14

**REDACTED** Watson Labs, LLC—a

"limited liability company" organized under the laws of Delaware. [7] (Yee Aff. at ¶ 35) However, Watson Labs, LLC's formation under Delaware law is an inadequate basis for specific jurisdiction, as the present case is confined to patent infringement and is unrelated to Watson Labs, LLC's act of formation. *See Applied Biosystems*, 772 F.Supp. at 1467-68 (holding that the incorporation of a subsidiary in Delaware will only confer jurisdiction for torts relating to the act of incorporation, and not an unrelated alleged act of patent infringement). Watson Labs, LLC played no role in the preparation or submission of ANDA No. 79-218. (Yee Aff. at ¶ 36)

**REDACTED**

**REDACTED** This stated focus has nothing to do with specific jurisdictional acts in Delaware relating to the filing of an ANDA in Maryland by a company principally located in California. Consequently, the activities of Watson Labs, LLC cannot provide a basis for personal jurisdiction over Watson Labs Nevada.

For all of these reasons, there are no grounds for piercing any corporate veil to obtain personal jurisdiction over Watson Labs Nevada in this case.

---

[7]    In Delaware, a "limited liability company" is an entity designed to have "tax benefits akin to a partnership and limited liability akin to the corporate form." *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999); *see also* Del. Code Ann. Tit. 6, § 18-303 (a) ("[N]o member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company."). Delaware courts effectively treat a limited liability company the same as a corporation when considering whether to pierce a corporate veil. *See Trustees of Arden v. Unity Constr. Co.*, No. 15025, 2000 Del. Ch. LEXIS 7, at *12-14 (Del. Ch. Jan. 26, 2000) (attached as Exhibit 5) (discussing piercing of the corporate veil in the context of limited liability companies); *Thomas v. Hobbs*, 2005 No. 04C-02-010-RFS, Del. Super. LEXIS 164, at *5-7 (Del. Super. Ct. Apr. 27, 2005) (attached as Exhibit 6) (same).

## II.    MOTION TO DISMISS FOR FAILING TO STATE A CLAIM

### (By Watson Laboratories, Inc., a Delaware Corporation)

Plaintiff Wyeth has served Watson Labs Delaware as an apparent party in this case, but there is a clear basis for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief could be granted.  In a Hatch-Waxman suit, only the entity that actually submits an ANDA may be found liable for direct patent infringement.  The unambiguous statutory language limits the cause of action to those companies that "**submit** an [ANDA] application."  *See* 35 U.S.C. § 271(e)(2)(A) (emphasis added); *see also Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003) (The Hatch-Waxman Act "explicitly defines the act of infringement as the filing of the ANDA."); *SmithKline Beecham Corp. v. Geneva Pharms., Inc.*, 287 F. Supp. 2d 576, 584 (E.D. Pa. 2002) ("By its terms, the [Hatch-Waxman Act] limits liability for direct infringement to the party submitting the ANDA."); *Smithkline Beecham Corp. v. Pentech Pharms., Inc.*, No. 00-C-2855-NRN, 2001 U.S. Dist. LEXIS 1935, at *2 (N.D. Ill. February 20, 2001) (attached as Exhibit 7) ("Section 271(e)(2)(A) unambiguously refers only to persons who submit ANDAs.").

In the present case, there has been only one act of alleged patent infringement—the submission of ANDA No. 79-218.  Watson Labs Nevada is the only entity which committed that alleged act of infringement.  Watson Labs Delaware played no role in the preparation or submission of ANDA No. 79-218.  (Ebert Aff. at ¶ 7; *see also* Yee Aff. at ¶¶ 3, 23)  Consequently, the present lawsuit should be dismissed against Watson Labs Delaware pursuant to Fed. R. Civ. P. 12(b)(6).

# CONCLUSION

As set forth above, each of the claims alleged by Plaintiff is critically deficient in some way and cannot form the basis for any successful action against either Watson Labs Nevada or Watson Labs Delaware. Thus, the moving Defendants respectfully request that this Court dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

April 25, 2008

*Mary Matterer*

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
Amy Arnott Quinlan (I.D. #3021)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801-1494
Tel: (302) 888-6960
Fax: (302) 571-1750
rherrmann@morrisjames.com
mmatterer@morrisjames.com
aquinlan@morrisjames.com

*Attorneys for Defendants*

OF COUNSEL

John W. Bateman
C. Kyle Musgrove
Nicholas J. Nowak
Thomas M. Huff
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
(202) 220-4200

17

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

WYETH,

    *Plaintiff,*

    v.

WATSON LABORATORIES, INC., *and*
WATSON PHARMACEUTICALS, INC.,
    *Defendants.*

Civil Action No. 08-cv-00145-JJF

## <u>AFFIDAVIT OF CHARLES EBERT, Ph.D.</u>

1.    I am Charles Ebert, Ph.D., Senior Vice President of Research & Development at Watson Laboratories, Inc., a Delaware corporation ("Watson Labs Delaware"). I am an adult and competent to testify to the following having personal knowledge or based on my review of company records.

2.    Watson Labs Delaware is a Delaware corporation having its principal place of business in Salt Lake City, Utah. (*See* Exhibits A and B)

3.    Watson Labs Delaware is a sister corporation of Watson Laboratories, Inc., a Nevada corporation ("Watson Labs Nevada"). Watson Labs Delaware and Watson Labs Nevada are both wholly owned subsidiaries of Watson Pharmaceuticals, Inc., a Nevada corporation ("Watson Pharmaceuticals"). (*See* Exhibit C)

4.    Watson Labs Delaware is engaged in the development and manufacture of generic and branded transdermal products (*i.e.*, products that are applied to the skin such as patches, creams, etc.). *REDACTED*

*REDACTED*



6.      Watson Labs Nevada prepares and submits ANDAs related to products other than transdermals as well.

7.      Watson Labs Delaware had no involvement in the preparation or submission of ANDA No. 79-218.

8.      Watson Labs Delaware and Watson Labs Nevada are separate corporate and legal entities.  (*See* Exhibits A, D)

9.      Watson Labs Nevada does not control the day-to-day operational decisions of Watson Labs Delaware or *vice versa*.

10.     Watson Labs Delaware and Watson Labs Nevada each have their own separate by-laws and articles of incorporation.  (*See* Exhibits A, B, D and E)

11.     Watson Labs Delaware and Watson Labs Nevada enter into and perform their own contracts.

12.     As a Delaware corporation, Watson Labs Delaware has an agent for service of process.  That agent is The Corporation Trust Company in Wilmington, Delaware.  (*See* Exhibit A at ¶ C.2)

13.     It was this agent that was served with process in the present suit.  This agent is an agent for service of process for Watson Labs Delaware and not an agent for service of process for Watson Labs Nevada.

2

I certify under penalty of perjury of the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

_____
Charles Ebert, Ph.D.

**AFFIANT**

SWORN TO AND SUBSCRIBED
before me this 24ᵗʰ day of April 2008 at _Salt Lake City_

**NOTARY PUBLIC**

Notary Public
**JANNETTE GARDNER**
577 Chipeta Way
Salt Lake City, Utah 84108
My Commission Expires
April 24, 2009
State of Utah

3

**EXHIBIT A**

PAGE    1



# State of Delaware



# Office of Secretary of State

I, MICHAEL RATCHFORD, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF RESTATED CERTIFICATE OF INCORPORATION OF "THERATECH, INC." FILED IN THIS OFFICE ON THE TWENTIETH DAY OF JULY, A.D. 1992, AT 3 O'CLOCK P.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO NEW CASTLE COUNTY RECORDER OF DEEDS   FOR RECORDING.

\* \* \* \* \* \* \* \* \*



732202019

Michael Ratchford, Secretary of State

AUTHENTICATION:    *3531023

DATE:        07/24/1992

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 03:00 PM 07/20/1992
732202019 - 2293487

## RESTATED CERTIFICATE OF INCORPORATION

### OF

### THERATECH, INC.,

### a Delaware corporation

---

TheraTech, Inc., a corporation organized and existing under the laws of the State of Delaware,

DOES HEREBY CERTIFY THAT:

A.    The name of the corporation is TheraTech, Inc., and the date of filing of its original Certificate of Incorporation with the Secretary of State was April 6, 1992.

B.    This Restated Certificate of Incorporation was duly adopted in accordance with the provisions of Sections 242 and 245 of the General Corporation law of the State of Delaware by (i) the Board of Directors of the Corporation (the "Board") by unanimous written consent of the Board in accordance with Section 141(f) of the Delaware Corporation Law and (ii) the sole stockholder of the corporation by written consent of the stockholder given in accordance with Section 228 of the General Corporation Law of the State of Delaware.

1

C.    The text of the Certificate of Incorporation is hereby amended and restated to read in full as follows:

1.    The name of the Corporation is TheraTech, Inc.

2.    The address of its registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, 19801, County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.

3.    The nature of the business of the Corporation and the objects or purposes to be transacted, promoted or carried on by it are as follows:  To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.    The total number of shares of all classes of stock that the Corporation is authorized to issue is thirty million (30,000,000) shares, consisting of (i) twenty-five million (25,000,000) shares of Common Stock with a par value of one cent ($.01) per share and (ii) five million (5,000,000) shares of Preferred Stock with a par value of one cent ($.01) per share.

A.    Preferred Stock.  The Preferred Stock may be issued in one or more series, and the Board of Directors of the Corporation is expressly authorized (i) to fix the descriptions, powers, preferences, rights, qualifications, limitations, and restrictions with respect to any series of Preferred Stock and (ii) to specify the number of shares of any series of Preferred Stock.

B.    Common Stock

(1)    Classification.  The Common Stock shall consist of one class of twenty-five million (25,000,000) shares.

(2)    Dividends.  Subject to the rights of holders of Preferred Stock, such dividends (either in cash, stock or otherwise) as may be determined by the Board of Directors may be declared and paid on the Common Stock from time to time in accordance with the laws of Delaware; and the Preferred Stock shall not be entitled to participate in any such dividends, whether payable in cash, stock or otherwise, except to the extent, if any, specified in this Certificate of Incorporation or any Statement of Designations.

2

SENT BY:Morrison & Foerster   : 7-21-92 :11:20AM ;         4154248851→        3026748340:# 6

(3) <u>Voting</u>. Each record holder of Common Stock shall have one vote for each share standing in his name on the books of the Corporation and entitled to vote, subject to the provisions of any Statements of Designations theretofore filed by the Board of Directors and the other provisions of this Section. Cumulative voting shall not be allowed in the election of director or for any other purpose.

5.   The board of directors is expressly authorized to make, alter, or repeal the Bylaws of the Corporation.

6.   Elections of directors need not be by written ballot unless the Bylaws of the Corporation shall so provide.

7.   Whenever a compromise or arrangement is proposed between this Corporation and its creditors or any class of them and/or between this Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this Corporation or of any creditor or stockholder thereof, or on the application of any receiver or receivers appointed for this Corporation under the provisions of Section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under the provisions of Section 279 of Title 8 of the Delaware Code order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this Corporation, as the case may be, and also on this Corporation.

8.   The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Restated Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

3

SENT BY:Morrison & Foerster    ; 7-21-92 ;11:20AM ;        4154248851→        3026748340;# 7

9.    To the fullest extent permitted by Delaware
statutory or decisional law, as amended or interpreted, no
director of this Corporation shall be personally liable to
the Corporation or its stockholders for monetary damages for
breach of fiduciary duty as a director.  This Section 9 does
not affect the availability of equitable remedies for breach
of fiduciary duties.  Any repeal or modification of the
provisions of this Section 9 by the stockholders of the
Corporation shall not adversely affect any right or
protection of any director existing at the time of such
repeal or modification.

10.    The vote of the stockholders of the Corporation
which shall be required to approve any Business Combination
(as hereinafter defined) shall be as set forth in this
Section 10.

(1)    In addition to any affirmative vote required
by law, any other provision of this Restated Certificate
of Incorporation or otherwise, and except as otherwise
expressly provided in paragraph (2) or (6) of this
Section 10, none of the following transactions shall be
consummated unless and until such transaction shall have
been approved by the affirmative vote of the holders of
at least 66-2/3 percent of the combined voting power of
the outstanding shares of stock of all classes and
series of the Corporation entitled to vote generally in
the election of directors ("Capital Stock"):

(A)    any merger or consolidation of the
Corporation or any material Subsidiary (as
hereinafter defined) with or into (i) any
corporation which is an Interested Stockholder (as
hereafter defined) or (ii) any other corporation
which is or after such merger or consolidation
would be an Interested Stockholder; or

(B)    any sale, License (as hereinafter
defined), lease, exchange, mortgage, pledge,
transfer or other disposition (whether in one
transaction or a series of transactions) to or with
any Interested Stockholder of any material asset or
assets of the Corporation; or

(C)    the issuance or transfer by the
Corporation or any Subsidiary (whether in one
transaction or a series of transactions) to an
Interested Stockholder of any securities of the
Corporation or any Subsidiary in exchange for cash,
securities or other property (or a combination
thereof) having an aggregate Fair Market Value (as
hereinafter defined) of $10 million or more; or

4

SENT BY:Morrison & Foerster   : 7-21-92 ;11:21AM ;          4154248851→          3026748340:# 8

(D)  the adoption of any plan or proposal for the liquidation or dissolution of the Corporation or any material Subsidiary; or

(E)  any reclassification of any securities of the Corporation (including any reverse stock split), any recapitalization of the Corporation, any merger or consolidation of the Corporation with or into any of its Subsidiaries, or any other transaction (whether or not with or involving any Interested Stockholder), which has the effect, directly or indirectly, of increasing the proportionate share of the outstanding shares of any class of stock or series thereof of the Corporation or of any Subsidiary directly or indirectly Beneficially Owned (as hereinafter defined) by any Interested Stockholder or as a result of which the stockholders of the Corporation would cease to be stockholders of a corporation having, as part of its articles or certificate of incorporation, provisions to the same effect as this Section 10 and the provisions of Section 12 hereof relating to amendments or changes to this Section 10.

The term "Business Combination" as used in this Section 10 shall mean any transaction or proposed transaction which is referred to in any one or more of the foregoing subparagraphs (A) through (E) of this paragraph (1) of this Section 10.

(2)  The provisions of paragraph (1) of this Section 10 shall not be applicable to any particular Business Combination, and such Business Combination shall require only such vote, if any, as is required by law and any other Section hereof or any agreement between the Corporation and any national securities exchange or otherwise, if all of the conditions specified in either of the following paragraphs (A) or (B) are satisfied:

(A)  such Business Combination shall have been approved by a majority of the Disinterested Directors (as hereinafter defined) or, in the case of a License, approved by a majority of the Disinterested Directors or a committee of Disinterested Directors designated by the Board of Directors; or

5

(B)  if all the conditions specified in each of the following subparagraphs (i), (ii), (iii), (iv) and (v) are satisfied:

(i)  the aggregate amount of the cash and the Fair Market Value as of the date of the consummation of the Business Combination of any consideration other than cash to be received per share by holders of Capital Stock in such Business Combination, shall be at least equal to the higher of the following:

(a)  if applicable, the highest per share price (including any brokerage commissions, transfer taxes, soliciting dealers' fees and other expenses) paid by the Interested Stockholder involved in such Business Combination for any shares of Capital Stock acquired by it during the five-year period immediately prior to the consummation date of such Business Combination; and

(b)  the Fair Market Value per share of Capital Stock on the Determination Date (as hereinafter defined) in respect of such Interested Stockholder, the Announcement Date (as hereinafter defined) or the consummation date of such Business Combination, whichever is highest; provided, however, that the prices referred to in the foregoing clauses (a) and (b) of this subparagraph (i) shall be adjusted to reflect fairly any stock dividend, stock split, reverse stock split, combination of shares, recapitalization, reorganization or similar event affecting the number of shares of Capital Stock outstanding and the market price per share of outstanding shares of Capital Stock which has occurred after the date as of which such price is determined; and

(ii)  unless otherwise specifically required by law, the holders of shares of Capital Stock shall have the right, at their option, to receive payment in cash as the consideration for their shares in the Business Combination, if cash was previously paid by the Interested Stockholder involved in such Business Combination in order to acquire any shares of Capital Stock or any interest in shares of Capital Stock within the two-year period immediately prior to the Announcement Date; and

(iii)  after the Determination Date in respect of the Interested Stockholder involved in such Business Combination and prior to the consummation of such Business Combination:

6

SENT BY:Morrison & Foerster   ; 7-21-92 ;11:22AM.;          4154248851→          3026748340;#10

(a) if regular dividends have been paid by the Corporation, except as approved by a majority of the Disinterested Directors, there shall have been no failure to declare and pay at the regular date therefor any dividend (whether or not cumulative);

(b) there shall have been no reduction in the annual rate of dividends, if any, paid on the Capital Stock (except as necessary to reflect any subdivision of the Capital Stock), except as approved by a majority of the Disinterested Directors;

(c) there shall have been an increase in such annual rate of dividends as necessary to reflect any reclassification (including any reverse stock split or combination of shares), recapitalization, reorganization or any similar transaction which has the effect of reducing the number of outstanding shares of the Capital Stock, unless the failure to increase such annual rate is approved by a majority of the Disinterested Directors; and

(d) such Interested Stockholder shall not have become the beneficial owner of any additional shares of Capital Stock except as part of the transaction which results in such Interested Stockholder becoming an Interested Stockholder; and

(iv) after the Determination Date in respect of the Interested Stockholder involved in such Business Combination, such Interested Stockholder shall not have received the benefit, directly or indirectly (except as a shareholder of the Corporation, in proportion to its shareholding), of any loans, advances, guarantees, pledges or other financial assistance or any tax credits or other tax advantages provided by the Corporation, whether in anticipation of or in connection with such Business Combination or otherwise; and

(v) a proxy or information statement describing the proposed Business Combination and complying with the requirements of the Securities Exchange Act of 1934 and the rules and regulations thereunder (or any subsequent provisions replacing or revising such Act, rules or regulations) shall, at the Corporation's expense, be mailed to stockholders of the Corporation at least 30 days prior to the consummation of such Business Combination (whether or not such proxy or information statement is required to be mailed

7

pursuant to such Act, rules or regulations or subsequent provisions), and the Disinterested Directors, if there are any at the time, shall have been provided a reasonable opportunity to state their views therein with respect to such proposed Business Combination and to include therewith an opinion of an independent investment banking or appraisal firm selected by the Disinterested Directors with respect to such Business Combination.

(3)  For the purpose of this Section 10

(A)  An "Affiliate" of a person shall mean any person who, directly or indirectly, controls, is controlled by or is under common control with such person.

(B)  "Announcement Date" with respect to any Business Combination means the date on which the proposal of such Business Combination is first publicly announced.

(C)  An "Associate" shall mean

(i)  with respect to a corporation or association, any officer or director thereof or of a subsidiary thereof,

(ii)  with respect to a partnership, any general partner thereof or any limited partner thereof having a ten percent ownership interest in such partnership,

(iii)  with respect to any other trust or an estate, any officer or trustee thereof or of any subsidiary thereof,

(iv)  with respect to any other trust or an estate, any trustee, executor or similar fiduciary and any person who has a substantial interest as a beneficiary of such trust or estate,

(v)  with respect to a natural person, the spouses and children thereof and any other relative thereof or of the spouse thereof who has the same home, and

(vi)  any Affiliate of any such person.

8

(D)  A person shall be a "Beneficial Owner" of, or have "Beneficial Ownership" of or "Beneficially Own," any capital stock over which such person or any of its Affiliates or Associates, directly or indirectly, through any contract, arrangement, understanding or relationship, has or shares or, upon the exercise of any conversion right, exchange right, warrant, option or similar interest (whether or not then exercisable), would have or share either (i) voting power (including the power to vote or to direct the voting) of such security or (ii) investment power (including the power to dispose or direct the disposition) of such security.  For the purposes of determining whether a person is an Interested Stockholder, the number of shares of capital stock deemed to be outstanding shall include any shares Beneficially Owned by such Person even though not actually outstanding, but shall not include any other shares of capital stock which are not outstanding but which may be issuable to other persons pursuant to any agreement, arrangement or understanding, or upon exercise of any conversion right, exchange right, warrant, option or similar interest.

(E)  "Consolidated Transaction Reporting System" shall mean the system of reporting securities information operated under the authority of Rule 11Aa3-1 under the Securities Exchange Act of 1934, as such rule may from time to time be amended, and any successor rule or rules.

(F)  "Determination Date" in respect of an Interested Stockholder shall mean the date on which such Interested Stockholder first became an Interested Stockholder.

(G)  "Disinterested Director" shall mean any member of the Board of Directors of the Corporation who is not an Affiliate or Associate of, and was not directly or indirectly a nominee of, any Interested Stockholder involved in such Business Combination or any Affiliate or Associate of such Interested Stockholder and who (i) was a member of the Board of Directors of TheraTech, Inc., a Utah corporation, on March 1, 1992; (ii) was a member of the Board of Directors of the Corporation prior to the time that such Interested Stockholder became an Interested Stockholder or (iii) is a successor of a Disinterested Director and was nominated to succeed a Disinterested Director by a majority of the

9

Disinterested Directors on the Board of Directors
at the time of his nomination.  Any reference to
"Disinterested Directors" shall refer to a single
Disinterested Director if there be but one.  Any
reference to an approval, designation or
determination by a majority of the Disinterested
Directors shall mean such approval, designation or
determination by a committee of the Board of
Directors comprised of all Disinterested Directors
and exercising its authority as a committee of the
Board to the extent permissible by law.

     (H)  "Fair Market Value" as of any particular
date shall mean (i) in the case of stock, the
average of the closing sale price during the 90
trading days immediately preceding the date in
question of a share of such stock on the principal
United States securities exchange registered under
the Securities Exchange Act of 1934 on which such
stock is listed, or, if such stock is not listed on
any such exchange, the average of the last sale
prices at 4:00 p.m. New York time during the 90
trading days immediately preceding the date in
question reported in the Consolidated Transaction
Reporting System (as heretofore defined) or, if
such stock is not so reported, the average of the
highest reported bid and the lowest reported asked
quotations for a share of such stock furnished by
the National Association of Securities Dealers
Automated Quotation National Market System or any
successor quotation reporting system or, if
quotations are not available in such system, as
furnished by the National Quotation Bureau
Incorporated or, if quotations are not available in
such system, any similar organization furnishing
quotations and, if no such quotations are
available, the fair market value on the date in
question of a share of such stock as determined by
a majority of the Disinterested Directors in good
faith and (ii) in the case of property other than
cash or stock, the fair market value of such stock
or property, as the case may be, on the date in
question as determined by a reputable investment
banking or appraisal firm in good faith (such firm
to be engaged solely on behalf of the stockholders
other than the Interested Stockholder, to be paid a
reasonable fee for their services by the
Corporation upon receipt of such opinion and which
fee shall not be contingent on the consummation of
the action or transaction, to be a firm which has
not previously been associated with or rendered

10

substantial services to or acted as manager of an underwriting or as agent for the Interested Stockholder or any other person whose stock in the Corporation or any Subsidiary the Interested Stockholder beneficially owns or controls, and to be selected by a majority of the Disinterested Directors) and which value has been approved by a majority of the Disinterested Directors in good faith.

(I)  "Interested Stockholder" shall mean any person, other than the Corporation, any Subsidiary or any employee benefit plan of the Corporation or any Subsidiary, who or which (i) is the Beneficial Owner, directly or indirectly, of shares of Capital Stock which are entitled to cast five percent (5%) or more of the total votes which all of the then outstanding shares of Capital Stock are entitled to cast in the election of directors or is an Affiliate or Associate of any such person or (ii) acts with any other person as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of the Corporation, and such group is the Beneficial Owner, directly or indirectly, of shares of capital stock which are entitled to cast five (5%) percent or more of the total votes which all of the then outstanding shares of capital stock are entitled to cast in the election of directors, and any reference to a particular Interested Stockholder involved in a Business Combination shall also refer to any Affiliate or Associate thereof, any predecessor thereto and any other person acting as a member of a partnership, limited partnership, syndicate or group with such particular Interested Stockholder within the meaning of the foregoing clause (ii) of this subparagraph (I).

(J)  "License" shall mean a material license which is not granted in standard commercial transactions and is not generally available to commercial customers of the Corporation.

(K)  A "person" shall mean any individual, firm, corporation (which shall include a business trust), partnership, joint venture, trust or estate, association or other entity.

11



SENT BY:Morrison & Foerster   : 7-21-92 :11:25AM :       4154248851→        3026748340:#15

(L)  "Subsidiary" shall mean any corporation or partnership of which a majority of any class of its equity securities is owned, directly or indirectly, by the Corporation.

(4)  A majority of the Disinterested Directors shall have the power and duty to determine, on the basis of information known to them after reasonable inquiry, all facts necessary to determine compliance with this Section 10, including, without limitation (i) whether a person is an Interested Stockholder, (ii) the number of shares of capital stock Beneficially Owned by any person, (iii) whether a person is an Affiliate or Associate of another person, (iv) whether the requirements of paragraph (2) of this Section 10 have been met with respect to any Business Combination, and (v) whether two or more transactions constitute a "series of transactions" for purposes of paragraph (1) of this Section 10.  The good faith determination of a majority of the Disinterested Directors on such matters shall be conclusive and binding for all purposes of this Section 10.

(5)  Nothing contained in this Section 11 shall be construed to relieve any Interested Stockholder from any fiduciary obligation imposed by law.

(6)  The provisions of paragraph (1) of this Section 11 shall not be applicable to any particular Business Combination, and such Business Combination shall require only such vote of stockholders, if any, as is required by law and any other Section hereof or any agreement between the Corporation and any national securities exchange or otherwise, if on the date of determining the stockholders entitled to vote on such Business Combination, the laws of the State of Delaware do not permit the corporation to require the affirmative vote of the holders of at least 66-2/3 percent of the combined voting power of the outstanding shares of capital stock to approve such Business Combination.

11.  Any action required or permitted to be taken by the stockholders of the Corporation must be effected at a duly called annual or special meeting of stockholders of the Corporation and may not be effected by any consent in writing by the stockholders.

12.  In addition to any requirements of law and any other provisions hereof (and notwithstanding the fact that approval by a lesser vote may be permitted by law or any other provision hereof), the affirmative vote of the holders

of at least 66-2/3 percent of the voting power of the then outstanding shares of stock of all classes and all series of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, alter, repeal, or adopt any provision inconsistent with, this Section 12 or Sections 10 or 11 hereof.

IN WITNESS WHEREOF, TheraTech, Inc. has caused this Certificate to be signed and attested by its duly authorized officers this ___7th___ day of ___April___ , 1992.

THERATECH, INC., a
Delaware corporation

By: _____

Its: VICE PRESIDENT_____

Attest:

By: _____
          Secretary

*State of Delaware*

PAGE  1

## Office of the Secretary of State

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT OF "THERATECH, INC.",
CHANGING ITS NAME FROM "THERATECH, INC." TO "WATSON
LABORATORIES, INC. - UTAH", FILED IN THIS OFFICE ON THE SEVENTH
DAY OF OCTOBER, A.D. 1999, AT 4 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

2293487   8100                                    0015741

991425515                          AUTHENTICATION:

                                   DATE:        10-07-99



Oct. 7 1999  3:30PM    NCR PH# 734 1450  FAX 3027341476

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 04:00 PM 10/07/1999
991425515 – 2293487

## STATE OF DELAWARE

### CERTIFICATE OF AMENDMENT OF

### CERTIFICATE OF INCORPORATION

### OF

### THERATECH, INC.

**First:**   That at a meeting of the sole director of TheraTech, Inc., resolutions were duly adopted setting forth a proposed amendment of the Certificate of Incorporation of said corporation, declaring said amendment to be advisable and calling a meeting of the sole stockholder of said corporation for consideration thereof.

The resolution setting forth the proposed amendment as follows:

RESOLVED, that the Certificate of Incorporation be amended by changing the Article thereof numbered "one" so that, as amended, said Article shall be read as follows:

The name of the Corporation is:

**Watson Laboratories, Inc. – Utah**

**Second:**  That thereafter, pursuant to resolution of its sole director, a special meeting of the sole stockholder of said corporation was duly called and held, upon notice in accordance with Section 222 of the General Corporation Law of the State of Delaware at which meeting the necessary number of shares as required by statute were votes in favor of the amendment.

**Third:**  That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

**Fourth:**  That the capital of said corporation shall not be reduced under or by reason of said amendment.

DATED as of the 29th day of September, 1999.

THERATECH, INC.

By:    *[signature]*
Robert C. Funsten

Its:    Secretary



*State of Delaware*

## Office of the Secretary of State

PAGE   1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT OF "WATSON LABORATORIES,
INC. - UTAH", CHANGING ITS NAME FROM "WATSON LABORATORIES, INC.
- UTAH" TO "WATSON LABORATORIES, INC.", FILED IN THIS OFFICE ON
THE TWENTIETH DAY OF DECEMBER, A.D. 2000, AT 3 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

2293487  8100

001640358

AUTHENTICATION: 0870224

DATE: 12-21-00

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 03:00 PM 12/20/2000*
*001640358 - 2293487*

# CERTIFICATE OF AMENDMENT

## OF

## CERTIFICATE OF INCORPORATION

Watson Laboratories, Inc. - Utah, a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware,

**DOES HEREBY CERTIFY:**

FIRST: That the Board of Directors of said corporation by the written consent of its member, filed with the minutes of the Board, adopted a resolution proposing and declaring advisable the following amendment to the Certificate of Incorporation of said corporation:

RESOLVED, that the Certificate of Incorporation of Watson Laboratories, Inc. - Utah be amended by changing the Article thereof numbered "one" so that, as amended, said Article shall be and read as follows:

The name of the Corporation is:

Watson Laboratories, Inc.

SECOND: That in lieu of a meeting and vote of the stockholder, the stockholder has given written consent to said amendment in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

THIRD: That the aforesaid amendment was duly adopted in accordance with the applicable provisions of Sections 242 and 228 of the General Corporation Law of the State of Delaware.

DATED as of the 19th day of December, 2000.

WATSON LABORATORIES, INC. - UTAH

By: _____
Robert C. Funsten, Secretary

# Delaware

PAGE  1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT "WATSON LABORATORIES, INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE NOT HAVING BEEN CANCELLED OR DISSOLVED SO FAR AS THE RECORDS OF THIS OFFICE SHOW AND IS DULY AUTHORIZED TO TRANSACT BUSINESS.

THE FOLLOWING DOCUMENTS HAVE BEEN FILED:

CERTIFICATE OF INCORPORATION, FILED THE SIXTH DAY OF APRIL, A.D. 1992, AT 10 O'CLOCK A.M.

CERTIFICATE OF AGREEMENT OF MERGER, CHANGING ITS NAME FROM "THERATECH DELAWARE, INCORPORATED" TO "THERATECH, INC.", FILED THE FOURTEENTH DAY OF APRIL, A.D. 1992, AT 3:10 O'CLOCK P.M.

RESTATED CERTIFICATE, FILED THE TWENTIETH DAY OF JULY, A.D. 1992, AT 3 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, FILED THE TWENTY-EIGHTH DAY OF JUNE, A.D. 1996, AT 2:30 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE FIFTEENTH DAY OF JANUARY, A.D. 1999, AT 5:45 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "THERATECH, INC." TO "WATSON LABORATORIES, INC. - UTAH", FILED THE SEVENTH

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION:  6537402

DATE:  04-21-08

2293487  8310

080455045

You may verify this certificate online
at corp.delaware.gov/authver.shtml

# Delaware

PAGE  2

### The First State

DAY OF OCTOBER, A.D. 1999, AT 4 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "WATSON LABORATORIES, INC. - UTAH" TO "WATSON LABORATORIES, INC.", FILED THE TWENTIETH DAY OF DECEMBER, A.D. 2000, AT 3 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID CORPORATION, "WATSON LABORATORIES, INC.".

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6537402

DATE: 04-21-08

2293487  8310

080455045

You may verify this certificate online
at corp.delaware.gov/authver.shtml

**EXHIBIT B**

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

**EXHIBIT C**

# EXHIBIT REDACTED IN ITS ENTIRETY

**EXHIBIT D**



*DEAN HELLER*
Secretary of State

*RENEE L. PARKER*
Chief Deputy
Secretary of State

*PAMELA RUCKEL*
Deputy Secretary
for Southern Nevada

**STATE OF NEVADA**



OFFICE OF THE
**SECRETARY OF STATE**

*CHARLES E. MOORE*
Securities Administrator

*SCOTT W. ANDERSON*
Deputy Secretary
for Commercial Recordings

*ELLICK HSU*
Deputy Secretary
for Elections

## Certified Copy

March 15, 2006

**Job Number:**          C20060309-1078
**Reference Number:**  00000682867-17
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| **Document Number(s)** | **Description** | **Number of Pages** |
|---|---|---|
| C1563-1992-001 | Articles of Incorporation | 6 Pages/1 Copies |
| C1563-1992-003 | Articles of Merger | 2 Pages/1 Copies |
| C1563-1992-004 | Articles of Merger | 5 Pages/1 Copies |

Respectfully,

*Dean Heller*

DEAN HELLER
Secretary of State

By _____
Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

FEB 2 0 1992

CHERYL A. LAU  SECRETARY OF STATE

1563-92

RECEIPT #C  36899
C T CORPORATION SYSTEM / RENO
C T CORPORATION SYSTEM - VI MILLER
ONE EAST FIRST STREET #1600
RENO, NEVADA 89501

## ARTICLES OF INCORPORATION

### OF

### WATSON LABORATORIES, INC.

**FIRST.**  The name of the corporation is WATSON LABORATORIES, INC.

**SECOND.**  The purposes of the corporation are to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

**THIRD.**  The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

**FOURTH.**  The corporation is authorized to issue a total of 1,000 shares of stock, all of which shall be classified as common stock, $.01 par value per share.  The holders of the stock shall not be entitled to exercise cumulative voting or preemptive rights.

**FIFTH.**  The governing board of this corporation shall be known as directors, and the number of directors may from time to time be increased or decreased in such manner as shall be provided by the by-laws of this corporation.

The names and post office addresses of the first board of directors, which shall be three (3) in number, are as follows:

| NAME | ADDRESS |
| --- | --- |
| Allen Y. Chao | 132A Business Center Drive Corona, CA 91720 |
| David C. Hsia | 132A Business Center Drive Corona, CA 91720 |
| Alec D. Keith | 100 North Science Park Road State College, PA 16803 |

SIXTH.    The capital stock, after the amount of the subscription price or par value has been paid in, shall not be subject to assessment to pay the debts of the corporation.

SEVENTH.  The name and post office address of the incorporator signing the articles of incorporation are as follows:

| NAME | ADDRESS |
|------|---------|
| Steven M. Prebish | 30 North LaSalle Street<br>Suite 2900<br>Chicago, Illinois 60602 |

EIGHTH.    The corporation is to have perpetual existence.

NINTH.    The corporation reserves the right to amend, alter, change or repeal any provision contained in the articles of incorporation, in the manner now or hereafter prescribed by statute, or by the articles of incorporation, and all rights conferred upon stockholders herein are granted subject to this reservation.

TENTH.    No director or officer of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation Law.

Any repeal or modification of this Article by the stockholders of the corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

ELEVENTH  1.  To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any

2

threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the corporation, by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, has no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

2.  To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or

3

settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the corporation or for amounts paid in settlement to the corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3.  To the extent that a director, officer, employee  or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article Eleventh, or in defense of any claim, issue or matter therein, he must be indemnified by the corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4.  Any indemnification under subsections 1 and 2 of Article Eleventh, unless ordered by a court or advanced pursuant to subsection 5 of Article Eleventh, may be made by the corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the corporation; (b) the board of directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so

4

orders; and (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

     5.  The corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the corporation. The provisions of this subsection do not affect any rights to advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

     6.  The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article Eleventh (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer

5

(or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

THE UNDERSIGNED, being the sole incorporator hereinbefore named, for the purpose of forming a corporation pursuant to the General Corporation Law of the State of Nevada, does make and file these articles of incorporation, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto sets his hand this 17th day of February, 1992.

Steven M. Prebish

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

On this 17th day of February, 1992, before me, a Notary Public, personally appeared Steven M. Prebish, who acknowledged that he executed the above instrument.

NOTARY PUBLIC

"OFFICIAL SEAL"
Suzette Sabenov
Notary Public, State of Illinois
Commission Expires 11/7/94

CERTIFICATE OF ACCEPTANCE OF APPOINTMENT

BY RESIDENT AGENT

The Corporation Trust Company of Nevada hereby accepts the appointment as Resident Agent of the above named corporation.

The Corporation Trust Company of Nevada

Resident Agent

By _____    Date 2-19-92
   (Assistant Secretary)
   Reuben S. Barba

RECEIVED

FEB 20 1992

Secretary of State

6

C 1626
E 087497

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUN 28 1995
1563 -92
DEAN HELLER SECRETARY OF STATE

No. _____

**ARTICLES OF MERGER**
**OF**
**ZETACHRON, INCORPORATED**
**INTO**
**WATSON LABORATORIES, INC.**

**FIRST:**    The name of the surviving corporation is **WATSON LABORATORIES, INC.** and the place of its incorporation is the State of Nevada.  The name and place of incorporation of the corporation being merged into the surviving corporation is **ZETACHRON, INCORPORATED**, incorporated in the State of Pennsylvania.

**SECOND:**    An Agreement and Plan of Merger was adopted by the board of directors of each corporation that is a party of this merger.

**THIRD:**    The Agreement and Plan of Merger was entitled to be and was approved by the board of directors of **WATSON LABORATORIES, INC.**, without the approval of the stockholders thereof being required.

**FOURTH:**    The designation, number of outstanding shares, number of votes entitled to be cast and the total number of votes cast for and against the Agreement and Plan of Merger, by the stockholders of **ZETACHRON, INCORPORATED** is as follows:

| Designation | Outstanding Shares | Votes Entitled to be cast | Votes For | Votes Against |
|---|---|---|---|---|
| Common | 1,000 | 1,000 | 1,000 | None |

**FIFTH:**    The number of votes cast for the Agreement and Plan of Merger by the stockholders of **ZETACHRON, INCORPORATED** was sufficient for approval thereof by the stockholders of the corporation.

**SIXTH:**     The complete executed plan of merger is on file at the place of business of **WATSON LABORATORIES, INC.** located at 311 Bonnie Circle, Corona, CA 91720, and a copy of the plan will be furnished by **WATSON LABORATORIES, INC.,** on request and without cost to any stockholder of any corporation which is a party to this merger.

**SEVENTH:**   All corporations party to this merger have complied with laws of their respective jurisdiction of incorporation concerning this merger.

**EIGHTH:**    This merger shall be effective on June 30, 1995.

**WATSON LABORATORIES, INC.**

By: _____
Allen Chao, President

By: _____
Michel J. Feldman,
Assistant Secretary

State of **CALIFORNIA** )
                        ) ss.
County of Riverside )

On June 21, 1995, personally appeared before me, a Notary Public   MICHEL J. FELDMAN an ALLEN CHAO who acknowledged that they executed the above instrument.

Wendy K. Wright
Comm #1029698
NOTARY PUBLIC  CALIFORNIA
RIVERSIDE COUNTY
Comm Expires June 12, 1998

_____
Notary Public
Wendy K. Wright

JUN 28 1995
150 m

2

*INV.*
*(#1625-)*

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**MAY 1 9 1999**

No. _C15635-92_
_Dean Heller_
DEAN HELLER, SECRETARY OF STATE

ARTICLES OF MERGER

OF

**OCLASSEN PHARMACEUTICALS, INC.**

(a Delaware corporation)

WITH AND INTO

**WATSON LABORATORIES, INC.**

(a Nevada corporation)

This Agreement of Merger is entered into as of May 10, 1999 by and between Oclassen Pharmaceuticals, Inc., a Delaware corporation (the "Merging Corporation") and Watson Laboratories, Inc., a Nevada corporation (the "Surviving Corporation"). The Merging Corporation and the Surviving Corporation are hereinafter sometimes collectively referred to as the "Constituent Corporations."

## R E C I T A L S

A.    The Merging Corporation was incorporated on March 12, 1992. Its authorized capital stock consists of One Thousand (1,000) shares of common stock, $0.01 par value per share, of which 1,000 shares are issued and outstanding (the "Merging Corporation Stock"),

B.    The Surviving Corporation was incorporated on February 20, 1992. Its current authorized capital stock consists of One Thousand (1,000) shares of common stock, $10.00 par value per share, of which 1,000 shares are issued and outstanding (the "Surviving Corporation Stock")

C.    The respective Boards of Directors of Surviving Corporation and Merging Corporation deem it advisable and to the advantage of each of the Constituent Corporations that Merging Corporation merge with and into Surviving Corporation upon the terms and subject to the conditions set forth in this Agreement of Merger.

D.    The sole director of each of the Constituent Corporations and the sole shareholder of each Constituent Corporation have approved this Agreement of Merger.

E.    All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

**NOW, THEREFORE,** the parties do hereby adopt this Agreement of Merger and do hereby agree that Merging Corporation shall merge with and into Surviving Corporation on the following terms, conditions and other provisions:

354327-1

# ARTICLE I

## THE MERGER

1.    <u>The Merger</u>. Upon the terms and subject to the conditions of this Agreement of Merger, at the Effective Time (as herein defined), Merging Corporation shall be merged with and into Surviving Corporation in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement (the "<u>Merger</u>"), whereupon the separate corporate existence of Merging Corporation shall cease and Surviving Corporation shall be the surviving corporation of the Merger.

2.    <u>Effective Time</u>. Merging Corporation and Surviving Corporation shall cause this Agreement of Merger together with officers' certificates attached to be properly executed and filed in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement. Merging Corporation and Surviving Corporation shall also take such further actions as may be required under the laws of the States of Delaware and Nevada in connection with the consummation of the Merger. The Merger shall become effective on May 12, 1999 at 12:01 A.M. Pacific Time (the "<u>Effective Time</u>").

3.    <u>Articles of Incorporation and By-Laws</u>.

(a)    The Articles of Incorporation of the Surviving Corporation at the Effective Time of the Merger shall continue to be the Articles of Incorporation of the Surviving Corporation until changed as provided by law.

(b)    The By-Laws of the Surviving Corporation at the Effective Time of the Merger shall continue to be the By-Laws of the Surviving Corporation until altered or amended in accordance with the provisions thereof.

4.    <u>Directors and Officers</u>. The directors and officers of the Surviving Corporation at the Effective Time of the Merger shall continue to be the directors and officers, respectively, of the Surviving Corporation until their successors are chosen.

5.    <u>Terms of Merger</u>.

(a)    From and after the effective time of the Merger, the Surviving Corporation shall possess all the rights, privileges, immunities, and franchises of a public, as well as of a private nature, of each of the Constituent Corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares and all other choses in action, and all and every other interest, of or belonging to or due to each of the Constituent Corporations, shall be taken and deemed to be transferred to and vested in the Surviving Corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of the Constituent Corporations shall not revert or be in any way impaired by reason of the Merger, provided, however, that the Surviving Corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the Constituent Corporations, and any claim existing or action or preceding pending by or against either of the

354327-1

Constituent Corporations may be prosecuted to judgment as if the Merger had not taken place, or the Surviving Corporation may be substituted in its place, and neither the rights of creditors nor any liens upon the property of either of the Constituent Corporations shall be impaired by the Merger.

(b)     Upon the Merger becoming effective, all shares of the Merging Corporation outstanding immediately prior to the Merger shall be canceled and retired, and no new shares of the Surviving Corporation shall be issued. The outstanding shares of the Surviving Corporation shall remain outstanding.

(c)     The Surviving Corporation shall pay all expenses of carrying the Plan into effect and accomplishing the Merger provided for herein.

(d)     The proper officers and directors of the Constituent Corporations shall execute and deliver all such documents and take all such actions as may be necessary or advisable, or as may be requested by the Surviving Corporation from time to time, in order to vest fully all the property rights of the Constituent Corporations in the Surviving Corporation and otherwise carry out this Plan.

(e)     Anything herein or elsewhere to the contrary notwithstanding, the Plan and this Merger may be abandoned by the mutual consent of the Constituent Corporations, evidenced by appropriate resolutions of their respective Board of Directors, at any time prior to the effective date of the Merger.

## ARTICLE II - MISCELLANEOUS

1.     _Counterparts_.  This Agreement of Merger may be signed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.

2.     _Amendments_.  This Agreement of Merger may be amended by the parties hereto at any time before or after approval of the Merger and the Plan of Merger by the Surviving Corporation Shareholders but, after any such approval, no amendment shall be made which by law requires further approval by such shareholders unless such shareholder consent is acquired. This Agreement of Merger may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

3,     _Governing Law_.  This agreement shall be governed by and construed under the internal laws of the State of Delaware as applied to agreements among Delaware residents entered into and to be performed entirely within Delaware, without reference to the principles of conflicts of law or choice of laws, except to the extent that the laws of the State of Nevada would apply in matters relating to the internal affairs of the Surviving Corporation and the Merger.

354327-1

**IN WITNESS WHEREOF**, this Merger Agreement is hereby executed on behalf of each of the Constituent Corporations by their respective officers thereunto duly authorized.

OCLASSEN PHARMACEUTICALS, INC.

By: _____
   Allen Chao
Its:  Chairman

AND

By: _____
   Robert C. Funsten
Its:  Secretary


WATSON LABORATORIES, INC.

By: _____
   Allen Chao
Its:  President

AND

By: _____
   Robert C. Funsten
Its:  Secretary


354327-1

STATE OF ILLINOIS )
                  )ss:
COUNTY OF COOK )

On May 14, 1999, personally appeared before me, a Notary Public in and for the State and County aforesaid, Allen Chao, President and Robert C. Funsten, Secretary of Watson Laboratories, Inc., personally known to me to be the persons whose names are subscribed to the above instrument in the said capacity, who acknowledged that they executed the said instrument.


_Sela L. Brown_
Notary Public

```
*OFFICIAL  SEAL*
SELA L. BROWN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2001
```

356919-1

**EXHIBIT E**

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT  2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WYETH,

     *Plaintiff,*

    v.

WATSON LABORATORIES, INC., *and*
WATSON PHARMACEUTICALS, INC.,
    *Defendants.*

Civil Action No. 08-cv-00145-JJF

## AFFIDAVIT OF MARIA CHOW YEE

    1.    I am Maria Chow Yee, Senior VP, Materials & Technology Services at Watson Laboratories, Inc., a Nevada corporation ("Watson Labs Nevada"). I am an adult and competent to testify to the following having personal knowledge or based on my review of company records.

    2.    Watson Labs Nevada is a Nevada corporation having its principal place of business at 311 Bonnie Circle, Corona, California 92880. (*See* Exhibits A and B)

    3.    Watson Labs Nevada prepared and submitted Abbreviated New Drug Application ("ANDA") No. 79-218 with the Food and Drug Administration. It is my understanding that it is this ANDA which is at issue in the present suit. (*See* Exhibits C, D and E)

    4.    The preparation of this ANDA took place at Watson Labs Nevada's facilities in Corona, California. No part of the preparation or submission of the ANDA took place in Delaware.

    5.    Watson Labs Nevada's primary functions are to file ANDAs and manufacture pharmaceutical products. Watson Labs Nevada, however, does not sell or market any products directly to consumers. REDACTED

Watson Pharma, Inc. ("Watson Pharma"), a Delaware corporation having its principal place of business in Morristown, New Jersey. (*See* Exhibit F)



REDACTED

8.    REDACTED

REDACTED Watson Labs does not directly derive any money from sales that occur in Delaware. Furthermore, it is the understanding of Watson Labs Nevada that Watson Pharma does not derive substantial revenue from sales of products in the state of Delaware.

9.    In this particular instance, ANDA 79-218 has not been approved. As such, there have been no sales of any of the products under the ANDA to any entity, including to Watson Pharma.

10.    Watson Laboratories Nevada does not maintain any facilities in Delaware. All Watson Labs Nevada facilities are located in California.

11.    Watson Labs Nevada is only licensed or registered to do business in California and Illinois. Watson Labs Nevada is not licensed or registered to do business in Delaware. (*See* Exhibits G, H.)

12.    Furthermore, as indicated earlier, Watson Labs Nevada does not transact or solicit any business nor engage in any persistent course of conduct in Delaware.

2

13.     Watson Labs Nevada has no plants, offices, property, bank accounts, telephone listings, post office box, employees or agents in Delaware.

14.     Watson Labs Nevada has not appointed an agent for service of process in Delaware.

15.     Watson Labs Nevada does not direct any advertising or marketing to the state of Delaware or its residents.

16.     As stated earlier, Watson Labs Nevada does not sell or perform any services nor does it make or sell any products in Delaware.

17.     Watson Labs Nevada is solvent and adequately capitalized.

18.     Watson Labs Nevada, however, is not the only Watson entity with the title Watson Laboratories, Inc.  Of most relevance to the present suit, Watson Labs Nevada has a sister corporation also entitled Watson Laboratories, Inc.; that sister company is a Delaware corporation ("Watson Labs Delaware").  (Exhibit 1)

19.     Watson Labs Nevada and Watson Labs Delaware are both wholly owned subsidiaries of Watson Pharmaceuticals, Inc., a Nevada corporation ("Watson Pharmaceuticals"). *Id.*

20.     To my understanding, Watson Labs Delaware is engaged in the development and manufacture of transdermal products (*i.e.*, products for skin application such as patches, creams, etc.) and has a principal place of business in Salt Lake City, Utah.



3



22.    ANDA 79-218, the ANDA in issue in this litigation, is not for a transdermal product. As such, Watson Labs Delaware has had no involvement with this ANDA.

23.    No other Watson entity other than Watson Labs Nevada had involvement in the preparation or submission of ANDA No. 79-218.

24.    Watson Labs Nevada and Watson Labs Delaware are separate corporate and legal entities. (*See* Exhibits A, J)

25.    As discussed above, Watson Labs Delaware does not control the day-to-day operational decisions of Watson Labs Nevada or *vice versa*.



27.    Watson Labs Nevada and Watson Labs Delaware each have their own separate by-laws and articles of incorporation. (*See* Exhibits A, B, J, L)

28.    Watson Labs Nevada and Watson Labs Delaware enter into and perform their own contracts.

29.    It is my understanding that Watson Labs Delaware does have an agent for service of process in Delaware. It is this agent that was served. This agent is not an agent for service of process on behalf of Watson Labs Nevada.

4

30.    Watson Labs Nevada and Watson Pharmaceuticals are separate corporate and legal entities. (*See* Exhibits A, M)

31.    While Watson Pharmaceuticals wholly owns Watson Labs Nevada, Watson Pharmaceuticals does not control the day-to-day operational decisions of Watson Labs Nevada.



33.    Watson Labs Nevada and Watson Pharmaceuticals each have their own separate by-laws and articles of incorporation. (*See* Exhibits A, B, M and N)

34.    Watson Labs Nevada and Watson Pharmaceuticals enter into and perform their own contracts.

35.    Watson Labs Nevada does have a wholly owned subsidiary, Watson Laboratories LLC, which was formed in Delaware as a Limited Liability Company. *REDACTED*
*REDACTED*

36.    Watson Laboratories LLC did not have any involvement with the ANDA in suit, and its formation has nothing to do with anything relating to the present suit. *REDACTED*



5

I certify under penalty of perjury of the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

*Maria Chow Yee*

Maria Chow Yee

**AFFIANT**

State of California        }
County of Riverside      }

On _April 25, 2008_ before me, _Debbra L. Budilo, Notary Public_
     Date                      Insert Notary Public Name

Personally appeared _Maria Chow Yee_
                        Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Debbra L Budilo*

Signature of Notary Public

DEBBRA L. BUDILO
Commission # 1546961
Notary Public - California
Riverside County
My Comm. Expires Feb 3, 2009

6

# **EXHIBIT A**



**DEAN HELLER**
*Secretary of State*

**RENEE L. PARKER**
*Chief Deputy*
*Secretary of State*

**PAMELA RUCKEL**
*Deputy Secretary*
*for Southern Nevada*

**STATE OF NEVADA**



**OFFICE OF THE**
**SECRETARY OF STATE**

**CHARLES E. MOORE**
*Securities Administrator*

**SCOTT W. ANDERSON**
*Deputy Secretary*
*for Commercial Recordings*

**ELLICK HSU**
*Deputy Secretary*
*for Elections*

## Certified Copy

March 15, 2006

**Job Number:**        C20060309-1078
**Reference Number:**  00000682867-17
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number(s) | Description | Number of Pages |
|---|---|---|
| C1563-1992-001 | Articles of Incorporation | 6 Pages/1 Copies |
| C1563-1992-003 | Articles of Merger | 2 Pages/1 Copies |
| C1563-1992-004 | Articles of Merger | 5 Pages/1 Copies |

Respectfully,

*Dean Heller*

DEAN HELLER
Secretary of State

By        *[signature]*

Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

FEB 2 0 1992

CHERYL A. LAU  SECRETARY OF STATE

1563-92

RECEIPT #C  36899
C T CORPORATION SYSTEM / RENO
C T CORPORATION SYSTEM - VI MILLER
ONE EAST FIRST STREET #1600
RENO, NEVADA 89501

## ARTICLES OF INCORPORATION

### OF

### WATSON LABORATORIES, INC.

**FIRST.**  The name of the corporation is WATSON LABORATORIES, INC.

**SECOND.**  The purposes of the corporation are to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

**THIRD.**  The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

**FOURTH.**  The corporation is authorized to issue a total of 1,000 shares of stock, all of which shall be classified as common stock, $.01 par value per share. The holders of the stock shall not be entitled to exercise cumulative voting or preemptive rights.

**FIFTH.**  The governing board of this corporation shall be known as directors, and the number of directors may from time to time be increased or decreased in such manner as shall be provided by the by-laws of this corporation.

The names and post office addresses of the first board of directors, which shall be three (3) in number, are as follows:

| NAME | ADDRESS |
|------|---------|
| Allen Y. Chao | 132A Business Center Drive Corona, CA 91720 |
| David C. Hsia | 132A Business Center Drive Corona, CA 91720 |
| Alec D. Keith | 100 North Science Park Road State College, PA 16803 |

SIXTH.    The capital stock, after the amount of the subscription price or par value has been paid in, shall not be subject to assessment to pay the debts of the corporation.

SEVENTH.  The name and post office address of the incorporator signing the articles of incorporation are as follows:

NAME                                    ADDRESS

Steven M. Prebish                       30 North LaSalle Street
                                        Suite 2900
                                        Chicago, Illinois 60602

EIGHTH.    The corporation is to have perpetual existence.

NINTH.    The corporation reserves the right to amend, alter, change or repeal any provision contained in the articles of incorporation, in the manner now or hereafter prescribed by statute, or by the articles of incorporation, and all rights conferred upon stockholders herein are granted subject to this reservation.

TENTH.    No director or officer of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation Law.

Any repeal or modification of this Article by the stockholders of the corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

ELEVENTH  1.  To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any

2

threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the corporation, by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, has no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

　　　　2. To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or

3

settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the corporation or for amounts paid in settlement to the corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3. To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article Eleventh, or in defense of any claim, issue or matter therein, he must be indemnified by the corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4. Any indemnification under subsections 1 and 2 of Article Eleventh, unless ordered by a court or advanced pursuant to subsection 5 of Article Eleventh, may be made by the corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the corporation; (b) the board of directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so

4

orders; and (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

5. The corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the corporation. The provisions of this subsection do not affect any rights to advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

6. The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article Eleventh (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer

5

(or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

THE UNDERSIGNED, being the sole incorporator hereinbefore named, for the purpose of forming a corporation pursuant to the General Corporation Law of the State of Nevada, does make and file these articles of incorporation, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto sets his hand this 17th day of February, 1992.

Steven M. Prebish

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

On this 17th day of February, 1992, before me, a Notary Public, personally appeared Steven M. Prebish, who acknowledged that he executed the above instrument.

NOTARY PUBLIC

"OFFICIAL SEAL"
Suzette Sabanor
Notary Public, State of Illinois
Commission Expires 11/7/94

CERTIFICATE OF ACCEPTANCE OF APPOINTMENT

BY RESIDENT AGENT

The Corporation Trust Company of Nevada hereby accepts the appointment as Resident Agent of the above named corporation.

The Corporation Trust Company of Nevada

Resident Agent

By _____    Date 2-19-92
    (Assistant Secretary)
    Reuben S. Barba

RECEIVED

FEB 20 1992

Secretary of State

6

C 1626
E 087497

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUN 28 1995
1563 -92

DEAN HELLER SECRETARY OF STATE

No. _____

**ARTICLES OF MERGER**
**OF**
**ZETACHRON, INCORPORATED**
**INTO**
**WATSON LABORATORIES, INC.**

**FIRST:** The name of the surviving corporation is **WATSON LABORATORIES, INC.** and the place of its incorporation is the State of Nevada. The name and place of incorporation of the corporation being merged into the surviving corporation is **ZETACHRON, INCORPORATED**, incorporated in the State of Pennsylvania.

**SECOND:** An Agreement and Plan of Merger was adopted by the board of directors of each corporation that is a party of this merger.

**THIRD:** The Agreement and Plan of Merger was entitled to be and was approved by the board of directors of **WATSON LABORATORIES, INC.**, without the approval of the stockholders thereof being required.

**FOURTH:** The designation, number of outstanding shares, number of votes entitled to be cast and the total number of votes cast for and against the Agreement and Plan of Merger, by the stockholders of **ZETACHRON, INCORPORATED** is as follows:

| Designation | Outstanding Shares | Votes Entitled to be cast | Votes For | Votes Against |
|---|---|---|---|---|
| Common | 1,000 | 1,000 | 1,000 | None |

**FIFTH:** The number of votes cast for the Agreement and Plan of Merger by the stockholders of **ZETACHRON, INCORPORATED** was sufficient for approval thereof by the stockholders of the corporation.

**SIXTH:**    The complete executed plan of merger is on file at the place of business of **WATSON LABORATORIES, INC.** located at 311 Bonnie Circle, Corona, CA 91720, and a copy of the plan will be furnished by **WATSON LABORATORIES, INC.**, on request and without cost to any stockholder of any corporation which is a party to this merger.

**SEVENTH:**   All corporations party to this merger have complied with laws of their respective jurisdiction of incorporation concerning this merger.

**EIGHTH:**    This merger shall be effective on June 30, 1995.

**WATSON LABORATORIES, INC.**

By: _____
       Allen Chao, President

By: _____
       Michel J. Feldman,
       Assistant Secretary

State of **CALIFORNIA**  )
                         ) ss.
County of Riverside )

On June 21, 1995, personally appeared before me, a Notary Public  MICHEL J. FELDMAN an

**ALLEN CHAO** who acknowledged that they executed the above instrument.

Wendy K. Wright
Comm. #1029696
NOTARY PUBLIC  CALIFORNIA
RIVERSIDE COUNTY
Comm Expires June 12, 1998

_____
Notary Public
Wendy K. Wright

JUN 28 1995
150m

2

*INV.*
*($ 125.-)*

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**MAY 1 9 1999**

No. *C1563-92*

*Dean Heller*
DEAN HELLER, SECRETARY OF STATE

ARTICLES OF MERGER

OF

**OCLASSEN PHARMACEUTICALS, INC.**

(a Delaware corporation)

WITH AND INTO

**WATSON LABORATORIES, INC.**

(a Nevada corporation)

This Agreement of Merger is entered into as of May 10, 1999 by and between Oclassen Pharmaceuticals, Inc., a Delaware corporation (the "Merging Corporation") and Watson Laboratories, Inc., a Nevada corporation (the "Surviving Corporation"). The Merging Corporation and the Surviving Corporation are hereinafter sometimes collectively referred to as the "Constituent Corporations."

## R E C I T A L S

A.    The Merging Corporation was incorporated on March 12, 1992. Its authorized capital stock consists of One Thousand (1,000) shares of common stock, $0.01 par value per share, of which 1,000 shares are issued and outstanding (the "Merging Corporation Stock"),

B.    The Surviving Corporation was incorporated on February 20, 1992. Its current authorized capital stock consists of One Thousand (1,000) shares of common stock, $10.00 par value per share, of which 1,000 shares are issued and outstanding (the "Surviving Corporation Stock")

C.    The respective Boards of Directors of Surviving Corporation and Merging Corporation deem it advisable and to the advantage of each of the Constituent Corporations that Merging Corporation merge with and into Surviving Corporation upon the terms and subject to the conditions set forth in this Agreement of Merger.

D.    The sole director of each of the Constituent Corporations and the sole shareholder of each Constituent Corporation have approved this Agreement of Merger.

E.    All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

**NOW, THEREFORE,** the parties do hereby adopt this Agreement of Merger and do hereby agree that Merging Corporation shall merge with and into Surviving Corporation on the following terms, conditions and other provisions:

354327-1

# ARTICLE I

## THE MERGER

1.     <u>The Merger</u>.  Upon the terms and subject to the conditions of this Agreement of Merger, at the Effective Time (as herein defined), Merging Corporation shall be merged with and into Surviving Corporation in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement (the "<u>Merger</u>"), whereupon the separate corporate existence of Merging Corporation shall cease and Surviving Corporation shall be the surviving corporation of the Merger.

2.     <u>Effective Time</u>.  Merging Corporation and Surviving Corporation shall cause this Agreement of Merger together with officers' certificates attached to be properly executed and filed in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement.  Merging Corporation and Surviving Corporation shall also take such further actions as may be required under the laws of the States of Delaware and Nevada in connection with the consummation of the Merger.  The Merger shall become effective on May 12, 1999 at 12:01 A.M. Pacific Time (the "<u>Effective Time</u>").

3.     <u>Articles of Incorporation and By-Laws</u>.

(a)     The Articles of Incorporation of the Surviving Corporation at the Effective Time of the Merger shall continue to be the Articles of Incorporation of the Surviving Corporation until changed as provided by law.

(b)     The By-Laws of the Surviving Corporation at the Effective Time of the Merger shall continue to be the By-Laws of the Surviving Corporation until altered or amended in accordance with the provisions thereof.

4.     <u>Directors and Officers</u>.  The directors and officers of the Surviving Corporation at the Effective Time of the Merger shall continue to be the directors and officers, respectively, of the Surviving Corporation until their successors are chosen.

5.     <u>Terms of Merger</u>.

(a)     From and after the effective time of the Merger, the Surviving Corporation shall possess all the rights, privileges, immunities, and franchises of a public, as well as of a private nature, of each of the Constituent Corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares and all other choses in action, and all and every other interest, of or belonging to or due to each of the Constituent Corporations, shall be taken and deemed to be transferred to and vested in the Surviving Corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of the Constituent Corporations shall not revert or be in any way impaired by reason of the Merger, provided, however, that the Surviving Corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the Constituent Corporations, and any claim existing or action or preceding pending by or against either of the

354327-1

Constituent Corporations may be prosecuted to judgment as if the Merger had not taken place, or the Surviving Corporation may be substituted in its place, and neither the rights of creditors nor any liens upon the property of either of the Constituent Corporations shall be impaired by the Merger.

(b)    Upon the Merger becoming effective, all shares of the Merging Corporation outstanding immediately prior to the Merger shall be canceled and retired, and no new shares of the Surviving Corporation shall be issued.  The outstanding shares of the Surviving Corporation shall remain outstanding.

(c)    The Surviving Corporation shall pay all expenses of carrying the Plan into effect and accomplishing the Merger provided for herein.

(d)    The proper officers and directors of the Constituent Corporations shall execute and deliver all such documents and take all such actions as may be necessary or advisable, or as may be requested by the Surviving Corporation from time to time, in order to vest fully all the property rights of the Constituent Corporations in the Surviving Corporation and otherwise carry out this Plan.

(e)    Anything herein or elsewhere to the contrary notwithstanding, the Plan and this Merger may be abandoned by the mutual consent of the Constituent Corporations, evidenced by appropriate resolutions of their respective Board of Directors, at any time prior to the effective date of the Merger.

## ARTICLE II - MISCELLANEOUS

1.    Counterparts.  This Agreement of Merger may be signed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.

2.    Amendments.  This Agreement of Merger may be amended by the parties hereto at any time before or after approval of the Merger and the Plan of Merger by the Surviving Corporation Shareholders but, after any such approval, no amendment shall be made which by law requires further approval by such shareholders unless such shareholder consent is acquired. This Agreement of Merger may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

3,    Governing Law.  This agreement shall be governed by and construed under the internal laws of the State of Delaware as applied to agreements among Delaware residents entered into and to be performed entirely within Delaware, without reference to the principles of conflicts of law or choice of laws, except to the extent that the laws of the State of Nevada would apply in matters relating to the internal affairs of the Surviving Corporation and the Merger.

354327-1

**IN WITNESS WHEREOF,** this Merger Agreement is hereby executed on behalf of each of the Constituent Corporations by their respective officers thereunto duly authorized.

OCLASSEN PHARMACEUTICALS, INC.

By: _____

Allen Chao

AND                      Its:    Chairman

By: _____

Robert C. Funsten

Its:    Secretary


WATSON LABORATORIES, INC.

By: _____

Allen Chao

AND                      Its:    President


By: _____

Robert C. Funsten

Its:    Secretary


354327-1

STATE OF ILLINOIS )
                  )ss:
COUNTY OF COOK )

On May 14, 1999, personally appeared before me, a Notary Public in and for the
State and County aforesaid, Allen Chao, President and Robert C. Funston, Secretary of
Watson Laboratories, Inc., personally known to me to be the persons whose names are
subscribed to the above instrument in the said capacity, who acknowledged that they
executed the said instrument.

_____
Notary Public

```
"OFFICIAL SEAL"
SELA L. BROWN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2001
```

356919-1

# **EXHIBIT B**

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

**<u>EXHIBIT C</u>**



**CONFIDENTIAL**

January 28, 2008

**Via Certified Mail, Return Receipt Requested**

| | |
|---|---|
| Chief Executive Officer | Chief Executive Officer |
| Wyeth Pharmaceuticals | Wyeth Pharmaceuticals |
| 500 Arcola Road | 5 Giralda Farms |
| Collegeville, PA 19426 | Madison, New Jersey 07940 |

Re:   **Notification of Certification of Invalidity, Unenforceability and/or Non-infringement for U.S. Patent No. 6,500,814 Pursuant to Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act**

Dear Madam or Sir:

Pursuant to Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95, we hereby provide notice of the following information to Wyeth Pharmaceuticals (hereinafter, "Wyeth"), as both holder of approved New Drug Application ("NDA") No. 21-864 for Lybrel® (levonorgestrel and ethinyl estradiol tablets, 0.09 mg/0.02 mg) tablets, according to the records of the U.S. Food and Drug Administration ("FDA") and owner of U.S. Patent No. 6,500,814 ("the '814 patent"), according to the records of the U.S. Patent and Trademark Office ("PTO").

I.   Pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(I) and 21 C.F.R. § 314.95(c)(1), we advise you that FDA has received an Abbreviated New Drug Application ("ANDA") from Watson for levonorgestrel and ethinyl estradiol tablets, 0.09 mg/0.02 mg. The ANDA contains the required bioavailability and/or bioequivalence data from studies on the levonorgestrel and ethinyl estradiol drug product that is the subject of the ANDA. The ANDA was submitted under 21 U.S.C. § 355(j)(1) and (2)(A), with a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of levonorgestrel and ethinyl estradiol tablets, 0.09 mg/0.02 mg, before the expiration of the '814 patent, which is listed in the Patent and Exclusivity Information Addendum of FDA's publication, *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as "the Orange Book").

Wyeth Pharmaceuticals
January 28, 2008
Page 2 of 5

II.     Pursuant to 21 C.F.R. § 314.95(c)(2), we advise you that FDA has assigned Watson's ANDA the number 79-218.

III.     Pursuant to 21 C.F.R. § 314.95(c)(3), we advise you that the established name of the drug product that is the subject of Watson's ANDA No. 79-218 is levonorgestrel and ethinyl estradiol tablets, 0.09 mg/0.02 mg.

IV.     Pursuant to 21 C.F.R. § 314.95(c)(4), we advise you that the active ingredients in the proposed drug product are levonorgestrel and ethinyl estradiol; the strength of the proposed drug product is 0.09 mg levonorgestrel and 0.02 mg ethinyl estradiol; and the dosage form of the proposed drug product is a tablet.

V.     Pursuant to 21 C.F.R. § 314.95(c)(5), we advise you that the patent alleged to be invalid, unenforceable and/or not infringed in the paragraph IV certification is the '814 patent, which is listed in the Orange Book in connection with Wyeth's approved NDA No. 21-864 for Lybrel® (levonorgestrel and ethinyl estradiol tablets, 0.09 mg/0.02 mg). According to information provided by Wyeth to FDA that is published in the Orange Book, the '814 patent is set to expire on or about September 3, 2018. No pediatric exclusivity is listed.

VI.     Watson alleges, and has certified to FDA, that in Watson's opinion and to the best of its knowledge, the '814 patent is invalid, unenforceable and/or will not be infringed by the commercial manufacture, use or sale of the drug product described in Watson's ANDA. Therefore, pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(6), Watson's detailed statement of the legal and factual basis for the paragraph IV certification set forth in Watson's ANDA is attached hereto and made a part hereof.

VII.     Pursuant to 21 U.S.C. § 355(j)(5)(C), this notice letter includes an Offer of Confidential Access to Application. As required by § 355(j)(5)(C)(i)(III), Watson offers to provide confidential access to certain information from its ANDA No. 79-218 for the sole and exclusive purpose of determining whether an infringement action referred to in § 355(j)(5)(B)(iii) can be brought.

Section 355(j)(5)(C)(i)(III) allows Watson to impose restrictions "as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." That provision also grants Watson the right to redact its ANDA in response to a request for Confidential Access under this offer.

Wyeth Pharmaceuticals
January 28, 2008
Page 3 of 5

As permitted by statute, Watson imposes the following terms and restrictions on its Offer of Confidential Access:

### OFFER OF CONFIDENTIAL ACCESS TO
### WATSON LABORATORIES, INC.'S ANDA NO. 79-218

(1) Watson will permit confidential access to certain information from its proprietary ANDA No. 79-218 to attorneys from one outside law firm representing Wyeth, provided, however, that such attorneys do not engage, formally or informally, in any patent prosecution for Wyeth or any FDA counseling, litigation or other work before or involving FDA. As appropriate, such information (hereinafter, "Confidential Watson Information") shall be marked with the legend "CONFIDENTIAL."

(2) The attorneys from the outside law firm representing Wyeth shall not disclose any Confidential Watson Information to any other person or entity, including Wyeth employees, outside scientific consultants, and/or other outside counsel retained by Wyeth, without the prior written consent of Watson.

(3) As provided by § 355(j)(5)(C)(i)(III), Wyeth's outside law firm shall make use of the Confidential Watson Information for the sole and exclusive purpose of determining whether an action referred to in § 355(j)(5)(B)(iii) can be brought and for no other purpose. By way of example only, the Confidential Watson Information shall not be used to prepare or prosecute any future or pending patent application by Wyeth; in connection with any filing to, or communication with, FDA relating to Watson's ANDA No. 79-218; or in connection with any filing to, or communication with, the United States Pharmacopeia or any similar organization. Wyeth's outside law firm agrees to take all measures necessary to prevent unauthorized disclosure or use of the Confidential Watson Information, and that all Confidential Watson Information shall be kept confidential and not disclosed in any manner inconsistent with this Offer of Confidential Access.

(4) The Confidential Watson Information disclosed is, and remains, the property of Watson. By providing the Confidential Watson Information, Watson does not grant Wyeth and/or its outside law firm any interest in or license for the Confidential Watson Information.

Wyeth Pharmaceuticals
January 28, 2008
Page 4 of 5

(5)     Wyeth's outside law firm shall, within thirty-five (35) days from the date that it first receives the Confidential Watson Information, return to Watson all Confidential Watson Information and any copies thereof. Wyeth's outside law firm shall return all Confidential Watson Information to Watson before any infringement suit is filed by Wyeth, if suit is commenced before this 35-day period expires. In the event that Wyeth opts to file suit, none of the information contained in or obtained from any Confidential Watson Information that Watson provides shall be included in any publicly-available complaint or other pleading.

(6)     Nothing in this Offer of Confidential Access shall be construed as an admission by Watson regarding the validity, enforceability, and/or infringement of any U.S. patent. Further, nothing herein shall be construed as an agreement or admission by Watson with respect to the competency, relevance, or materiality of any such Confidential Watson Information, document, or thing. The fact that Watson provides Confidential Watson Information upon request of Wyeth shall not be construed as an admission by Watson that such Confidential Watson Information is relevant to the disposition of any issue relating to any alleged infringement of any patent, or to the validity or enforceability of any patent.

(7)     The attorneys from Wyeth's outside law firm shall acknowledge in writing their receipt of a copy of these terms and restrictions prior to production of any Confidential Watson Information. Such written acknowledgement shall be provided to Watson.

(8)     This Offer of Confidential Access shall be governed by the laws of the State of California.

Section 355(j)(5)(C)(i)(III) provides that any request for access that Wyeth makes under this Offer of Confidential Access "shall be considered acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in [this] offer of confidential access" and that the "restrictions and other terms of [this] offer of confidential access shall be considered terms of an enforceable contract." Thus, to the extent that Wyeth requests access to Confidential Watson Information, it necessarily accepts the terms and restrictions outlined above. Written notice requesting access under this Offer of Confidential Access should be made to:

Wyeth Pharmaceuticals
January 28, 2008
Page 5 of 5

**Amy Hulina**
**Vice President, Intellectual Property and Patent Counsel**
**Watson Pharmaceuticals, Inc.**
**311 Bonnie Circle**
**Corona, CA 92880**
**(951) 493-5956**
**ahulina@watson.com**

By providing this Offer of Confidential Access to Application, Watson maintains the right and ability to bring and maintain a Declaratory Judgment action under 28 U.S.C. § 2201 *et seq.*, pursuant to 21 U.S.C. § 355(j)(5)(C).

Sincerely,

Ernest Lengle, Ph.D.
Executive Director
Regulatory Affairs
Watson Laboratories, Inc.

Enclosure:   Watson Laboratories, Inc.'s Confidential Detailed Factual and Legal Bases for
Watson's Paragraph IV Certification that U.S. Patent No. 6,500,814 Is Invalid,
Unenforceable and/or Will Not Be Infringed

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

Pursuant to Section 505(j)(2)(B)(iv)(II) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95(c)(6), this document is the detailed factual and legal basis for the paragraph IV certification of Watson Laboratories, Inc. ("Watson") that, in its opinion and to the best of its knowledge, U.S. Patent No. 6,500,814 ("the '814 patent") is invalid, unenforceable and/or will not be infringed by the commercial manufacture, use, sale, offer for sale or importation of the drug product described in Watson's ANDA No. 79-218.  Watson reserves all rights to raise any additional defenses relating to invalidity, unenforceability, and non-infringement should litigation ensue.

All claims in the '814 patent (*i.e.*, Claims 1-3) are invalid under 35 U.S.C. § 103 as being obvious in view of the prior art, as well as invalid under 35 U.S.C. § 112, for lack of written description for administration over a "period of greater than 110 days."

The detailed basis for our opinion follows.

I.    **BACKGROUND**

A.    **LYBREL® (90 µG LEVONORGESTREL AND
20 µG ETHINYL ESTRADIOL TABLETS)**

LYBREL® is a monophasic oral contraceptive consisting of 28 active pills, each containing 0.09 mg levonorgestrel and 0.02 mg ethinyl estradiol.  This product is to be taken daily, 365 days a year, without a placebo phase or pill-free interval.

This product is marketed in the United States by Wyeth Pharmaceuticals, Inc. This product was granted FDA approval on May 22, 2007 and is indicated for use in the prevention of pregnancy.

Levonorgestrel is a progestogen, which is a white, odorless crystalline powder. Chemically, levonorgestrel is (-)-13β-ethyl-17β -hydroxy-18,19-dinor-17α-pregn-4-en-20-yn-3 and has the following chemical structure:



Ethinyl estradiol is an estrogen, which is a white to creamy white, odorless, crystalline powder.  Chemically, ethinyl estradiol is 19-nor-17α-pregna-1,3,5(10)-trien-20-yne-3,17-diol and has the following chemical structure:

Watson Pharmaceuticals                311 Bonnie Circle, Corona, CA 92880-2882    T  951.493.5300    www.watson.com

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**



### B.    WATSON'S ANDA PRODUCT

Watson's generic version of 0.09 mg levonorgestrel and 0.02 mg ethinyl estradiol tablets will be marketed for the same indications as the reference drug, LYBREL®, and with a substantially identical label.  Like the LYBREL® label, the label indication for Watson's generic version of levonorgestrel and ethinyl estradiol tablets will be for "the prevention of pregnancy in women who elect to use oral contraceptives as a method of contraception."

## II.    LEGAL STANDARDS

### A.    OBVIOUSNESS

A claim is invalid if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.  35 U.S.C. § 103(a).

> The consistent criterion of determination of obviousness is whether the prior art would have suggested to one of ordinary skill in the art that this process should be carried out and would have a reasonable likelihood of success, viewed in light of the prior art.

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124 (Fed. Cir. 2000).  These three prongs of the criterion for obviousness are sometimes referred to as "suggestion or teaching in the prior art," "motivation," and "reasonable expectation of success."  This inquiry is a question of law based on factual inquiries:

> [u]nder § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.  Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.  As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

Watson Pharmaceuticals        311 Bonnie Circle, Corona, CA 92880-2882    T 951.493.5300    www.watson.com

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

*Graham*, 383 U.S. at 17-18; *KSR Int'l Co. v. Teleflex, Inc.*, No. 04-1350 (2007);  *see also Ruiz v. AB Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000) ("Our precedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness."); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000). Thus, *Graham* sets out a four-part inquiry comprising not only the three elements of the primary consideration of obviousness (scope and content of the prior art, differences between the prior art and the claims at issue, and level of ordinary skill in the pertinent art), but also evidence of secondary considerations when such evidence is present.  *Ruiz*, 234 F.3d at 663; *SIBIA*, 225 F.3d at 1355.

A claim may be proven obvious in view of a single prior art reference, or in view of a combination of prior art references.  When the prior art references are combined to invalidate a claim under 35 U.S.C. § 103, there must be some teaching in the prior art that would motivate a person having ordinary skill in the art to do so, but that teaching need not be expressly stated in one or all of the references used to show obviousness.  *See KSR*, No. 04-1350, slip. op. at 14.  Motivation "may flow from the prior art references themselves, the knowledge of one of ordinary skill in the art, or, in some cases, from the nature of the problem to be solved."  *Ruiz*, 234 F.3d at 665; *Brown & Williamson*, 229 F.3d at 1125.

One of ordinary skill is not bound to use prior art elements for the reasons taught in the prior art.  *KSR,* No. 04-1350, slip. op. at 16.  The problem itself may provide the motivation to combine where there is a design need or market pressure.  *Id.*

> [When] there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reasons to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In that instance, the fact that a combination was obvious to try might show that it was obvious under section §103.

*See id.* at 17.  The person of ordinary skill in the art can be creative and "be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 16-17.  There need not be an explicate statement in the prior that suggests combining the references in the particular way claimed, i.e. a clear teaching, suggestion or motivation in the prior art to combine.  *KSR*, No. 04-1350, slip. op. at 11.  "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id.* at 17.

Finally, it must also be shown that there existed a reasonable expectation of success in making the necessary combination or modification.  However,

> [o]bviousness does not require absolute predictability of success. Indeed, for many inventions that seem quite obvious, there is no absolute predictability of success until the invention is reduced to practice.  There is always at least a possibility of unexpected results, that would then provide

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

an objective basis for showing that the invention, although apparently obvious, was in law nonobvious.  For obviousness under § 103, all that is required is a reasonable expectation of success.

*In re O'Farrell*, 853 F.2d 894, 903-4 (Fed. Cir. 1988) (citations omitted).

### a.    LEVEL OF SKILL IN THE ART

The hypothetical person of ordinary skill in the art is a person who is not extraordinarily innovative, nor a researcher of inexhaustible patience, but is a person who thinks conventionally in matters affecting the art in which he or she is skilled.  *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985); *accord Life Techs., Inc. v. Clontech Lab., Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000).  Ordinary skill means at least the ability to understand the technology and make modest adaptations or advances.  *See, e.g., In re Mahurkar Patent Lit.*, 831 F.Supp. 1354, 1374 (N.D. Ill. 1993), *aff'd*, 71 F.2d 1573 (Fed. Cir. 1995).  "Factors that may be considered in determining level of ordinary skill in the art include: (1) the types of problems encountered in the art; (2) the prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology; and (5) educational level of active workers in the field."  *Ruiz*, 234 F.3d at 666-67 (Fed. Cir. 2000).  Typically, courts also credit the hypothetical person of ordinary skill in the art with several years of experience.  *See, e.g., E.I. DuPont de Nemours & Co. v. Monsanto*, 903 F.Supp. 680, 751 (D.Del. 1995), *aff'd*, 92 F.3d 1208 (Fed. Cir. 1996); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1357-58 (Fed. Cir. 1999) (level of ordinary skill stipulated by parties).  The hypothetical person of ordinary skill in the art is assumed to be aware of all pertinent prior art.  *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986).

### b.    SCOPE AND CONTENT OF THE PRIOR ART

As a preliminary matter the scope of the prior art must be considered.  "Before answering *Graham's* 'content' inquiry, it must be known whether a patent or publication is in the prior art under 35 U.S.C. § 102."  *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed Cir. 1987), *cert. denied*, 481 U.S. 1052 (1987).  Any disclosure that qualifies as prior art under § 102 can be used in support of a rejection under § 103, including a prior sale or public use that qualifies as prior art under § 102(b).  *See In re Kaslow*, 707 F.2d 1366, 1374 (Fed. Cir. 1983); *Ex parte Andresen*, 212 U.S.P.Q. 100, 102 (B.P.A.I. 1981).  Relevant prior art is that which is within the field of endeavor of the inventor, or that is reasonably pertinent to the particular problem being addressed by the inventor.  *In re Dillon*, 919 F.2d at 694.  In addition, a party's admissions can create valid prior art.  *See, e.g., Riverwood Int'l Corp.*, 324 F.3d at 1354; *Constant* 848 F.2d at 1570 ("A statement in a patent that something was in the prior is binding on the applicant and patentee for determination of anticipation and obviousness.").

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

### c.    DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMED INVENTION

The differences between the prior art and the claimed invention must be ascertained in order to define those aspects of the claimed subject matter as a whole as to which the determination of obviousness or nonobviousness must be made. *Graham*, 383 U.S. at 22-23; *see also Brown & Williamson*, 229 F.3d at 1126 ("The question thus before us is whether one skilled in the art of cigarette design would have recognized at the time of the Luke invention that a reduction in circumference of the thinnest cigarette then on the market would yield a cigarette which burns tobacco more efficiently ...").

### d.    OBJECTIVE INDICIA OF NON-OBVIOUSNESS

A court must consider any objective indicia (also called "secondary considerations") of non-obviousness, when present, as they may often be the most probative evidence in the record. *Ruiz*, 234 F.3d at 667; *Rockwell Int'l Corp. v. U.S.*, 147 F.3d 1358, 1366 (Fed. Cir. 1998). Such secondary considerations include commercial success of the invention, whether the invention solved a long felt but unresolved need in the art, copying of the invention by others in the field, initial expressions of disbelief by experts in the field, and failure of others to solve the problem that the inventor solved. *See Graham*, 383 U.S. at 17-18; *Brown & Williamson*, 229 F.3d at 1129. However, for such secondary considerations to be given substantial weight, a nexus must be established between the merits of the claimed invention and the alleged objective indicium of non-obviousness. *See, e.g., In re GPAC, Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995); *SIBIA Neurosciences Inc.*, 225 F.3d at 1358. The patentee bears the burden of establishing a prima facie case of such a nexus. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). Evidence of objective indicia of non-obviousness must be commensurate in scope with the claimed invention. *See, e.g., In re Hiniker Co.*, 150 F.3d 1362, 1368-69 (Fed. Cir. 1998); *see also Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1355 (Fed. Cir. 2001).

The objective indicia of non-obviousness, however, do not control the analysis when there is an otherwise strong case of obviousness, such as one based upon art not considered by the USPTO during prosecution. *See Sandt*, 264 F.3d at 1355 ("We see no error in the district court's conclusion . . . that the secondary considerations cannot overcome the strong prima facie evidence of obviousness presented."); *Brown & Williamson*, 229 F.3d at 1131.

### B.    WRITTEN DESCRIPTION

35 U.S.C. § 112, first paragraph, states:

The specification shall contain a ***written description*** *of the invention*, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to

Watson Pharmaceuticals          311 Bonnie Circle, Corona, CA 92880-2882    T 951.493.5300    www.watson.com

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

which it pertains, or with which it is most nearly connected, to make and
use the same, and shall set forth the best mode contemplated by the
inventor of carrying out his invention.

(Emphasis added).

The written description of the invention may support claims not limited to the
disclosed preferred embodiments. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d
1473, 1479 (Fed. Cir. 1998). However, claims directed to a "distinct invention from that
disclosed in the specification" are not supported by a written description in compliance
with § 112, first paragraph. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572
(Fed. Cir. 1997). Thus, within the constraints imposed by the prior art, an applicant is
entitled to claims *as broad but no broader than his disclosure will allow*. *Gentry
Gallery*, 134 F.3d at 1480 (citing *In re Rasmussen*, 650 F.2d 1212, 1214 (CCPA 1981)).

To satisfy the written description requirement of 35 U.S.C. §112, first paragraph,
"the applicant must describe the subject matter of the [claim] in terms that establish that
he was in possession of the later-claimed invention, including *all of the elements and
limitations presented in the [later claim]*" at the time of filing. *Hyatt v. Boone*, 146
F.3d 1348, 1353 (Fed. Cir. 1998) (emphasis added). The specification *must
"unambiguously" describe all of the limitations of the claim. Id.* (emphasis added).
The policy behind this requirement is to prevent overreaching and *post hoc* claims that
were not part of the original invention:

Adequate description of the invention guards against the inventor's
overreaching by insisting that he recount his invention in such detail that
his future claims can be determined to be encompassed within his original
creation.

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 65 (Fed. Cir. 1991) (citing *Rengo Co. v.
Molins Mach. Co.*, 657 F.2d 535, 551 (3d Cir.), *cert. denied*, 454 U.S. 1055 (1981)).
*See also*, *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000), citing
*Waldemar Link GmbH & Co.v. Osteonics Corp.*, 32 F.3d 556, 558, 31 USPQ2d 1855,
1857 (Fed. Cir. 1994) ("Put another way, one skilled in the art, reading the original
disclosure, must 'immediately discern the limitation at issue' in the claims.").

"Although the exact terms need not be used *in haec verba*, . . . , *the
specification must contain an equivalent description* of the [later] claimed subject
matter." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 72 (Fed. Cir. 1997)
(emphasis added); *see also*, *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed.
Cir. 2000). In determining whether the written description requirement has been
satisfied, the specification as a whole must be considered. *In re Wright*, 866 F.2d 422
(Fed. Cir. 1989).

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

"While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, *all the limitations must appear in the specification*." *Id.* (emphasis added). Hence, "[o]ne shows that one is 'in possession' of *the invention*, by describing *the invention*, with all its claimed limitations, not that which makes it obvious." *Lockwood*, 107 F.3d at 1572. "The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification." *Id.*

Furthermore, the written description requirement is separate and distinct from the enablement requirement also found in §112, first paragraph. *Vas-Cath Inc.*, 935 F.2d at 1563. "The purpose of the 'written description' requirement is broader than to merely explain how to 'make and use'; the applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Id.* at 1563, 64. "[I]t is possible for a specification to *enable* the practice of an invention as broadly as it is claimed, and still not *describe* that invention." *Id.* at 1562 (citing *In re DiLeone*, 436 F.2d 1404, 1405 (CCPA 1971)). *See also, Application of Blaser*, 556 F.2d 534, 538 (CCPA 1977) ("[E]nablement and obviousness are not the issues; description of the invention is.").

III.    **ANALYSIS OF U.S. PATENT NO. 6,500,814**

A.    **INTRODUCTION**

United States Patent No. 6,500,814 ("the '814 patent"), entitled "HORMONAL CONTRACEPTIVE", issued on December 31, 2002 from Application Serial No. 09/508,648 that was filed on June 5, 2000.

B.    **CLAIMS AND SPECIFICATION**

The '814 patent contains 3 claims, which are reproduced below:

1. A method for hormonal contraception, comprising:

administering orally, transdermally or via depot to a mammal in need thereof,

for a continuous and uninterrupted administration period of greater than 110 days,

a contraceptive product comprising:

a gestagen selected from the group consisting of progesterone, chlormadinone acetate, norethisterone acetate, cyproterone acetate, desogestrel, and levonorgestrel; and

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

an estrogen selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane;

wherein said gestagen and said estrogen are present in said contraceptive product at unchanged dosages throughout the administration period, and

when said estrogen is ethinyl estradiol, the dosage of ethinyl estradiol is not greater than 20 µg per day.

2. The method of hormonal contraception of claim 1 wherein the dosage of ethinyl estradiol is between 1 and 20 µg per day.

3. A method for continuous suppression of the menstrual cycle, comprising:

administering orally, transdermally or via depot to a mammal in need thereof,

for a continuous and uninterrupted administration period of greater than 110 days,

a contraceptive product comprising:

a gestagen selected from the group consisting of progesterone, chlormadinone acetate, northisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and

an estrogen selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane;

wherein said gestagen and said estrogen are present in said contraceptive product at unchanged dosages throughout the administration period, and

wherein the dosage of ethinyl estradiol is not greater than 20 µg per day,

such that the menstrual cycle is continuously suppressed throughout the administration period.

The specification of the '814 patent notes that traditionally, oral contraceptive products included a pill-free or hormone-free week, during which a withdrawal bleed would occur. *See* column 1, lines 10-36. In contrast, the Applicant's invention was said to be directed to a hormonal contraceptive product and method of use, for continuous, combined administration comprising a first hormonal component comprising at least one gestagen and a second hormonal component of comprising at least one estrogen." *See* column 2, lines 6-15. This product is said to be used for inhibiting ovulation and the treatment and/or prophylaxis of breast tumors. *See* column 2, lines 16-20.

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

The continuous administration of combination hormone products by postmenopausal women to alleviate symptoms of aging such as osteoporosis were distinguished by the Applicant as being "unsuitable for ovulation inhibition." *See* column 1, lines 36-50.

The Applicant asserted that high contraceptive reliability can be achieved using their invention, for example, at column 3, lines 7-12:

> The invention is based on the surprising finding that as a result of the continuous, combined administration of a product comprising two hormonal components, namely a first hormonal component comprising at least one gestagen and a second hormonal component comprising at least one estrogen, a high contraceptive reliability can be achieved.

The Applicant further stated that the claimed product provides contraception and inhibition of ovulation at very low doses of ethinyl estradiol. In particular, the Applicant stated at column 4, lines 26-26-48:

> It has surprisingly also been found that on administering the product according to the invention there is a reliable continuous suppression of the menstrual cycle and menstruation in the case of a very low dosage. Without wishing to be bound by this explanation, the combination of the two indicated hormonal components and in particular the low estrogen dosage would appear to be suitable for eliminating the otherwise conventional side effects of ethinyl estradiol and to drop below the administrations of more than 15 $\mu$g of ethinyl estradiol otherwise considered typically necessary in prior art contraceptives.

> The low dosage of the two hormonal components and in particular the estrogen component is made possible by the additive action of the two hormonal components, without there being any limitation to the action of the product according to the invention with respect to its contraceptive and ovulation-inhibition properties.

> The ovulation inhibition and menstrual cycle suppression reliably ensured by the product according to the invention is of great significance for certain patients, such as e.g. for top sports women, dancers and business women, who wish to exclude any reduction in their physical, intellectual and emotional efficiency as a result of the menstrual cycle….

## C.    FILE HISTORY

The claims that were initially examined were drawn to merely a "product for hormonal contraception" having at least one gestagen and at least one estrogen, either

Watson Pharmaceuticals      311 Bonnie Circle, Corona, CA 92880-2882    T 951.493.5300    www.watson.com

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

present in amounts effective to suppress the menstrual cycle (*i.e.*, claim 22 as presented during prosecution) or for continuous administration (*i.e.*, claim 35 as presented during prosecution). The estrogens and gestagens were known compounds, which were known for use in oral contraceptives.

In order to overcome prior art references such as EP 309263 ("*Casper*"), U.S. Patent No. 4,855,305 ("*Cohen*") and U.S. Patent No. 5,418,228 ("*Bennink*"), the claims were initially amended to exclude multiphasic oral contraceptive dosing regimes (*i.e.*, the claims were amended to recite "wherein said amount is unchanged throughout the menstrual cycle") and products having placebo or a hormone-free interval (*i.e.*, the claims recited "continuous administration" or "continuous suppression of the menstrual cycle").

Next, the claims were rejected over U.S. Patent No. 5,898,032 ("*Hodgen*"), which taught monophasic administration of low-dose oral contraceptive pills for a "continuous" period of 60-110 consecutive days. In response, the Applicants adopted the "administration period of greater than 110 days" limitation into the claims to distinguish over *Hodgen*. The Examiner withdrew the anticipation rejection over *Hodgen* and the obviousness rejection based on *Cohen* in view of *Hodgen*, and issued a Notice of Allowance, stating that "Applicant argued the prior art does not teach a continuous and uninterrupted administration period of greater than 110 days."

### D.    THE SCOPE AND CONTENT OF THE PRIOR ART

#### 1.    Prior Art Relating To Extended Oral Contraceptive Regimes

##### a.    *SZAREWSKI*

Anne Szarewski and John Guillebaud, <u>Contraception: A User's Handbook</u>, Oxford University Press, Great Brigain, 1994 ("*Szarewski*") discloses that continuous administration of oral contraceptives, without a break, can be useful to treat symptoms of endometriosis or epilepsy. Szarewski teaches that the progestogen-dominant brands of pills include: Loestrin 30 (30 mcg ethinyloestradiol, 1.5 mg norethisterone), Microgynon/Ovranette (30 mcg ethinyloestradiol, 150 mcg levonorgestrel) and Loestrin 20 (20 mcg ethinyloestradiol, 1 mg norethisterone acetate). Progestogen-dominant triphasics are said to include Trinordiol/Logynon, which comprises 6 tablets of 30 mcg ethinyloestradiol and 50 mcg levonorgestrel, 5 tablets of 40 mcg ethinyloestradiol and 75 mcg levonorgestrel, and 10 tablets containing 30 mcg ethinyloestradiol and 125 mcg levonorgestrel.

The author also suggests that it is not necessary to stop taking the pill for purposes of inducing a withdrawal bleed, and even states that in the case of patients with endometriosis or epilepsy, that continuous administration is preferred. Alternatively, if continuous administration is not used, then a "possible compromise is the concept of tricycling."

**Watson Pharmaceuticals**    311 Bonnie Circle, Corona, CA 92880-2882    T 951.493.5300    www.watson.com

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

b.    *RIZK*

Rizk, *et al.*, "*Congenital Afibrinogenemmia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive*," American J. Hematology, 52(3):237-238 (July 1996) ("*Rizk*") relates to the treatment of excessive menstrual bleeding in patients with congenital afibrinogenemia[1] through the use of continuous oral contraception.  The authors describe an example in which *0.03 mg ethinylestradiol and 150 mg levonorgestrel tablets were presented without a break in pill taking*.  Bleeding stopped 2 days later without further menstrual periods over a 3-month follow-up...and concluded that *oral contraceptive treatment is better given continuously to induce amenorrhea* in women with congenital afibrinogenemia presenting with excessive menstrual blood loss.

c.    *CASTAMAN*

Castaman, G. et al., "*Congenital Afibrinogenemia: Successful Prevention of Recurrent Hemoperitoneum during Ovulation by Oral Contraceptive*," Am. J. Hematol., 49:363 (1995) ("*Castaman*") relates to the inhibition of ovulation by oral contraceptive in patients with congenital afibrinogenemia, in order to prevent bleeding complications such as hemoperitoneum.  The authors disclose the "long-term beneficial effect of oral contraception" for such disorders, based on their experience with a patient, who was treated for hemoperitoneum caused by rupture of the corpus luteum and later "discharged on oral contraceptive treatment (0.02 mg ethinyl estradiol, 0.15 mg desogestrel) without further episodes of hemoperitoneum over a 5-year follow-up period."  In particular, the authors state that "*[l]ong-term treatment with oral contraceptives, therefore, seems a practical, safe and cost-effective prophylaxys for hemoperitoneum in menstruating women with congenital afibrinogenemia* and, possibly, with other severe inherited coagulopathies."

d.    **WO PATENT PUBLICATION 93/17686**

WO 93/17686 ("WO '686") was published on September 16, 1993 and notes that "during the over 30 year history of combined estrogen/progestin oral contraception, there has been a steady downward adjustment of the daily estrogen dosage, both for oral contraceptive purposes in premenopausal female and for estrogen replacement therapy in postmenopausal females."  *See* page 1, lines 19-24.

WO '686 stated that the invention seeks to solve the bleeding control problem associated with a reduction in the daily doses of estrogen and/or progestin by periodically administering an antiprogestin.  WO '686 discloses a method and kit for the

---

[1]    According to Stedman's Concise Medical Dictionary for the Health Professions, 4th Edition, Lippincott Williams & Wilkins, Baltimore, MD, 2001, afibrinogenemia is defined as:  "the absence of fibrinogen in the plasma."

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

continuous administration of oral contraceptive pills for extended periods of time, including up to 180 active pills or more.

On page 8, lines 13-23, examples of progestins are listed, and include the following (*emphasis added*):

> Examples of progestins which can be employed in this invention are micronized **progesterone** (15-50 mg/day), norethindrone and esters, e.g., acetate, thereof (0.10.75 mg/day), norethynodrel (0.3-0.6 mg/day); ethynodiol diacetate (0.3-0.75 mg/day), norgestrel (0.05-0.2 mg) and levo-norgestrel (0.03-0.15 mg/day), chlormadinone acetate, cyproterone, **cyproterone acetate, norethindrone, desogestrel**, norgestimate, dihydrospirenone, **levonorgestrel**, and gestodene (Schering Ag, Berlin; U.S. Patent 4,081,537) (equivalent to 0.03-0.15 mg [levonorgestrel]).

On page 8, line 35-page 9, line 2, examples of estrogens are listed, which include the following (*emphasis added*):

> Examples of estrogens which can be employed in this invention are **ethinyl estradiol** and **estradiol** and their esters, e.g., acetate, valerate, benzoate and undecylate, (5-15 mcg.) mestranol (20-25 mcg/day), and conjugated estrogens (5-15 mcg/day).

### e.    *COUTINHO*

Coutinho, *et al.*, "*Comparative Study on Intermittent Versus Continuous Use of a Contraceptive Pill Administered by Vaginal Route*," <u>Contraception</u>, 51:355-358 (1995) ("*Coutinho*") reports a trial where a contraceptive pill containing 250 μg levonorgestrel and 50μg ethinyl estradiol was administered on a continuous (*i.e.*, daily) basis by the vaginal route for a period of one year, as compared to the use of 21 days of active pills, followed by 7 days of placebo. The authors report that in the first trimester of use, 67.6% of patients in the continuous use group achieved amenorrhea, in the second trimester of use, 82.4% of patients in the continuous use group achieved amenorrhea, in the third trimester of use, 89.1% of patients in the continuous use group achieved amenorrhea, and in the fourth trimester of use, 87.5% of patients in the continuous use group achieved amenorrhea. *See* page 356, second column to page 357, first column.

The authors note on page 358, second column that:

> This study shows that continuous use of vaginal contraceptive pills may offer some advantage over the traditional intermittent use and could be recommended to women who bleed excessively during menstruation. It may also be more beneficial for anemic women.

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

### 2. PRIOR ART RELATING TO A 20µG DOSAGE OF ETHINYL ESTRADIOL

#### a. *LUNELL*

Lunell, *et al.*, "*Ovulation Inhibition with a Combined Oral Contraceptive Containing 20µg Ethinyl Estradiol and 250µg Levonorgestrel*," <u>Acta. Obstet. Gynecol. Scand. Suppl.</u>, 88:17-21 (1979) ("*Lunell*") reports that ovulation inhibition is obtained with a combined oral contraceptive containing 20µg ethinyl estradiol and 250µg levonorgestrel. The authors state that "a combination pill composed of only 20µg ethinyl estradiol and 250µg levonorgestrel is capable of suppressing ovulation. Consequently, reliable contraception can be achieved with combined oral contraceptives containing less than 30µg ethinyl estradiol."

#### b. *TUIMALA*

Tuimala, *et al.*, "*A Clinical Comparison in Finland of Two Oral Contracetives Containing 0.150 mg Desogestrel in Combination with 0.020 mg or 0.030 mg Ethinyl Estradiol*," <u>Acta. Obstet. Gynecol. Scand. Suppl.</u>, 144:7-12 (1987) ("*Tuimala*") discusses two open multicenter studies on two oral contracetives containing 0.150 mg desogestrel in combination with either 0.020 mg or 0.030 mg ethinyl estradiol. The authors found that:

> …Both combinations showed a good cycle control and were well tolerated. There were no marked differences between the two preparations with respect to bleeding patterns, body weight, side effects, or drug related drop-outs. The good efficacy of the lowest estrogen-dose combination was substantiated by the results of the hormone determinations: all 5 volunteers displayed an anovulatory treatment cycle. It is concluded that despite its lower estrogen content, the clinical use of the 0.150/0.020 mg desogestrel/EE combination is as good as that of the 0.150/0.030 mg desogestrel/EE combination.

#### c. *HODGEN*

U.S. Patent No. 5,898,032 entitled "*Ultra Low Dose Oral Contraceptives with Less Menstrual Bleeding and Sustained Efficacy*," ("*Hodgen*") teaches that "ultra low dose oral contraceptives" can be effective in extended oral contraceptive regimens. *See, e.g.*, column 3, lines 23-50. In particular, *Hodgen* discloses a method for female contraception involving administering a combination of estrogen and progestin for 60-110 consecutive days. *See, e.g.*, Abstract and column 3, line 49. There is no menstruation during the continuous administration period. *See* column 3, lines 55-57.

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

*Hodgen* discloses at column 3, lines 52-57 and 62-63 that the daily amount of estrogen is about 5-35 mcg of ethinyl estradiol, and that the preferred daily dosage is about 10-20 mcg.

E.    **OBVIOUSNESS ANALYSIS**

1.    **THE LEVEL OF SKILL IN THE ART**

The subject matter of the '814 patent falls within the development field of pharmaceutical sciences. The person of ordinary skill to whom the '814 patent is directed is a medicinal chemist or pharmaceutical chemist involved in the research and development of oral contraceptives and has a Masters or Ph.D. degree and several years of experience in the field, the amount of post-graduate experience depending upon the level of formal education. *E.I. DuPont de Nemours & Co. v. Monsanto*, 903 F.Supp. 680, 751 (D.Del. 1995), aff'd, 92 F.3d 1208 (Fed. Cir. 1996). A person of ordinary skill in the art would easily have understood the prior art references referred to herein, and would have the capability to draw inferences from them.

2.    **CLAIMS 1-3 OF THE '814 PATENT ARE OBVIOUS OVER *SZAREWSKI***

a.    **DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMS AT ISSUE**

*Szarewski* discloses continuous administration of oral contraceptive pills for women when having a monthly withdrawal bleed is undesirable, *e.g.*, as in the case of women suffering from endometriosis or epilepsy. *Szarewski* teaches that these women "should take the pill without any breaks, to avoid bleeding" and use "a progestogen-dominant brand."

The progestogen-dominant brands listed in this book include Loestrin 20 (20 mcg ethinyloestradiol, 1 mg norethisterone acetate). However, some of the brands listed have $30\mu g$ ethinyl estradiol or $40\mu g$ ethinyl estradiol, which is more than $20\mu g$ ethinyl estradiol.

b.    **APPLICATION OF THE PRIOR ART TO THE '814 PATENT CLAIMS**

The progestogen-dominant brands suggested in *Szarewski* include Loestrin 20, which contains 20 mcg ethinyl estradiol. Elsewhere the prior art teaches that dosage amounts of $20\mu g$ ethinyl estradiol will provide inhibition of ovulation and good cycle control. *See, e.g., Lunell* and *Hodgen*. *Tuimali* teaches that $20\mu g$ ethinyl estradiol is comparable to $30\mu g$ ethinyl estradiol in efficacy and in good cycle control. Applicant's admission that amounts of "more than $15\mu g$ of ethinyl estradiol" were "considered typically necessary in prior art contraceptives," see column 4, lines 34-36 of the '814

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

patent, suggests that 20μg ethinyl estradiol, for example, would have been considered an appropriate amount for use in oral contraceptives in the prior art.

The skilled artisan would have been motivated to use an oral contraceptive having the lowest possible dosage of estrogen, for at least two reasons: (1) cost, and (2) safety. A reduction in the amount of ethinyl estradiol of 1/3 or more (from 30-50 μg to 20 μg) would reduce the cost of manufacture, as well as the ultimate price to the consumer. Furthermore, as oral contraceptives would be administered on a continuous basis, it would be advantageous to use the lowest dosage possible for achieving efficacy, while minimizing any unwanted adverse effects. Side effects linked with oral contraceptives use were known at the time the application for the '814 patent was filed, and included increased risk for cardiovascular disease (heart and blood vessels), blood clotting, elevated blood sugars, liver disease, and certain cancers. See e.g., Szarewski at pages 21-36. Szarewski notes that it was possible to reduce such risks by using a low-dosage estrogen product. WO '686 also mentions that in view of the "known adverse side-effects associated with long term contraception…, especially in women who smoke in the 40-44 age group, over the years interest in achieving contraception at lower estrogen doses has developed." See page 1, lines 10-18. Therefore, the skilled artisan would have been motivated to adjust the amount of estrogen to the lowest amount that was known to be effective.

Determining optimal dosage ranges is within the ability of the skilled artisan. Slight differences in the dosage amounts of the estrogen component will not support the patentability of subject matter encompassed by the prior art, unless there is evidence indicating such dosages are critical. "[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Aller*, 220 F.2d 454, 456 (CCPA 1955). There is no indication in the disclosure of the '814 patent that this dosage imparts any criticality to the claims.

Finally, no patentable significance with respect to 20μg ethinyl estradiol over those prior art products suggested by *Szarewski* that contain more than 20μg ethinyl estradiol was demonstrated or suggested within the '814 patent.

Accordingly, Claims 1-3 of the '814 patent are invalid as obvious over *Szarewski* alone, or in combination with any or all of Lunell, *Hodgen* or *Tuimali.*

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

3.    CLAIMS 1-3 OF THE '814 PATENT ARE OBVIOUS OVER *RIZK* IN VIEW OF *CASTAMAN, LUNELL, HODGEN,* OR *TUIMALI.*

a.    DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMS AT ISSUE

*Rizk* relates to the treatment of excessive menstrual bleeding in patients with congenital afibrinogenemia through the use of continuous oral contraception, which prevents menstruation and ovulation.

However, *Rizk* used an oral contraceptive having 0.03 mg ethinyl estradiol and 150 mg levonorgestrel, which contains more than 20μg ethinyl estradiol.

b.    APPLICATION OF THE PRIOR ART TO THE '814 PATENT CLAIMS

It would have been obvious for the skilled artisan to select an oral contraceptive pill having an appropriate dosage for achieving contraception and to supress the menstrual cycle. In particular, determining optimal dosage ranges is within the ability of the skilled artisan. Slight differences in the dosage amounts of the estrogen component will not support the patentability of subject matter encompassed by the prior art, unless there is evidence indicating such dosages are critical. "[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Aller*, 220 F.2d 454, 456 (CCPA 1955). There is no indication in the disclosure of the '814 patent that this dosage imparts any criticality to the claims.

In fact, *Castaman* reports the inhibition of ovulation by oral contraceptive, using an oral contraceptive treatment having 0.02 mg ethinyl estradiol and 0.15 mg desogestrel. Since *Castaman* also relates to treating patients with congenital afibrinogenemia, it would have been obvious to use a contraceptive having 0.02 mg ethinyl estradiol and 0.15 mg desogestrel in the method disclosed by *Rizk*, with a reasonable expectation of success.

Moreover, elsewhere the prior art teaches that dosage amounts of 20μg ethinyl estradiol will provide inhibition of ovulation and good cycle control. *See, e.g., Lunell* and *Hodgen*. In fact, *Tuimali* teaches that 20μg ethinyl estradiol is comparable to 30μg ethinyl estradiol in efficacy and in good cycle control. In fact, by the Applicant's own admission, amounts of "more than 15μg of ethinyl estradiol" were "considered typically necessary in prior art contraceptives." See column 4, lines 34-36 of the '814 patent. This suggests that 20μg ethinyl estradiol, for example, would have been considered an appropriate amount for use in oral contraceptives in the prior art. Accordingly, Claims 1-3 of the '814 patent are invalid as obvious over *Rizk* in view of *Castaman*.

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

4.    **CLAIMS 1-3 OF THE '814 PATENT ARE OBVIOUS OVER *CASTAMAN* IN VIEW OF *RIZK***

a.    **DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMS AT ISSUE**

*Castaman* relates to the inhibition of ovulation by oral contraceptive in patients with congenital afibrinogenemia, in order to prevent bleeding complications. (Since ovulation is inhibited, it follows that the menstrual cycle is also suppressed.) They report the continuous use of an oral contraceptive treatment having 0.02 mg ethinyl estradiol and 0.15 mg desogestrel.

The authors are silent with respect to whether such administration was taken without any break (*i.e.*, without any placebo or any hormone-free intervals).

b.    **APPLICATION OF THE PRIOR ART TO THE '814 PATENT CLAIMS**

It would have been obvious for the skilled artisan to use oral contraceptives continuously in order to avoid complications in women having excessive menstrual bleeding. In this regard, *Rizk* also relates to the treatment of excessive menstrual bleeding in patients with congenital afibrinogenemia through the use of continuous oral contraception. As such, a skilled artisan would administer oral contraceptive pills continuously without any break to not only suppress ovulation, but also to avoid any withdrawal bleeding associated with placebo or hormone-free intervals, with a reasonable expectation of success. Accordingly, all claims of the '814 patent are invalid as obvious over *Castaman* in view of *Rizk*.

5.    **CLAIMS 1-3 OF THE '814 PATENT ARE OBVIOUS OVER WO '686 IN VIEW OF ANY OR ALL OF LUNELL, HODGEN, OR TUIMALI.**

a.    **DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMS AT ISSUE**

WO '686 teaches that oral contraceptive pills can be administered for an extended period of time. For individuals who wish to extend the length of their medically regulated menstrual cycles beyond the usual 4 week term, the number of estrogen/progestin-combination oral dosage units can be increased, *e.g.*, to 21 or more, e.g., 20 or up to 180 units or more. *See, e.g.*, page 6, lines 32-page 7, line 2. Also, the daily doses can be the same throughout the month or can vary from week to week. *See, e.g.*, page 7, lines 30-31.

The dosage of ethinyl estradiol is about 5 to 35µg of ethinyl estradiol, which encompasses an amount of ethinyl estradiol of "not greater than 20µg per day."

**Watson Pharmaceuticals**    311 Bonnie Circle, Corona, CA 92880-2882    T 951.493.5300    www.watson.com

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

       b.    **APPLICATION OF THE PRIOR ART TO THE '814 PATENT CLAIMS**

It would have been obvious for the skilled artisan to select an oral contraceptive pill having an appropriate dosage for achieving contraception and to suppress the menstrual cycle. In particular, determining optimal dosage ranges is within the ability of the skilled artisan. Slight differences in the dosage amounts of the estrogen component will not support the patentability of subject matter encompassed by the prior art, unless there is evidence indicating such dosages are critical. "[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Aller*, 220 F.2d 454, 456 (CCPA 1955). There is no indication in the disclosure of the '814 patent that this dosage imparts any criticality to the claims.

Moreover, elsewhere the prior art teaches that dosage amounts of 20µg ethinyl estradiol will provide inhibition of ovulation and good cycle control. *See, e.g., Lunell* and *Hodgen*. In fact, *Tuimali* teaches that 20µg ethinyl estradiol is comparable to 30µg ethinyl estradiol in efficacy and in good cycle control. In fact, by the Applicant's own admission, amounts of "more than 15µg of ethinyl estradiol" were "considered typically necessary in prior art contraceptives." See column 4, lines 34-36 of the '814 patent. This suggests that 20µg ethinyl estradiol, for example, would have been considered an appropriate amount for use in oral contraceptives in the prior art. Accordingly, Claims 1-3 of the '814 patent are invalid as obvious over WO '686 alone or in view of Lunell, Hodgen, or Tuimali.

       6.    **CLAIMS 1-3 OF THE '814 PATENT ARE OBVIOUS IN VIEW OF *COUTINHO* IN VIEW OF ANY OF LUNELL, HODGEN, OR TUIMALI.**

       a.    **DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMS AT ISSUE**

*Coutinho* reports a trial where a contraceptive pill containing 250 µg levonorgestrel and 50µg ethinyl estradiol was administered on a continuous (*i.e.*, daily) basis by the vaginal route for a period of one year.

The dosage of ethinyl estradiol is 50µg, which is "greater than 20µg per day" and the pills are administered by the vaginal route.

       b.    **APPLICATION OF THE PRIOR ART TO THE '814 PATENT CLAIMS**

It would have been obvious for the skilled artisan to select an oral contraceptive pill having an appropriate dosage of ethinyl estradiol, as well as oral administration.

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

For example, the skilled artisan would have a reasonable expectation of success that oral administration of this regimen would also be effective. For example, WO '686 teaches that pills may be administered by any conventional manner, including orally, intramuscular injection, transdermally and by way of vaginal ring. The '814 patent does not demonstrate any criticality with respect to the mode of administration. In fact, the Applicant states that their product can be administered intravaginally at column 2, line 59.

It would have been obvious for the skilled artisan to select an oral contraceptive pill having an appropriate dosage for achieving contraception and to suppress the menstrual cycle. In particular, determining optimal dosage ranges is within the ability of the skilled artisan. Slight differences in the dosage amounts of the estrogen component will not support the patentability of subject matter encompassed by the prior art, unless there is evidence indicating such dosages are critical. "[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Aller*, 220 F.2d 454, 456 (CCPA 1955). There is no indication in the disclosure of the '814 patent that this dosage imparts any criticality to the claims.

Moreover, elsewhere the prior art teaches that dosage amounts of 20μg ethinyl estradiol will provide inhibition of ovulation and good cycle control. *See, e.g., Lunell* and *Hodgen*. In fact, *Tuimali* teaches that 20μg ethinyl estradiol is comparable to 30μg ethinyl estradiol in efficacy and in good cycle control. In fact, by the Applicant's own admission, amounts of "more than 15μg of ethinyl estradiol" were "considered typically necessary in prior art contraceptives." See column 4, lines 34-36 of the '814 patent. This suggests that 20μg ethinyl estradiol, for example, would have been considered an appropriate amount for use in oral contraceptives in the prior art. Accordingly, all claims of the '814 patent are invalid as obvious over Coutinho in view of any of *Lunell, Hodgen,* or *Tuimali.*

## II.    CLAIMS 1-3 OF THE '814 PATENT ARE INVALID UNDER 35 U.S.C. § 112, FIRST PARAGRAPH, FOR LACK OF WRITTEN DESCRIPTION

In the November 9, 2001 response during prosecution of the patent application that later issued as the '814 patent, the claims were amended to recite an "administration period of greater than 110 days." This amendment was made to avoid a prior art reference, *Hodgen*, which taught administration for 110 days, and which was asserted in a rejection based on 35 U.S.C. § 102(e). No written description support exists in the originally-filed application for an "administration period of greater than 110 days."

The specification does not contain any specific disclosure of an "administration period of greater than 110 days." The Applicant argued that the amendment was supported by the originally-filed specification because it "clearly conveys the concept of

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

contraception in which administration is continuous regardless of the administration period." In particular, the Applicant stated that:

> In order to satisfy the written description requirement of 35 U.S.C. § 112, first paragraph, the originally-field disclosure need not provide *in haec verba* support for the claimed subject matter, but the disclosure must convey, with reasonable clarity to those skilled in the art, that the inventor was in possession of the invention as claimed. *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000). Put another way, one skilled in the art, reading the original disclosure, must immediately discern the limitation at issue in the claims. *Id.* In this case, because there is no *in haec verba* support for the term "administration period of greater than 110 days," the question becomes whether one of ordinary skill in the art would immediately have discerned, from the originally-filed disclosure, the "administration period of greater than 110 days" element. It is our opinion that this element would not have immediately been discerned from the originally-filed disclosure.

Nothing in the originally-filed specification would have directed one of ordinary skill in the art to conclude that "administration period of greater than 110 days" was an important defining aspect of the disclosed invention. Other than falling within the timeframes set forth in the prior art *Hodgen* disclosure, there is nothing to suggest that 110 days has any importance.

Here, although one skilled in the art may be able to infer from the recitation of the generic timeframes, that an "administration period of greater than 110 days" would be feasible, there is no other disclosure in the specification that would indicate that an "administration period of greater than 110 days" was contemplated. *See, e.g., In re Gosteli*, 872 F.2d 1008 (Fed. Cir. 1989)(Holding that disclosure of a subgenus of chemical compounds did not provide a written description of an encompassing genus.); *Vas Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991)("[t]he description of a single embodiment of broadly claimed subject matter constitutes a description of the invention for anticipation purposes . . . ., whereas the same information in a specification might not alone be enough to provide a description of that invention for purposes of adequate disclosure.").

Therefore, the application, as originally filed, does not provide written description for "administration period of greater than 110 days" as recited in Claims 1 and 3. Claim 2 depends from Claims 1 and 3, respectively. The element of "administration period of greater than 110 days" is included in claim 2 by virtue of dependency. Hence, Claim 2 is also invalid under 35 U.S.C. § 112, first paragraph for failing to meet the written description requirement with respect to this claim element. Consequently, Claims 1-3 of the '814 patent are invalid under 35 U.S.C. § 112, first paragraph.

*    *    *

Watson Pharmaceuticals    311 Bonnie Circle, Corona, CA 92880-2882    T 951.493.5300    www.watson.com

**WATSON LABORATORIES, INC.'S CONFIDENTIAL DETAILED
FACTUAL AND LEGAL BASES FOR WATSON'S PARAGRAPH IV
CERTIFICATION THAT U.S. PATENT NO. 6,500,814 IS
INVALID, UNENFORCEABLE AND/OR WILL NOT BE INFRINGED**

Watson reserves all rights to raise any additional defenses relating to invalidity, unenforceability, and non-infringement.

Watson Pharmaceuticals

311 Bonnie Circle, Corona, CA 92880-2882    T 951.493.5300    www.watson.com

**EXHIBIT D**



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Chief Executive Officer
Wyeth Pharmaceuticals
500 Arcola Road
Collegeville, PA 19406

2. Article Number
(Transfer from service label)
7003 2260 0003 8706 7634

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Mike Ru
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

---

CERTIFIED MAIL.

7003 2260 0003 8706 7634
7003 2260 0003 8706 7634

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

Postage    $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees    $ 6.45

Sent To  Chief Executive Officer
Street, Apt. No.;  Wyeth Pharmaceuticals
or PO Box No.  500 Arcola Road
City, State, ZIP+4  Collegeville, PA 19406

RA

CORONA POST OFFICE  JAN 28 [ ]  USPS

---

• Sender: Please print your name, address, and ZIP+4 in this box •

Watson Laboratories, Inc.
Ernest E. Kingue
311 Bonnie Circle
Corona, CA 92880

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**<u>EXHIBIT E</u>**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Chief Executive Officer
Wyeth Pharmaceuticals
5 Giralda Farms
Madison, New Jersey 07940

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7003 2260 0003 8706 7641

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

---

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7003 2260 0003 8706 7641
7003 2260 0003 8706 7641

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

Postage   $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees   $ 6.45

Sent To  Chief Executive Officer Wyeth Pharmaceuticals
Street, Apt. No.;  5 Giralda Farms
or PO Box No.
City, State, ZIP+4  Madison, New Jersey 07940

PS Form 3800, June 2002     See Reverse for Instructions

CORONA POST OFFICE

---

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Watson Laboratories, Inc.
Ernest E. Lengle
311 Bonnie Circle
Corona, CA 92880

**EXHIBIT F**

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

**EXHIBIT G**




# State of California

## OFFICE OF THE SECRETARY OF STATE

CORPORATION NUMBER

**1817690**

## CERTIFICATE OF QUALIFICATION

*I, MARCH FONG EU, Secretary of State of the State of California, hereby certify:*

*That on the* __20th__ *day of* __March__ *, 19* __92__ *,*

__WATSON LABORATORIES, INC.__

*a corporation organized and existing under the laws of* _____

__Nevada__ *, complied with the requirements of California law in effect on that date for the purpose of qualifying to transact intrastate business in the State of California and that as of said date said corporation became and now is fully qualified and authorized to transact intrastate business in the State of California, subject, however, to any licensing requirements otherwise imposed by the laws of this State.*

**In Witness Whereof, I execute this certificate and affix the Great Seal of the State of California this** 23rd **day of** March 1992

*March Fong Eu*

**Secretary of State**



SEC/STATE FORM CE 111 (Rev. 10/87)





# State of California

**1817690**

## OFFICE OF THE SECRETARY OF STATE

### CORPORATION DIVISION

I, *MARCH FONG EU*, Secretary of State of the State of California, hereby certify:

That the annexed transcript has been compared with the corporate record on file in this office, of which it purports to be a copy, and that same is full, true and correct.

*IN WITNESS WHEREOF,* I execute this certificate and affix the Great Seal of the State of California this

MAR 2 3 1992



*March Fong Eu*

*Secretary of State*

**1817690**

STATEMENT AND DESIGNATION
BY
FOREIGN CORPORATION

ENDORSED
FILED
In the office of the Secretary of State
of the State of California

MAR 20 1992

MARCH FONG EU, Secretary of State

WATSON LABORATORIES, INC.
_____
(Name of Corporation)

a corporation organized and existing under the laws of     Nevada
                                                    (Place or State of Incorporation)
makes the following statements and designation:

   1.  The address of its principal executive office is  132-A Business Center Drive,
Corona, CA 91720
_____
(Insert complete address of principal executive office wherever
located - Do not use Post Office Box)

   2.  The address of its principal office in the State of California is
132-A Business Center Drive, Corona, CA 91720
_____
(Insert complete address of principal office in California - Do
not use Post Office Box)

DESIGNATION OF AGENT FOR SERVICE OF PROCESS WITHIN THE STATE OF CALIFORNIA

   3.  (Use this paragraph if the process agent is a natural person.)

   Allen Y. Chao
_____
a natural person residing in the State of California, whose complete address is

   132-A Business Center Drive, Corona, California 91720
_____
(Do not use Post Office Box)

is designated as its agent upon whom process directed to the corporation may be
served  within the State of California in the manner provided by law.

NOTE:  Either the business address or the residence address must be given.  Indicate
which by check mark in proper box.

(FORM TO BE COMPLETED ON REVERSE SIDE)

4.  (Use this paragraph if the process agent is a corporation.  See instructions.)

_____, a corporation organized
and existing under the laws of _____ is designated as
agent upon whom process directed to the undersigned corporation may be served within
the State of California, in the manner provided by law.

NOTE:  Before it may be designated by any foreign corporation as its agent for
       service of process, a corporate agent must comply with Section 1505,
       California Corporations Code.  (See instruction 2.)

5.  The undersigned corporation hereby irrevocably consents to service of process
directed to it upon the agent designated above, and to service of process on the
Secretary of State of the State of California if the agent so designated or the
agent's successor is no longer authorized to act or cannot be found at the address
given.

                                WATSON LABORATORIES, INC.
                                _____
                                (Name of Corporation)


                                _____
                                (Signature of corporate officer)


                                Allen Y. Chao, President
                                _____
                                (Typed name and title of officer signing)


INSTRUCTIONS:

1. There must be annexed to this statement, a certificate by an authorized public official of the state or
   place of incorporation of the corporation, to the effect that the corporation making the statement is
   an existing corporation in good standing in that state or place.  IF A NONPROFIT CORPORATION IS TO BE
   QUALIFIED, the certificate must also indicate that the corporation is a nonstock, nonprofit
   corporation.

2. No domestic corporation may be designated as agent for service of process unless it has filed with the
   Secretary of State the certificate provided for by Section 1505, Corporations Code, and no foreign
   corporation may be designated unless it has qualified for the transaction of intrastate business in
   California and has filed with the Secretary of State of the State of California the certificate
   provided for by Section 1505, California Corporations Code.  A domestic or foreign corporation must be
   currently authorized to engage in business in this State and be in good standing status on the records
   of the Secretary of State of the State of California, in order to file a certificate pursuant to this
   section.

NOTE:  A CORPORATION CANNOT ACT FOR ITSELF AS AGENT FOR SERVICE OF PROCESS.

3. If a corporation is required to qualify under a D.B.A. (name other than the true corporate name)
   pursuant to Section 2106(b), Corporations Code, then in the first line of this statement set out the
   correct corporate name, followed by "which will do business in California as _____,"
   setting forth the D.B.A. in the space indicated.  The D.B.A. should not be set out in connection with
   the corporate name anywhere else in the statement.

4. If the corporation changes its name or if there are any changes in the information contained in this
   statement, then the corporation must file an Amended Statement and Designation.  A form may be obtained
   from the Secretary of State.

**EXHIBIT H**

File Number _____ 5676 708 8 _____

922236363



# STATE OF ILLINOIS
## OFFICE OF
## THE SECRETARY OF STATE

92236361

**Whereas,** APPLICATION FOR CERTIFICATE OF AUTHORITY TO TRANSACT
BUSINESS IN THIS STATE OF

WATSON LABORATORIES, INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEVADA    HAS BEEN
FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE
BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

DEPT OF RECORDING    $25.
T#5555  TRAN 3555 04/08/92 10:14:00
#1632 #  *-92-236361
COOK COUNTY RECORDER

922236361

*Now Therefore, I, George H. Ryan, Secretary of State of the
State of Illinois, by virtue of the powers vested in me by law, do
hereby issue this certificate and attach hereto a copy of the
Application of the aforesaid corporation.*

**In Testimony Whereof,** *I hereto set my hand and cause to
be affixed the Great Seal of the State of Illinois,
at the City of Springfield, this _____ 26th _____
day of _____ MARCH _____ A.D. 19 92 and
of the Independence of the United States
the two hundred and _____ 16th _____.*



*George H. Ryan*
SECRETARY OF STATE

25.00

C-212

BOX 389 (M37)

Form **BCA-13.15**
(Rev. Jan. 1991)

**APPLICATION FOR CERTIFICATE
OF AUTHORITY TO
TRANSACT BUSINESS IN ILLINOIS**

*SUBMIT IN DUPLICATE*

George H. Ryan
Secretary of State
Department of Business Services
Springfield, IL 62756
Telephone (217) 782-6961

Payment must be made by certified check, cashier's check, Illinois attorney's check, Illinois C.P.A.'s check or money order, payable to "Secretary of State."

FILED

MAR 2 6 1992

GEORGE H. RYAN
SECRETARY OF STATE

| This space for use by Secretary of State | |
|---|---|
| Date 3-26-92 | |
| License Fee | $ 25-00 |
| Franchise Tax | $ 75-00 |
| Filing Fee | $ |
| Penalties | $ |
| Approved | $ 100.00 |

1. (a) CORPORATE NAME: WATSON LABORATORIES, INC.

   *(Complete item 1 (b) only if the corporate name is not available in this state.)*

   (b) ASSUMED CORPORATE NAME: _____

   (By electing this assumed name, the corporation hereby agrees NOT to use its corporate name in the transaction of business in Illinois. Form BCA 4.15 is attached.)

2. (a) State or Country of Incorporation: Nevada
   (b) Date of Incorporation: 2/20/92
   (c) Period of Duration: Perpetual

3. (a) Address of the principal office, wherever located:

   132-A Business Center Drive

   Corona, California 91720

   (b) Address of principal office in Illinois:

   890 Shoreline Road

   Barrington, IL 60010

4. Name and address of the registered agent and registered office in Illinois.

   Registered Agent  Michel         J.              Feldman
                     *First Name*   *Middle Name*   *Last Name*

   Registered Office  30 North LaSalle Street, Suite 2900
                      *Number*    *Street*      *Suite #*

                      Chicago      60602         Cook
                      *City*       *Zip Code*    *County*

5. States and countries in which it is admitted or qualified to transact business:  CA

6. Names and residential addresses of officers and directors:

| | Name | No. & Street | City | State | Zip |
|---|---|---|---|---|---|
| President | Allen Y. Chao | 15192 Lille Circle, Irvine, CA 92714 | | | |
| Secretary | Agnes Y. Kung | 2354 S. Crenshaw Blvd., Bld. 102, Torrance, CA | | | 90505 |
| Director | Allen Y. Chao | 15192 Lille Circle | Irvine, CA | | 92714 |
| Director | David C. Hsia | 21 Foxhill, Irvine, CA 92714 | | | |
| Director | Alec D. Keith | 539 Beaumont Dr., Boalsburg, PA | | | 16801 |

If more than 3, attach list

7. Purpose or purposes proposed to be pursued in transacting business in this state:

(If not sufficient space to cover this point, add one or more sheets of this size.)

To engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law and as * under the Illinois Business Corporation Act of 1983, as amended.

*permitted

8. Authorized and issued shares:

| Class | Series | Par Value | Number of Shares Authorized | Number of Shares Issued |
|-------|--------|-----------|------------------------------|--------------------------|
| Common | None | $.01 | 1,000 | 1,000 |

9. Paid-in Capital: $ 1,000.00

("Paid-in Capital" replaces the terms Stated Capital & Paid-in Surplus and is equal to the total of these accounts.)

10. (a) Give an estimate of the total value of all the property* of the corporation for the following year: $ 14 million

(b) Give an estimate of the total value of all the property* of the corporation for the following year that will be located in Illinois: $ 1,000.00

(c) State the estimated total business of the corporation to be transacted by it everywhere for the following year: $ 26 million

(d) State the estimated annual business of the corporation to be transacted by it at or from places of business in the State of Illinois: $ 0

11. Interrogatories:

** (a) Office or offices to which all contracts with the corporation are forwarded for final acceptance: 132-A Business Center Drive Corona, CA 91720

(b) Number of shares of all classes owned by residents of Illinois: 0

(c) Number of shares of all classes owned by non-residents of Illinois: 1,000

(d) Is the corporation transacting business in this state at this time? no

(e) If the answer to item 11(d) is yes, state the exact date on which it commenced to transact business in Illinois:

12. This application is accompanied by a copy of the articles of incorporation, as amended, duly authenticated, within the last ninety (90) days, by the proper officer of the state or country wherein the corporation is incorporated.

13. The undersigned corporation has caused this statement to be signed by its duly authorized officers, each of whom affirms, under penalties of perjury, that the facts stated herein are true.

Dated March , 19 92    WATSON LABORATORIES, INC.

(Exact Name of Corporation)

attested by _____ by _____

(Signature of Secretary or Assistant Secretary)    (Signature of President or Vice President)

Michel J. Feldman, Asst.    Allen Y. Chao, President

(Type or Print Name and Title) Secretary    (Type or Print Name and Title)

* PROPERTY as used in this application shall apply to all property of the corporation, real, personal, tangible, intangible, or mixed without qualifications.

** When the response to #11(a) lists ONLY an Illinois address, then the total business as reflected in #10(c) is also considered to be Illinois business for the purpose of computing the Illinois allocation factor. By signing this application, the corporation affirms that it is aware that the amount of paid-in capital, and consequently the amount of license fees and franchise taxes, may be proportionately higher due to the Illinois address shown under #11(a).

C-171.4

# **<u>EXHIBIT I</u>**

# EXHIBIT REDACTED IN ITS ENTIRETY

**EXHIBIT J**

PAGE    1



# State of Delaware

# Office of Secretary of State

I, MICHAEL RATCHFORD, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF RESTATED CERTIFICATE OF INCORPORATION OF "THERATECH, INC." FILED IN THIS OFFICE ON THE TWENTIETH DAY OF JULY, A.D. 1992, AT 3 O'CLOCK P.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO NEW CASTLE COUNTY RECORDER OF DEEDS  FOR RECORDING.

\* \* \* \* \* \* \* \* \* \*



Michael Ratchford, Secretary of State

AUTHENTICATION:    \*3531023

DATE:     07/24/1992

732202019

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 03:00 PM 07/20/1992
732202019 - 2293487

## RESTATED CERTIFICATE OF INCORPORATION

### OF

### THERATECH, INC.,

### a Delaware corporation

---

TheraTech, Inc., a corporation organized and existing under the laws of the State of Delaware,

DOES HEREBY CERTIFY THAT:

A.    The name of the corporation is TheraTech, Inc., and the date of filing of its original Certificate of Incorporation with the Secretary of State was April 6, 1992.

B.    This Restated Certificate of Incorporation was duly adopted in accordance with the provisions of Sections 242 and 245 of the General Corporation law of the State of Delaware by (i) the Board of Directors of the Corporation (the "Board") by unanimous written consent of the Board in accordance with Section 141(f) of the Delaware Corporation Law and (ii) the sole stockholder of the corporation by written consent of the stockholder given in accordance with Section 228 of the General Corporation Law of the State of Delaware.

1

C.    The text of the Certificate of Incorporation is hereby amended and restated to read in full as follows:

1.    The name of the Corporation is TheraTech, Inc.

2.    The address of its registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, 19801, County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.

3.    The nature of the business of the Corporation and the objects or purposes to be transacted, promoted or carried on by it are as follows:  To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.    The total number of shares of all classes of stock that the Corporation is authorized to issue is thirty million (30,000,000) shares, consisting of (i) twenty-five million (25,000,000) shares of Common Stock with a par value of one cent ($.01) per share and (ii) five million (5,000,000) shares of Preferred Stock with a par value of one cent ($.01) per share.

A.    Preferred Stock.  The Preferred Stock may be issued in one or more series, and the Board of Directors of the Corporation is expressly authorized (i) to fix the descriptions, powers, preferences, rights, qualifications, limitations, and restrictions with respect to any series of Preferred Stock and (ii) to specify the number of shares of any series of Preferred Stock.

B.    Common Stock

(1)    Classification.  The Common Stock shall consist of one class of twenty-five million (25,000,000) shares.

(2)    Dividends.  Subject to the rights of holders of Preferred Stock, such dividends (either in cash, stock or otherwise) as may be determined by the Board of Directors may be declared and paid on the Common Stock from time to time in accordance with the laws of Delaware; and the Preferred Stock shall not be entitled to participate in any such dividends, whether payable in cash, stock or otherwise, except to the extent, if any, specified in this Certificate of Incorporation or any Statement of Designations.

2

(3) **Voting.** Each record holder of Common Stock shall have one vote for each share standing in his name on the books of the Corporation and entitled to vote, subject to the provisions of any Statements of Designations theretofore filed by the Board of Directors and the other provisions of this Section. Cumulative voting shall not be allowed in the election of director or for any other purpose.

5. The board of directors is expressly authorized to make, alter, or repeal the Bylaws of the Corporation.

6. Elections of directors need not be by written ballot unless the Bylaws of the Corporation shall so provide.

7. Whenever a compromise or arrangement is proposed between this Corporation and its creditors or any class of them and/or between this Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this Corporation or of any creditor or stockholder thereof, or on the application of any receiver or receivers appointed for this Corporation under the provisions of Section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under the provisions of Section 279 of Title 8 of the Delaware Code order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this Corporation, as the case may be, and also on this Corporation.

8. The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Restated Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

3

9.  To the fullest extent permitted by Delaware statutory or decisional law, as amended or interpreted, no director of this Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.  This Section 9 does not affect the availability of equitable remedies for breach of fiduciary duties.  Any repeal or modification of the provisions of this Section 9 by the stockholders of the Corporation shall not adversely affect any right or protection of any director existing at the time of such repeal or modification.

10.  The vote of the stockholders of the Corporation which shall be required to approve any Business Combination (as hereinafter defined) shall be as set forth in this Section 10.

(1)  In addition to any affirmative vote required by law, any other provision of this Restated Certificate of Incorporation or otherwise, and except as otherwise expressly provided in paragraph (2) or (6) of this Section 10, none of the following transactions shall be consummated unless and until such transaction shall have been approved by the affirmative vote of the holders of at least 66-2/3 percent of the combined voting power of the outstanding shares of stock of all classes and series of the Corporation entitled to vote generally in the election of directors ("Capital Stock"):

(A)  any merger or consolidation of the Corporation or any material Subsidiary (as hereinafter defined) with or into (i) any corporation which is an Interested Stockholder (as hereafter defined) or (ii) any other corporation which is or after such merger or consolidation would be an Interested Stockholder; or

(B)  any sale, License (as hereinafter defined), lease, exchange, mortgage, pledge, transfer or other disposition (whether in one transaction or a series of transactions) to or with any Interested Stockholder of any material asset or assets of the Corporation; or

(C)  the issuance or transfer by the Corporation or any Subsidiary (whether in one transaction or a series of transactions) to an Interested Stockholder of any securities of the Corporation or any Subsidiary in exchange for cash, securities or other property (or a combination thereof) having an aggregate Fair Market Value (as hereinafter defined) of $10 million or more; or

4

SENT BY:Morrison & Foerster   : 7-21-92 ;11:21AM ;        4154248851→        3026748340:# 8

(D)  the adoption of any plan or proposal for the liquidation or dissolution of the Corporation or any material Subsidiary; or

(E)  any reclassification of any securities of the Corporation (including any reverse stock split), any recapitalization of the Corporation, any merger or consolidation of the Corporation with or into any of its Subsidiaries, or any other transaction (whether or not with or involving any Interested Stockholder), which has the effect, directly or indirectly, of increasing the proportionate share of the outstanding shares of any class of stock or series thereof of the Corporation or of any Subsidiary directly or indirectly Beneficially Owned (as hereinafter defined) by any Interested Stockholder or as a result of which the stockholders of the Corporation would cease to be stockholders of a corporation having, as part of its articles or certificate of incorporation, provisions to the same effect as this Section 10 and the provisions of Section 12 hereof relating to amendments or changes to this Section 10.

The term "Business Combination" as used in this Section 10 shall mean any transaction or proposed transaction which is referred to in any one or more of the foregoing subparagraphs (A) through (E) of this paragraph (1) of this Section 10.

(2)  The provisions of paragraph (1) of this Section 10 shall not be applicable to any particular Business Combination, and such Business Combination shall require only such vote, if any, as is required by law and any other Section hereof or any agreement between the Corporation and any national securities exchange or otherwise, if all of the conditions specified in either of the following paragraphs (A) or (B) are satisfied:

(A)  such Business Combination shall have been approved by a majority of the Disinterested Directors (as hereinafter defined) or, in the case of a License, approved by a majority of the Disinterested Directors or a committee of Disinterested Directors designated by the Board of Directors; or

5

SENT BY:Morrison & Foerster   ; 7-21-92 ;11:21AM ;        4154248851→        3026748340;# 9

(B)  if all the conditions specified in each of the following subparagraphs (i), (ii), (iii), (iv) and (v) are satisfied:

(i)  the aggregate amount of the cash and the Fair Market Value as of the date of the consummation of the Business Combination of any consideration other than cash to be received per share by holders of Capital Stock in such Business Combination, shall be at least equal to the higher of the following:

(a)  if applicable, the highest per share price (including any brokerage commissions, transfer taxes, soliciting dealers' fees and other expenses) paid by the Interested Stockholder involved in such Business Combination for any shares of Capital Stock acquired by it during the five-year period immediately prior to the consummation date of such Business Combination; and

(b)  the Fair Market Value per share of Capital Stock on the Determination Date (as hereinafter defined) in respect of such Interested Stockholder, the Announcement Date (as hereinafter defined) or the consummation date of such Business Combination, whichever is highest; provided, however, that the prices referred to in the foregoing clauses (a) and (b) of this subparagraph (i) shall be adjusted to reflect fairly any stock dividend, stock split, reverse stock split, combination of shares, recapitalization, reorganization or similar event affecting the number of shares of Capital Stock outstanding and the market price per share of outstanding shares of Capital Stock which has occurred after the date as of which such price is determined; and

(ii)  unless otherwise specifically required by law, the holders of shares of Capital Stock shall have the right, at their option, to receive payment in cash as the consideration for their shares in the Business Combination, if cash was previously paid by the Interested Stockholder involved in such Business Combination in order to acquire any shares of Capital Stock or any interest in shares of Capital Stock within the two-year period immediately prior to the Announcement Date; and

(iii)  after the Determination Date in respect of the Interested Stockholder involved in such Business Combination and prior to the consummation of such Business Combination:

6

SENT BY:Morrison & Foerster  : 7-21-92 ;11:22AM ;     4154248851→          3026748340;#10

(a)  if regular dividends have been paid by the Corporation, except as approved by a majority of the Disinterested Directors, there shall have been no failure to declare and pay at the regular date therefor any dividend (whether or not cumulative);

(b)  there shall have been no reduction in the annual rate of dividends, if any, paid on the Capital Stock (except as necessary to reflect any subdivision of the Capital Stock), except as approved by a majority of the Disinterested Directors;

(c)  there shall have been an increase in such annual rate of dividends as necessary to reflect any reclassification (including any reverse stock split or combination of shares), recapitalization, reorganization or any similar transaction which has the effect of reducing the number of outstanding shares of the Capital Stock, unless the failure to increase such annual rate is approved by a majority of the Disinterested Directors; and

(d)  such Interested Stockholder shall not have become the beneficial owner of any additional shares of Capital Stock except as part of the transaction which results in such Interested Stockholder becoming an Interested Stockholder; and

(iv)  after the Determination Date in respect of the Interested Stockholder involved in such Business Combination, such Interested Stockholder shall not have received the benefit, directly or indirectly (except as a shareholder of the Corporation, in proportion to its shareholding), of any loans, advances, guarantees, pledges or other financial assistance or any tax credits or other tax advantages provided by the Corporation, whether in anticipation of or in connection with such Business Combination or otherwise; and

(v)  a proxy or information statement describing the proposed Business Combination and complying with the requirements of the Securities Exchange Act of 1934 and the rules and regulations thereunder (or any subsequent provisions replacing or revising such Act, rules or regulations) shall, at the Corporation's expense, be mailed to stockholders of the Corporation at least 30 days prior to the consummation of such Business Combination (whether or not such proxy or information statement is required to be mailed

7

SENT BY:Morrison & Foerster    ; 7-21-92 ;11:23AM ;          4154248851→          3028748340;#11

pursuant to such Act, rules or regulations or subsequent provisions), and the Disinterested Directors, if there are any at the time, shall have been provided a reasonable opportunity to state their views therein with respect to such proposed Business Combination and to include therewith an opinion of an independent investment banking or appraisal firm selected by the Disinterested Directors with respect to such Business Combination.

(3)  For the purpose of this Section 10

(A)  An "Affiliate" of a person shall mean any person who, directly or indirectly, controls, is controlled by or is under common control with such person.

(B)  "Announcement Date" with respect to any Business Combination means the date on which the proposal of such Business Combination is first publicly announced.

(C)  An "Associate" shall mean

(i)  with respect to a corporation or association, any officer or director thereof or of a subsidiary thereof,

(ii)  with respect to a partnership, any general partner thereof or any limited partner thereof having a ten percent ownership interest in such partnership,

(iii)  with respect to any other trust or an estate, any officer or trustee thereof or of any subsidiary thereof,

(iv)  with respect to any other trust or an estate, any trustee, executor or similar fiduciary and any person who has a substantial interest as a beneficiary of such trust or estate,

(v)  with respect to a natural person, the spouses and children thereof and any other relative thereof or of the spouse thereof who has the same home, and

(vi)  any Affiliate of any such person.

8

.SENT BY:Morrison & Foerster  : 7-21-92 :11:23AM :  .    4154248851¬    3026746340:#12

(D) A person shall be a "Beneficial Owner" of, or have "Beneficial Ownership" of or "Beneficially Own," any capital stock over which such person or any of its Affiliates or Associates, directly or indirectly, through any contract, arrangement, understanding or relationship, has or shares or, upon the exercise of any conversion right, exchange right, warrant, option or similar interest (whether or not then exercisable), would have or share either (i) voting power (including the power to vote or to direct the voting) of such security or (ii) investment power (including the power to dispose or direct the disposition) of such security. For the purposes of determining whether a person is an Interested Stockholder, the number of shares of capital stock deemed to be outstanding shall include any shares Beneficially Owned by such Person even though not actually outstanding, but shall not include any other shares of capital stock which are not outstanding but which may be issuable to other persons pursuant to any agreement, arrangement or understanding, or upon exercise of any conversion right, exchange right, warrant, option or similar interest.

(E) "Consolidated Transaction Reporting System" shall mean the system of reporting securities information operated under the authority of Rule 11Aa3-1 under the Securities Exchange Act of 1934, as such rule may from time to time be amended, and any successor rule or rules.

(F) "Determination Date" in respect of an Interested Stockholder shall mean the date on which such Interested Stockholder first became an Interested Stockholder.

(G) "Disinterested Director" shall mean any member of the Board of Directors of the Corporation who is not an Affiliate or Associate of, and was not directly or indirectly a nominee of, any Interested Stockholder involved in such Business Combination or any Affiliate or Associate of such Interested Stockholder and who (i) was a member of the Board of Directors of TheraTech, Inc., a Utah corporation, on March 1, 1992; (ii) was a member of the Board of Directors of the Corporation prior to the time that such Interested Stockholder became an Interested Stockholder or (iii) is a successor of a Disinterested Director and was nominated to succeed a Disinterested Director by a majority of the

9

SENT BY:Morrison & Foerster    ; 7-21-92 ;11:24AM ;    4154248851→    3026748340;#13

Disinterested Directors on the Board of Directors
at the time of his nomination.  Any reference to
"Disinterested Directors" shall refer to a single
Disinterested Director if there be but one.  Any
reference to an approval, designation or
determination by a majority of the Disinterested
Directors shall mean such approval, designation or
determination by a committee of the Board of
Directors comprised of all Disinterested Directors
and exercising its authority as a committee of the
Board to the extent permissible by law.

(H)  "Fair Market Value" as of any particular
date shall mean (i) in the case of stock, the
average of the closing sale price during the 90
trading days immediately preceding the date in
question of a share of such stock on the principal
United States securities exchange registered under
the Securities Exchange Act of 1934 on which such
stock is listed, or, if such stock is not listed on
any such exchange, the average of the last sale
prices at 4:00 p.m. New York time during the 90
trading days immediately preceding the date in
question reported in the Consolidated Transaction
Reporting System (as heretofore defined) or, if
such stock is not so reported, the average of the
highest reported bid and the lowest reported asked
quotations for a share of such stock furnished by
the National Association of Securities Dealers
Automated Quotation National Market System or any
successor quotation reporting system or, if
quotations are not available in such system, as
furnished by the National Quotation Bureau
Incorporated or, if quotations are not available in
such system, any similar organization furnishing
quotations and, if no such quotations are
available, the fair market value on the date in
question of a share of such stock as determined by
a majority of the Disinterested Directors in good
faith and (ii) in the case of property other than
cash or stock, the fair market value of such stock
or property, as the case may be, on the date in
question as determined by a reputable investment
banking or appraisal firm in good faith (such firm
to be engaged solely on behalf of the stockholders
other than the Interested Stockholder, to be paid a
reasonable fee for their services by the
Corporation upon receipt of such opinion and which
fee shall not be contingent on the consummation of
the action or transaction, to be a firm which has
not previously been associated with or rendered

10

SENT BY:Morrison & Foerster   ; 7-21-92 ;11:25AM ;        4154248851→        3026748340;#14

substantial services to or acted as manager of an underwriting or as agent for the Interested Stockholder or any other person whose stock in the Corporation or any Subsidiary the Interested Stockholder beneficially owns or controls, and to be selected by a majority of the Disinterested Directors) and which value has been approved by a majority of the Disinterested Directors in good faith.

(I)  "Interested Stockholder" shall mean any person, other than the Corporation, any Subsidiary or any employee benefit plan of the Corporation or any Subsidiary, who or which (i) is the Beneficial Owner, directly or indirectly, of shares of Capital Stock which are entitled to cast five percent (5%) or more of the total votes which all of the then outstanding shares of Capital Stock are entitled to cast in the election of directors or is an Affiliate or Associate of any such person or (ii) acts with any other person as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of the Corporation, and such group is the Beneficial Owner, directly or indirectly, of shares of capital stock which are entitled to cast five (5%) percent or more of the total votes which all of the then outstanding shares of capital stock are entitled to cast in the election of directors, and any reference to a particular Interested Stockholder involved in a Business Combination shall also refer to any Affiliate or Associate thereof, any predecessor thereto and any other person acting as a member of a partnership, limited partnership, syndicate or group with such particular Interested Stockholder within the meaning of the foregoing clause (ii) of this subparagraph (I).

(J)  "License" shall mean a material license which is not granted in standard commercial transactions and is not generally available to commercial customers of the Corporation.

(K)  A "person" shall mean any individual, firm, corporation (which shall include a business trust), partnership, joint venture, trust or estate, association or other entity.

SENT BY:Morrison & Foerster  : 7-21-92 :11:25AM ;         4154248851→         3026748340;#15

(L)  "Subsidiary" shall mean any corporation or partnership of which a majority of any class of its equity securities is owned, directly or indirectly, by the Corporation.

(4)  A majority of the Disinterested Directors shall have the power and duty to determine, on the basis of information known to them after reasonable inquiry, all facts necessary to determine compliance with this Section 10, including, without limitation (i) whether a person is an Interested Stockholder, (ii) the number of shares of capital stock Beneficially Owned by any person, (iii) whether a person is an Affiliate or Associate of another person, (iv) whether the requirements of paragraph (2) of this Section 10 have been met with respect to any Business Combination, and (v) whether two or more transactions constitute a "series of transactions" for purposes of paragraph (1) of this Section 10.  The good faith determination of a majority of the Disinterested Directors on such matters shall be conclusive and binding for all purposes of this Section 10.

(5)  Nothing contained in this Section 11 shall be construed to relieve any Interested Stockholder from any fiduciary obligation imposed by law.

(6)  The provisions of paragraph (1) of this Section 11 shall not be applicable to any particular Business Combination, and such Business Combination shall require only such vote of stockholders, if any, as is required by law and any other Section hereof or any agreement between the Corporation and any national securities exchange or otherwise, if on the date of determining the stockholders entitled to vote on such Business Combination, the laws of the State of Delaware do not permit the corporation to require the affirmative vote of the holders of at least 66-2/3 percent of the combined voting power of the outstanding shares of capital stock to approve such Business Combination.

11.    Any action required or permitted to be taken by the stockholders of the Corporation must be effected at a duly called annual or special meeting of stockholders of the Corporation and may not be effected by any consent in writing by the stockholders.

12.    In addition to any requirements of law and any other provisions hereof (and notwithstanding the fact that approval by a lesser vote may be permitted by law or any other provision hereof), the affirmative vote of the holders

of at least 66-2/3 percent of the voting power of the then outstanding shares of stock of all classes and all series of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, alter, repeal, or adopt any provision inconsistent with, this Section 12 or Sections 10 or 11 hereof.

IN WITNESS WHEREOF, TheraTech, Inc. has caused this Certificate to be signed and attested by its duly authorized officers this 7th day of __April__, 1992.

THERATECH, INC., a
Delaware corporation

By: _____

Its: VICE PRESIDENT

Attest:

By: _____
        Secretary

13

*State of Delaware*

PAGE   1

*Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "THERATECH, INC.", CHANGING ITS NAME FROM "THERATECH, INC." TO "WATSON LABORATORIES, INC. - UTAH", FILED IN THIS OFFICE ON THE SEVENTH DAY OF OCTOBER, A.D. 1999, AT 4 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

2293487   8100

991425515

AUTHENTICATION:     0015741

DATE:     10-07-99

Oct. 7. 1999   3:30PM    NCR PH# 734 1450   FAX 3027341476

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 04:00 PM 10/07/1999
991425515 - 2293487

## STATE OF DELAWARE
### CERTIFICATE OF AMENDMENT OF
### CERTIFICATE OF INCORPORATION
#### OF
#### THERATECH, INC.

First:   That at a meeting of the sole director of TheraTech, Inc., resolutions were duly adopted setting forth a proposed amendment of the Certificate of Incorporation of said corporation, declaring said amendment to be advisable and calling a meeting of the sole stockholder of said corporation for consideration thereof.

The resolution setting forth the proposed amendment as follows:

RESOLVED, that the Certificate of Incorporation be amended by changing the Article thereof numbered "one" so that, as amended, said Article shall be read as follows:

The name of the Corporation is:

**Watson Laboratories, Inc. – Utah**

Second:  That thereafter, pursuant to resolution of its sole director, a special meeting of the sole stockholder of said corporation was duly called and held, upon notice in accordance with Section 222 of the General Corporation Law of the State of Delaware at which meeting the necessary number of shares as required by statute were votes in favor of the amendment.

Third:  That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

Fourth:  That the capital of said corporation shall not be reduced under or by reason of said amendment.

DATED as of the 29th day of September, 1999.

THERATECH, INC.

By: _____
Robert C. Funsten

Its:    Secretary



Legal/RCF/BOD/Cert of Amen Thera

*State of Delaware*

## Office of the Secretary of State

PAGE 1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "WATSON LABORATORIES, INC. - UTAH", CHANGING ITS NAME FROM "WATSON LABORATORIES, INC. - UTAH" TO "WATSON LABORATORIES, INC.", FILED IN THIS OFFICE ON THE TWENTIETH DAY OF DECEMBER, A.D. 2000, AT 3 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

2293487  8100

001640358

AUTHENTICATION: 0870224

DATE: 12-21-00

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 03:00 PM 12/20/2000
001640358 — 2293487

## CERTIFICATE OF AMENDMENT

### OF

## CERTIFICATE OF INCORPORATION

Watson Laboratories, Inc. - Utah, a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware,

### DOES HEREBY CERTIFY:

FIRST: That the Board of Directors of said corporation by the written consent of its member, filed with the minutes of the Board, adopted a resolution proposing and declaring advisable the following amendment to the Certificate of Incorporation of said corporation:

RESOLVED, that the Certificate of Incorporation of Watson Laboratories, Inc. - Utah be amended by changing the Article thereof numbered "one" so that, as amended, said Article shall be and read as follows:

The name of the Corporation is:

**Watson Laboratories, Inc.**

SECOND: That in lieu of a meeting and vote of the stockholder, the stockholder has given written consent to said amendment in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

THIRD: That the aforesaid amendment was duly adopted in accordance with the applicable provisions of Sections 242 and 228 of the General Corporation Law of the State of Delaware.

DATED as of the 19th day of December, 2000.

**WATSON LABORATORIES, INC. - UTAH**

By: _____

Robert C. Funsten, Secretary

# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT "WATSON LABORATORIES, INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE NOT HAVING BEEN CANCELLED OR DISSOLVED SO FAR AS THE RECORDS OF THIS OFFICE SHOW AND IS DULY AUTHORIZED TO TRANSACT BUSINESS.

THE FOLLOWING DOCUMENTS HAVE BEEN FILED:

CERTIFICATE OF INCORPORATION, FILED THE SIXTH DAY OF APRIL, A.D. 1992, AT 10 O'CLOCK A.M.

CERTIFICATE OF AGREEMENT OF MERGER, CHANGING ITS NAME FROM "THERATECH DELAWARE, INCORPORATED" TO "THERATECH, INC.", FILED THE FOURTEENTH DAY OF APRIL, A.D. 1992, AT 3:10 O'CLOCK P.M.

RESTATED CERTIFICATE, FILED THE TWENTIETH DAY OF JULY, A.D. 1992, AT 3 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, FILED THE TWENTY-EIGHTH DAY OF JUNE, A.D. 1996, AT 2:30 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE FIFTEENTH DAY OF JANUARY, A.D. 1999, AT 5:45 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "THERATECH, INC." TO "WATSON LABORATORIES, INC. - UTAH", FILED THE SEVENTH

2293487  8310

080455045

You may verify this certificate online at corp.delaware.gov/authver.shtml

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6537402

DATE: 04-21-08

# Delaware

PAGE   2

### The First State

DAY OF OCTOBER, A.D. 1999, AT 4 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "WATSON LABORATORIES, INC. - UTAH" TO "WATSON LABORATORIES, INC.", FILED THE TWENTIETH DAY OF DECEMBER, A.D. 2000, AT 3 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID CORPORATION, "WATSON LABORATORIES, INC.".

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

2293487   8310

080455045

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6537402

DATE: 04-21-08

**EXHIBIT K**

# EXHIBIT REDACTED IN ITS ENTIRETY

**EXHIBIT L**

# EXHIBIT REDACTED IN ITS ENTIRETY

**EXHIBIT M**

# STATE OF NEVADA



*ROSS MILLER*
Secretary of State

*SCOTT W. ANDERSON*
Deputy Secretary
for Commercial Recordings

OFFICE OF THE
## SECRETARY OF STATE

## Certified Copy

October 16, 2007

**Job Number:**       C20071016-0249
**Reference Number:** 00001562969-18
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number(s) | Description | Number of Pages |
|---|---|---|
| C38-1985-001 | Articles of Incorporation | 5 Pages/1 Copies |
| C38-1985-003 | Amendment | 3 Pages/1 Copies |
| C38-1985-004 | Amendment | 4 Pages/1 Copies |
| C38-1985-005 | Amendment | 2 Pages/1 Copies |
| C38-1985-006 | Amendment | 5 Pages/1 Copies |
| C38-1985-007 | Amendment | 3 Pages/1 Copies |
| C38-1985-007 | Amendment | 3 Pages/1 Copies |
| C38-1985-008 | Amendment | 3 Pages/1 Copies |

Respectfully,



ROSS MILLER
Secretary of State

By

Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILING FEE: $150.00
BY:  CT CORPORATION SYSTEM
      SUITE 1600
      ONE EAST FIRST STREET
      RENO, NEVADA 89501

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JAN 2 1985

*[signature]*

38-85

## ARTICLES OF INCORPORATION

### of

### WATSON LABORATORIES, INC.

## ARTICLE I

The name of the corporation is Watson Laboratories, Inc.

## ARTICLE II

The principal office of the corporation shall be located at One East First Street, Reno, Nevada 89501.

## ARTICLE III

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

## ARTICLE IV

The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

## ARTICLE V

The corporation is authorized to issue only one class of shares of stock, par value $0.01 per share, which shall be Common Stock; and the total number of shares which the corporation is authorized to issue is Ten Million (10,000,000). The holders of the Common Stock shall not be entitled to exercise preemptive rights.

## ARTICLE VI

The members of the governing board shall be called directors of the corporation. The number of initial directors shall be six (6). The number of directors shall be established in and shall be subject to change by amendment of the Bylaws of the corporation. The names and addresses of the initial board members are as follows:

-2-

Hsi Hsiung Chao:      65 Misty Acres Road
                      Rolling Hills Estates, California  90274

Allen Y. Chao:        1585 North Milwaukee Avenue
                      Unit 2
                      Libertyville, Illinois  60048

Richard Y. Chao.      5 Ninos
                      Irvine, California  92714

Agnes Y. Kung:        65 Misty Acres Road
                      Rolling Hills Estates, California  90274

David C. Hsia:        1585 North Milwaukee Avenue
                      Unit 2
                      Libertyville, Illinois  60048

Michael J. Feldman:   8300 Sears Tower
                      233 South Wacker Drive
                      Chicago, Illinois  60606

## ARTICLE VII

Capital stock, after the amount of the subscription price has been paid in to the corporation is not subject to assessment to pay debts of the corporation.

## ARTICLE VIII

The name and address of the incorporator is as follows:

V. Miller, P. O. Box 2311, Reno, Nevada 89501

-3-

## ARTICLE IX

The corporation shall have perpetual existence.

## ARTICLE X

The shareholders of the corporation shall individually have such authority as are granted shareholders of corporations by the General Corporation Law of Nevada, including the authority to cast votes for the election or removal of Directors of the Corporation.

Dated:  January 2   ,1985

_____
V. MILLER, Incorporator

-4-

STATE OF NEVADA    )
                   ) ss:
COUNTY OF WASHOE   )

       On _____January 2, 1985_____ , personally

appeared before me, a Notary Public, _____

_____ V. Miller _____

who acknowledged that they executed the above

instrument.

                                               _____
                                               Notary Public
                                                (stamp)



KATHLEEN F. ANDREWS
Notary Public - State of Nevada
Appointment Recorded in Washoe County
MY APPOINTMENT EXPIRES JUNE 4, 1988

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**SEP 11 1985**

~~~ SHACKMAN  SECRETARY OF STATE

No. 38-85

FILING FEE: 50.00
BY: MEMEL, JACOBS, PIERNO AND
GERSH
4000 MAC ARTHUR BLVD., STE.
350
NEWPORT BEACH, CA 92660

CERTIFICATE OF OWNERSHIP MERGING
WATLAB, INC.,
a California corporation
into
WATSON LABORATORIES, INC.,
a Nevada corporation

Allen Y. Chao, President, and Agnes Y. Kung, Secretary of Watson Laboratories, Inc., a Nevada corporation, certify that:

1.  Watson Laboratories, Inc., owns all the outstanding stock of WATLAB, INC., a corporation duly incorporated on August 29, 1983 under the laws of the State of California.

2.  The following resolutions were adopted by a majority of the Board of Directors of Watson Laboratories, Inc.:

WHEREAS, this corporation owns one hundred percent (100%) of the outstanding shares of WATLAB, INC., a California corporation; and

WHEREAS, this corporation deems it to be in its best interest to effect a merger of WATLAB, INC. into this corporation;

NOW, THEREFORE, BE IT RESOLVED, that WATLAB, INC. be merged into this corporation pursuant to Section 78.486 of the Nevada Corporations Law and Section 1110 of the California Corporations Code; and

RESOLVED FURTHER, that the officers of this corporation are hereby directed to do all acts and to execute, verify, and file all documents necessary to effectuate the merger into this corporation pursuant to Section 78.486 of the Nevada Corporations Law and Section 1110 of the California Corporations Code of WATLAB, INC.; and

RESOLVED FURTHER, that this corporation hereby assumes all of the liabilities of WATLAB, INC.

3.  Said resolutions were adopted by unanimous written consent of the Board of Directors of Watson Laboratories, Inc. on __July 26__ , 1985.

WATSON LABORATORIES, INC.,
a Nevada corporation

Dated: ___7/31/85___          By: _____
                                   Allen Y. Chao, President

Dated: ___7/31/85___          By: _____
                                   Agnes Y. Kung, Secretary

## VERIFICATION

I, Allen Y. Chao, verify that:

I am the President of Watson Laboratories, Inc., a Nevada corporation.

I have read the foregoing Certificate of Ownership and know the contents thereof, and acknowledge that, to my own knowledge, such contents are true.

Executed on ____Aug 15____, 1985, at ____Orange____, _____ County, ____California____.

I declare under penalty of perjury that the foregoing is true and correct.

_____
ALLEN Y. CHAO

STATE OF ____California____ )
                              ) SS.
COUNTY OF ____Orange____     )

On ____August 15, 1985____, before me, the undersigned, a Notary Public in and for said State, personally appeared ALLEN Y. CHAO, personally known to me, or proved to me on the basis of satisfactory evidence, to be the person who executed the within instrument as the President of WATSON LABORATORIES, INC., the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature: _____

(Official Seal)

OFFICIAL SEAL

## VERIFICATION

I, Agnes Y. Kung, verify that:

I am the Secretary of Watson Laboratories, Inc., a Nevada corporation.

I have read the foregoing Certificate of Ownership and know the contents thereof, and acknowledge that, to my own knowledge, such contents are true.

Executed on _July 31_, 1985, at _Beverly Hills Calif_ _Calif_ County, _Los Angeles_.

I declare under penalty of perjury that the foregoing is true and correct.

_____
AGNES Y. KUNG

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_ } ss.

On _July 31  1985_, before me, the undersigned, a Notary Public in and for said State, personally appeared _"AGNES Y. KUNG"_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

WITNESS my hand and official seal.

Signature _Arline R. Shearer_

SF 4234 (REV A 7/82) (CA) INDIVIDUAL)

OFFICIAL SEAL
ARLINE R. SHEARER
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires Apr. 6, 1987

(This area for official notarial seal)

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

SEP 2 8 1987

FRANKIE SUE DEL PAPA, SECRETARY OF STATE

No. ___38-85___

FILING FEE:   $50.00
BY:   UNITED STATES CORP. CO.
ROOM E
502 EAST JOHN STREET
CARSON CITY, NEVADA 89701

Certificate of Amendment of
Articles of Incorporation
of
<u>WATSON LABORATORIES, INC.</u>

Pursuant to the provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

<u>FIRST</u>:  The name of the Corporation is Watson Laboratories, Inc.

<u>SECOND</u>:  The Board of Directors of the Corporation duly adopted the following resolutions on May 22, 1987:

WHEREAS, it is deemed in the best interests of the Corporation to amend the Articles of Incorporation to add a new Article XI thereto to remove directors' exposure for liability to the Corporation or to its stockholders for certain breaches of the directors' fiduciary duty and to add a new Article XII relating to the indemnification of directors, officers, employees and agents of the Corporation;

NOW, THEREFORE, BE IT RESOLVED, that in the judgment of the Board of Directors it is deemed in the best of interests of the Corporation to add Articles XI and XII to the Articles of Incorporation which shall read in full as follows:

### ARTICLE XI

No director or officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer except for liability (i) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of NRS 78.300.  Any repeal or modification of this Article by the stockholders of the Corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of such repeal or modification.

### ARTICLE XII

Section 1.  The corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director of the corporation, or is

or was serving at the request of the corporation as a
director of another corporation, partnership, joint
venture, trust or other enterprise, against any and all
expenses (including attorneys' fees), judgments, fines,
amounts paid in settlement, and any other liabilities
to the fullest extent permitted by the General Corpora-
tion Law of the State of Nevada ("Nevada Act"), as the
same exists or may hereafter be amended, and may, at
the discretion of the board of directors, purchase and
maintain insurance at its expense, to protect itself
and such persons against any such expense, fine, amount
paid in settlement or other liability, whether or not
the corporation would have the power to so indemnify
such person under the Nevada Act.

Section 2.  The corporation may indemnify any and
all persons, except those persons described in Section
1 of this ARTICLE XII, whom it has the power to indem-
nify under the Nevada Act, as the same exists or may
hereafter be amended, against any and all expenses
(including attorneys' fees), judgments, fines, amounts
paid in settlement, and any other liabilities to the
fullest extent permitted by the Nevada Act and may, at
the discretion of the board of directors, purchase and
maintain insurance, at its expense, to protect itself
and such persons against any such expense, fine, amount
paid in settlement or other liability, whether or not
the corporation would have the power to so indemnify
such person under the Nevada Act.

FURTHER RESOLVED, that the aforesaid proposed
amendments be submitted to the shareholders of the Cor-
poration for their approval at the annual meeting of
shareholders.

THIRD:  The total number of outstanding shares having
voting power of the Corporation is 2,786,951, and the total num-
ber of votes entitled to be cast by the holders of all of said
outstanding shares is 2,786,951.

FOURTH:  At a meeting of stockholders held on June 1,
1987, notice of which was duly given, the amendments herein cer-
tified were adopted by the holders of 2,529,451 shares, which
represent 2,529,451 votes, and which constitute at least
majority of all of the voting power of the holders of shares
having voting power.

Signed on 13th day of July, 1987.          WATSON LABORATORIES, INC.

By: _____
                              President

_____
                              Secretary

(227:A3)

STATE OF ~~CALIFORNIA~~ Illinois )
                               )     SS.:
COUNTY OF Cook        )

      On ~~July~~ Sept. 16 , 1987, personally appeared before me, a
Notary Public, for the State and County aforesaid, Allen Y. Chao,
as President of Watson Laboratories, Inc. and ~~Agnes V. Kung,~~
~~Secretary of Watson Laboratories, Inc.~~, who ~~acknowledged that~~
~~they executed the above instrument.~~

                                      Notary ~~Public~~

"OFFICIAL SEAL"
MICHEL J. FELDMAN
Notary Public, State of Illinois
My Commission Expires Nov. 26, 1990

[Notarial Seal]

(227:A3)

STATE OF ~~CALIFORNIA~~ Illinois }
                                  }   SS.:
COUNTY OF Cook                    }

On ~~July~~ Sep. 16 , 1987, personally appeared before me, a
Notary Public, for the State and County aforesaid, Allen Y. Chao,
as President of Watson Laboratories, Inc. and ~~Agnes Y. Kung,~~
~~Secretary of Watson Laboratories, Inc.,~~ who ~~acknowledged that~~
they executed the above instrument.

"OFFICIAL SEAL"
MICHEL J. FELDMAN
Notary Public, State of Illinois
My Commission Expires Nov. 16, 1990

Notary Public

STATE OF CALIFORNIA
COUNTY OF Los Angeles
On September 14th, 1987, before me, the undersigned, a Notary Public in and for
said State, personally appeared Agnes Yu Hwa Kung

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged
to me that she executed the same.

WITNESS my hand and official seal.

Signature Gurpreet K. Walia
(This area for official notarial seal)

OFFICIAL SEAL
GURPREET K. WALIA
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires July 9, 1991

**FILED**
~ IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**AUG 27 1991**

CHERYL A. LAU  SECRETARY OF STATE

No. 38-85

FILING FEE- 100.00 TS
REC. #C20858
CT CORPORATION SYSTEM
RENO, NV
C/O VI MILLER

Certificate of Amendment
of Articles
of Incorporation
of
<u>Watson Laboratories, Inc.</u>

Pursuant to the provisions of Nevada Revised Statutes,
Title 7, Chapter 78, the undersigned officers do hereby certify:

<u>FIRST</u>:  The name of the Corporation is Watson
Laboratories, Inc.

<u>SECOND</u>:  The Board of Directors of the Corporation duly
adopted the following resolution on April 30, 1991.

RESOLVED, that Article V of the Articles of Incor-
poration of the Corporation be amended to read in its
entirety as follows:

"ARTICLE V.  The corporation is authorized to
issue only one class of shares of stock, par
value $.01 per share, which shall be Common
Stock; and the total number of shares which
the corporation is authorized to issue is
Twenty-Five Million (25,000,000).  The hold-
ers of Common Stock shall not be entitled to
exercise preemptive rights."

<u>THIRD</u>:  The total number of outstanding shares having
voting power of the corporation is 3,173,188, and the total
number of votes entitled to be cast by the holders of all of said
outstanding shares is 3,173,188.

<u>FOURTH</u>:  At a meeting of stockholders on May 13, 1991,
notice of which was duly given, the amendment herein certified
was adopted by the holders of 2,794,105 shares, which represent
2,794,105 votes, and which constitute at least a majority of all
of the voting power of the holders of shares having voting power.

Signed on _June 2f_, 1991          WATSON LABORATORIES, INC.

By: _Allen Chao_
        Allen Y. Chao, President

By: _Agnes Y. Kung_
        Agnes Y. Kung, Secretary

STATE OF CALIFORNIA )
                     )    SS.:
COUNTY OF RIVERSIDE  )



On _August 14, 1991_, 1991, personally appeared before me, a Notary Public, for the State and County aforesaid, Allen Y. Chao, as President of Watson Laboratories, Inc. ~~and Agnes Y. Kung, as Secretary of Watson Laboratories, Inc.~~, who acknowledged that ~~they~~ executed the above instrument.

_Dolores Mary Land_
Notary Public

STATE OF __CALIFORNIA__
COUNTY OF __LOS ANGELES__ } ss.
On this __21__ day of __JUNE__, 19__91__, before me, the undersigned, a Notary Public in and for said     (INDIVIDUAL)
County, personally appeared __AGNES Y. KUNG__

personally known to me, or proved to me on the basis of satisfactory evidence
to be the persons(s) whose name(s) is/are subscribed to the within instrument,
and acknowledged to me that __SHE__ executed the same.
Witness my hand and official seal.

_Patricia Brodrick_
Notary Public in and for said County and State

__PATRICIA BRODRICK__
Name (Typed or Printed)

OFFICIAL SEAL
PATRICIA BRODRICK
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires April 22, 1994

3403 (R5/8/72)                    (This area for official notarial seal)

IJS.317

RECEIVED

AUG 27 1991

SECRETARY OF STATE

1:20

-2-



FILING FEE- $1000.00 TS
REC.#C35693
CT CORPORATION SYSTEM
ONE E. FIRST ST. STE. 1600
RENO, NV  89501
ATTN: VI MILLER

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**FEB 20 1992**

CHERYL A. LAU  SECRETARY OF STATE

38-85

# CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF INCORPORATION
### OF
### WATSON LABORATORIES, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:** The name of the corporation is WATSON LABORATORIES, INC.

**SECOND:** The Board of Directors of the corporation duly adopted the following resolutions on February 14, 1992.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the shareholders of the Corporation, Article I of the Corporation's Articles of Incorporation is amended to be and read as follows:

### ARTICLE I

The name of the corporation is Watson Pharmaceuticals, Inc.

FURTHER RESOLVED, that subject to the approval of the shareholders of the Corporation, Article V of the Corporation's Articles of Incorporation is amended to be and read as follows:

### ARTICLE V

The corporation is authorized to issue a total of Fifty-Two Million Five Hundred Thousand (52,500,000) shares of stock, Fifty Million (50,000,000) shares of which shall be classified as common stock, $.0033 par value per share and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designations in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

FURTHER RESOLVED, that subject to the approval of the shareholders of the Corporation, Article XI of the Corporation's Articles of Incorporation is amended to be and read as follows:



## ARTICLE XI

No director or officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation law.

Any repeal or modification of this Article by the stockholders of the Corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of such repeal or modification.

FURTHER RESOLVED, that Article XII of the Corporation's Articles of Incorporation is amended to be and read as follows:

## ARTICLE XII

1.    To the extent not prohibited by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the Corporation, by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or pro-ceeding, has no reasonable cause to believe his conduct was unlawful.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

2.    To the extent not prohibited by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corpora-tion to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another

2

corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the Corporation or for amounts paid in settlement to the Corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3.    To the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article XII, or in defense of any claim, issue or matter therein, he must be indemnified by the Corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4.    Any indemnification under subsections 1 and 2 of Article XII, unless ordered by a court or advanced pursuant to subsection 5 of Article XII, may be made by the Corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the Corporation; (b) the Board of Directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so orders; or (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

5.    The Corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the Corporation. The provisions of this subsection do not affect any rights to

3



advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

      6.     The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article XII (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer (or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

      **THIRD:**    The total number of outstanding shares having voting power of the corporation is 4,302,496, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 4,302,496.

      **FOURTH:**  By written consent of the holders of a majority of the issued and outstanding stock of the corporation, dated as of February 14, 1992, pursuant to Sections 78.320, 78.385 and 78.390 of the Nevada Revised Statutes, the amendment herein certified was adopted by the holders of 2,913,408 shares, which represent 2,913,408 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed: February 14, 1992

<div align="center">

WATSON LABORATORIES, INC.

By: _____
Allen Y. Chao, President

By: _____
Michel J. Feldman, Assistant Secretary

</div>

<div align="center">4</div>

STATE OF CALIFORNIA          )
                             )  SS
COUNTY OF RIVERSIDE          )

On ___2/18__, 1992, personally appeared before me, a Notary Public, for the
State and County aforesaid, Allen Y. Chao as President of Watson Laboratories, Inc. and
Michel J. Feldman as Assistant Secretary of Watson Laboratories, Inc., who
acknowledged that they executed the above instrument.

OFFICIAL SEAL
HELGA E. SCHROEDER
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires June 16, 1992

_Helga E Schroeder_
NOTARY PUBLIC

RECEIVED
1:10 SC
FEB 20 1992

Secretary of State

5

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUL 18 1995
38-85

DEAN HELLER SECRETARY OF STATE
No. _____

Ine # 7677
E - 64911

CERTIFICATE OF AMENDMENT
OF
ARTICLES OF INCORPORATION
OF
WATSON PHARMACEUTICALS, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

FIRST:      The name of the Corporation is WATSON PHARMACEUTICALS, INC.

SECOND:     The Board of Directors of the Corporation duly adopted the follow-
            ing resolution on May 1, 1995.

FURTHER RESOLVED: that subject to approval of the stockholders of the
Corporation, the first two sentences of Article VI of the Articles of Incorporation
of the Corporation are hereby deleted and replaced with the following:

"The members of the governing board shall be called directors of the
Corporation. The number of directors of the Corporation shall be nine (9). The
directors shall be divided into three classes designated as Class I, Class II and
Class III, respectively  Each class shall consist, as nearly as may be possible, of
one-third of the total number of directors constituting the entire board of direc-
tors. At the annual meeting of stockholders of the Corporation to be held in the
year 1995, the Corporation shall designate the slate of directors to be elected by
the stockholders as Class I, Class II and Class III directors, except that for such
1995 annual meeting only eight (8) directors shall be elected by the stockholders
and the ninth director position (a Class I position) shall be vacant. The initial
term of office of the Class I directors shall expire at the annual meeting of the
stockholders held in the year 1996. The initial term of office of the Class II
directors shall expire at the annual meeting of stockholders held in the year 1997.
The initial term of office of the Class III directors shall expire at the annual
meeting of stockholders held in the year 1998. At each annual meeting of the
stockholders after the annual meeting held in the year 1995, successors to the
class of directors whose term expires at the annual meeting shall be elected for a
three-year term. If the number of directors is changed, any increase or decrease
shall be apportioned among the classes so as to maintain the number of directors
in each class as nearly as possible, but in no case shall a decrease in the number
of directors shorten the term of any incumbent director. A director shall hold
office until the annual meeting for the year in which his term expires and until his
successor shall be elected and qualified, subject, however, to prior death, resigna-
tion, retirement, disqualification or removal from office. The annual meeting of
stockholders shall be held each year on a date and at a time designated by the
Board of Directors of the Corporation.

Subject to the rights, if any, of holders of any series of Preferred Stock then outstanding, any vacancy on the Board of Directors that results from an increase in the number of directors or by reason of the vacancy following the annual meeting of the stockholders held in the year 1995 may be filled by a majority of the Board of Directors then in office, provided that a quorum is present, and any other vacancy occurring in the Board of Directors may be filled by a majority of the directors then in office, even if less than a quorum. Any directors elected to fill a vacancy resulting from an increase in such class shall hold office for a term that shall coincide with the remaining term of that class. Any director elected to fill a vacancy not resulting from an increase in the number of directors shall have the same remaining term as that of his predecessor."

THIRD:    As of May 19, 1995, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is approximately 17,289,786, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is approximately 17,289,785.

FOURTH:   On July 17, 1995, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of _9,001,802_ shares of common stock, $.0033 par value per share, of the Corporation, which represent _9,001,802_ votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:    July 17, 1995

                                    WATSON PHARMACEUTICALS, INC.

                          By: _____
                                    Allen Chao, President

                          By: _____
                                    Michel Feldman, Assistant
                                    Secretary

2

STATE OF ~~CALIFORNIA~~ *ILLINOIS*          )
                                            ) SS
COUNTY OF ~~RIVERSIDE~~ *COOK*              )

    On July 17, 1995, Allen Chao as President of Watson Pharmaceuticals, Inc. and Michel Feldman as Assistant Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

                                                  *Patricia A. Jones*
                                             NOTARY PUBLIC

> "OFFICIAL SEAL"
> PATRICIA A. JONES
> Notary Public, State of Illinois
> My Commission Expires Nov. 28, 1998

3



JUL 18 '95  12:48PM WOODBURN HEDGE                                P.11

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUL 18 1995

33-85

DEAN HELLER SECRETARY O: STATE

ewd - 767

E - 64909

# CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF INCORPORATION
## OF
## WATSON PHARMACEUTICALS, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

FIRST:    The name of the Corporation is WATSON PHARMACEUTICALS, INC.

SECOND:    The Board of Directors of the Corporation duly adopted the following resolution on May 1, 1995.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the stockholders of the Corporation, Article V of the Articles of Incorporation of the Corporation is amended to be and read as follows:

### ARTICLE V

The Corporation is authorized to issue a total of One Hundred and Two Million Five Hundred Thousand (102,500,000) shares of stock, One Hundred Million (100,000,000) shares of which shall be classified as common stock, $.0033 par value per share, and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designation in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

THIRD:    As of May 19, 1995, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is approximately 17,289,786, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is approximately 17,289,785.

FOURTH:    On July 17, 1995, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of 15,045,332 shares of

common stock, $.0033 par value per share, of the Corporation, which represent _15,045,332_ votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:        July 17, 1995

                              WATSON PHARMACEUTICALS, INC.

                              By: _____
                                   Allen Chao, President

                              By: _____
                                   Michel Feldman, Assistant
                                   Secretary

2

JUL 18 '95   12:40PM WOODBURN HEDGE                                    P.13

STATE OF ~~CALIFORNIA~~ *ILLINOIS*                    )
                                                     ) SS
COUNTY OF ~~RIVERSIDE~~ *Cook*                        )

On July 17, 1995, Allen Chao as President of Watson Pharmaceuticals, Inc. and Michel Feldman as Assistant Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
PATRICIA A. JONES
Notary Public, State of Illinois
My Commission Expires Nov. 26, 1998

3

RECEIVED

JUL 18 1995

SECRETARY OF STATE

MAR 30 '96   08:14AM WOODBURN HEDGES                          312 756 8722  P.2

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

**MAY 30 1996**

38 - 85

DEAN HELLER SECRETARY OF STATE

CERTIFICATE OF AMENDMENT
OF
ARTICLES OF INCORPORATION
OF
WATSON PHARMACEUTICALS, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:**   The name of the Corporation is WATSON PHARMACEUTICALS, INC.

**SECOND:**   The Board of Directors of the Corporation duly adopted the following resolution on February 26, 1996.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the stockholders of the Corporation, Article V of the Articles of Incorporation of the Corporation is amended to be and read as follows:

<u>ARTICLE V</u>

The Corporation is authorized to issue a total of Five Hundred and Two Million Five Hundred Thousand (502,500,000) shares of stock, Five Hundred Million (500,000,000) shares of which shall be classified as common stock, $.0033 par value per share, and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designation in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

**THIRD:**   As of March 15, 1996, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is 36,607,903, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 36,607,903.

**FOURTH:**   On May 10, 1996, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of 19,372,801 shares of common

RECEIVED

MAY 3 0

stock, $.0033 par value per share, of the Corporation, which represent 19,372,801 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:        May 10, 1996

WATSON PHARMACEUTICALS, INC.

By: _M Sharoky_

Dr. Melvin Sharoky, President

By: _____

Michel J. Feldman, Secretary

MAY 30 '96 09:15AM WOODBURN HEDGE
CT SYSTEMS

312 750 0782    P.4
P.04

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF COOK             )

On May 10, 1996, Dr. Melvin Sharoky, as President of Watson Pharmaceuticals, Inc. and Michel J. Feldman as Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

"OFFICIAL SEAL"
SHARON TESSITORE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/18/2000

NOTARY PUBLIC

63767/1                    3

TOTAL P.04

**EXHIBIT N**

# EXHIBIT REDACTED IN ITS ENTIRETY

**EXHIBIT O**



PAGE  1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF FORMATION OF "WATSON LABORATORIES,

LLC", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF AUGUST,

A.D. 2003, AT 6:11 O'CLOCK P.M.



Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

3695879  8100

030549819

AUTHENTICATION: 2598264

DATE: 08-22-03

State of Delaware
Secretary of State
Division of Corporations
Delivered 06:11 PM 08/22/2003
FILED 06:11 PM 08/22/2003
SRV 030549819 - 3695879 FILE

## CERTIFICATE OF FORMATION

### OF

### WATSON LABORATORIES, LLC

1.  The name of the limited liability company is Watson Laboratories, LLC.

2.  The address of its registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.

**IN WITNESS WHEREOF**, the undersigned has executed this Certificate of Formation of Watson Laboratories, LLC this 22nd day of August , 2003.

_/s/DAVID A. BUCHEN_
David A. Buchen,
Authorized Person

# WATSON LABORATORIES, INC.
### 417 Wakara Way
### Salt Lake City, UT 84108

August 22, 2003

TO: Secretary of the State of the
        State of Delaware

Watson Laboratories, Inc., a Delaware corporation, hereby consents to the use by Watson Laboratories, LLC, a Delaware limited liability company being formed on the date hereof, of the name "Watson Laboratories, LLC" in the State of Delaware.

WATSON LABORATORIES, INC.

By: /s/DAVID A. BUCHEN
        David A. Buchen,
        Secretary

# REMAINDER OF EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT   3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WYETH,

      *Plaintiff,*

    v.

WATSON LABORATORIES, INC., *and*
WATSON PHARMACEUTICALS,
INC.,

      *Defendants.*

Civil Action No. 08-cv-00145-JJF

## AFFIDAVIT OF PAMELA DAVIS

1.     I am Pamela Davis, Director of Tax at Watson Pharmaceuticals, Inc., a Nevada corporation ("Watson Pharmaceuticals"). I am an adult and competent to testify to the following having personal knowledge or based on my review of company records.

2.     Watson Pharmaceuticals is a Nevada corporation having its principal place of business at 311 Bonnie Circle, Corona, California. (*See* Exhibits A, B)

3.     Watson Pharmaceuticals is a holding company. In particular, Watson Pharmaceuticals does not itself manufacture, sell or distribute any products, nor does it prepare or file any Abbreviated New Drug Applications ("ANDAs").

4.     Watson Pharmaceuticals did not prepare or submit ANDA No. 79-218.

5.     Watson Laboratories, Inc., a Nevada corporation ("Watson Labs Nevada") and Watson Laboratories, Inc., a Delaware corporation ("Watson Labs Delaware") are both wholly owned subsidiaries of Watson Pharmaceuticals. (*See* Exhibit C)

6.     Watson Pharmaceuticals and Watson Labs Nevada are separate corporate and legal entities. (*See* Exhibits A and D)

7.     While Watson Pharmaceuticals wholly owns Watson Labs Nevada, Watson Pharmaceuticals does not control the day-to-day operational decisions of Watson Labs Nevada.



*REDACTED*

9.     Watson Pharmaceuticals and Watson Labs Nevada each have their own separate by-laws and articles of incorporation.   (*See* Exhibits A, B, D and F)

10.     Watson Pharmaceuticals and Watson Labs Nevada enter into and perform their own contracts.

11.     Watson Pharmaceuticals and Watson Labs Delaware are separate corporate and legal entities.  (*See* Exhibits A, B, D and F)

12.     Watson Pharmaceuticals is a publicly traded stock on the New York Stock Exchange under the symbol WPI.


I certify under penalty of perjury of the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Pamela Davis

**AFFIANT**

State of California                              }
County of Riverside                              }

On ___April 24, 2008___ before me, _Katherine G. Kenney, Notary Public_
          Date                                          Insert Notary Public Name

Personally appeared ___Pamela Davis_____
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public



KATHERINE G. KENNEY
Commission # 1783095
Notary Public - California
Riverside County
My Comm. Expires Dec 30, 2011

3

# **EXHIBIT A**

**STATE OF NEVADA**



*ROSS MILLER*
Secretary of State

*SCOTT W. ANDERSON*
Deputy Secretary
for Commercial Recordings

OFFICE OF THE
**SECRETARY OF STATE**

## Certified Copy

October 16, 2007

**Job Number:**        C20071016-0249
**Reference Number:**  00001562969-18
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number(s) | Description | Number of Pages |
| --- | --- | --- |
| C38-1985-001 | Articles of Incorporation | 5 Pages/1 Copies |
| C38-1985-003 | Amendment | 3 Pages/1 Copies |
| C38-1985-004 | Amendment | 4 Pages/1 Copies |
| C38-1985-005 | Amendment | 2 Pages/1 Copies |
| C38-1985-006 | Amendment | 5 Pages/1 Copies |
| C38-1985-007 | Amendment | 3 Pages/1 Copies |
| C38-1985-007 | Amendment | 3 Pages/1 Copies |
| C38-1985-008 | Amendment | 3 Pages/1 Copies |

Respectfully,



ROSS MILLER
Secretary of State

By

Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILING FEE: $150.00
BY:   CT CORPORATION SYSTEM
      SUITE 1600
      ONE EAST FIRST STREET
      RENO, NEVADA 89501

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JAN 2 1985

SECRETARY OF STATE

38-85

ARTICLES OF INCORPORATION

of

<u>WATSON LABORATORIES, INC.</u>

## ARTICLE I

The name of the corporation is Watson Laboratories, Inc.

## ARTICLE II

The principal office of the corporation shall be located at One East First Street, Reno, Nevada 89501.

## ARTICLE III

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

## ARTICLE IV

The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

## ARTICLE V

The corporation is authorized to issue only one class of shares of stock, par value $0.01 per share, which shall be Common Stock; and the total number of shares which the corporation is authorized to issue is Ten Million (10,000,000). The holders of the Common Stock shall not be entitled to exercise preemptive rights.

## ARTICLE VI

The members of the governing board shall be called directors of the corporation. The number of initial directors shall be six (6). The number of directors shall be established in and shall be subject to change by amendment of the Bylaws of the corporation. The names and addresses of the initial board members are as follows:

-2-

| Hsi Hsiung Chao: | 65 Misty Acres Road<br>Rolling Hills Estates, California   90274 |
| Allen Y. Chao: | 1585 North Milwaukee Avenue<br>Unit 2<br>Libertyville, Illinois   60048 |
| Richard Y. Chao. | 5 Ninos<br>Irvine, California   92714 |
| Agnes Y. Kung: | 65 Misty Acres Road<br>Rolling Hills Estates, California   90274 |
| David C. Hsia: | 1585 North Milwaukee Avenue<br>Unit 2<br>Libertyville, Illinois   60048 |
| Michael J. Feldman: | 8300 Sears Tower<br>233 South Wacker Drive<br>Chicago, Illinois   60606 |

## ARTICLE VII

Capital stock, after the amount of the subscription price has been paid in to the corporation is not subject to assessment to pay debts of the corporation.

## ARTICLE VIII

The name and address of the incorporator is as follows:

V. Miller, P. O. Box 2311, Reno, Nevada 89501

-3-

## ARTICLE IX

The corporation shall have perpetual existence.

## ARTICLE X

The shareholders of the corporation shall individually have such authority as are granted shareholders of corporations by the General Corporation Law of Nevada, including the authority to cast votes for the election or removal of Directors of the Corporation.

Dated: January 2   ,1985

V. MILLER, Incorporator

-4-

```
STATE OF NEVADA        )
                       ) ss:
COUNTY OF WASHOE       )
```

On _____ January 2, 1985 _____, personally

appeared before me, a Notary Public, _____

_____ V. Miller _____

who acknowledged that they executed the above

instrument.

_Kathleen F. Andrews_
Notary Public
(stamp)

KATHLEEN F. ANDREWS
Notary Public - State of Nevada
Appointment Recorded in Washoe County
MY APPOINTMENT EXPIRES JUNE 4, 1988

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

SEP 11 1985

~~~ SPACEMAKER SECRETARY OF STATE

No. 38-85

FILING FEE: 50.00
BY: MEMEL, JACOBS, PIERNO AND
GERSH
4000 MAC ARTHUR BLVD., STE.
350
NEWPORT BEACH, CA 92660

CERTIFICATE OF OWNERSHIP MERGING
WATLAB, INC.,
a California corporation
into
WATSON LABORATORIES, INC.,
a Nevada corporation

Allen Y. Chao, President, and Agnes Y. Kung, Secretary of Watson Laboratories, Inc., a Nevada corporation, certify that:

1.     Watson Laboratories, Inc., owns all the outstanding stock of WATLAB, INC., a corporation duly incorporated on August 29, 1983 under the laws of the State of California.

2.     The following resolutions were adopted by a majority of the Board of Directors of Watson Laboratories, Inc.:

WHEREAS, this corporation owns one hundred percent (100%) of the outstanding shares of WATLAB, INC., a California corporation; and

WHEREAS, this corporation deems it to be in its best interest to effect a merger of WATLAB, INC. into this corporation;

NOW, THEREFORE, BE IT RESOLVED, that WATLAB, INC. be merged into this corporation pursuant to Section 78.486 of the Nevada Corporations Law and Section 1110 of the California Corporations Code; and

RESOLVED FURTHER, that the officers of this corporation are hereby directed to do all acts and to execute, verify, and file all documents necessary to effectuate the merger into this corporation pursuant to Section 78.486 of the Nevada Corporations Law and Section 1110 of the California Corporations Code of WATLAB, INC.; and

RESOLVED FURTHER, that this corporation hereby assumes all of the liabilities of WATLAB, INC.

3.     Said resolutions were adopted by unanimous written consent of the Board of Directors of Watson Laboratories, Inc. on ___July 26___, 1985.

WATSON LABORATORIES, INC.,
a Nevada corporation

Dated: ___7/11/85___          By: _____
                                    Allen Y. Chao, President

Dated: ___7/11/85___          By: _____
                                    Agnes Y. Kung, Secretary

## VERIFICATION

I, Allen Y. Chao, verify that:

I am the President of Watson Laboratories, Inc., a Nevada corporation.

I have read the foregoing Certificate of Ownership and know the contents thereof, and acknowledge that, to my own knowledge, such contents are true.

Executed on _Aug 11_, 1985, at _Orange_ _____ County, _California_.

I declare under penalty of perjury that the foregoing is true and correct.

_Allen Y Chao_
ALLEN Y. CHAO

STATE OF _California_        )
                            ) SS.
COUNTY OF _Orange_          )

On _August 15, 1985_, before me, the undersigned, a Notary Public in and for said State, personally appeared ALLEN Y. CHAO, personally known to me, or proved to me on the basis of satisfactory evidence, to be the person who executed the within instrument as the President of WATSON LABORATORIES, INC., the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature: _Caryn S. Holchuck_

(Official Seal)



## VERIFICATION

I, Agnes Y. Kung, verify that:

I am the Secretary of Watson Laboratories, Inc., a Nevada corporation.

I have read the foregoing Certificate of Ownership and know the contents thereof, and acknowledge that, to my own knowledge, such contents are true.

Executed on ~~July 31~~, 1985, at ~~Beverly Hills City of~~ ~~Los Angeles~~ County, ~~Los Angeles~~.

I declare under penalty of perjury that the foregoing is true and correct.


_____
AGNES Y. KUNG


STATE OF CALIFORNIA
COUNTY OF _Los Angeles_     } ss.

On _July 31   1985_, before me, the undersigned, a Notary Public in and for said State, personally appeared "_AGNES   Y.   KUNG_"

_____

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

WITNESS my hand and official seal.

Signature _Arline R Shearer_

SF 4334 (REV A 7/82) (CA) (INDIVIDUAL)

OFFICIAL SEAL
ARLINE R. SHEARER
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires Apr 6, 1987

(This area for official notarial seal)

**F I L E D**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

SEP 2 8 1987

~~FRANCE SAB DEL PAPA~~ SECRETARY OF STATE
~~Jordan Ann DuPow~~
No. _____38-85_____

FILING FEE:  $50.00
BY:   UNITED STATES CORP. CO.
      ROOM E
      502 EAST JOHN STREET
      CARSON CITY, NEVADA 89701

Certificate of Amendment of
Articles of Incorporation
of
<u>WATSON LABORATORIES, INC.</u>

Pursuant to the provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

<u>FIRST</u>:  The name of the Corporation is Watson Laboratories, Inc.

<u>SECOND</u>:  The Board of Directors of the Corporation duly adopted the following resolutions on May 22, 1987:

WHEREAS, it is deemed in the best interests of the Corporation to amend the Articles of Incorporation to add a new Article XI thereto to remove directors' exposure for liability to the Corporation or to its stockholders for certain breaches of the directors' fiduciary duty and to add a new Article XII relating to the indemnification of directors, officers, employees and agents of the Corporation;

NOW, THEREFORE, BE IT RESOLVED, that in the judgment of the Board of Directors it is deemed in the best of interests of the Corporation to add Articles XI and XII to the Articles of Incorporation which shall read in full as follows:

<u>ARTICLE XI</u>

No director or officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer except for liability (i) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of NRS 78.300. Any repeal or modification of this Article by the stockholders of the Corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of such repeal or modification.

<u>ARTICLE XII</u>

Section 1.  The corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director of the corporation, or is

or was serving at the request of the corporation as a director of another corporation, partnership, joint venture, trust or other enterprise, against any and all expenses (including attorneys' fees), judgments, fines, amounts paid in settlement, and any other liabilities to the fullest extent permitted by the General Corporation Law of the State of Nevada ("Nevada Act"), as the same exists or may hereafter be amended, and may, at the discretion of the board of directors, purchase and maintain insurance at its expense, to protect itself and such persons against any such expense, fine, amount paid in settlement or other liability, whether or not the corporation would have the power to so indemnify such person under the Nevada Act.

Section 2. The corporation may indemnify any and all persons, except those persons described in Section 1 of this ARTICLE XII, whom it has the power to indemnify under the Nevada Act, as the same exists or may hereafter be amended, against any and all expenses (including attorneys' fees), judgments, fines, amounts paid in settlement, and any other liabilities to the fullest extent permitted by the Nevada Act and may, at the discretion of the board of directors, purchase and maintain insurance, at its expense, to protect itself and such persons against any such expense, fine, amount paid in settlement or other liability, whether or not the corporation would have the power to so indemnify such person under the Nevada Act.

FURTHER RESOLVED, that the aforesaid proposed amendments be submitted to the shareholders of the Corporation for their approval at the annual meeting of shareholders.

THIRD: The total number of outstanding shares having voting power of the Corporation is 2,786,951, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 2,786,951.

FOURTH: At a meeting of stockholders held on June 1, 1987, notice of which was duly given, the amendments herein certified were adopted by the holders of 2,529,451 shares, which represent 2,529,451 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed on 13th day of July, 1987.

WATSON LABORATORIES, INC.

By: _____
                    President

_____
                    Secretary

(227:A3)

STATE OF ~~CALIFORNIA~~ Illinois )
                                  )    SS.:
COUNTY OF Cook                    )

On ~~July~~ Sept. 16 ___, 1987, personally appeared before me, a
Notary Public, for the State and County aforesaid, Allen Y. Chao,
as President of Watson Laboratories, Inc. and ~~Agnes Y. Kung,~~
~~Secretary of Watson Laboratories, Inc.,~~ who ~~acknowledged that~~
~~they executed the above instrument.~~

                              Notary Public

"OFFICIAL SEAL"
MICHEL J. FELDMAN
Notary Public, State of Illinois
My Commission Expires Nov. 05, 1990

[Notarial Seal]

(227:A3)

Illinois

STATE OF ~~CALIFORNIA~~ }
                                    )     SS.:
COUNTY OF _Cook_            )

Sep. 16

On ~~July~~ ____, 1987, personally appeared before me, a
Notary Public, for the State and County aforesaid, Allen Y. Chao,
as President of Watson Laboratories, Inc. and ~~Agnes Y. Kung,
Secretary of Watson Laboratories, Inc.~~, who ~~acknowledged that
they executed the above~~ instrument.

"OFFICIAL SEAL"
MICHEL J. FELDMAN
Notary Public, State of Illinois
My Commission Expires On 25, 1990

_____
Notary Public

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_          } ss.
On _September 11th 1987_ before me, the undersigned, a Notary Public in and for
said State, personally appeared *********_Agnes Yu Hwa Kung_*********

Personally known to me or proved to me on the basis of
satisfactory evidence to be the person whose name
is subscribed to the within instrument and acknowledged
to me that he/she/they executed the same.

WITNESS my hand and official seal.



Signature _Gurpreet K. Walia_
                          (This area for official notarial seal)

OFFICIAL SEAL
GURPREET K. WALIA
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires July 9, 1991

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**AUG 27 1991**

CHERYL A. LAU  SECRETARY OF STATE

No. 38-85

FILING FEE- 100.00 TS
REC. #C20858
CT CORPORATION SYSTEM
RENO, NV
C/O VI MILLER

Certificate of Amendment
of Articles
of Incorporation
of
Watson Laboratories, Inc.

Pursuant to the provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

FIRST:  The name of the Corporation is Watson Laboratories, Inc.

SECOND:  The Board of Directors of the Corporation duly adopted the following resolution on April 30, 1991.

RESOLVED, that Article V of the Articles of Incorporation of the Corporation be amended to read in its entirety as follows:

"ARTICLE V.  The corporation is authorized to issue only one class of shares of stock, par value $.01 per share, which shall be Common Stock; and the total number of shares which the corporation is authorized to issue is Twenty-Five Million (25,000,000).  The holders of Common Stock shall not be entitled to exercise preemptive rights."

THIRD:  The total number of outstanding shares having voting power of the corporation is 3,173,188, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 3,173,188.

FOURTH:  At a meeting of stockholders on May 13, 1991, notice of which was duly given, the amendment herein certified was adopted by the holders of 2,794,105 shares, which represent 2,794,105 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed on June 21, 1991          WATSON LABORATORIES, INC.

By: _Allen y chao_____
      Allen Y. Chao, President

By: _____
      Agnes Y. Kung, Secretary

STATE OF CALIFORNIA )
                     )
COUNTY OF RIVERSIDE )      SS.:

**OFFICIAL SEAL**
**DOLORES MARY LAND**
NOTARY PUBLIC CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Oct. 18, 1993

On *August 14, 1991*, 1991, personally appeared before
me, a Notary Public, for the State and County aforesaid, Allen Y.
Chao, as President of Watson Laboratories, Inc. ~~and Agnes Y.~~
~~Kung, as Secretary of Watson Laboratories, Inc.~~, who acknowledged
that ~~they~~ executed the above instrument.

*Dolores Mary Land*
Notary Public

STATE OF ___CALIFORNIA___

COUNTY OF ___LOS ANGELES___                    } SS.

On this __21__ day of ___JUNE___, 19__91__, before me, the undersigned, a Notary Public in and for said
County, personally appeared ___AGNES Y KUNG___

personally known to me, or proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument,
and acknowledged to me that ___SHE___ executed the same.
Witness my hand and official seal.

*Patricia Brodrick*
Notary Public in and for said County and State

___PATRICIA BRODRICK___
Name (Typed or Printed)

**OFFICIAL SEAL**
**PATRICIA BRODRICK**
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires April 22, 1994

(This area for official notarial seal)

3403 (R5/87)2

IJS.317

RECEIVED

AUG 27 1991

~~Secretary of State~~
1:20

-2-



FILING FEE- $1000.00 TS
REC. #C35693
CT CORPORATION SYSTEM
ONE E. FIRST ST. STE. 1600
RENO, NV  89501
ATTN: VI MILLER

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

FEB 20 1992

CHERYL A. LAU  SECRETARY OF STATE

38-85

# CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF INCORPORATION
## OF
## WATSON LABORATORIES, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:**  The name of the corporation is WATSON LABORATORIES, INC.

**SECOND:**  The Board of Directors of the corporation duly adopted the following resolutions on February 14, 1992.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the shareholders of the Corporation, Article I of the Corporation's Articles of Incorporation is amended to be and read as follows:

### ARTICLE I

The name of the corporation is Watson Pharmaceuticals, Inc.

FURTHER RESOLVED, that subject to the approval of the shareholders of the Corporation, Article V of the Corporation's Articles of Incorporation is amended to be and read as follows:

### ARTICLE V

The corporation is authorized to issue a total of Fifty-Two Million Five Hundred Thousand (52,500,000) shares of stock, Fifty Million (50,000,000) shares of which shall be classified as common stock, $.0033 par value per share and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share.  The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designations in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

FURTHER RESOLVED, that subject to the approval of the shareholders of the Corporation, Article XI of the Corporation's Articles of Incorporation is amended to be and read as follows:

## ARTICLE XI

No director or officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation law.

Any repeal or modification of this Article by the stockholders of the Corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of such repeal or modification.

FURTHER RESOLVED, that Article XII of the Corporation's Articles of Incorporation is amended to be and read as follows:

## ARTICLE XII

1. To the extent not prohibited by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the Corporation, by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, has no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

2. To the extent not prohibited by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another

2

corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the Corporation or for amounts paid in settlement to the Corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3.    To the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article XII, or in defense of any claim, issue or matter therein, he must be indemnified by the Corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4.    Any indemnification under subsections 1 and 2 of Article XII, unless ordered by a court or advanced pursuant to subsection 5 of Article XII, may be made by the Corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the Corporation; (b) the Board of Directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so orders; or (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

5.    The Corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the Corporation. The provisions of this subsection do not affect any rights to

3



advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

6.    The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article XII (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer (or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

THIRD:    The total number of outstanding shares having voting power of the corporation is 4,302,496, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 4,302,496.

FOURTH:    By written consent of the holders of a majority of the issued and outstanding stock of the corporation, dated as of February 14, 1992, pursuant to Sections 78.320, 78.385 and 78.390 of the Nevada Revised Statutes, the amendment herein certified was adopted by the holders of 2,913,408 shares, which represent 2,913,408 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed: February 14, 1992

WATSON LABORATORIES, INC.

By:    _Allen Y. Chao_
       Allen Y. Chao, President

By:    _Michel J. Feldman_
       Michel J. Feldman, Assistant Secretary

4

STATE OF CALIFORNIA ⟩
⟩ SS
COUNTY OF RIVERSIDE ⟩

On _2/18_, 1992, personally appeared before me, a Notary Public, for the State and County aforesaid, Allen Y. Chao as President of Watson Laboratories, Inc. and Michel J. Feldman as Assistant Secretary of Watson Laboratories, Inc., who acknowledged that they executed the above instrument.



OFFICIAL SEAL
HELGA E. SCHROEDER
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires June 16, 1992

_Helga E. Schroeder_
NOTARY PUBLIC

RECEIVED
1:10 ⟍
FEB 2 0 1992

Secretary of State

5

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

**JUL 18 1995**

38 - 85

DEAN HELLER SECRETARY OF STATE

No.

Inv # 7677

E - 64911

**CERTIFICATE OF AMENDMENT**
**OF**
**ARTICLES OF INCORPORATION**
**OF**
**WATSON PHARMACEUTICALS, INC.**

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:**  The name of the Corporation is WATSON PHARMACEUTICALS, INC.

**SECOND:**  The Board of Directors of the Corporation duly adopted the following resolution on May 1, 1995.

FURTHER RESOLVED: that subject to approval of the stockholders of the Corporation, the first two sentences of Article VI of the Articles of Incorporation of the Corporation are hereby deleted and replaced with the following:

"The members of the governing board shall be called directors of the Corporation. The number of directors of the Corporation shall be nine (9). The directors shall be divided into three classes designated as Class I, Class II and Class III, respectively. Each class shall consist, as nearly as may be possible, of one-third of the total number of directors constituting the entire board of directors. At the annual meeting of stockholders of the Corporation to be held in the year 1995, the Corporation shall designate the slate of directors to be elected by the stockholders as Class I, Class II and Class III directors, except that for such 1995 annual meeting only eight (8) directors shall be elected by the stockholders and the ninth director position (a Class I position) shall be vacant. The initial term of office of the Class I directors shall expire at the annual meeting of the stockholders held in the year 1996. The initial term of office of the Class II directors shall expire at the annual meeting of stockholders held in the year 1997. The initial term of office of the Class III directors shall expire at the annual meeting of stockholders held in the year 1998. At each annual meeting of the stockholders after the annual meeting held in the year 1995, successors to the class of directors whose term expires at the annual meeting shall be elected for a three-year term. If the number of directors is changed, any increase or decrease shall be apportioned among the classes so as to maintain the number of directors in each class as nearly as possible, but in no case shall a decrease in the number of directors shorten the term of any incumbent director. A director shall hold office until the annual meeting for the year in which his term expires and until his successor shall be elected and qualified, subject, however, to prior death, resignation, retirement, disqualification or removal from office. The annual meeting of stockholders shall be held each year on a date and at a time designated by the Board of Directors of the Corporation.

Subject to the rights, if any, of holders of any series of Preferred Stock then outstanding, any vacancy on the Board of Directors that results from an increase in the number of directors or by reason of the vacancy following the annual meeting of the stockholders held in the year 1995 may be filled by a majority of the Board of Directors then in office, provided that a quorum is present, and any other vacancy occurring in the Board of Directors may be filled by a majority of the directors then in office, even if less than a quorum. Any directors elected to fill a vacancy resulting from an increase in such class shall hold office for a term that shall coincide with the remaining term of that class. Any director elected to fill a vacancy not resulting from an increase in the number of directors shall have the same remaining term as that of his predecessor."

THIRD:    As of May 19, 1995, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is approximately 17,289,786, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is approximately 17,289,785.

FOURTH:   On July 17, 1995, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of _9,001,802_ shares of common stock, $.0033 par value per share, of the Corporation, which represent _9,001,802_ votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:    July 17, 1995

WATSON PHARMACEUTICALS, INC.

By: _____
        Allen Chao, President

By: _____
        Michel Feldman, Assistant
        Secretary

2

JUL 18 '95  12:47PM WOODBURN HEDGE                                P 3

STATE OF ~~CALIFORNIA~~ *ILLINOIS* )
                                   ) SS
COUNTY OF ~~RIVERSIDE~~ *COOK*     )

On July 17, 1995, Allen Chao as President of Watson Pharmaceuticals, Inc. and Michel Feldman as Assistant Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
PATRICIA A. JONES
Notary Public, State of Illinois
My Commission Expires Nov. 22, 1998

3



JUL 18 1995

SECRETARY OF STATE

JUL 18 '95  12:48PM WOODBURN WEDGE                                    P.11

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUL 18 1995

38-85

DEAN HELLER SECRETARY OF STATE

**CERTIFICATE OF AMENDMENT**
**OF**
**ARTICLES OF INCORPORATION**
**OF**
**WATSON PHARMACEUTICALS, INC.**

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

FIRST:    The name of the Corporation is WATSON PHARMACEUTICALS, INC.

SECOND:   The Board of Directors of the Corporation duly adopted the following resolution on May 1, 1995.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the stockholders of the Corporation, Article V of the Articles of Incorporation of the Corporation is amended to be and read as follows:

### ARTICLE V

The Corporation is authorized to issue a total of One Hundred and Two Million Five Hundred Thousand (102,500,000) shares of stock, One Hundred Million (100,000,000) shares of which shall be classified as common stock, $.0033 par value per share, and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designation in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

THIRD:    As of May 19, 1995, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is approximately 17,289,786, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is approximately 17,289,785.

FOURTH:   On July 17, 1995, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of _15,045,332_ shares of

JUL 18 '95  12:41PM HOODBUSH HELGE

P.13

P.12

common stock, $.0033 par value per share, of the Corporation, which represent _15,045,332_ votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:        July 17, 1995

WATSON PHARMACEUTICALS, INC.

By: _____
     Allen Chao, President

By: _____
     Michel Feldman, Assistant Secretary

2

JUL 18 '95  12:40PM WOODBURN HEDGE

P.13

STATE OF ~~CALIFORNIA~~ *ILLINOIS*  )
                                     ) SS
COUNTY OF ~~RIVERSIDE~~ *Cook*       )

On July 17, 1995, Allen Chao as President of Watson Pharmaceuticals, Inc. and Michel Feldman as Assistant Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
PATRICIA A. JONES
Notary Public, State of Illinois
My Commission Expires Nov. 26, 1998

3

RECEIVED

JUL 18 1995

SECRETARY OF STATE

MAY-30-'96  08:14AM  WOODBURN  HEDGES                          312 750 872 P.2/4

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

**MAY 30 1996**

38-85

DEAN HELLER SECRETARY OF STATE

CERTIFICATE OF AMENDMENT
OF
ARTICLES OF INCORPORATION
OF
WATSON PHARMACEUTICALS, INC.

Pursuant to provisions of Nevada Revised Statutes, Title 7, Chapter 78, the undersigned officers do hereby certify:

**FIRST:**   The name of the Corporation is WATSON PHARMACEUTICALS, INC.

**SECOND:**   The Board of Directors of the Corporation duly adopted the following resolution on February 26, 1996.

NOW, THEREFORE, BE IT RESOLVED, that subject to approval of the stockholders of the Corporation, Article V of the Articles of Incorporation of the Corporation is amended to be and read as follows:

ARTICLE V

The Corporation is authorized to issue a total of Five Hundred and Two Million Five Hundred Thousand (502,500,---) shares of stock, Five Hundred Million (500,000,000) shares of which shall be classified as common stock, \$.0033 par value per share, and Two Million Five Hundred Thousand (2,500,000) shares of which shall be classified as preferred stock, no par value per share. The holders of both classes of stock shall not be entitled to exercise cumulative voting or preemptive rights.

The voting powers, designations, preferences, limitations, restrictions, relative rights and distinguishing designation in respect of the shares of the preferred stock shall be as stated in the resolution or resolutions providing for the issuance of such preferred stock adopted or to be adopted by the Board of Directors of the Corporation pursuant to the authority hereby expressly vested in the Board of Directors of the Corporation by these Articles of Incorporation.

**THIRD:**   As of March 15, 1996, the record date of the annual meeting of stockholders of the Corporation, the total number of outstanding shares having voting power of the Corporation is 36,607,903, and the total number of votes entitled to be cast by the holders of all of said outstanding shares is 36,607,903.

**FOURTH:**   On May 10, 1996, at the Annual Meeting of stockholders of the Corporation, notice of which was duly given, the amendment herein certified was adopted by the holders of 19,372,801 shares of common

RECEIVED

MAY

MAYMAY 30,'96   08:15AM WOODBURN HEDGE                    312 756 8782  P.3 45·44

stock, $.0033 par value per share, of the Corporation, which represent 19,372,801 votes, and which constitute at least a majority of all of the voting power of the holders of shares having voting power.

Signed:          May 10, 1996

                              WATSON PHARMACEUTICALS, INC.

                         By: _____
                              Dr. Melvin Sharoky, President

                         By: _____
                              Michel J. Feldman, Secretary

63767/1                              2

MAY 30 '96 09:15AM WOODBURN HEDGE
CP SYSTEMS

312 750 0782    P.04

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF COOK             )

On May 10, 1996, Dr. Melvin Sharoky, as President of Watson Pharmaceuticals, Inc. and Michel J. Feldman as Secretary of Watson Pharmaceuticals, Inc., personally appeared before the undersigned, a Notary Public in and for said County, who acknowledged that they executed the above instrument.

"OFFICIAL SEAL"
SHARON TESSITORE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/8/2000

NOTARY PUBLIC

63767/1

3

TOTAL P.04

# **EXHIBIT B**

# EXHIBIT REDACTED IN ITS ENTIRETY

**EXHIBIT C**

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# **EXHIBIT D**

*DEAN HELLER*
*Secretary of State*

**STATE OF NEVADA**

*CHARLES E. MOORE*
*Securities Administrator*

*RENEE L. PARKER*
*Chief Deputy*
*Secretary of State*



*SCOTT W. ANDERSON*
*Deputy Secretary*
*for Commercial Recordings*

*PAMELA RUCKEL*
*Deputy Secretary*
*for Southern Nevada*

*ELLICK HSU*
*Deputy Secretary*
*for Elections*

**OFFICE OF THE**
**SECRETARY OF STATE**

## Certified Copy

March 15, 2006

**Job Number:**          C20060309-1078
**Reference Number:**    00000682867-17
**Expedite:**
**Through Date:**

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number(s) | Description | Number of Pages |
|---|---|---|
| C1563-1992-001 | Articles of Incorporation | 6 Pages/1 Copies |
| C1563-1992-003 | Articles of Merger | 2 Pages/1 Copies |
| C1563-1992-004 | Articles of Merger | 5 Pages/1 Copies |

Respectfully,

DEAN HELLER
Secretary of State

By

Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**FEB 20 1992**

CHERYL A. LAU  SECRETARY OF STATE

1563-92

RECEIPT #C    36899
C T CORPORATION SYSTEM / RENO
C T CORPORATION SYSTEM - VI MILLER
ONE EAST FIRST STREET #1600
RENO, NEVADA 89501

## ARTICLES OF INCORPORATION

### OF

### WATSON LABORATORIES, INC.

**FIRST.**    The name of the corporation is WATSON LABORATORIES, INC.

**SECOND.**    The purposes of the corporation are to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

**THIRD.**    The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

**FOURTH.**    The corporation is authorized to issue a total of 1,000 shares of stock, all of which shall be classified as common stock, $.01 par value per share. The holders of the stock shall not be entitled to exercise cumulative voting or preemptive rights.

**FIFTH.**    The governing board of this corporation shall be known as directors, and the number of directors may from time to time be increased or decreased in such manner as shall be provided by the by-laws of this corporation.

The names and post office addresses of the first board of directors, which shall be three (3) in number, are as follows:

| NAME | ADDRESS |
|------|---------|
| Allen Y. Chao | 132A Business Center Drive Corona, CA 91720 |
| David C. Hsia | 132A Business Center Drive Corona, CA 91720 |
| Alec D. Keith | 100 North Science Park Road State College, PA 16803 |

SIXTH.    The capital stock, after the amount of the subscription price or par value has been paid in, shall not be subject to assessment to pay the debts of the corporation.

SEVENTH.  The name and post office address of the incorporator signing the articles of incorporation are as follows:

| NAME | ADDRESS |
|------|---------|
| Steven M. Prebish | 30 North LaSalle Street<br>Suite 2900<br>Chicago, Illinois 60602 |

EIGHTH.   The corporation is to have perpetual existence.

NINTH.    The corporation reserves the right to amend, alter, change or repeal any provision contained in the articles of incorporation, in the manner now or hereafter prescribed by statute, or by the articles of incorporation, and all rights conferred upon stockholders herein are granted subject to this reservation.

TENTH.    No director or officer of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation Law.

Any repeal or modification of this Article by the stockholders of the corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

ELEVENTH 1.  To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any

2

threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the corporation, by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, has no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

2. To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or

3

settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the corporation or for amounts paid in settlement to the corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3.  To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article Eleventh, or in defense of any claim, issue or matter therein, he must be indemnified by the corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4.  Any indemnification under subsections 1 and 2 of Article Eleventh, unless ordered by a court or advanced pursuant to subsection 5 of Article Eleventh, may be made by the corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the corporation; (b) the board of directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so

4

orders; and (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

5. The corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the corporation. The provisions of this subsection do not affect any rights to advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

6. The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article Eleventh (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer

5

(or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

THE UNDERSIGNED, being the sole incorporator hereinbefore named, for the purpose of forming a corporation pursuant to the General Corporation Law of the State of Nevada, does make and file these articles of incorporation, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto sets his hand this 17th day of February, 1992.

Steven M. Prebish

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

On this 17th day of February, 1992, before me, a Notary Public, personally appeared Steven M. Prebish, who acknowledged that he executed the above instrument.

NOTARY PUBLIC

"OFFICIAL SEAL"
Suzette Sabonov
Notary Public, State of Illinois
Commission Expires 11/7/94

CERTIFICATE OF ACCEPTANCE OF APPOINTMENT

BY RESIDENT AGENT

The Corporation Trust Company of Nevada hereby accepts the appointment as Resident Agent of the above named corporation.

The Corporation Trust Company of Nevada

Resident Agent

By _____    Date 2-19-92
    (Assistant Secretary)
    Reuben S. Barba

6

RECEIVED

FEB 2 0 1992

Secretary of State

C 1626
E 087497

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

JUN 28 1995

1563 -92

DEAN HELLER SECRETARY OF STATE

No. _____

# ARTICLES OF MERGER
## OF
## ZETACHRON, INCORPORATED
### INTO
## WATSON LABORATORIES, INC.

**FIRST:**  The name of the surviving corporation is WATSON LABORATORIES, INC. and the place of its incorporation is the State of Nevada.  The name and place of incorporation of the corporation being merged into the surviving corporation is ZETACHRON, INCORPORATED, incorporated in the State of Pennsylvania.

**SECOND:**  An Agreement and Plan of Merger was adopted by the board of directors of each corporation that is a party of this merger.

**THIRD:**  The Agreement and Plan of Merger was entitled to be and was approved by the board of directors of WATSON LABORATORIES, INC., without the approval of the stockholders thereof being required.

**FOURTH:**  The designation, number of outstanding shares, number of votes entitled to be cast and the total number of votes cast for and against the Agreement and Plan of Merger, by the stockholders of ZETACHRON, INCORPORATED is as follows:

| Designation | Outstanding Shares | Votes Entitled to be cast | Votes For | Votes Against |
|---|---|---|---|---|
| Common | 1,000 | 1,000 | 1,000 | None |

**FIFTH:**  The number of votes cast for the Agreement and Plan of Merger by the stockholders of ZETACHRON, INCORPORATED was sufficient for approval thereof by the stockholders of the corporation.

**SIXTH:**    The complete executed plan of merger is on file at the place of business of **WATSON LABORATORIES, INC.** located at 311 Bonnie Circle, Corona, CA 91720, and a copy of the plan will be furnished by **WATSON LABORATORIES, INC.,** on request and without cost to any stockholder of any corporation which is a party to this merger.

**SEVENTH:**   All corporations party to this merger have complied with laws of their respective jurisdiction of incorporation concerning this merger.

**EIGHTH:**    This merger shall be effective on June 30, 1995.

**WATSON LABORATORIES, INC.**

By: _____
     Allen Chao, President

By: _____
     Michel J. Feldman,
     Assistant Secretary

State of **CALIFORNIA**  )
                          ) ss.
County of Riverside )

On June 21, 1995, personally appeared before me, a Notary Public   MICHEL J. FELDMAN an ALLEN CHAO who acknowledged that they executed the above instrument.

[Notary seal: Wendy K. Wright, Comm. #1029696, NOTARY PUBLIC CALIFORNIA, RIVERSIDE COUNTY, Comm. Expires June 12, 1998]

_____
Notary Public
Wendy K. Wright

JUN 28 1995

2

*INV.*
*($ 1.25 -)*

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**MAY 1 9 1999**

No. *C15363-92*
*Dean Heller*
DEAN HELLER, SECRETARY OF STATE

ARTICLES OF MERGER

OF

**OCLASSEN PHARMACEUTICALS, INC.**

(a Delaware corporation)

**WITH AND INTO**

**WATSON LABORATORIES, INC.**

(a Nevada corporation)

This Agreement of Merger is entered into as of May 10, 1999 by and between Oclassen Pharmaceuticals, Inc., a Delaware corporation (the "Merging Corporation") and Watson Laboratories, Inc., a Nevada corporation (the "Surviving Corporation"). The Merging Corporation and the Surviving Corporation are hereinafter sometimes collectively referred to as the "Constituent Corporations."

## R E C I T A L S

A.     The Merging Corporation was incorporated on March 12, 1992. Its authorized capital stock consists of One Thousand (1,000) shares of common stock, $0.01 par value per share, of which 1,000 shares are issued and outstanding (the "Merging Corporation Stock"),

B.     The Surviving Corporation was incorporated on February 20, 1992. Its current authorized capital stock consists of One Thousand (1,000) shares of common stock, $10.00 par value per share, of which 1,000 shares are issued and outstanding (the "Surviving Corporation Stock")

C.     The respective Boards of Directors of Surviving Corporation and Merging Corporation deem it advisable and to the advantage of each of the Constituent Corporations that Merging Corporation merge with and into Surviving Corporation upon the terms and subject to the conditions set forth in this Agreement of Merger.

D.     The sole director of each of the Constituent Corporations and the sole shareholder of each Constituent Corporation have approved this Agreement of Merger.

E.     All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

**NOW, THEREFORE,** the parties do hereby adopt this Agreement of Merger and do hereby agree that Merging Corporation shall merge with and into Surviving Corporation on the following terms, conditions and other provisions:

354327-1

# ARTICLE I

## THE MERGER

1.　__The Merger.__  Upon the terms and subject to the conditions of this Agreement of Merger, at the Effective Time (as herein defined), Merging Corporation shall be merged with and into Surviving Corporation in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement (the "__Merger__"), whereupon the separate corporate existence of Merging Corporation shall cease and Surviving Corporation shall be the surviving corporation of the Merger.

2.　__Effective Time.__  Merging Corporation and Surviving Corporation shall cause this Agreement of Merger together with officers' certificates attached to be properly executed and filed in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement. Merging Corporation and Surviving Corporation shall also take such further actions as may be required under the laws of the States of Delaware and Nevada in connection with the consummation of the Merger. The Merger shall become effective on May 12, 1999 at 12:01 A.M. Pacific Time (the "__Effective Time__").

3.　__Articles of Incorporation and By-Laws.__

(a)　The Articles of Incorporation of the Surviving Corporation at the Effective Time of the Merger shall continue to be the Articles of Incorporation of the Surviving Corporation until changed as provided by law.

(b)　The By-Laws of the Surviving Corporation at the Effective Time of the Merger shall continue to be the By-Laws of the Surviving Corporation until altered or amended in accordance with the provisions thereof.

4.　__Directors and Officers.__  The directors and officers of the Surviving Corporation at the Effective Time of the Merger shall continue to be the directors and officers, respectively, of the Surviving Corporation until their successors are chosen.

5.　__Terms of Merger.__

(a)　From and after the effective time of the Merger, the Surviving Corporation shall possess all the rights, privileges, immunities, and franchises of a public, as well as of a private nature, of each of the Constituent Corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares and all other choses in action, and all and every other interest, of or belonging to or due to each of the Constituent Corporations, shall be taken and deemed to be transferred to and vested in the Surviving Corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of the Constituent Corporations shall not revert or be in any way impaired by reason of the Merger, provided, however, that the Surviving Corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the Constituent Corporations, and any claim existing or action or preceding pending by or against either of the

354327-1

Constituent Corporations may be prosecuted to judgment as if the Merger had not taken place, or the Surviving Corporation may be substituted in its place, and neither the rights of creditors nor any liens upon the property of either of the Constituent Corporations shall be impaired by the Merger.

(b)     Upon the Merger becoming effective, all shares of the Merging Corporation outstanding immediately prior to the Merger shall be canceled and retired, and no new shares of the Surviving Corporation shall be issued.  The outstanding shares of the Surviving Corporation shall remain outstanding.

(c)     The Surviving Corporation shall pay all expenses of carrying the Plan into effect and accomplishing the Merger provided for herein.

(d)     The proper officers and directors of the Constituent Corporations shall execute and deliver all such documents and take all such actions as may be necessary or advisable, or as may be requested by the Surviving Corporation from time to time, in order to vest fully all the property rights of the Constituent Corporations in the Surviving Corporation and otherwise carry out this Plan.

(e)     Anything herein or elsewhere to the contrary notwithstanding, the Plan and this Merger may be abandoned by the mutual consent of the Constituent Corporations, evidenced by appropriate resolutions of their respective Board of Directors, at any time prior to the effective date of the Merger.

## ARTICLE II - MISCELLANEOUS

1.     Counterparts.  This Agreement of Merger may be signed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.

2.     Amendments.  This Agreement of Merger may be amended by the parties hereto at any time before or after approval of the Merger and the Plan of Merger by the Surviving Corporation Shareholders but, after any such approval, no amendment shall be made which by law requires further approval by such shareholders unless such shareholder consent is acquired. This Agreement of Merger may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

3,     Governing Law.  This agreement shall be governed by and construed under the internal laws of the State of Delaware as applied to agreements among Delaware residents entered into and to be performed entirely within Delaware, without reference to the principles of conflicts of law or choice of laws, except to the extent that the laws of the State of Nevada would apply in matters relating to the internal affairs of the Surviving Corporation and the Merger.

354327-1

IN WITNESS WHEREOF, this Merger Agreement is hereby executed on behalf of each of the Constituent Corporations by their respective officers thereunto duly authorized.

OCLASSEN PHARMACEUTICALS, INC.

By: _____
    Allen Chao

AND            Its:  Chairman

By: _____
    Robert C. Funsten

Its:  Secretary


WATSON LABORATORIES, INC.

By: _____
    Allen Chao

AND            Its:  President

By: _____
    Robert C. Funsten

Its:  Secretary


354327-1

STATE OF ILLINOIS )
                  )ss:
COUNTY OF COOK  )


On May 14, 1999, personally appeared before me, a Notary Public in and for the State and County aforesaid, Allen Chao, President and Robert C. Funsten, Secretary of Watson Laboratories, Inc., personally known to me to be the persons whose names are subscribed to the above instrument in the said capacity, who acknowledged that they executed the said instrument.

_Sela L. Brown_
Notary Public

"OFFICIAL SEAL"
SELA L. BROWN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2001

356919-1

# **EXHIBIT E**

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

**EXHIBIT F**

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT   4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WYETH,

     *Plaintiff,*

     v.

WATSON LABORATORIES, INC., *and*
WATSON PHARMACEUTICALS, INC.,
     *Defendants.*

Civil Action No. 08-cv-00145-JJF

## AFFIDAVIT OF ANDREW S. BOYER

1.     I am Andrew S. Boyer, Sr. Vice President of Sales & Marketing at Watson Pharma, Inc. ("Watson Pharma"). I am an adult and competent to testify to the following having personal knowledge or based on my review of company records.

2.     Watson Pharma is a Delaware corporation having its principal place of business in Morristown, New Jersey. (*See* Exhibits A, B.)

3.     Watson Pharma is a sister corporation of Watson Laboratories, Inc., a Nevada corporation ("Watson Labs Nevada"). Watson Pharma and Watson Labs Nevada are both wholly owned subsidiaries of Watson Pharmaceuticals, Inc., a Nevada corporation ("Watson Pharmaceuticals"). (Exhibit C.)

4.     Watson Pharma and Watson Labs Nevada are separate corporate and legal entities. (*See* Exhibits A, D.)

5.     Watson Labs Nevada does not control the day-to-day operational decisions of Watson Pharma and *vice versa*.



7.    Watson Pharma and Watson Labs Nevada each have their own separate by-laws and articles of incorporation. (*See* Exhibits A, B, D and F.)

8.    Watson Pharma and Watson Labs Nevada enter into and perform their own contracts. (*See, e.g.*, Exhibit G.)

9.    Watson Pharma does not prepare or submit ANDAs.

10.    Watson Pharma did not prepare or submit ANDA No. 79-218.



2



*REDACTED*

I certify under penalty of perjury of the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Andrew S. Boyer

**AFFIANT**

SWORN TO AND SUBSCRIBED
before me this 2 day of April 2008 at Morris County New Jersey

NOTARY PUBLIC

LOIS PAGANO
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires Feb. 25, 2011

3

**EXHIBIT A**



# Delaware

PAGE  1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT
COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED
CERTIFICATE OF "WATSON PHARMA, INC." AS RECEIVED AND FILED IN
THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, FILED THE TWENTY-EIGHTH DAY OF AUGUST,
A.D. 2000, AT 9:30 O'CLOCK A.M.

CERTIFICATE OF MERGER, CHANGING ITS NAME FROM "SCHEIN
PHARMACEUTICAL, INC." TO "WATSON PHARMA, INC.", FILED THE
TWENTY-NINTH DAY OF MARCH, A.D. 2001, AT 9 O'CLOCK A.M.



*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

2352578   8100X

020615649

AUTHENTICATION: 2018188

DATE: 10-03-02

# AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
### OF
## SCHEIN PHARMACEUTICAL, INC.

### Pursuant to §242 and §245 of the
### General Corporation Law of the State of Delaware

1.  The original name of this corporation is Schein Pharmaceutical Corp. ("Schein") and the date of filing of the original Certificate of Incorporation of this corporation with the Secretary of State of the State of Delaware was September 27, 1993.

2.  The Certificate of Incorporation of the corporation is hereby amended and restated to read as follows:

### I.

The name of this corporation is Schein Pharmaceutical, Inc.

### II.

The address, including street, number, city, and county, of the registered office of the corporation in the State of Delaware is 1209 Orange Street, City of Wilmington, County of New Castle; and the name of the registered agent of the corporation in the State of Delaware at such address is The Corporation Trust Company.

### III.

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the Delaware General Corporation Law.

### IV.

This corporation is authorized to issue one class of stock to be designated "Common Stock." The total number of shares of Common Stock which this corporation is authorized to issue is one hundred (100) shares, each having a par value of one tenth of one cent ($0.001).

### V.

For the management of the business and for the conduct of the affairs of the corporation, and in further definition, limitation and regulation of the powers of

1.



the corporation, of its directors and of its stockholders or any class thereof, as the case may be, it is further provided that:

1.     The management of the business and the conduct of the affairs of the corporation shall be vested in its Board of Directors.  The number of directors which shall constitute the whole Board of Directors shall be fixed by the Board of Directors in the manner provided in the Bylaws.

2.     The Board of Directors may from time to time make, amend, supplement or repeal the Bylaws; provided, however, that the stockholders may change or repeal any Bylaw adopted by the Board of Directors by the affirmative vote of the holders of a majority of the voting power of all of the then outstanding shares of the capital stock of the corporation (considered for this purpose as one class); and, provided further, that no amendment or supplement to the Bylaws adopted by the Board of Directors shall vary or conflict with any amendment or supplement thus adopted by the stockholders.

3.     The directors of the corporation need not be elected by written ballot unless the Bylaws so provide.

## VI.

A director of the corporation shall, to the full extent not prohibited by the Delaware General Corporation Law, as the same exists or may hereafter be amended, not be liable to the corporation or its stockholders for monetary damages for breach of his fiduciary duty as a director.

## VII.

The corporation is to have perpetual existence.

## VIII.

The corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon the stockholders herein are granted subject to this right.




103498 v1/HN
27%Y01!.DOC

08-27-2000   10:34am   From-                                                    T-040   P 004    F-090

IN WITNESS WHEREOF, Schein Pharmaceutical, Inc. has caused this Certificate of Incorporation to be executed in its corporate name as of the 28th day of August, 2000.

SCHEIN PHARMACEUTICAL, INC.

By: _____

Robert C. Funsten

Secretary

**CERTIFICATE OF MERGER**
**OF**
**WATSON PHARMA, INC.**
**AND**
**SCHEIN PHARMACEUTICAL PA, INC.**
**WITH AND INTO**
**SCHEIN PHARMACEUTICAL, INC.**

Pursuant to the provisions of Section 251 of the Delaware General Corporation Law, Schein Pharmaceutical, Inc. certifies that:

1.      The name and state of incorporation of each of the constituent corporations are as follows: (a) Schein Pharmaceutical, Inc., a Delaware corporation, (b) Watson Pharma, Inc., a Delaware corporation, and (c) Schein Pharmaceutical PA, Inc., a Delaware corporation.

2       A plan and agreement of merger has been approved, adopted, certified, executed, and acknowledged by each of the constituent corporations in accordance with Section 251 of the General Corporation Law of the State of Delaware.

3.      The surviving corporation is Schein Pharmaceutical, Inc.

4.      The amended and restated certificate of incorporation of Schein Pharmaceutical, Inc. shall be the certificate of incorporation of the surviving corporation, which is hereby amended.

5.      Article I of the amended and restated certificate of incorporation of the surviving corporation shall be amended to change the name of the surviving corporation to Watson Pharma, Inc.

6       Article IV of the amended and restated certificate of incorporation of the surviving corporation shall be amended to change the authorized capital of the surviving corporation to one thousand (1,000) shares of common stock, each having a par value of one-tenth of one cent ($0.001).

7.      The executed agreement and plan of merger is on file at the principal place of business of the surviving corporation.  The address of the principal place of business of the surviving corporation is 100 Campus Drive, Florham Park, New Jersey 07932.

8.      The surviving corporation will furnish a copy of the agreement and plan of merger, on request and without cost, to any stockholder of any constituent corporation.

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 03/29/2001*
*010156087 – 2352578*



IN WITNESS WHEREOF, Schein Pharmaceutical, Inc. has caused this Certificate of Merger to be duly executed on the _29th_ day of March, 2001.

SCHEIN PHARMACEUTICAL, INC.

By: _____

Robert C. Funsten,
Senior Vice President, General Counsel
and Secretary



**EXHIBIT B**

# EXHIBIT REDACTED
# IN ITS ENTIRETY

**EXHIBIT C**

# EXHIBIT REDACTED IN ITS ENTIRETY

**<u>EXHIBIT D</u>**



**DEAN HELLER**
*Secretary of State*

**RENEE L. PARKER**
*Chief Deputy*
*Secretary of State*

**PAMELA RUCKEL**
*Deputy Secretary*
*for Southern Nevada*

**STATE OF NEVADA**



**OFFICE OF THE**
**SECRETARY OF STATE**

**CHARLES E. MOORE**
*Securities Administrator*

**SCOTT W. ANDERSON**
*Deputy Secretary*
*for Commercial Recordings*

**ELLICK HSU**
*Deputy Secretary*
*for Elections*

### Certified Copy

March 15, 2006

| | |
|---|---|
| **Job Number:** | C20060309-1078 |
| **Reference Number:** | 00000682867-17 |
| **Expedite:** | |
| **Through Date:** | |

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| **Document Number(s)** | **Description** | **Number of Pages** |
|---|---|---|
| C1563-1992-001 | Articles of Incorporation | 6 Pages/1 Copies |
| C1563-1992-003 | Articles of Merger | 2 Pages/1 Copies |
| C1563-1992-004 | Articles of Merger | 5 Pages/1 Copies |

Respectfully,

DEAN HELLER
Secretary of State

By

Certification Clerk

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

FEB 20 1992

CHERYL A. LAU  SECRETARY OF STATE

1563–92

RECEIPT #C   36899
C T CORPORATION SYSTEM / RENO
C T CORPORATION SYSTEM – VI MILLER
ONE EAST FIRST STREET #1600
RENO, NEVADA 89501

## ARTICLES OF INCORPORATION

### OF

### WATSON LABORATORIES, INC.

**FIRST.**     The name of the corporation is WATSON LABORATORIES, INC.

**SECOND.**    The purposes of the corporation are to engage in any lawful act or activity for which a corporation may be organized under the Nevada General Corporation Law.

**THIRD.**     The name and address in this State of the corporation's initial agent for service of process is The Corporation Trust Company of Nevada, One East First Street, Reno, Nevada 89501.

**FOURTH.**    The corporation is authorized to issue a total of 1,000 shares of stock, all of which shall be classified as common stock, $.01 par value per share. The holders of the stock shall not be entitled to exercise cumulative voting or preemptive rights.

**FIFTH.**     The governing board of this corporation shall be known as directors, and the number of directors may from time to time be increased or decreased in such manner as shall be provided by the by-laws of this corporation.

The names and post office addresses of the first board of directors, which shall be three (3) in number, are as follows:

| NAME | ADDRESS |
|------|---------|
| Allen Y. Chao | 132A Business Center Drive<br>Corona, CA 91720 |
| David C. Hsia | 132A Business Center Drive<br>Corona, CA 91720 |
| Alec D. Keith | 100 North Science Park Road<br>State College, PA 16803 |

SIXTH.    The capital stock, after the amount of the subscription price or par value has been paid in, shall not be subject to assessment to pay the debts of the corporation.

SEVENTH.  The name and post office address of the incorporator signing the articles of incorporation are as follows:

| <u>NAME</u> | <u>ADDRESS</u> |
|---|---|
| Steven M. Prebish | 30 North LaSalle Street<br>Suite 2900<br>Chicago, Illinois 60602 |

EIGHTH.    The corporation is to have perpetual existence.

NINTH.    The corporation reserves the right to amend, alter, change or repeal any provision contained in the articles of incorporation, in the manner now or hereafter prescribed by statute, or by the articles of incorporation, and all rights conferred upon stockholders herein are granted subject to this reservation.

TENTH.    No director or officer of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, except for liability (a) for acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or (b) the payment of distributions in violation of Section 78.300 of the Nevada General Corporation Law.

Any repeal or modification of this Article by the stockholders of the corporation shall be prospective only, and shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

ELEVENTH 1.  To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any

2

threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the corporation, by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, has no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea nolo contendere or its equivalent, does not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and that, with respect to any criminal action or proceeding, he had reasonable cause to believe that his conduct was unlawful.

      2. To the extent not prohibited by law, the corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses, including amounts paid in settlement and attorneys' fees actually and reasonably incurred by him in connection with the defense or

settlement of the action or suit if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation. Indemnification may not be made for any claim issue or matter as to which such a person has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom to be liable to the corporation or for amounts paid in settlement to the corporation, unless and only to the extent that the court in which the action or suit was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such expenses as the court deems proper, all subject to the restrictions set forth in Section 78.751 of the Nevada General Corporation Law.

3. To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 of Article Eleventh, or in defense of any claim, issue or matter therein, he must be indemnified by the corporation against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the defense.

4. Any indemnification under subsections 1 and 2 of Article Eleventh, unless ordered by a court or advanced pursuant to subsection 5 of Article Eleventh, may be made by the corporation only as authorized in the specific case upon determination that indemnification of the director, officer, employee or agent is proper in the circumstances by (a) the stockholders of the corporation; (b) the board of directors by majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding; (c) independent legal counsel in a written opinion if a majority vote of a quorum consisting of directors who were not parties to the act, suit or proceeding so

4

orders; and (d) independent legal counsel in a written opinion if a quorum consisting of directors who were not parties to the act, suit or proceeding cannot be obtained.

5. The corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any proceeding, in advance of the final disposition of such proceeding; provided, however, that, if required by the Nevada General Corporation Law, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of the action, suit or proceeding only upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the corporation. The provisions of this subsection do not affect any rights to advancement of expenses to which corporate personnel other than directors or officers may be entitled under any contract or otherwise by law.

6. The indemnification and advancement of expenses authorized in or ordered by a court pursuant to this Article Eleventh (a) does not exclude any other rights to which a person seeking indemnification or advancement of expenses may be entitled under these Articles of Incorporation, or any By-Laws, agreement, vote of stockholders or disinterested directors or otherwise, for either an action in his official capacity or an action in another capacity while holding his office, except that indemnification, unless ordered by a court pursuant to subsection 2 or for the advancement of expenses made pursuant to subsection 5, may not be made to or on behalf of any director or officer if a final adjudication establishes that his acts or omissions involved intentional misconduct, fraud or a knowing violation of the law and was material to the cause of action (b) continues as to a person who has ceased to be a director or officer

5

(or other person indemnified hereunder) and shall inure to the benefit of the heirs, executors and administrators of such person.

THE UNDERSIGNED, being the sole incorporator hereinbefore named, for the purpose of forming a corporation pursuant to the General Corporation Law of the State of Nevada, does make and file these articles of incorporation, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto sets his hand this 17th day of February, 1992.

Steven M. Prebish

STATE OF ILLINOIS     )
                      ) SS
COUNTY OF COOK        )

On this 17th day of February, 1992, before me, a Notary Public, personally appeared Steven M. Prebish, who acknowledged that he executed the above instrument.

NOTARY PUBLIC

"OFFICIAL SEAL"
Suzette Sabonov
Notary Public, State of Illinois
Commission Expires 11/7/94

CERTIFICATE OF ACCEPTANCE OF APPOINTMENT

BY RESIDENT AGENT

The Corporation Trust Company of Nevada hereby accepts the appointment as Resident Agent of the above named corporation.

The Corporation Trust Company of Nevada

Resident Agent

By _____     Date 2-19-92
   (Assistant Secretary)
   Reuben S. Barba

6

RECEIVED

FEB 20 1992

Secretary of State

C 1626 ~
E 087497

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
STATE OF NEVADA

**JUN 28 1995**

*1563 -92*

DEAN HELLER SECRETARY OF STATE

No. _____

**ARTICLES OF MERGER**
**OF**
**ZETACHRON, INCORPORATED**
**INTO**
**WATSON LABORATORIES, INC.**

**FIRST:** The name of the surviving corporation is **WATSON LABORATORIES, INC.** and the place of its incorporation is the State of Nevada. The name and place of incorporation of the corporation being merged into the surviving corporation is **ZETACHRON, INCORPORATED**, incorporated in the State of Pennsylvania.

**SECOND:** An Agreement and Plan of Merger was adopted by the board of directors of each corporation that is a party of this merger.

**THIRD:** The Agreement and Plan of Merger was entitled to be and was approved by the board of directors of **WATSON LABORATORIES, INC.,** without the approval of the stockholders thereof being required.

**FOURTH:** The designation, number of outstanding shares, number of votes entitled to be cast and the total number of votes cast for and against the Agreement and Plan of Merger, by the stockholders of **ZETACHRON, INCORPORATED** is as follows:

| Designation | Outstanding Shares | Votes Entitled to be cast | Votes For | Votes Against |
|---|---|---|---|---|
| Common | 1,000 | 1,000 | 1,000 | None |

**FIFTH:** The number of votes cast for the Agreement and Plan of Merger by the stockholders of **ZETACHRON, INCORPORATED** was sufficient for approval thereof by the stockholders of the corporation.

**SIXTH:**    The complete executed plan of merger is on file at the place of business of **WATSON LABORATORIES, INC.** located at 311 Bonnie Circle, Corona, CA 91720, and a copy of the plan will be furnished by **WATSON LABORATORIES, INC.,** on request and without cost to any stockholder of any corporation which is a party to this merger.

**SEVENTH:**    All corporations party to this merger have complied with laws of their respective jurisdiction of incorporation concerning this merger.

**EIGHTH:**    This merger shall be effective on June 30, 1995.

**WATSON LABORATORIES, INC.**

By: _____
Allen Chao, President

By: _____
Michel J. Feldman,
Assistant Secretary

State of **CALIFORNIA**  )
                                           ) ss.
County of Riverside )

On June 21, 1995, personally appeared before me, a Notary Public   MICHEL J. FELDMAN an ALLEN CHAO who acknowledged that they executed the above instrument.

Notary Public
Wendy K. Wright

Wendy K. Wright
Comm. #1029696
NOTARY PUBLIC CALIFORNIA
RIVERSIDE COUNTY
Comm. Expires June 12, 1998

JUN 28 1995

2

*INV.*
*($ 1625.-)*

**FILED**
IN THE OFFICE OF THE
SECRETARY OF STATE OF THE
**STATE OF NEVADA**

**MAY 1 9 1999**

No. *C15 63 - 92*
*Dean Heller*
DEAN HELLER, SECRETARY OF STATE

ARTICLES OF MERGER

OF

**OCLASSEN PHARMACEUTICALS, INC.**

(a Delaware corporation)

WITH AND INTO

**WATSON LABORATORIES, INC.**

(a Nevada corporation)

This Agreement of Merger is entered into as of May 10, 1999 by and between Oclassen Pharmaceuticals, Inc., a Delaware corporation (the "Merging Corporation") and Watson Laboratories, Inc., a Nevada corporation (the "Surviving Corporation"). The Merging Corporation and the Surviving Corporation are hereinafter sometimes collectively referred to as the "Constituent Corporations."

R E C I T A L S

A.    The Merging Corporation was incorporated on March 12, 1992. Its authorized capital stock consists of One Thousand (1,000) shares of common stock, $0.01 par value per share, of which 1,000 shares are issued and outstanding (the "Merging Corporation Stock"),

B.    The Surviving Corporation was incorporated on February 20, 1992. Its current authorized capital stock consists of One Thousand (1,000) shares of common stock, $10.00 par value per share, of which 1,000 shares are issued and outstanding (the "Surviving Corporation Stock")

C.    The respective Boards of Directors of Surviving Corporation and Merging Corporation deem it advisable and to the advantage of each of the Constituent Corporations that Merging Corporation merge with and into Surviving Corporation upon the terms and subject to the conditions set forth in this Agreement of Merger.

D.    The sole director of each of the Constituent Corporations and the sole shareholder of each Constituent Corporation have approved this Agreement of Merger.

E.    All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

NOW, THEREFORE, the parties do hereby adopt this Agreement of Merger and do hereby agree that Merging Corporation shall merge with and into Surviving Corporation on the following terms, conditions and other provisions:

354327-1

## ARTICLE I

### THE MERGER

1. <u>The Merger</u>. Upon the terms and subject to the conditions of this Agreement of Merger, at the Effective Time (as herein defined), Merging Corporation shall be merged with and into Surviving Corporation in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement (the "<u>Merger</u>"), whereupon the separate corporate existence of Merging Corporation shall cease and Surviving Corporation shall be the surviving corporation of the Merger.

2. <u>Effective Time</u>. Merging Corporation and Surviving Corporation shall cause this Agreement of Merger together with officers' certificates attached to be properly executed and filed in accordance with the laws of the States of Delaware and Nevada and the terms of this Agreement. Merging Corporation and Surviving Corporation shall also take such further actions as may be required under the laws of the States of Delaware and Nevada in connection with the consummation of the Merger. The Merger shall become effective on May 12, 1999 at 12:01 A.M. Pacific Time (the "<u>Effective Time</u>").

3. <u>Articles of Incorporation and By-Laws</u>.

(a) The Articles of Incorporation of the Surviving Corporation at the Effective Time of the Merger shall continue to be the Articles of Incorporation of the Surviving Corporation until changed as provided by law.

(b) The By-Laws of the Surviving Corporation at the Effective Time of the Merger shall continue to be the By-Laws of the Surviving Corporation until altered or amended in accordance with the provisions thereof.

4. <u>Directors and Officers</u>. The directors and officers of the Surviving Corporation at the Effective Time of the Merger shall continue to be the directors and officers, respectively, of the Surviving Corporation until their successors are chosen.

5. <u>Terms of Merger</u>.

(a) From and after the effective time of the Merger, the Surviving Corporation shall possess all the rights, privileges, immunities, and franchises of a public, as well as of a private nature, of each of the Constituent Corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares and all other choses in action, and all and every other interest, of or belonging to or due to each of the Constituent Corporations, shall be taken and deemed to be transferred to and vested in the Surviving Corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of the Constituent Corporations shall not revert or be in any way impaired by reason of the Merger, provided, however, that the Surviving Corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the Constituent Corporations, and any claim existing or action or preceding pending by or against either of the

354327-1

Constituent Corporations may be prosecuted to judgment as if the Merger had not taken place, or the Surviving Corporation may be substituted in its place, and neither the rights of creditors nor any liens upon the property of either of the Constituent Corporations shall be impaired by the Merger.

(b)    Upon the Merger becoming effective, all shares of the Merging Corporation outstanding immediately prior to the Merger shall be canceled and retired, and no new shares of the Surviving Corporation shall be issued.  The outstanding shares of the Surviving Corporation shall remain outstanding.

(c)    The Surviving Corporation shall pay all expenses of carrying the Plan into effect and accomplishing the Merger provided for herein.

(d)    The proper officers and directors of the Constituent Corporations shall execute and deliver all such documents and take all such actions as may be necessary or advisable, or as may be requested by the Surviving Corporation from time to time, in order to vest fully all the property rights of the Constituent Corporations in the Surviving Corporation and otherwise carry out this Plan.

(e)    Anything herein or elsewhere to the contrary notwithstanding, the Plan and this Merger may be abandoned by the mutual consent of the Constituent Corporations, evidenced by appropriate resolutions of their respective Board of Directors, at any time prior to the effective date of the Merger.

## ARTICLE II - MISCELLANEOUS

1.    _Counterparts._  This Agreement of Merger may be signed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.

2.    _Amendments._  This Agreement of Merger may be amended by the parties hereto at any time before or after approval of the Merger and the Plan of Merger by the Surviving Corporation Shareholders but, after any such approval, no amendment shall be made which by law requires further approval by such shareholders unless such shareholder consent is acquired. This Agreement of Merger may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

3,    _Governing Law._  This agreement shall be governed by and construed under the internal laws of the State of Delaware as applied to agreements among Delaware residents entered into and to be performed entirely within Delaware, without reference to the principles of conflicts of law or choice of laws, except to the extent that the laws of the State of Nevada would apply in matters relating to the internal affairs of the Surviving Corporation and the Merger.

354327-1

**IN WITNESS WHEREOF**, this Merger Agreement is hereby executed on behalf of each of the Constituent Corporations by their respective officers thereunto duly authorized.

OCLASSEN PHARMACEUTICALS, INC.

By: _____
Allen Chao

AND                         Its: Chairman

By: _____
Robert C. Funsten

Its: Secretary

WATSON LABORATORIES, INC.

By: _____
Allen Chao

AND                         Its: President

By: _____
Robert C. Funsten

Its: Secretary

354327-1

STATE OF ILLINOIS )
                  )ss:
COUNTY OF COOK )

On May 14, 1999, personally appeared before me, a Notary Public in and for the State and County aforesaid, Allen Chao, President and Robert C. Funsten, Secretary of Watson Laboratories, Inc., personally known to me to be the persons whose names are subscribed to the above instrument in the said capacity, who acknowledged that they executed the said instrument.

_____
Notary Public

"OFFICIAL SEAL"
SELA L. BROWN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2001

356919-1

**EXHIBIT E**

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

**EXHIBIT F**

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

**<u>EXHIBIT G</u>**

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT   5

4 of 4 DOCUMENTS

**TRUSTEES OF THE VILLAGE OF ARDEN, Plaintiffs, v. UNITY
CONSTRUCTION COMPANY, a limited liability company of the State of Dela-
ware, BUCKINGHAM GREENE ASSOCIATES, L.L.C., a limited liability company
of the State of Delaware, and BUCKINGHAM GREENE MAINTENANCE
CORPORATION, a corporation of the State of Delaware, Defendants.**

C.A. No. 15025

**COURT OF CHANCERY OF DELAWARE, NEW CASTLE**

*2000 Del. Ch. LEXIS 7*

**October 22, 1999, Submitted
January 26, 2000, Decided**

**SUBSEQUENT HISTORY:**   [*1]  Released for Pub-
lication by the Court February 4, 2000.

**DISPOSITION:**   Defendant Unity's motion for sum-
mary judgment granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs sued defendants
for nuisance because the development adjacent to plain-
tiffs' village constructed storm water channels that
caused part of plaintiffs' village to flood. Defendant con-
struction company moved for summary judgment be-
cause it claimed it had no responsibility for the allegedly
faulty design or shoddy maintenance of the channels.

**OVERVIEW:** Defendants were involved in the design,
construction, and maintenance of a development's storm
water channels, which caused flooding of plaintiffs' vil-
lage and a wooded area. Plaintiffs sued defendants for
nuisance. Defendant construction company moved for
summary judgment, claiming it held no responsibility for
the poor design or maintenance of the channels. Sum-
mary judgment was denied in part and granted in part
because the issue of the extent of defendant's involve-
ment in the construction of the channels involved a dis-
puted issue of material fact, because defendant had a
construction trailer on site and possessed the ultimate
decision-making authority on site. Also, the fact that
defendant did not own the development property did not
excuse it from liability for creating a nuisance. Addition-
ally, cross-claims filed by other defendants involved ma-
terial facts in dispute. But the question regarding whether
defendant construction company was the alter ego of the
corporation that owned property did not involve disputed

issues of material fact, so summary judgment was
granted on that issue.

**OUTCOME:** Summary judgment was granted only re-
garding the issue of whether defendant construction
company was the alter ego of the company that owned
the development property because there were no disputed
issues of material fact, but summary judgment was oth-
erwise denied because there were disputed factual issues
regarding defendant's liability for the channel construc-
tion and associated flooding.

**CORE TERMS:** channels, alter ego, nuisance, summary
judgment, material facts, basin, site, entity, crossclaims,
forest, storm, corporate veil, involvement, village, pipe,
independent contractor, declaration, contracted, convey-
ance, contractee, installed, rip-rap, erosion, splash, sub-
sidiary, duty to maintain, entirely clear, reply brief, sepa-
rate entities, decision-making

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards >
Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards >
Materiality*
[HN1] A party's motion for summary judgment may be
granted when there is no genuine dispute of material fact
and the moving party is entitled to judgment as a matter
of law. Therefore, if any material fact remains in dispute,
the motion is not granted.

2000 Del. Ch. LEXIS 7, *

*Torts > Vicarious Liability > Independent Contractors > General Overview*
[HN2] Generally, an owner or contractee will not be held liable for torts committed by an independent contractor in the performance of the contracted work. But, if the owner or contractee retains control over the activities of an independent contractor, the owner or contractee will be held liable for the torts of the independent contractor.

*Real Property Law > Torts > Nuisance > Types > Private Nuisance*
[HN3] A private nuisance is a civil wrong arising from an unreasonable, unwarranted, or unlawful use of one's property producing material annoyance, inconvenience, discomfort or hurt to another in the use of his property.

*Real Property Law > Torts > Nuisance > General Overview*
*Torts > Vicarious Liability > Agents > General Overview*
[HN4] A defendant can be liable for nuisance when it employs another person or entity to do work from which the defendant knew or should have known a nuisance would likely arise.

*Real Property Law > Torts > Nuisance > General Overview*
*Torts > Vicarious Liability > General Overview*
[HN5] All those who participate in the creation or maintenance of a nuisance are generally liable to third persons for injuries suffered therefrom.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > Fraud*
[HN6] A court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner. Of course, common management of two entities does not, by itself, justify piercing the corporate veil.

**COUNSEL:** Roger A. Akin of Sawyer, Akin & Herron, Wilmington, Delaware. Attorneys for Plaintiffs.

Francis J. Trzuskowski, Robert K. Pearce and William L. Doerler of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, Delaware. Attorneys for Defendant United Construction Company.

Christopher J. Sipe of Bailey & Wetzel, Wilmington, Delaware. Attorney for Defendant Buckingham Greene Maintenance Corporation.

R. Karl Hill of Seitz, Van Ogtrop & Green, Wilmington, Delaware. Attorney for Defendant Buckingham Greene Associates.

**JUDGES:** Myron T. Steele, Vice Chancellor.

**OPINION BY:** Myron T. Steele

**OPINION**

*MEMORANDUM OPINION*

STEELE, V.C.

The Trustees of the Village of Arden ("plaintiffs") bring this action because a development adjacent to their village constructed channels to eject storm water which, when it rains heavily, floods part of plaintiffs' village and a wooded area entrusted to plaintiffs. Defendant Unity Construction ("Unity") moves for summary judgment because it claims it had no responsibility for the allegedly faulty design or shoddy [*2] maintenance of the channels. Unity claims it had little to do with the design plans and construction of the channels. Unity further states that another defendant, Buckingham Greene Maintenance Corporation, has the duty to maintain the channels, not Unity.

Since I find that material facts regarding both Unity's involvement in the construction of the channels and Unity's responsibility over the maintenance of the channels remain in dispute, I deny Unity's motion for summary judgment.

**I. Background**

In 1994, defendant Buckingham Green Associates, L.L.C. (BGALLC) took title to certain lots in the Buckingham Garden development adjacent to the Village of Arden. BGALLC intended to develop these lots and contracted with Unity for Unity to act as construction manager on the Buckingham Greene project.

There was a major obstacle in the development of Buckingham Greene. Next to Buckingham Greene lies Sherwood Forest, a wooded area entrusted to plaintiffs for preservation. Before the development of Buckingham Greene, storm water flowed through Buckingham Greene into a stream in Sherwood Forest. The developers of Buckingham Greene had to find a way to divert this water in order to develop [*3] Buckingham Greene.

Unity, its contractors and its subcontractors devised storm water construction systems ("the channels") for

2000 Del. Ch. LEXIS 7, *

Buckingham Greene, which, once functional, channeled large volumes of storm water from higher grounds and ejected that water at high and destructive velocity into Sherwood Forest. This concentrated flow of water exits the Buckingham Greene property at the end of a drainage pipe that then pours the water into a "rip-rap basin" or "splash basin."

Unity had a large presence at the job site. Unity had a construction trailer on site, and its supervisors visited the site at least weekly. Plaintiffs allege that most of, if not all of, the construction companies and providers of architectural or design services for the Buckingham Greene development worked pursuant to agreements with Unity.

A company called Kershaw Construction ("Kershaw"), actually installed the channels. But, allegedly Unity advised Kershaw concerning the project. When complaints arose from Arden residents about the destruction and erosion in Sherwood Forest resulting from the water flow, Unity brought in Karins & Associates to redesign the splash basin. Plaintiffs allege Unity directed Karins [*4] in this endeavor.

Michael Simeone is a "principal" in Unity and BGALLC. Plaintiffs allege that Simeone and Unity have had ultimate decision-making authority at the site regarding construction issues. In support of that claim, plaintiffs direct me to a document produced during discovery, which purportedly demonstrates that Unity oversaw Kershaw's actions. It is a fax message from Unity apparently to Kershaw, dated July 5, 1995, which seemingly advises Kershaw that an "energy dissipator" is needed at the pipe outfall to "prevent erosion." Another letter from Unity to Kershaw purportedly discusses the necessity to gain New Castle County approval of the "low velocity basin."

Unity claims it has no involvement with the construction of the channels that would warrant holding Unity liable for the flood damage. It is undisputed that Kershaw's contract was with BGALLC, not Unity. But Unity does acknowledge that, in conjunction with its construction management responsibilities, Unity would answer questions posed to it by Kershaw and would inform Kershaw of "punch list" items that New Castle County wanted corrected.

As to the maintenance of the channels, Unity denies responsibility. Unity [*5] states that Mr. Weiler, the executor of the estate that formerly held the land now know as Buckingham Greene, recorded a plan pertaining to that land with the New Castle County Recorder of Deeds in 1994, stating that Buckingham Greene Maintenance Corporation will be responsible for "maintaining the stormwater management areas." [1] Therefore, Unity seems to be arguing, although it is not entirely clear, that

Unity never had maintenance responsibility over the channels.

> 1  Def. Unity's Renewed Mot. to Dismiss., Ex. A ("Maintenance Declaration"), at P6(h). For reasons not entirely clear to me, Unity directs my attention to Paragraph 8 of the Maintenance Declaration, which states,
>
>> "Prior to the completion and conveyance of seventy-five percent (75%) of the lots in the Subdivision, as shown on the Plan or any resubdivision thereof, but not prior to the conveyance of fifty percent (50%) of such lots (excluding conveyances of lots in bulk to a successor developer), Declarant shall, (a) transfer control of the Board of Directors for the [Buckingham Greene] Maintenance Corporation to the owners of the lots; and. . . any storm water management area(s). . . to the [Buckingham Greene] Maintenance Corporation free of liens."

Unity tells me that by Deed dated July 28, 1994, Weiler conveyed to BGALLC fifty of the fifty-five lots constituting the development of Buckingham Greene. Unity fails, however, to explicitly state that control of the board was in fact transferred to the owners of lots. In any event, this transfer, if it did occur, seems to be irrelevant because as I understand Unity's argument they refuse to admit that they ever had a duty to maintain the channels.

[*6]  In responding to Unity's motion to dismiss, plaintiffs allege that it is uncontroverted that Unity was involved in the construction of the channels, and directed the attempts to correct the problems related to that system. They also allege that Simone's ties to both Unity and BGALLC may constitute evidence, if given the opportunity to explore the issue further, supporting their assertion that Unity may have been acting as the alter ego of BGALLC.

In their reply brief, Unity denies controlling Kershaw's performance or methods regarding the channels. Unity also argues that plaintiffs' allegation that Unity is BGALLC's alter ego is unsupported and conclusory. Finally, Unity asks that I dismiss BGALLC's crossclaims and Buckingham Greene Maintenance Corporation's crossclaims against Unity.

## II. Applicable Standard for Motion for Summary Judgment

[HN1] A party's motion for summary judgment may be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. [2] Therefore, if any material fact remains in dispute, I can not grant this motion.

> 2 *See United Vanguard Fund, Inc. v. Take Care, Inc.,* Del. Supr., 693 A.2d 1076, 1079 (1997).

## [*7] III. Analysis

### A. Allegations that Unity was involved in the construction of the channels and splash basin

Plaintiffs state that "Unity has built and is responsible for the construction of Buckingham Greene." [3] More specifically, they allege that "a rip-rap basin has been installed by defendant Unity or others acting at defendant Unity's direction. However, the rip-rap basin as installed has failed, is continuing to fail, and will likely continue to fail in the future, causing further irreparable harm to Arden forest." [4]

> 3 First Amend. Compl. for Injunction. P8.
> 4 First Amend. Compl. for Injunction. P15

Discovery has demonstrated that these allegations are not merely conclusory. In deposition, Michael Simeone confirmed that he visited the site "a couple of times a week," and that Unity had a construction trailer on site. [5] Simeone denied that Unity was involved with laying the pipe (presumably for the channels), but did admit that Unity was present to work on "the houses," and "if Kershaw had questions [*8] or whatever." [6] Simeone further acknowledged possessing the ultimate decision-making authority at the site. [7] There is also the earlier mentioned fax message allegedly from Unity to Kershaw which advised Kershaw that an "energy dissipator" was needed at the pipe outfall to "prevent erosion." Ultimately, Unity may be able to discount these implications, but the extent of Unity's involvement in the construction and maintenance of the channels is a material fact still hotly disputed.

> 5 Michael Simeone's Dep., 12.
> 6 Michael Simeone's Dep., at 64.
> 7 Michael Simeone's Dep., at 72.

[HN2]

Generally an owner or contractee will not be held liable for torts committed by an independent contractor in the performance of the contracted work. [8] But, "if the owner or contractee retains control over the activities of an independent contractor, the owner or contractee will be held liable for the torts of the independent contractor." [9] It may turn out that plaintiffs will be unable to prove that Unity had any control over Kershaw. [*9] Presently, however, there remain material facts in dispute which, if true, would demonstrate Unity had more involvement with the construction and maintenance of the channels than an occasional progress inspection. Accordingly, summary judgment is not appropriate.

> 8 *See Fisher v. Townsends, Inc.,* Del. Supr., 695 A.2d 53, 58 (1997); *Seeney v. Dover Country Club Apartments, Inc.,* Del. Super., 318 A.2d 619, 621 (1974).
> 9 *Fischer, supra,* at 58; see *Seeney, supra,* at 623; *O'Connor v. Diamond State Tel. Co.,* Del. Super., 503 A.2d 661, 663 (1985).

### B. Unity's claim that it is immune from liability because it does not own Buckingham Greene

Unity argues that plaintiff failed to state a colorable claim because Unity does not own the property from which the water creating the nuisance flows. Unity first raised this argument in its reply brief, and gave it cursory treatment even there. [*10] If I thought there was any real support for this argument, I would, in the interests of fairness, afford plaintiffs an opportunity to respond. But, I do not find support for the argument for the following reasons.

[HN3] "A private nuisance is a civil wrong arising from an unreasonable, unwarranted or unlawful use of one's property producing material annoyance, inconvenience, discomfort or hurt to another in the use of his property." [10] [HN4] A defendant can be liable for nuisance when it employs another person or entity to do work from which the defendant knew or should have known a nuisance would likely arise. [11] This Court has broadly held that [HN5] "*all those who participate* in the creation or maintenance of a nuisance are generally liable to third persons for injuries suffered therefrom." [12] As such, plaintiffs must be given an opportunity to prove their version of the disputed material facts regarding Unity's participation in the creation and maintenance of the channels.

> 10 *Shaffer v. Davis,* 1990 Del. Super. LEXIS 217, Del. Super., C.A. No. 89 C-MY20, 1990 WL 81892, at *4, Lee, J. (June 12, 1990) (citations omitted).

[*11]

> 11 *See Cloverleaf Car Company v. Phillips Petroleum Co.,* Mich. App., 213 Mich. App. 186, 540 N.W.2d 297, 300 (1995) (stating "[a] defendant is liable for nuisance where (1) the defen-

dant created the nuisance, (2) the defendant owned or controlled the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise").

12 *Keeley v. Manor Park Apts., Sec. I, Del. Ch., 99 A.2d 248 (1953)* (emphasis added).

### C. Allegations that Unity is the alter ego of BGALLC

Plaintiffs argue that because Simeone is a principal in both BGALLC and Unity "there is a strong indication that Unity may have been acting as the mere instrumentality or alter ego of BGALLC." [13] Plaintiffs argue that an "alter ego" relationship would permit this Court to pierce Unity's corporate veil.

13 Pls.' Opp. to Renewed Mot. to Dismiss, P22.

[HN6]

[*12] "A court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner." [14] Of course, common management of two entities does not, by itself, justify piercing the corporate veil. [15]

14 *Geyer v. Ingersoll, Del. Ch., 621 A.2d 784, 793 (1992).*
15 *See Mabon, Nugent Co. v. Texas American Energy Corp., 1990 Del. Ch. LEXIS 46, *14,* Del. Ch., C.A. No. 8578, 1990 WL 44267 at *5, Berger, V.C. (Apr. 12, 1990) (stating "under Delaware law, the separate corporate existences of parent and subsidiary will not be set aside merely on a showing of common management of the two entities.")

Unity first argues that because plaintiffs pleaded that BGALLC contracted with Unity to act as construction manager for the Buckingham Greene subdivision plaintiffs have admitted that the two entities can not be alter egos of each other. This argument is a *non sequitur.* I fail to see why an entity could not contract [*13] with its alter ego, as both are nominally separate entities. In any case involving alter ego allegations, the two separate entities are at least holding themselves out to the public as separate. If they failed to follow legal formalities when contracting with each other it would be tantamount to declaring that they are indeed one in the same. Companies that actually operate as alter egos of one another would desperately seek to avoid making such a declaration. Therefore, BGALLC's contract with Unity demonstrates little.

Unity's next argument is much more persuasive. Unity notes that all plaintiffs cite to support piercing the corporate veils is Simeone's position as a "principal" in both BGALLC and Unity. Unity does not deny this fact. While examining plaintiffs' pleadings and brief, I failed to find any additional allegations that if true would support disregarding the business forms of BGALLC and Unity. As to this issue, there are no material facts in dispute. The undisputed fact that Unity and BGALLC have similar ownership is not sufficient to justify disregarding their business forms. To the extent plaintiffs' seek to argue that BGALLC and Unity are alter egos of one another, [*14] I grant defendant partial summary judgment. Plaintiffs are effectively foreclosed from revisiting this argument at trial.

### D. Unity's request that the crossclaims against it be dismissed

The other defendants made unsurprising crossclaims asserting that the plaintiffs' injuries, if they occurred, were caused by the acts or omissions of third parties or the other named defendants. As discussed above, there are still material facts in dispute regarding Unity's role. Accordingly, Unity's request that the crossclaims against it be dismissed is denied.

Defendant Unity's motion for summary judgment is *granted in part* and *denied in part,* in accordance with the above.

**IT IS SO ORDERED.**

Myron T. Steele

Vice Chancellor

# EXHIBIT   6

2 of 2 DOCUMENTS

**WILLIAM A. THOMAS, JR., M.D., Plaintiff, v. DEBRA A. HOBBS d/b/a TARA VENTURE, LLC, Defendant.**

**C.A. No. 04C-02-010 RFS**

**SUPERIOR COURT OF DELAWARE, SUSSEX**

*2005 Del. Super. LEXIS 164*

**January 28, 2005, Submitted**
**April 27, 2005, Decided**

**NOTICE:**

[*1]    THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant member filed a motion for summary judgment in plaintiff doctor's breach of contract action; the member claimed that the doctor had no cause of action against her personally and could only pursue his action against defendant limited liability company (LLC).

**OVERVIEW:** The doctor and the LLC entered into a contract to complete a "fit out" to construct the interior of the doctor' office into a physician's office. When the construction was not completed in the time specified in the contract, the doctor signed a contract with another company to complete the work and sued the LLC and the member for breach of contract. The court found that the member did not sign the contract on her own behalf. Nowhere in the contract was the member to be held personally liable for the LLC's obligations. Furthermore, the contract unambiguously stated that it was between the LLC and the doctor. Consequently, the parol evidence rule did not apply to permit the admission of extrinsic evidence as to the member' alleged personal liability under *Del. Code Ann. tit. 6, § 18-303(a), (b)*. If the doctor wished to pierce the corporate veil, he had to pursue an action in a chancery court.

**OUTCOME:** The motion for summary judgment was granted, and the member was dismissed from the case.

**CORE TERMS:** correction, certificate, corporate veil, debts obligations, modification, integrated, personally, contractor, formation, pierce, parol evidence rule, summary judgment, breach of contract, personally responsible, personally liable, material issues of fact, citations omitted, extrinsic evidence, statute of frauds, retroactively, contracted, obligated, manager, adversely affected, moving party, nonmoving party, reduced to writing, retroactive, ambiguous, clerical

**LexisNexis(R) Headnotes**

*Business & Corporate Law > Corporate Names > General Overview*
*Business & Corporate Law > Limited Liability Companies > Formation*
*Governments > Legislation > Effect & Operation > Retrospective Operation*
[HN1] Pursuant to Delaware's Limited Liability Company Act, *Del. Code Ann. tit. 6, §§ 18-101 through 18-1109*, a Certificate of Correction applies retroactively to the date the original Certificate of Formation was filed, except as to those persons who are substantially and adversely affected by the correction. *Del. Code Ann. tit. 6, § 18-211.*

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN2] A court will grant summary judgment only when no material issues of fact exist, and the moving party bears the burden of establishing the nonexistence of material issues of fact. Once the moving party meets its burden, the burden shifts to the nonmoving party to establish the existence of material issues of fact.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN3] Where a party moving for summary judgment produces an affidavit or other evidence sufficient under Del. Super. Ct. R. Civ. P. 56 in support of its motion and the burden shifts, the nonmoving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial.

*Business & Corporate Law > Agency Relationships > Causes of Action & Remedies > Breach of Contract*
*Business & Corporate Law > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview*
*Business & Corporate Law > Corporations > Shareholders > Shareholder Duties & Liabilities > Personal Liability*
[HN4] Corporations protect the stockholders and officers against individual liability. An officer may not be held liable for breach of a corporate contract, unless the officer has signed the contract in her own capacity and not just as an agent for the corporation.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview*
*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
[HN5] Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually. Consequently, a plaintiff who seeks to sue an officer of a corporation must pierce the corporate veil to do so.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] Piercing the corporate veil is an argument that can be considered only in a Delaware Chancery Court.

*Business & Corporate Law > General Partnerships > Management Duties & Liabilities > Causes of Action > General Overview*

*Business & Corporate Law > Limited Liability Companies > Management Duties & Liabilities*
[HN7] A limited liability company, a relatively new entity, allows tax benefits similar to a partnership, while still providing limited liability protection, much like a corporation.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
*Business & Corporate Law > Limited Liability Companies > Management Duties & Liabilities*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN8] As with a corporation, a member of a limited liability company may not be held liable for the debts, obligations, and liabilities of the company. *Del. Code Ann. tit. 6, § 18-303*. It follows that a Delaware Superior Court has no jurisdiction to pierce the corporate veil of a limited liability company, just as it would not with a corporation.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
*Business & Corporate Law > Limited Liability Companies > Management Duties & Liabilities*
*Business & Corporate Law > Limited Liability Companies > Members & Other Constituents*
[HN9] See *Del. Code Ann. tit. 6, § 18-303(a)*.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
*Business & Corporate Law > Limited Liability Companies > Management Duties & Liabilities*
*Business & Corporate Law > Limited Liability Companies > Members & Other Constituents*
[HN10] There are two exceptions to the rule that a member of a limited liability company may not be liable for breach of contract. First, the member could be liable on a contract if she signed it on her own behalf, rather than for the company. Second, the Limited Liability Company Act provides an exception, permitting a member to agree to be obligated personally for the obligations and liabilities of the company. *Del. Code Ann. tit. 6, § 18-303(b)*.

*Business & Corporate Law > Agency Relationships > Authority to Act > Contracts & Conveyances > Liability of Agent*
*Contracts Law > Third Parties > General Overview*

[HN11] It is a well-accepted principle of agency law that an agent cannot be found liable for a contract he signed on behalf of the principal as long as somewhere in the contract it is made clear that it is between the principal and a third party.

*Business & Corporate Law > Limited Liability Companies > Management Duties & Liabilities*
*Business & Corporate Law > Limited Liability Companies > Members & Other Constituents*
[HN12] See *Del. Code Ann. tit. 6, § 18-303(b)*.

*Civil Procedure > Discovery > Methods > Admissions > Responses*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN13] An unsworn statement is not sufficient to create a dispute of fact to avoid summary judgment.

*Contracts Law > Contract Interpretation > Parol Evidence > General Overview*
*Evidence > Documentary Evidence > Parol Evidence*
[HN14] When the parties reduce a contract to writing, a party may not seek to introduce earlier negotiations to show that the terms are not as shown on the face of the writing.

*Civil Procedure > Appeals > Standards of Review > Fact & Law Issues*
*Contracts Law > Contract Interpretation > General Overview*
[HN15] Proper interpretation of a contract is a question of law.

*Contracts Law > Contract Interpretation > General Overview*
[HN16] A contract is completely integrated if, on its face, it is clear that the parties intended the writing to be a final and total expression of their agreement.

*Contracts Law > Contract Interpretation > Parol Evidence > General Overview*
*Evidence > Documentary Evidence > Parol Evidence*
[HN17] The parol evidence rule bars a party from introducing extrinsic evidence to modify or contradict the written terms of a fully integrated contract.

*Contracts Law > Defenses > Ambiguity & Mistake > Mutual Mistake*
*Contracts Law > Defenses > Duress & Undue Influence > General Overview*
*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
[HN18] Only in limited circumstances will parol evidence be admissible, such as when the terms of the parties' agreement are ambiguous, or to show that the agreement was rendered invalid, void, or voidable by such causes as fraud, illegality, duress, mutual mistake, lack or failure of consideration, and incapacity.

**JUDGES:** Richard F. Stokes, Judge.

**OPINION BY:** Richard F. Stokes

**OPINION**

**ORDER**

Upon careful review of the filings in the above captioned matter, Defendant, Debra A. Hobbs', Motion for Summary Judgment is granted. It appears to the Court that:

1) On September 17, 2002, Plaintiff William A. Thomas ("Dr. Thomas") entered a written contract ("the Contract") with Defendant Debra A. Hobbs ("Dr. Hobbs"), through her limited liability company, Tara Venture, L.L.C. ("Tara Venture") [1] to complete a "fit out" to construct the interior of Dr. Thomas' office into a physician's office. The total cost was to be $ 141,391.00. When Dr. Hobbs failed to substantially complete the construction in the time specified in the contract, the Plaintiff signed a contract with another company to complete the work for $ 172,836.00.

1    This law suit centers in part around a dispute over what entity Dr. Thomas signed a contract with -- a company called Tara Venture, LLC (the name under which the limited liability corporation was formed) or Taraventures L.L.C. or Taraventure L.L.C. As printed, the Contract is between Dr. Thomas and "Taraventures, L.L.C.;" however, it is signed by Debra A. Hobbs as a Member of "Taraventure LLC." It is clear to this Court, however, as it was clear to the Plaintiff, given his admissions, that the mistake in the Contract was the result of clerical error, and Tara Venture, Taraventures and Taraventure are all the same company. The Court notes that Dr. Thomas gave to Dr. Hobbs a check on September 17, 2002, the date the Contract was signed, for $

8000, made payable to "Tara Ventures LLC." (Reply to Def.'s resp. to S.J. Mot., D.I 30, Ex. C.)

[*2] 2) Dr. Thomas has brought a claim against Dr. Hobbs, seeking damages and costs for breach of contract. On February 18, 2005, this Court allowed the Plaintiff to amend the Complaint in order to add Tara Venture, L.L.C. as a Defendant. Dr. Thomas alleges that the Defendants breached the Contract by failing to complete the construction and by failing to install a three-phase electrical service. He also requests the return of deposits in the amounts of $ 14,500.00 paid under the Contract.

3) Before the Contract was entered into, Dr. Hobbs filed a Certificate of Formation on August 20, 2002 with the Secretary of State to form Tara Venture as a limited liability corporation. She is the sole member of Tara Venture. [2]

2    The original Certificate of Formation contained a mistake. While it stated that the name of the company was Tara Venture, LLC, it also stated that the certificate was executed for "Air Pollution Control Supplies LLC." A Certificate of Correction was filed on August 13, 2004. [HN1] Pursuant to Delaware's Limited Liability Company Act, *6 Del. C. §§ 18-101 through 18-1109*, a Certificate of Correction applies retroactively to the date the original Certificate of Formation was filed, "except as to those persons who are substantially and adversely affected by the correction." *6 Del. C. § 18-211*.

The Plaintiff does not dispute that the Certificate of Correction in this case should apply retroactively to the date of formation of Tara Venture, August 8, 2002. More specifically, the Plaintiff "does not believe [the retroactive correction] is of any consequence since the correction did not retroactively change the name to that of the LLC with which he contracted." (Pl.'s Resp. to Def.'s Mot. for S.J., D.I. 28, P 6.) Since Dr. Thomas does not allege he was substantially and adversely affected by the correction, the Court finds that the correction is retroactive to August 8, 2002. *See Siegman v. Palomar Medical Technologies, Inc.*, 1998 WL 118201 (Del. Ch.) (discussing the meaning of "substantial and adverse affects" under *8 Del. C. § 103(f)*, a similar provision for correcting corporate instruments filed with the Secretary of State). Therefore, an analysis of whether or not Tara Venture was a *de jure* or a *de facto* company at the time of the contract is not necessary. *See, e.g., Cleary v. North Delaware A-OK Campground, Inc.*, 1987 WL 28317 (Del. Super. Ct.); *Leber Assocs., LLC. v. The En-*

*tertainment Group Fund, Inc.*, 2003 WL 21750211, at *9-10 (S.D.N.Y.).

[*3] 4) Defendant Dr. Hobbs has filed this Motion for Summary Judgment, pursuant to Superior Court Civil Rule 56. She claims that Dr. Thomas has no cause of action against her personally, and that he must pursue his action against Tara Venture only. She argues that if he wants to pierce the corporate veil to find her liable he must proceed in Chancery Court. In Dr. Thomas' response, he contends that he thought he was contracting with Dr. Hobbs, or with "Taraventures" or "Taraventure," and not with Tara Venture. He also claims through his unsworn responses to Defendant's Request for Admissions that Dr. Hobbs agreed to be personally responsible for the construction of the project. As proof that he contracted with Dr. Hobbs, Dr. Thomas points to a check that was made payable to "Debra Hobbs." However, a contemporaneous receipt prepared by him reflected advance payment to "Debra A. Hobbs, president of Tera Ventures LLC." Thomas admitted not only to preparing receipts but also to making other checks payable to the LLC.

5) [HN2] This Court will grant summary judgment only when no material issues of fact exist, and the moving party bears the burden of establishing the nonexistence of material issues [*4] of fact. *Moore v. Sizemore, 405 A.2d 679, 680 (Del. 1979)*. Once the moving party meets its burden, the burden shifts to the nonmoving party to establish the existence of material issues of fact. *Id. at 681*. The Court views the evidence in a light most favorable to the nonmoving party. *Id. at 680*. [HN3] Where the moving party produces an affidavit or other evidence sufficient under *Superior Court Civil Rule 56* in support of its motion and the burden shifts, the nonmoving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial. *Super. Ct. Civ. R. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

6) [HN4] Corporations protect the stockholders and officers against individual liability. An officer may not be held liable for breach of a corporate contract, unless the officer has signed the contract in her own capacity and not just as an agent for the corporation. *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d 1175, 1180 (Del. Ch. 1999)* [HN5] ("Delaware law clearly holds that officers of a corporation are not [*5] liable on corporate contracts as long as they do not purport to bind themselves individually." (citations omitted)). Consequently, a plaintiff who seeks to sue an officer of a corporation must pierce the corporate veil to do so. [HN6] Piercing the corporate veil, however, is an argument that can be considered only in

the Chancery Court. *Sonne v. Sacks, 314 A.2d 194, 197 (Del. 1973).*

7) [HN7] A limited liability company, a relatively new entity, was created to allow tax benefits similar to a partnership, while still providing limited liability protection, much like a corporation. *Elf Atochem North Am., Inc. v. Jaffari, 727 A.2d 286, 287 (Del. 1999).* [HN8] As with a corporation, a member of a limited liability company may not be held liable for the debts, obligations and liabilities of the company. *See 6 Del. C. § 18-303.* ³ It follows that this Court has no jurisdiction to pierce the corporate veil of a limited liability company, just as it would not with a corporation. *Cf. Gillen v. 397 Properties, L.L.C., 2002 WL 259953 (Del. Ch.); Trustees of Arden v. Unity Constr. Co., 2000 WL 130627 (Del. Ch.)* [*6] (discussing piercing of the corporate veil in the context of limited liability companies). *See also Elf Atochem North Am., Inc., 727 A.2d at 292* (discussing the fact that jurisdiction is vested in the Chancery Court under the Limited Liability Company Act, but that another forum may be selected by agreement).

3

> [HN9] (a) Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

8) [HN10] There are two exceptions, however, to the rule that a member may not be liable for breach of contract. First, Dr. Hobbs could be liable on the Contract she signed with [*7] Dr. Thomas if she signed it on her own behalf, rather than for the company. *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P., 752 A.2d at 1180.* Second, the Limited Liability Company Act provides an exception, permitting a member to agree to be obligated personally for the obligations and liabilities of the company. *6 Del. C. § 18-303(b).*

9) It is clear to the Court that Dr. Hobbs did not sign the Contract on her own behalf, and therefore she cannot

be held personally liable under this theory. [HN11] It is a well-accepted principle of agency law that "an agent cannot be found liable for a contract he signed on behalf of the principal as long as somewhere in the contract it is made clear that it is between the principal and a third party." *Brandt v. Rokeby Realty Co.,* 2004 WL 2050519, at *10 (Del. Super. Ct.), *citing,* The *Restatement (Second) of Agency § 157* (1958). The Contract unequivocally states that it is between Dr. Thomas and "Taraventures L.L.C., c/o Debra A. Hobbs," as the Contractor, which is a defined term. In this vein, it is signed with "Taraventure LLC" listed [*8] as the Contractor, by Dr. Hobbs, member. In its body, the Contract refers to "the Contractor" and never to Dr. Hobbs. Although, at times, the pronoun "her" is used to describe the contractor, rather than "it," this is a logical clerical choice of words. It is not an indication that the Contract was meant to be between Dr. Hobbs and Dr. Thomas, rather than between Tara Venture and him. The facts simply cannot support a conclusion that Dr. Hobbs signed the contract other than for Tara Venture, LLC.

10) *6 Del. C. § 18-303(b)* provides [HN12] "notwithstanding the provisions of subsection (a) of this section, under a limited liability company agreement or under another agreement, a member or manager may agree to be obligated personally for any or all of the debts, obligations and liabilities of the limited liability company." No evidence has been submitted that there is a limited liability agreement that might contain a clause in which Dr. Hobbs takes personal responsibility for the obligations of Tara Venture. Dr. Thomas states in his responses to the Defendant's Request for Admissions that she did agree to be personally responsible for the obligations of the Contract. [*9] However, [HN13] an unsworn statement is not sufficient to create a dispute of fact to avoid summary judgment.

Furthermore, it is presumed that such a guarantee was made orally, since no such clause can be found in the Contract itself and no evidence has been submitted of any written agreement. This raises a question of whether the Contract is fully integrated and whether the Parol Evidence Rule would allow extrinsic evidence of earlier negotiations of the terms of the contract. *See, e.g., Concord Mall v. Best Buy Stores, L.P.,* 2004 WL 1588248, at *3-4 (Del. Super. Ct.) (noting that [HN14] when the parties reduce a contract to writing, a party may not seek to introduce earlier negotiations to show that the terms are not as shown on the face of the writing). There is also a question of whether any subsequent modification must be in writing or not.

11) In this regard, the Contract provides that it is fully integrated and that any modification must be made in writing. ⁴ [HN15] Proper interpretation of a contract is a question of law. *Rhone-Poulenc Basic Chems. Co. v.*

*Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). [HN16] "A contract is completely integrated if, on its [*10] face, it is clear that the parties intended the writing to be a final and total expression of their agreement." *Concord Mall*, 2004 WL 1588248, at *4 (citation omitted). [HN17] The parol evidence rule bars a party from introducing extrinsic evidence to modify or contradict the written terms of a fully integrated contract. *Id.* [HN18] "Only in limited circumstances will parol evidence be admissible, such as when the terms of the parties' agreement are ambiguous, or to show that the agreement was rendered invalid, void [or] voidable by such causes as fraud, illegality, duress, mutual mistake, lack or failure of consideration, and incapacity.'" *Id* (citation omitted).

4  Section Ten of the Contract, "Entire Agreement," states:

> This agreement shall constitute the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this agreement shall not be binding upon either party except to the extent incorporated in this agreement.

Section Eleven of the Contract, "Modification of Agreement," states:

> Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.

[*11] Here, the Plaintiff has presented no evidence that any exceptions to the rule should apply. The Contract is straightforward and clear. Nowhere in it, does the Contract state that Dr. Hobbs will be held personally liable for the obligations of the company under the Contract. [5] Furthermore, the Contract unambiguously states that it is between Tara Venture and Dr. Thomas. Dr. Thomas admitted that he contracted with an LLC, of which Hobbes was a member, and that the name was "Taraventure," "Taraventures," or something similar. Dr. Thomas and Dr. Hobbs were both sophisticated persons. In this context, the Court cannot find the Contract ambiguous, such that the parol evidence rule would permit the admission of extrinsic evidence as to Dr. Hobbs' alleged personal liability.

5  The Defendant argues that Dr. Thomas' claim that Dr. Hobbs agreed to be personally responsible for the Contract must fail because he can provide no writing to support the claim, nor has he alleged any exceptions to the statute of frauds. *See 6 Del. C. § 2714(a)*. Since the contract in this case was reduced to writing and fully integrated, the statute of frauds is inapplicable. The Contract itself requires any modification to be reduced to writing. Moreover, the Contract required the work to commence within ten days and to be completed within 120 days thereafter. If it had been necessary to consider the defense inherent in the statute of frauds, however, it would not have applied since the contract in this case was to be performed in less than a year and it did not fall into any of the other delineated categories of contracts that must be put in writing. *See id.*

[*12]  12) Considering the foregoing, the Court finds that Dr. Hobbs may not be held personally liable for the obligations and possible breach of contract of her limited liability company, Tara Venture. She is dismissed from this case. The case will proceed against Tara Venture, L.L.C. only in this Court. If the Plaintiff wishes to pierce the corporate veil, he must pursue such an action in the Chancery Court.

*IT IS SO ORDERED.*

Dated:

Richard F. Stokes, Judge

# EXHIBIT   7

LEXSEE 2001 U.S. DIST. LEXIS 1935

**SMITHKLINE BEECHAM CORPORATION and BEECHAM GROUP, p.l.c., Plaintiffs v. PENTECH PHARMACEUTICALS, INC., Defendant.**

**Case No. 00 C 2855**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2001 U.S. Dist. LEXIS 1935*

**February 16, 2001, Decided
February 20, 2001, Docketed**

**DISPOSITION:** [*1] Smithkline's Motion for Leave to Amend Their Complaint to Add Asahi Glass as a Defendant [48-1] granted. SmithKline leave to file a Second Amended Complaint consistent with this opinion on or before February 23, 2001 granted.

**COUNSEL:** For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., plaintiffs: Richard J. O'Brien, Douglas I. Lewis, Sidley & Austin, Chicago, IL.

For SMITHKLINE BEECHAM CORPORATION, plaintiff: Ford F. Farabow, Richard Racine, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., plaintiffs: Kenneth M Frankel, York M Faulkner, Robert D. Bajefsky, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

For PENTECH PHARMACEUTICALS, INC., defendant: John Edward Rosenquist, Robert F. Green, Steven H. Sklar, Lisa D. Graver, Leydig, Voit & Mayer, Ltd., Chicago, IL.

For PENTECH PHARMACEUTICALS, INC., defendant: James S. Rubin, Attorney at Law, Ft. Lee, NJ.

For PENTECH PHARMACEUTICALS, INC., counter-claimant: John Edward Rosenquist, Robert F. Green, Steven H. Sklar, Lisa D. Graver, Leydig, Voit & Mayer, Ltd., Chicago, IL.

For PENTECH PHARMACEUTICALS, INC., counter-claimant: [*2] James S. Rubin, Attorney at Law, Ft. Lee, NJ.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., counter-defendants: Richard J. O'Brien, Douglas I. Lewis, Sidley & Austin, Chicago, IL.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, P.L.C., counter-defendants: Kenneth M Frankel, York M Faulkner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

**JUDGES:** Nan R. Nolan, United States Magistrate Judge. Judge Blanche M. Manning.

**OPINION BY:** Nan R. Nolan

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Plaintiffs Smithkline Beecham Corporation and Beecham Group, p.l.c. (collectively "Smithkline") have sued Defendant Pentech Pharmaceuticals, Inc. ("Pentech") for patent infringement. Smithkline's patents cover certain crystalline forms of paroxetine hydrochloride, the active ingredient in Smithkline's anti-depressant drug Paxil(R). Smithkline moves for

2001 U.S. Dist. LEXIS 1935, *2

leave to amend the complaint to add Asahi Glass ("Asahi"), a Japanese company, as a defendant. For the reasons explained below, Smithkline's motion is GRANTED.

## I. FACTS

The following facts are taken from Smithkline's proposed Second Amended Complaint. Smithkline is engaged in the business of research, development, [*3] manufacture, and sale of pharmaceutical products throughout the world. Second Am. Cmplt. P 4. Smithkline manufactures crystalline paroxetine hydrochloride hemihydrate in bulk form in the United Kingdom, and then tablets and sells the product in the United States under the trademark PAXIL(R). *Id*. PAXIL(R) is used to treat depression, panic disorder, and obsessive compulsive disorder. *Id*. According to Smithkline, PAXIL(R) is one of the most widely prescribed prescription drugs in the United States. *Id*. Beecham Group, p.l.c. owns *U.S. Patent No. 4,721,723 ("the '723 patent")* for an invention entitled "Anti-Depressant Crystalline Paroxetine." *Id*. PP 6, 7. Smithkline Beecham Corporation owns *U.S. Patent Nos. 5,872,132 ("the '132 patent")* and *5,900,423 ("the '423 patent")* for inventions entitled "Form of Paroxetine Hydrochloride Anhydrate." *Id*. PP 8, 9.

Pentech is a corporation organized under the laws of the State of Illinois and maintains an office in Buffalo Grove, Illinois. *Id*. P 10. Pentech is engaged in the business of developing generic pharmaceutical compounds. *Id*. Asahi Glass is a corporation organized under the laws of Japan and maintains an office [*4] at 2-1-2 Marunouchi, Chiyoda-ku, Toyko 100-8305, Japan. *Id* P 11. Asahi is engaged in the business of manufacturing and marketing pharmaceutical compounds in the United States. *Id*.

The first three counts of Smithkline's proposed Second Amended Complaint allege that under *35 U.S.C. § 271(e)(2)(A)*, Pentech infringed the *'723, '132*, and *'423 patents* by submitting to the U.S. Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA") seeking approval for the commercial marketing of its paroxetine hydrochloride drug product before the expiration date of Smithkline's patents, a product the manufacture, use, import, offer for sale, or sale of which will infringe the claims of the patents. *Id*. PP 12-21.

Smithkline's proposed amendment is to bring a fourth count of patent infringement against Asahi. *Id*. PP 22-24. Smithkline alleges that Asahi collaborated with Pentech in the research and development of Pentech's generic version of Paxil(R), provided Pentech with paroxetine hydrochloride for use in clinical studies in support of Pentech's ANDA, and directed and encouraged Pentech and the FDA to rely on information that Asahi submitted [*5] to the FDA in support of Pentech's ANDA, specifically, Asahi's Drug Master File ("DMF") No. 14432 for paroxetine hydrochloride. [1] *Id*. P 23. Smithkline further alleges that Pentech relied before the FDA upon Asahi's DMF for a complete description of the paroxetine hydrochloride, including the manufacturing facilities and process, physical and chemical characteristics, and stability of the paroxetine hydrochloride made for Pentech. *Id*. Smithkline believes that the Asahi DMF describes the production of crystalline paroxetine hydrochloride which infringes Smithkline's *'723, '132*, and/or *'423 patents*. *Id*. If the FDA approves Pentech's ANDA, Asahi will be Pentech's solely approved manufacturer of the paroxetine hydrochloride to be used as the active ingredient in Pentech's generic drug product. *Id*.

> 1    "A drug master file is a submission of information to the [FDA] by a person (the drug master file holder) who intends it to be used for one of the following purposes: To permit the holder to incorporate the information by reference when the holder submits an investigational new drug application under Part 312 or submits an application or an abbreviated application or an amendment or supplement to them under this part, or to permit the holder to authorize other persons to rely on the information to support a submission to FDA without the holder having to disclose the information to the person." *21 C.F.R. § 314.420*.

[*6] Smithkline alleges that under *35 U.S.C. §§ 271(b)* and *(e)(2)*, Asahi infringed and actively, knowingly, and intentionally induced the infringement of Smithkline's *'723, '132*, and *'423 patents* by submitting, causing to be submitted, assisting with, participating in, contributing to, and/or supporting the submission of an ANDA to the FDA seeking approval for the commercial marketing of paroxetine hydrochloride tablets before the expiration of Smithkline's patents, a product the manufacture, use, import, offer for sale, or sale of which will infringe the claims of Smithkline's *'723, '132*, and

'423 patents.

## II. DISCUSSION

Leave to amend a complaint should be freely given "when justice requires." *Fed. R. Civ. P. 15(a)*. However, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir. 1992)*. [2] "The opportunity to amend a complaint is futile if 'the complaint, [*7] as amended, would fail to state a claim upon which relief could be granted.'" *General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997)* (quoting *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997))*.

> [2] Generally, when analyzing whether leave to amend should be granted in a patent infringement case, regional circuit law, rather than Federal Circuit law, applies. *Cultor Corp. v. A.E. Staley Manufacturing Company, 224 F.3d 1328, 1332 (Fed. Cir. 2000); FilmTec Corp. v. Hydranautics, 67 F.3d 931, 935 (Fed. Cir. 1995)*. However, Federal Circuit law is controlling as to issues that are unique to patent law. "[A] procedural issue that is not itself a substantive patent law issue is ... governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive jurisdiction by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000)*.

### [*8] A. Direct Infringement

Pentech first argues that it would be futile to allow Smithkline to add a claim against Asahi pursuant to *35 U.S.C. § 271(e)(2)(A)* because no valid claim exists for alleging direct infringement by Asahi. *Section 271(e)(2)(A)* provides that "it shall be an act of infringement to submit" an ANDA if the purpose of such submission is to obtain FDA approval to commercially make, use, or sell a patented product or a product the use of which is patented before the patent expires. Pentech

maintains that as a matter of law, a person other than the ANDA filer can not be held liable for direct infringement under *section 271(e)(2)(A)*.

Asahi cannot be held liable as a direct infringer under *section 271(e)(2)(a)* because Asahi did not submit the ANDA at issue. Rather, Asahi is the bulk manufacturer of the paroxetine hydrochloride active ingredient in Pentech's drug product and submitted a DMF to the FDA describing the manufacture of paroxetine hydrochloride used in Pentech's generic version of Paxil(R). Smithkline's interpretation of *section 271(e)(2)(a)* as allowing a person other than the ANDA filer to be held liable for direct infringement [*9] under that section is not supported by the plain language of the statute. The plain language of the statute controls. *VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579 (Fed. Cir. 1990)*. [3] There is no reference in *section 271(e)(2)(A)* to suppliers of ingredients of generic drug products or preparers of DMFs relied on by ANDA filers. *Section 271(e)(2)(A)* unambiguously refers only to persons who submit ANDAs.

> [3] Whether Smithkline can state a claim for direct infringement against a person other than an ANDA filer under *section 271(e)(2)(A)* "clearly implicates substantive patent law," and Federal Circuit law controls.

Smithkline has not presented, and the Court has been unable to locate, any authority supporting the proposition that a person other than an ANDA filer can be held liable for direct infringement under *section 271(e)(2)(A)*. None of the cases cited by Smithkline involve the precise issue raised here. The two cases cited by Smithkline-- *Smithkline Beecham Corp., v. Apotex Corp., 2000 U.S. Dist. LEXIS 10419, 2000 WL 983937* [*10] (N.D. Ill. July 17, 2000) and *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc., 101 F. Supp. 2d 1139, 1141 n.2 (S.D. Ind. 2000)*--do not address the question of whether a non-ANDA filer can be held liable as a direct infringer under *section 271(e)(2)(A)* but rather merely mention that the plaintiffs in those actions alleged that non-filers were directly liable under *section 271(e)(2)(A)*. Given the clear language of *section 271(e)(2)(A)*, Smithkline has not provided any legitimate reason for inferring that third parties who did not file an ANDA can be directly liable under that section.

### B. Inducement of Infringement

Pentech next argues that Smithkline fails to allege any facts to support an allegation of active inducement. Under *35 U.S.C. § 271(b)*, "whoever actively induces infringement of a patent shall be liable as an infringer." Whether Smithkline's proposed complaint states a claim for inducement of infringement is determined by the law of the regional circuit, the Seventh Circuit. *C&F Packing Co., Inc. v IBP, Inc., 224 F.3d 1296, 1306 (Fed. Cir. 2000)*; *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 793 (Fed. Cir. 2000)*. [*11]

Pentech maintains that Smithkline impermissibly pleads only the bare legal conclusion that Asahi "induced the infringement of" Smithkline's patents. Pentech complains that Smithkline alleges no facts to support this legal conclusion. Pentech misconstrues the requirements of notice pleading. Facts need not be pled with specificity under notice pleading. *Federal Rule of Civil Procedure 8(a)* requires only an identification of the basis of jurisdiction and a "short and plain statement of the claim showing that the pleader is entitled to relief." "A plaintiff in a suit in federal court need not plead facts; he can plead conclusions." *Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995)*. The conclusions need only provide the defendant with "at least minimal notice of the claim." *Id. at 154.*

Smithkline's allegations satisfy the liberal federal pleading standards. Smithkline alleges that Asahi intentionally induced the infringement of Smithkline's *'723, '132,* and *'423 patents* by causing to be submitted, assisting with, participating in, contributing to, and/or supporting the submission of an ANDA to the FDA seeking approval for the commercial manufacture [*12] of paroxetine hydrochloride tablets before the expiration of Smithkline's patents, a product the manufacture, use, import, offer for sale, or sale of which will infringe the claims of Smithkline's patents. Second Am. Cmplt. P 24. Smithkline further alleges that Asahi collaborated with Pentech in the research and development of Pentech's generic version of Paxil(R), provided Pentech with paroxetine hydrochloride for use in clinical studies in support of Pentech's ANDA, and directed and encouraged Pentech and the FDA to rely on Asahi's Drug Master File in support of Pentech's ANDA. *Id.* P 23. Because Pentech has the requisite minimal notice of Smithkline's inducement of infringement claim, it would not be futile to allow Smithkline to amend the complaint. [4]

4   In *Torpharm v. Novopharm, 181 F.R.D. 308*

*(E.D. N.C. 1998)*, cited by Pentech, Torpharm sought leave to file an amended complaint adding Genpharm as a defendant. Torpharm's proposed amendment asserted a claim for inducement of infringement against Genpharm pursuant to *section 271(b)*. Genpharm had no involvement with the filing of the alleged direct infringer's ANDA and merely waived its exclusivity period for the direct infringer. The district court denied Torpharm's motion to amend as futile because Torpharm failed to allege any facts which showed intent to induce infringement. *Torpharm* is distinguishable from this case because Smithkline alleges that Asahi was involved in the filing of Smithkline's ANDA by collaborating with Pentech in the research and development of Pentech's generic drug product, providing Pentech with the bulk active ingredient for use in clinical studies, and by directing Pentech and the FDA to rely on Asahi's DMF in support of Pentech's ANDA. Smithkline expressly alleges that by these actions Asahi participated in the submission of Pentech's ANDA and intentionally induced the infringement of Smithkline's patents.

[*13] **C. *Permissive Joinder***

Smithkline's claim against Asahi also satisfies the requirements of permissive joinder. *Federal Rule of Civil Procedure 20(a)* provides that all persons may be joined in one action as defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." The claims against Pentech and Asahi arise out of the same transaction or occurrence. Specifically, the claims relate to the submission of Pentech's ANDA to the FDA supported in part by Asahi's DMF and clinical studies using Asahi's bulk paroxetine hydrochloride. The question of law common to both defendants is whether the manufacture, use, or sale of the generic drug product that Pentech is likely to sell will infringe Smithkline's patents. The resolution of that issue depends in part on whether the paroxetine hydrochloride that Asahi makes and supplies to Pentech will infringe one or more of Smithkline's patents.

Pentech relies on *Smith v. City of Chicago Police Dept., 1989 U.S. Dist. LEXIS 5653, 1989 WL 55045*

[*14] (N.D. Ill. May 9, 1989), for the proposition that joinder should be denied because joinder would afford Smithkline no "additional basis for relief." *Smith* is easily distinguishable and provides no valid ground for denying joinder here. Smith alleged that his arrest in October 1978 violated his constitutional rights. The district court held that res judicata and collateral estoppel prevented Smith from raising claims regarding his arrest against defendants. The court then denied Smith leave to join additional defendants because Smith was "absolutely foreclosed from relitigating any issues associated with his arrest, whether it be against the same parties (and their privies) or any new parties." *1989 U.S. Dist. LEXIS 5653*, *21. In contrast to *Smith*, res judicata and collateral estoppel have no application here. Smithkline is not foreclosed from litigating any issues related to Pentech's ANDA seeking FDA approval to market capsules containing a form of paroxetine hydrochloride as the active ingredient.

### III. *CONCLUSION*

For the reasons set forth above, Smithkline's Motion for Leave to Amend Their Complaint to Add Asahi Glass as a Defendant is GRANTED. The Court grants Smithkline leave [*15] to file a Second Amended Complaint consistent with this opinion on or before February 23, 2001.

**ENTER:**

**Nan R. Nolan**

    **United States Magistrate Judge**

    **Dated:** *Feb. 16, 2001*