**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

WYETH,

        *Plaintiff,*

    v.

WATSON LABORATORIES, INC. *and*
WATSON PHARMACEUTICALS, INC.,

        *Defendants.*

Civil Action No. 08-cv-00145-JJF

**REDACTED PUBLIC VERSION**

**EXHIBITS TO DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO
WYETH'S MOTION TO DISQUALIFY KENYON & KENYON LLP AND
AMY HULINA AS COUNSEL FOR DEFENDANTS
VOLUME III OF VII**

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
Amy Arnott Quinlan (I.D. #3021)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801-1494
Tel: (302) 888-6960
mmatterer@morrisjames.com

*Attorneys for Defendants*

OF COUNSEL
John W. Bateman
C. Kyle Musgrove
Nicholas J. Nowak
Thomas M. Huff
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
(202) 220-4200

Originally filed:  June 30, 2008
Public version filed:  July 9, 2008

# EXHIBIT   6

CLOSED, ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:07-cv-00967-HB

Wyeth v. Rolf-Dieter Hesch
Assigned to: Judge Harold Baer
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 02/09/2007
Date Terminated: 05/29/2007
Jury Demand: None
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Wyeth**

represented by **Anand Agneshwar**
Arnold & Porter L.L.P
399 Park Avenue
New York, NY 10022
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David G. Kleiman**
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pamela Addison Miller**
Arnold & Porter, LLP
399 Park Avenue
New York, NY 10022
(212)-715-1304
Fax: (212)-715-1399
Email: pamela_miller@aporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rolf-Dieter Hesch**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/09/2007 | 1 | COMPLAINT against Rolf-Dieter Hesch. (Filing Fee $ 350.00, Receipt Number |

| | | |
|---|---|---|
| | | 605472)Document filed by Wyeth.(jpo) (Entered: 02/14/2007) |
| 02/09/2007 | | SUMMONS ISSUED as to Rolf-Dieter Hesch. (jpo) (Entered: 02/14/2007) |
| 02/09/2007 | | Magistrate Judge Andrew J. Peck is so designated. (jpo) (Entered: 02/14/2007) |
| 02/09/2007 | | Case Designated ECF. (jpo) (Entered: 02/14/2007) |
| 02/09/2007 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Wyeth.(jpo) (Entered: 02/14/2007) |
| 03/07/2007 | 3 | LETTER addressed to Mr. Agneshwar from The Chambers of the Honorable Harold Baer dated 3/2/07 re: Pre-Trial Conference on this case set for 4/19/07 at 3:30PM, room 2230. (tro) (Entered: 03/07/2007) |
| 03/07/2007 | | Set Deadlines/Hearings: Pretrial Conference set for 4/19/2007 03:30 PM before Judge Harold Baer. (tro) (Entered: 03/07/2007) |
| 03/22/2007 | 4 | ENDORSED LETTER addressed to Judge Harold Baer from Arnold & Porter LLP dated 3/19/07 re: counsel for plaintiff requests that the pretrial conference be adjourned. That all sounds delightful - unfortunately your agenda and mine are not exactly the same. This case is on my docket and unless you want it dismissed my job is to move the cases and all the others along - you have close to a month to send me a stipulation of disontinuance. If one is not in chambers by 4/19/07 you are to be here with your adversary - Good Luck.. (Signed by Judge Harold Baer on 3/22/07) (dle) (Entered: 03/23/2007) |
| 04/13/2007 | 5 | ENDORSED LETTER addressed to Judge Harold Baer from Anand Agneshwar dated 4/13/07 re: counsel for plaintiff requests that the pretrial conference be adjourned until any date after 5/22/07. Counter productive or not I adjourned your PTC last time at your request noting how "delighted" I was that you had reached a settlement. A month later you tell me how you have yet to serve the dft - you are directed to appear at the PTC with the draft if not the final agreement - or risk imposition of sanctions. (Signed by Judge Harold Baer on 4/13/07) (dle) (Entered: 04/16/2007) |
| 05/25/2007 | 6 | NOTICE of VOLUNTARY DISMISSAL WITHOUT PREJUDICE. Document filed by Wyeth. (Boccanfuso, Anthony) (Entered: 05/25/2007) |
| 05/29/2007 | 7 | NOTICE of Voluntary Dismissal pursuant to Rule 41(a)(1) of the F.R.C.P. : plaintiff Wyeth dismisses this action without prejudice purs. to FRCP 41(a). (Signed by Judge Harold Baer on 5/29/07) (dle) (Entered: 05/29/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/29/2008 09:13:08 | | |
| PACER Login: | kk0025 | Client Code: | 13357/A102US2/bate01 |
| Description: | Docket Report | Search Criteria: | 1:07-cv-00967-HB |
| Billable Pages: | 1 | Cost: | 0.08 |

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WYETH,

                 Plaintiff,

       -against-

ROLF-DIETER HESCH,

                Defendant.

Civil Action No. 07 CV 967 (HB)

**NOTICE OF VOLUNTARY DISMISSAL
WITHOUT PREJUDICE**

## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE

PLEASE TAKE NOTICE that, no answer or motion for summary judgment having been filed, plaintiff Wyeth hereby dismisses this action without prejudice pursuant to Fed. R. Civ. P. 41(a).

Dated:  May 25, 2007

                         **ARNOLD & PORTER LLP**

         By:

                         Anand Agneshwar, Esq. (AA-4961)
                         David G. Kleiman, Esq. (DK-7704)
                         399 Park Avenue
                         New York, New York  10022-4690
                         Tel:  (212) 715-1000
                         Fax:  (212) 715-1399

                         *Counsel for Plaintiff Wyeth*

# EXHIBIT  8

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT  9

US00RE36247E

## United States Patent [19]

### Plunkett et al.

[11] E    Patent Number:    Re. 36,247

[45] Reissued  Date of Patent:    Jul. 6, 1999

[54] **METHOD OF HORMONAL TREATMENT FOR MENOPAUSAL OR POST-MENOPAUSAL DISORDERS INVOLVING CONTINUOUS ADMINISTRATION OF PROGESTOGENS AND ESTROGENS**

[75] Inventors: **Earl E. Plunkett; Bernard M. J. Wolfe**, both of London, Canada

[73] Assignees: **WOCO Investments, Ltd.; Pre JAY Holdings, Limited**, both of Canada

[21] Appl. No.: **08/542,941**

[22] Filed: **Oct. 13, 1995**

#### Related U.S. Patent Documents

Reissue of:
[64] Patent No.:    **4,826,831**
    Issued:    May 2, 1989
    Appl. No.:    06/635,236
    Filed:    Jul. 24, 1984

U.S. Applications:
[63] Continuation-in-part of application No. 06/520,834, Aug. 5, 1983, abandoned.

[51] Int. Cl.$^6$ ............................................ A61K 31/56
[52] U.S. Cl. .......................................... 514/170
[58] Field of Search .......................... 514/170

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,639,600 | 2/1972 | Hendrix . |
| 3,733,407 | 5/1973 | Segre . |
| 3,836,651 | 9/1974 | Rudel et al. .................. 514/170 |
| 3,957,982 | 5/1976 | Lachnit-Fixson et al. ......... 514/170 |
| 4,018,919 | 4/1977 | Black . |
| 4,425,339 | 1/1984 | Pitchford ..................... 514/170 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| OS 2645307 | of 0000 | Germany . |
| 1578340 | 11/1980 | United Kingdom . |
| 2096462 | 10/1982 | United Kingdom . |

#### OTHER PUBLICATIONS

*Acta Obstet. Gynecol. Sand.,* 59, 327–329 (1980) [Mugglestone].

Abstract—Paper delivered by Dr. Magos to the 23rd British Congress on the Menopause, Royal College of Obstetrics and Gynecology, Birmingham, Jul. 1983 [Magos].

1984 Physicians' Desk Reference (PDR) pp. 222, 545, 658, 1205, 1513 and 2044.

*Maturitas,* 3, 145–156 (1981) [Staland].

English translation of Plunkett's Oct. 28, 1993 reply in an opposition proceeding in the Danish patent application [Danish Patent Application No. 3770/84 (165,390)] equivalent to Plunkett.

*FASS,* 459 (Mar. 1984) (Pharmaceutical Specialties in Sweden) [Sweden].

English translation of, *FASS,* 459 (Mar. 1984) (Pharmaceutical Specialities in Sweden) [Sweden], item (A).

*Minerva Ginecologica,* 21(4), 193–7 (1969) [GOISIS].

English translation of *Minerva Ginecologica,* 21(4), 193–7 (1969) [GOISIS], item (C).

*Aust. N. Z. J. Obstet. Gynaec.,* 23, 43 (1983) [Smith].

*Report from Workshop,* 157–165 (Aug. 1982)—Socialstyrelsens komitte' for lakemedelsinformation, workshop, Menopaus Substitutionsbehandling med ostrogen, Aug. 30–31, 1982 (published Jan. 1983) [Workshop report].

English translation of, *Report from Workshop,* 157–165 (Aug. 1982)—Socialstyrelsens komitte' for lakemedelsinformation, workshop, Menopaus Substitutionsbehandling med ostrogen, Aug. 30–31, 1982 (published Jan. 1983) [Workshop Report], item (F).

Novo Nordisk's Supplementary Opposition Statement filed Jul. 16, 1997 in Danish Patent Application No. 3770/84.

English translation of, Novo Nordisk's Supplementary Opposition Statement filed Jul. 16, 1997 in Danish Patent Application No. 3770/84, item (H).

Applicants' Agents' Request for Revival and Comments filed Nov. 15, 1996 in Danish Patent Application No. 3770/84 (165,390).

English translation of, Applicants' Agents' Request for Revival and Comments filed Nov. 15, 1996, item (J).

Declaration of Dr. Adam L. Magos signed Jun. 5, 1997.

Declaration of Ms. Caroline B. Roney signed June. 10, 1997.

Mugglestone et al., "Combined Estrogen and Progestogen For The Menopause", Acta Obstet. Gynecol. Scand. 59:327–329, 1980.

Magos et al., 23rd British Congress, Royal College of Obstetrics and Gynecology, Birmingham, p. 156, Jul. 1993.

Chemical Abstracts, vol. 83, No. 9, Sep. 1, 1975, p. 142, Abstract No. 725288.

Novo Industri AB, "Kliogest®: Ostrogenpreparat med gestagentillsats" Mar. 1984 (Translation provided).

Eiken, P., N. Kolthoff and S. Pors Nielsen, "Ten Years Effects of Hormonal Replacement Therapy On Bone Mineral Content in Post–Menopausal Women," Department of Clinical Physiology, Hillerod Hospital, DK–3400 Hillerod, Denmark (1996).

(List continued on next page.)

*Primary Examiner*—Raymond J. Henley, III
*Attorney, Agent, or Firm*—Pillsbury Madison & Sutro LLP

[57] **ABSTRACT**

A method of hormonally treating menopausal (including perimenopausal and post-menopausal) disorders in women, a composition, and a multi-preparation pack therefor. The administrative regimen to which the pack is particularly adapted comprises continuously and uninterruptedly administering a progestogen to a woman while cyclically administering an estrogen by using a repetitive dosage regimen. This regimen calls for administering the estrogen continuously for a period of time between about 20 and about 120 days, followed by terminating administering the estrogen for a period of time between about 3 and about 7 days. Alternatively, both the progestogen and estrogen may be administered for the full treatment period without interruption. The regimen avoids many of the problems associated with the administration of estrogen alone or with progestogen administered according to conventional regimens, and also avoids problems associated with such conventional regimens by maintaining the estrogen and progestogen at low daily dosage levels of between 0.005 mg and 2.5 mg estrogen and 0.25 mg and 30 mg progestogen.

**46 Claims, 1 Drawing Sheet**

# Re. 36,247
## Page 2

### OTHER PUBLICATIONS

Eiken, P., N. Kolthoff, S. Pors Nielsen and O. Barenholdt, "Eight Years Effects of Hormonal Replacement Therapy on Mineral Content in Post–Menopausal Women," Department of Clinical Physiology and Nuclear Medicine, Hillerod Sygebus, Helsevej 2, DK–3400 Hillerod (1995).

Eiken, P. and N. Kolthoff, "Compliance with long–term oral hormonal replacement therapy," Maturitas, vol. 22: 97–103, Sep. 1995.

Goisis M. "Treatment of Pre–climacteric and Climacteric introducing a New Estrogen–progestin Association" Minerva Ginecologica, 21 pages 193–197 (1969).

Lakartidningen, vol. 81, No. 12, Mar. 21, 1984 (translation provided).

Madsen V., Postmenopausal Estrogen Treatment, Manedsskrift for Praktisk Laegegering, vol. 45 (8) 1967 (translation provided).

Magos AL, et al "Amenorrhea and Endometrial Atrophy with Continuous Oral Estrogen and Progestogen Therapy in Post–Menopausal Women", Obstet. gynecol 65:496 (1985).

Maschak CA, et al "Comparison of pharmacoedynamic properties of various estrogen formulations", Am. J. Obstet. Gynecol. 144:51 (1982).

Smith M, et al, "A Double–Blind Trial of Ethinyloestradio and Norethisterone Separately and Together, in Menopausal Women", Aust. N.Z. J. Gynaec. 23: 43 (1983).

Workshop, Menopause, Substitutional Treatment with Estrogen, Socialstyrelsens Kommittee for lakemedelsinformation, 1983 (translation provided).

Mann JL, Vessey MP, Thorogood M, Doll R, Myocardial infarction in young women with special reference to oral contraceptive practice, Brit Med J 1975;2:241–245.

Mattsson L–Å, Samsioe G, Estrogen–progestogen replacement in climacteric women, particularly as regards a new type of continuous regimen, Acta Obstet Gynecol Scand Suppl 1985;130:53–58.

Plunkett ER, Contraceptive steroids, age, and the cardiovascular system, Am J Obstet Gynecol 1982;142:747–751.

Stolley PD, Tonascia JA, Tockman MS, et al, Thrombosis with low–estrogen oral contraceptives, Am J Epidemiol 1975;102:197–208.

Silfverstolpe G, Gustafson A, Samsioe G, Svanborg A, Lipid metabolic studies in oophorectomized women: effects induced by two different estrogens on serum lipids and lipoproteins, Gynecol obstet Invest 1980;11:161–169.

Tietze C, Lewit S, Life risks associated with reversible methods of fertility regulation, Int J Gynaecol Obstet 1979;16:456–459.

Heiss G, Tamir I, Davis CE, et al, Lipoprotein–cholesterol distributions in selected North American population: The Lipid Research Clinics Program Prevalence Study, Circulation, 1980;61:302–315.

Hiryonen E, Mälkönen M, Mannien V, Effects of different progestogens on lipoproteins during postmenopausal replacement therapy, N Engl J Med, 1081;304:560–563 (1981).

Kay CR, The happiness pill? J Roy Coll Gen Pract, 1980;30:8–19.

Khoo SK, Hacker N, Chang A, An incremental–dose combined oestrogen–progestogen oral contraceptive: effects on body weight, blood pressure, and biochemical parameters, Aust N Z J Obstet Gynaec, 1980;20:1712–176.

Larsson–Cohn U, Fähraeus L, Wallentin L, Zador G, Lipoprotein changes may be minimized by proper composition of a combined oral contraceptive, Fertil Steril, 1981;35:172–179.

Mann JI, Inman WHW, Oral contraceptives and death from myocardial infarction, Brit Med J, 1975;2:245–248.

Staland B, Continuous Treatment with Natural Oestrogens and Progestogens, A Method to Avoid Endometrial Stimulation, Maturitas 1981;3:145–156.

Mattsson L–Å, Callberg G, Samsioe G, Evaluation of a Continuous oestrogen–progestogen regimen for climacteric complaints, Maturitas 1982;4:95–102.

Bloch B., The effect of cyclical administration of levonorgestrel and ethinyloestradiol on blood pressure, body mass, blood glucose and serum triglycerides, S Afr Med J 1979;56:568–570.

Boston Collaborative Drug Surveillance Program. Boston University Medical Center, Surgically confirmed gallbladder disease, venous thromboembolism and breast tumors in relation to postmenopausal estrogen therapy, N Engl J Med 1974;290:15–19

Collaborative Group for the Study of Stroke in Young Men, Oral contraception and increased risk of cerebral ischemia or thrombosis, N Engl J Med 1973;288:871–878.

Gambrell RD Jr, Maier RC, Sanders BI, Decreased incidence of breast cancer in postmenopausal estrogen–progestogen users, Obstet Gynecol 1983;62:435–443.

Gambrell RD Jr, Bagnell CA, Greenblatt RB, Role of estrogens and progesterone in the etiology and prevention of endometrial cancer: review, Am J Obstet Gynecol 1983;146:696–707.

Gordon T, Castelli WP, Hjortland MC, Kannel WB, The prediction of coronary heart disease by high–density and other lipoproteins: an historical perspective, In:Rifkind BM, (1977).

Archer, D.F. et al., Bleeding Patterns in Postmenopausal Women Taking Continuous Combined or Sequential Regimens of Conjugated Estrogens With Medroxyprogesterone Acetate, Obstet. Gynecol., Vo. 83, No. 5, pp. 686–692 (May 1994) (E14).

Bewtra, Chhanda et al., Endometrial Histology and Bleeding Patterns in Menopausal Women Treated With Estrogen and Continuous Cyclic Progestin, J. Reproductive Med., vol. 33, No. 2, pp. 205–208 (Feb. 1988) (E10).

Brosens, I.A. et al., Assessment of Incremental Dosage Regimen of Combined Estrogen–Progestogen Oral Contraceptives, Br. Med. J., vol. 4(5945), pp. 643–645 (1974) (P56).

Christiansen, C.et al., Does Oestriol Add to the Beneficial Effect of Combined Hormonal Prophylaxis Against Early Postmenopausal Osteoporosis, Brit. J. Obstet. Gynaecol., vol. 91, pp. 489–493 (May 1984) (P45).

Clark, James H. et al., Nuclear Binding and Retention of the Receptor Estrogen Complex: Relation to the Agnostic and Antagonistic Properties of Estriol, Endo, vol. 1, No. 1, pp. 91–96 (1977) (P27).

Clisham, P. Ronald et al., Comparison of Continuous Versus Sequential Estrogen and Progestin Therapy in Postmenopausal Women, Obstet. Gynecol., vol. 77, No. 2, pp. 241–242 (Feb. 1991) (E9).

Dennerstein, Lorraine et al., Menopausal Hot Flushes: A Double Blind Comparison of Placebo, Ethinyl Oestradiol and Norgestrel, Brit.J. Obstet. Gynecol., vol. 85, pp. 852–856 (Nov. 1978) (P31).

**Re. 36,247**
Page 3

Dennerstein, Lorraine et al, Hormone Therapy and Affect, Maturitas, vol. 1, pp. 247–259 (1979) (P31a).

Dennerstein, Lorraine et al., Plasma Levels of Ethinyl Oestradiol and Norgestrel During Hormone Replacement Therapy, Maturitas, vol. 2, pp. 147–154 (1980) (P32).

Dickey, Richard P. & Stone, Sergio C., Progestational Potency of Oral Contraceptives, Obstet. Gynecol., vol. 47, No. 1, pp. 106–112 (Jan. 1976) (P9).

Dickey, Richard P., Reply to Paper by Dr. Edgren on "Progestational Potency of Oral Contraceptives: a Polemic", Int. J. Fertil., vol. 23(3), pp. 170–174 (1978) (P11).

Edgren, Richard A., Progestational Potency of Oral Contraceptives: a Polemic. Int. J. Fertil., vol. 23(3), pp. 162–169 (1978) (P10).

Eizemann, U et al., Abstract: Continuous Treatment of Menopausal Symptoms with an Estrogen/Progestogen Combinations. Results of a Multicenter Trial, J. Steroid. Biochem., vol. 17, No. 3, 1982, p. 306 (6th International Congress on Hormonal Steroids, Jerusalem, Israel, Sep. 5–10, 1982) (P36).

Englund, D.E. & Johansson, E.D.B., Endometrial Effect of Oral Estriol Treatment in Postmenopausal Women, Acta Obstet. Gynecol. Scand, vol. 59, pp. 449–451 (1980) (P26).

Hammond, Charles B. et al., Effects of Long Term Estrogen Replacement Therapy, Am. J. Obstet. Gynecol, vol. 133, No. 5, pp. 537–547 (Mar. 1, 1979) (P17).

Hellberg, D. & Nilsson, S., Comparison of Triphasic Oestradiol/Norethisterone Acetate Preparation With and Without Oestriol Component in the Treatment of Climacteric Complaints, Maturitas, Vol 5, pp. 233–243 (1984) (P44).

Hillard, T.C. et al., Continuous Combined Conjugated Equine Estrogen–Progestogen Therapy: Effects of Medroxyprogesterone Acetate and Norethindrone Acetate on Bleeding Patterns and Endometrial Histologic Diagnosis. Am J. Obstet. Gynecol., vol. 167, No. 1, pp. 1–7 (Jul. 1992) (E8).

Johansson, Elof D.B., Ostrogena Och Gestagena Substansers Effekter Pa Tumorer I Reproduktionsorganen (The Effects of Estrogenic and Gestagenic Substances on Tumours in the Reproductory Organs), Report from Workshop: Menopaus, pp. 129–141 (1982) [with translation] (Part of P2).

Johansson, Elof D.B., Nagra Utvecklingslinjer Kring Substitutions–Behandling Efter Menopaus (A few Courses of Development for the Substitution Treatment After Menopause), Report from Workshop: Menopaus, pp. 157–164 (1982) [with translation] (Part of P2).

King, Roger J.B. & Whitehead, Malcom L, Assessment of the Potency of Orally Administered Progestins in Women, Fertility & Sterility, vol. 48, No. 6, pp. 1062–1066 (Dec. 1986) (E19).

Lacey, R.W. et al., Safety of Progestins: Effects of Dydrogesterone on Blood Lipids, Br. J. Clin. Pract. Suppl. 24, pp. 4–10 (1983) (P23).

Levrant, Seth G. & Barnes, Randall B., Pharmacology of Estrogens, in Treatment of Postmenopausal Women: Basic and Clinical Aspects, ch. 6, pp. 57–67 (Rogerio A. Lobo ed., 1994) (E27).

Lillienberg, L. et al., Effect of a Sequential Estrogen–Progestin Therapy on the Plasma Level of Oestrogens and Lipids in Post–Menopausal Women, Acta Endocrinologica, vol. 92, pp. 319–329 (1979) (P21).

Luciano, Anthony Adolph et al., Clinical and Metabolic Responses of Menopausal Women to Sequential Versus Continuous Estrogen and Progestin Replacement Therapy, Obstet. Gynecol., vol. 71, No. 1, pp. 39–43 (Jan. 1988) (E11).

Luciano, Anthony A. et al., Evaluation of Low–Dose Estrogen and Progestin Therapy in Postmenopausal Women, J. Reproductive Med., vol. 38, No. 3, pp. 207–214 (Mar. 1993) (E7).

Magos, A.L., Endometrial and Menopausal Response to Continuous Oestrogen Progestogen Therapy in Post–Menopausal Women. Summary of Paper to be Presented at Advances in the Management of Menopause Symposium on Friday, 9th Dec., 1983 (P28).

Mattsson, L.–A. et al., Effects of a Continuous Estrogen–Progestogen Therapy for Climacteric Symptoms on Circulating Sex Steroids and Gonadotrophins. Arch. Gynecol., vol. 233, pp. 101–107 (1983) (P41).

Merck, pp. CI278, CI102, 454, 3648–49, 3654–55 (1983) (P34).

Merck, p. 493 (1989) (E23).

Nand, S.L. et al., Continuous Combined Piperazine Oestrone Sulphate and Medroxyprogesterone Acetate Hormone Replacement Therapy—A Study of Bleeding Pattern, Endometrial Response, Serum Lipid and Bone Density Changes, Aust. and N.Z. J. Obstet. Gynaecol., pp. 92–96 (1995) (E6).

Neumann, Von F. et al., Probleme der Dosisfindung: Sexualhormone, Drug. Res., pp. 296–318 (1977) (P20).

Neumann, F., The physiological Action of Progesterone and the Pharmacological Effects of Progestogens—a Short Review, Postgraduate Med. J., vol. 54 (Suppl. 2), pp. 11–24 (1978) (P48).

Notelovitz, Morris et al., Oestrogen–Progestin Therapy and the Lipid Balance of Post–Menopausal Women, Maturitas, vol. 4, pp. 301–308 (1982) (P47).

Notelovitz, Morris et al., Combination Estrogen and Progestogen Replacement Therapy Does Not Adversely Affect Coagulation, Obstet. Gynecol., vol. 62, No. 5, pp. 596–600 (Nov. 1983) (P46).

Padwick, M.L. et al., Oestriol With Oestradiol Versus Oestradiol Alone: A Comparison of Endometrial, Symptomatic and Psychological Effects, British J. Obstet. Gynaecol., vol. 93, pp. 606–612 (Jun. 1986) (E28).

Physicians' Desk Reference 38th Ed., pp. 424, 1487–1495 (1984) (P29).

Rozenbaum, H., Progestatifs de Synthese et Metabolisme Lipidique, Contraception–Fertilite–Sexualite, Supp. vol. 12, No. 1, pp. 173–180 (1984) (P22).

Sipinen, S., Plasm Oestrone, Oestradiol and Gonadotrophin Concentrations in Postmenopausal Patients Treated With Oestradiol or With a Combination of Oestradiol and Oestriol, Annals of Clinical Research, vol. 11, pp. 172–178 (1979) (P3).

Sipinen, Seppo et al., Silastic Implants Releasing Estrone in the Treatment of Climacteric Complaints, Maturitas, vol. 2, pp. 213–224 (1980) (P35).

Socialstyrelsens Kommittee for Lakemedelsinformation (Health Board Committee on Medical Information), Menopaus, Substitutional Treatment with Estrogen, Workshop, Aug. 30–31, 1982, pp. 27, 30 (published 1983) [with translation] (Part of P2).

Re. 36,247
Page 4

Socialstyrelsens Kommittee for Lakemedelsinformation (Health Board Committee on Medical Information), Menopaus, Substitutional Treatment with Estrogen, Workshop, Aug. 30–31, 1982, pp. 121, 161, 167–168 (published 1983) [with translation] (Part of P2).

Sporrong, T. et al., Comparison of Four Continuously Administered Progestogen Plus Oestradiol Combinations for Climacteric Complaints, British J. Obstet. Gynaecol., vol. 95, pp. 1042–1048 (Oct. 1988) (E12).

Staland, B., Continuous Treatment With a Combination of Estrogen and Gestagen—A way of Avoiding Endometrial Stimulation, Acta Obstet Gynecol Scand Suppl 130, pp. 29–35 (1985) (E29).

Staland, B., Treatment of Menopausal Oestrogen Deficiency Symptoms in Hysterectomised Women by Means of 17β–Oestradiol Pellet Implants, Acta. Obstet. Gynecol. Scand., vol. 57, pp. 281–285 (1978) (P18).

Stanczyk, Frank Z., Structure–Function Relationships, Potency, and Pharmacokinetics of Progestogens, in Treatment of Postmenopausal Women: Basic and Clinical Aspects, ch. 7, pp. 69–89 (Rogerio A. Lobo ed., 1994) (E26).

Sturdee, D.W. et al., Relations Between Bleeding Pattern, Endometrial Histology, and Oestrogen Treatment in Menopausal Women, Brit. Med. J., pp. 1575–1577 (Jun. 17, 1978) (P38).

Swyer, G.I.M., Potency of Progestogens in Oral Contraceptives—Further Delay of Menses Data, Contraception, vol. 26, No. 1, pp. 23–27 (Jul. 1982) (P19).

Swyer, G.I.M., Determination of Progestational Potency: A Review, J. Roy. Soc. Med., vol. 77, pp. 406–409 (1984) (P59).

Tausk, Marius, Pharmakologie der Hormone, pp. 83–87, 122–123 (1979) (P25).

Upton, Virginia G., Therapeutic Considerations in the Management fo Climacteric: A Critical Analysis of Prevalent Treatments, J. Reprod. Med., vol. 29, No. 2, pp. 71–80 (Feb. 1984) (P16).

Whitehead, M.I. et al., The Effects of Cyclical Oestrogen Therapy and Sequential Oestrogen/Progestogen Therapy on the Endometrium of Post–Menopausal Women, Acta Obstet. Gynecol. Scand, Suppl. 65, pp. 91–101 (1977) (P49).

Whitehead, M.I. & Campbell, S., Endometrial Histology, Uterine Bleeding and Oestrogen Levels in Menopausal Women Receiving Oestrogen Therapy and Oestrogen/Progestogen Therapy, Proceedings on the 2nd Int'l Meeting on Endometrial Cancer and Related Topics, pp. 65–80 (1978) (P50).

Whitehead, M.I. et al., Effects of Estrogens and Progestins on the Biochemistry and Morphology of the Postmenopausal Endometrium, New Eng. J. Med., vol. 305, No. 27, pp. 1599–1605 (Dec. 31, 1981) (P40).

Whitehead, M.I. et al., Actions of Progestins on the Morphology and Biochemistry of the Endometrium of Postmenopausal Women Receiving Low–Dose Estrogen Therapy, Am. J. Obstet. Gynecol., pp. 791–795 (Mar. 15, 1982) (P4).

Roger J.B. King, Aug. 29, 1995 (E25).

Curt Rune, Sep. 24, 1997 (E1 & E17).

Birgit Kronqvist, Sep. 17, 1997 (with translation) (E2).

Ruth Skoog, Feb. 3, 1997 (with translation) (E3).

Malcom Ian Whitehead, Oct. 15, 1997 (E22).

David W. Sturdee, Nov. 10, 1997 (E30).

Ove Heide–Jørgensen, Feb. 8, 1998 (with translation) (E31).

Ib Windfeld, Feb. 4, 1998 (with translation) (E32).

Bertil Staland, Nov. 24, 1997 (E33).

DUPHAR International Research B.V., Notice of Opposition to a European Patent, Oct. 21, 1997 (Party No. 04).

Novartis AG, Notice of Opposition to a European Patent, Oct. 20, 1997 (Party No. 03).

Novo Nordisk A/S, Notice of Opposition to a European Patent, Oct. 14, 1997 (Party No. 01).

Novo Nordisk A/S, Supplemental Notice of Opposition to a European Patent, Oct. 15, 1997 (Party No. 01).

Novo Nordisk A/S, Supplemental Notice of Opposition to a European Patent, Nov. 18, 1997 (Party No. 01).

Novo Nordisk A/S, Supplemental Notice of Opposition to a European Patent, Feb. 25, 1998 (Party No. 01).

Orion Pharma, Notice of Opposition to a European Patent, Oct. 22, 1997 (Party No. 10).

Ortho Pharmaceutical Corporation, Notice of Opposition to a European Patent, Oct. 22, 1997 (Party No. 07).

Pharmacia & Upjohn, Notice of Opposition to a European Patent, Oct. 21, 1997 (Party No. 06).

The Procter & Gamble Company, Notice of Opposition to a European Patent, Oct. 21, 1997 (Party No. 05).

R.P. Scherer Limited, Notice of Opposition to a European Patent, Oct. 17, 1997 (Party No. 02).

Schering AG, Notice of Opposition to a European Patent, Oct. 22, 1997 (Party No. 09).

Shire Pharmaceutical Contracts Limited, Notice of Opposition to a European Patent, Oct. 22, 1997 (Party No. 08).

Warner–Lambert Company, Notice of Opposition to a European Patent, Oct. 22, 1997 (Party No. 11).

Goretzlehner G. et al., Treatment of Menopausal Syndrome, Med. Akt., 8:418–419 (1982) (with English translation).

Kaiser, R., Hormonale Behandlung von Zyklusstorungen, 4th rev., p. 115 (1970).

McKay–Hart, D., A Comparative Trial of Kliogest With and Without Oestriol for the Prevention of Vasomotor Symptoms, Adverse Lipid Profile Changes and Oestoporosis in Postmenopausal Women (Dec. 15, 1993).

McKay–Hart, D., A Comparative Trial of Kliogest With and Without Oestriol Versus Cyclical Hormone Replacement Therapy in Treatment on Postmenopausal Women (Dec. 15, 1993).

Nishimo, Y. and Neumann, F., Sialic Acid Content in Mouse Female Reproductive Organs as a Quantitative Parameter for Testing the Estrogenicand Antiestrogenic Depot Effect, and Dissociated Effect of Estrogens on the Uterus and Vagina, Acta Endocrinologica (Copenhagen) Suppl., vol. 76 (187), p. 62 (1974) (Abstract).

Paterson, M.E.L. et al., Endometrial Disease After Treatment with Oestrogens and Progestogens in the Climacteric, Br. Med. J. vol. 280 (6217), pp. 822–824 (Mar. 22, 1980).

Physicians' Desk Reference 37th Ed., pp. 118, 405, 645–649 (1983).

Socialstyrelsens Kommittee for Lakemedelsinformation (Health Board Committee on Medical Information), Menopaus, Substitutional Treatment with Estrogen, Workshop, Aug. 30–31, 1982, pp. 1–164, 166 (published 1983).

Staland, B., Treatment of Climacteric Symptoms by Natural Oestrogens Without Stimulation of the Endometrium, Cancer Treatment Reports, vol. 63, No. 7, Abstr. No. 389 (Jul. 1979).

Whitehead, M.I., The Effects of Estrogens and Progestogens on the Postmenopausal Endometrium, Maturitas, vol. 1, No. 2, pp. 87–98 (1978) (Abstract).

Re. 36,247
Page 5

Ylostalo, Perra et al., Serum Bile Acids and Lipids During Treatment of Climacteric Symptoms with Natural Estrogen–Progestin Combinations, Maturitas, vol. 3, No. 1, pp. 21–24 (1981).

SDM, Swedish Drug Market, I/1984 and II/1984.

Merck, p. 360 (1968).

Unlisted Drugs, vol. 22, No. 10, Oct. 1970, p. 149; Chatham, New Jersey, US; p. 149e: "Cyclo–Progynova".

Unlisted Drugs, vol. 25, No. 10, Oct. 1973, p. 160; Chatham, New Jersey, US; p. 160a: "Microgynon".

Unlisted Drugs, vol. 26, No. 11, Nov. 1974, p. 170; Chatham, New Jersey, US; p. 170b: "WL–20".

Unlisted Drugs, vol. 27, No. 8, Aug. 1975, p. 130; Chatham, New Jersey, US; p. 130g: "Nordiol".

Unlisted Drugs, vol. 28, No. 2, Feb. 1976, p. 20; Chatham, New Jersey, US; p. 26j: "Minidrill".

Unlisted Drugs, vol. 29, No. 3, Mar. 1977, p. 41; Chatham, New Jersey, US; p. 41g: "Adepal".

Obstetrics and Gyneocology, 63(6), 759–763 (Jun. 1984).



Re. 36,247

| 1 | 2 |

# METHOD OF HORMONAL TREATMENT FOR MENOPAUSAL OR POST-MENOPAUSAL DISORDERS INVOLVING CONTINUOUS ADMINISTRATION OF PROGESTOGENS AND ESTROGENS

Matter enclosed in heavy brackets [ ] appears in the original patent but forms no part of this reissue specification; matter printed in italics indicates the additions made by reissue.

This is a continuation-in-part of U.S. Ser. No. 520,834, filed Aug. 5, 1983, now abandoned.

This invention relates to a method of hormonal treatment for menopausal (including perimenopausal and post-menopausal) disorders in women, and particularly to a treatment involving the continuous administration of a progestogen in conjunction with an estrogen. The invention further relates to a pharmaceutical composition comprising selected dosage units of progestogen and estrogen. In another aspect, the invention is concerned with a regimen comprising the continuous administration of progestogen in conjunction with the cyclical administration of estrogen and to a multi-preparation pack containing selected dosage units of progestogen and estrogen and particularly adapted to such regimen.

Perimenopausal (i.e. over approximately forty years of age), menopausal and post-menopausal women frequently experience a large variety of conditions and disorders which have been attributed to estrogen deprivation due to ovarian failure. The duration of these disorders can be extremely variable, and include hot flushes which can be devastating in some women and very mild in others. Dryness of the vagina associated with susceptibility to minor infections, and frequently associated with discomfort during intercourse, is another symptom which may be directly related to the decrease is estrogen availability.

In a long-term sense, one of the most health-threatening aspects of the menopause is the loss of mineral from bone (osteoporosis) which produces a decrease in bone mass and generates a serious risk of fractures. For example, evidence exists that there is a six-fold increase in fractures in post-menopausal women as opposed to men of the same age (Garraway et al, Mayo Clinic Proceedings, 54, 701–707, 1979). These fractures, of course, carry a high complication rate among older people, a marked increase in disability and general morbidity, and certainly an increased risk of mortality.

Another serious health-threatening aspect of the meno-pause the impressive loss of protection against heart attacks which is enjoyed by younger women up to the age of 60, when compared to men of the same age. The steep increase in mean serum cholesterol concentration which occurs around the menopause (during the fourth and fifth decades) may contribute importantly to the progressive increase in death from ischemic heart disease in older women. In the eighth and ninth decades, the incidence of deaths from ischemic heart disease, approaches that of men (Havlik, R.J. and Manning-Feinleid, P.H. 1979, NIH Publication No. 79-1610. U.S. Department of HEW).

In addition to the above-mentioned major physical problems, some women experience a larger variety of other symptoms ranging from depression, isomnia, and nervousness, to symptoms of arthritis and so forth.

It is generally agreed that estrogen is the most effective agent for the control or prevention of menopausal flushes and vaginal atrophy. It is effective in retarding or preventing the appearance of clinical evidence of osteoporosis. In appropriate doses, when combined with dl-norgestrel (or laevo-norgestrel), a favourable effect upon blood lipids is also seen. Problems with estrogen therapy do exist, however, and have been widely explored and documented in the medical literature. The means by which estrogen has been administered, generally speaking, involves either the use of estrogen [along] alone or estrogen plus a progestogen.

Estrogen [along] alone, given in small doses on a continuous basis, is effective in most patients for the control of the above symptoms and problems associated therewith. However, although the vast majority of women taking continuous low-dose estrogen will not have bleeding for many months or even years, there is a distinct risk posed by this routine of silently (i.e. exhibiting no overt symptoms) developing "hyperplasia of the endometrium". This term refers, of course, to an overstimulation of the lining of the uterus which can become pre-malignant, coupled with the possibility that the patient will eventually develop cancer of the uterine lining even under such a low-dose regimen (Gusberg et al, Obstetrics and Gynaecology, 17, 397–412, 1961).

Estrogen [along] alone can also be given in cycles, usually 21–25 days on treatment and 5–7 days off treatment. Again, if small doses of estrogen are required to control the symptoms and it is used to this fashion, only about 10% of women will experience withdrawal bleeding between the cycles of actual treatment. However, one must again be concerned by the risk of developing endometrial hyperplasia and by the increased relative risk of developing cancer of the uterus (Research on the Menopause: Report of a W.H.O. Scientific Group, 53–68, 1981).

The addition of progestogen for the last 7–10 days of each estrogen cycle will virtually eliminate the concern about developing endometrial hyperplasia and probably reduce the risk of developing endometrial carcinoma below that of the untreated general population. However, withdrawal bleeding will occur regularly in this routine and this is highly unacceptable to most older women (Whitehead, Am. J. Obs/Gyn., 142.6, 791–795, 1982).

Still another routine for estrogen administration would involve a formulation such as those found in birth control pills which contain relatively small doses of estrogen over the full 20–21 day treatment cycle, plus very substantial doses of potent progestogens over the same period of time. This routine, of course, not only produces withdrawal bleeding on each cycle, but is further unacceptable because such formulations have been shown to carry an increased risk of developing arterial complications such as stroke or myocardial infarction in older women about the age of 35–40. This is especially true if the individual is a smoker of cigarettes (Plunkett, Am. J. Obs/Gyn. 142, 6, 747–751, 1982).

Therapeutic regimens employing a progestogen alone require relatively large doses in order to control hot flushes. Moreover, use of a progestogen alone does not prevent atrophy of the vaginal mucosa, although it may help to prevent osteoporosis. However, a progestogen administered in large doses, together with large amounts of a synthetic estrogen, induces changes in blood lipids which may promote arteriosclerotic changes and have been implicated in the appearance of strokes and myocardial infarction among women taking oral contraceptives in their later reproductive years, (Plunkett, supra).

The present invention provides a novel therapeutic method and composition involving the use of low dosage levels of estrogens and progestogens, which method is designed to avoid or minimize bleeding and prevent over-stimulation of the lining of the uterus while producing

Re. 36,247

3

favourable changes in blood lipids. In particular, the method involves continuous and uninterrupted administration of very small doses of a progestogen along with administration of an estrogen, the latter being cyclical, where required (for example, with perimenopausal women). The method specifically provides for treatment of menopausal or post-menopausal disorders in a women comprising either:

A. continuously and uninterruptedly administering a progestogen and an estrogen to said woman, or

B. continuously and uninterruptedly administering a progestogen and cyclically administering an estrogen to said woman by repetitively using a dosage regimen comprising:

(i) administering said estrogen continuously for period of time between about 20 and about 120 days, followed by

(ii) terminating administering said estrogen for a period of time between about 3 and about 7 days.

The term "perimenopausal" refers to women of approximately forty years of age and older, who have not yet definitely arrived at menopause but who are experiencing symptoms associated with menopause.

The term "continuous" as applied in the specification and the claims to "administration" means that the frequency of administration is at least once daily. Thus, administration, e.g. every other day or once every third day, is not "continuous" for purposes of this invention. Note, however, that the frequency of administration may be greater than once daily and still be "continuous", e.g. twice or even three times daily so long as the dosage level as specified herein is not exceeded.

The term "uninterrupted" means that there is no break in the treatment. Thus "continuous, uninterrupted administration" of a progestogen would mean that the progestogen is administered at least once daily essentially in perpetuity or until the entire treatment is ended. In this regard, it should be noted that "cyclical" administration means that there is a break in administration and that, therefore, by definition, cyclical administration cannot be "uninterrupted".

The term "dosage level" means the total amount of estrogen or progestogen administered per day. Thus, for example, the "continuous administration" of a progestogen to a women at a "dosage level" of 75 micrograms means that the women receives a total of 75 micrograms of progestogen on a daily basis, whether the progestogen is administered as a single 75 microgram dose or, e.g. three separate 25 microgram doses. It is noted that the most conventional means of continuously administering an estrogen or progestogen is as a single daily oral dose at the prescribed dosage level. Parenteral modes of administration, which provide a slow release of the progestogen, could be substituted for the oral route.

Thus, the invention realizes the objects of providing a therapeutic method allowing for the administration of an estrogen, controlling hot flushes, restoring the vaginal mucosa to a healthier state, preventing the development of the dimineralization of bones as well as preventing changes in lipids which predispose to cardiovascular disease, over long periods of treatment, which method does not, however, initiate bleeding or increase the risk of endometrial carcinoma.

In another aspect, the invention provides a pharmaceutical composition for hormonal treatment of menopausal or post-menopausal disorders in a woman, which comprises a dosage unit of a progestogen and a dosage unit of an estrogen for continuous administration wherein the units comprise a progestogen in the range of 0.025 to 30 mg and an estrogen in the range of 0.005 to 2.5 mg together with a pharmaceutically acceptable inert carrier.

4

The actual unit dosages are selected according to conventionally known methods, e.g. body weight of patient and biological activity of the hormones, with the ultimate goal of producing the desired result with the minimum quantities of hormones.

The interruption of the estrogen administration is required in perimenopausal women to maintain normal periods and may be required in certain jurisdictions due to health concerns—particularly overstimulation of the lining of the uterus to cause a pre-malignant condition. The absence of estrogen for a short period allows the lining of the uterus to be sloughed and any pre-malignancy thus avoided. However, the inventors believe that even with continuous administration of estrogen, the presence of progestogen will give rise to sufficient atrification of the uterus that no such condition would be likely to occur.

A further and important object of the invention is to provide the means whereby a woman may receive the proper quantities and dosage units of the progestogen and estrogen for adherence to the prescribed regimen wherein the dosage of estrogen is cyclically administered. Such means takes the form of a multi-preparation pack, which facilitates administration by a nurse or physical in appropriate circumstances or, more usually, self-administration by the woman.

The multi-preparation pack contains sufficient dosage units of progestogen and estrogen for continuous administration of both said progestogen and said estrogen for a period of from about 20 to 120 days plus an additional number of dosage units of progestogen for administration for an additional period of time of from about 3 to about 7 days during which administration of said estrogen is terminated.

The estrogen used in the present disclosure may be those which are orally active and are suitable for oral contraception and selected from natural estrogens such as estradiol, estradiol-17β, estradiol valerate, conjugated equine estrogens, piperazine estrone sulphate, estrone, estriol, estriol succinate and polyestriol phosphate, or from synthetic estrogens such as ethinyl estradiol, quinestranol and mestranol. The natural estrogens are preferred.

The progestogen is again selected from those which are orally active and suitable for oral contraceptives and may be, [foro] for example, dl-norgestrel, laevo-norgestrel, norethindrone (norethisterone), norethindrone acetate, ethynodiol diacetate, medroxyprogesterone acetate, cyproterone acetate or norethynodrel.

In the following Tables 1A and 1B are listed preferred unit dosages, minimum unit dosages and maximum unit dosages for the estrogens and progestogens useful in this invention. The quantities are determined by the biological activities of the particular substances as obtained commercially from sources that normally supply them in micronized form.

TABLE 1A

ESTROGENS

| | Preferred | Dosage Minimum | (mg/day) Maximum |
|---|---|---|---|
| Natural estrogens (steroids) | | | |
| Estradiol | 1 | 0.500 | 2 |
| Estradiol-17β | 1 | 0.500 | 2 |
| Estradiol valerate | 1 | 0.500 | 2 |
| Conjugated equine estrogens | 0.600 | 0.300 | 2.5 |
| Estrone | 0.600 | 0.300 | 2.5 |

Re. 36,247

5

## TABLE 1A-continued

### ESTROGENS

| | Preferred | Dosage Minimum | (mg/day) Maximum |
|---|---|---|---|
| Piperazine estrone sulphate (estropipate) | 0.500 | 0.250 | 2.5 |
| Estriol* | 0.100 | 0.050 | 0.500 |
| Estriol succinate* | 0.100 | 0.050 | 0.500 |
| Polyestriol phosphate* | 0.100 | 0.050 | 0.500 |
| Synthetic estrogens (steroids) | | | |
| Ethinyl estradiol | 0.010 | 0.005 | 0.020 |
| Mestranol | 0.015 | 0.005 | 0.040 |
| [Quinestranol] Quinestrol | 0.010 | 0.005 | 0.030 |

It may be noted that of the estrogens of Table 1A, the estriol preparations marked with an asterisk (*) have lower preference than estradiols or estrones because they fail to spare bone in post-menopausal women. However, they could be combined with natural or synthetic estrogens for the purpose of the invention. Also, it is preferable that the following non-steroidal estrogens—although useful in this invention—be avoided for women who have not definitely arrived at menopause (who could become pregnant)—estrogens of this type being known to induce vaginal cancer and other abnormalities in offspring if taken during the pregnancy:

| | | | |
|---|---|---|---|
| Stilboestrol | 0.100 | 0.020 | 2 |
| Stilboestrol dipropionate | 0.100 | 0.020 | 2 |
| Diethylstilboestrol | 1 | 0.400 | 2.5 |
| Chlorotrianiscos | 2 | 1 | 2.5 |
| Benzoestrol | 2 | 0.5 | 2.5 |
| Dienoestrol | 0.500 | 0.200 | 2.5 |
| Hexoestrol | 0.500 | 0.200 | 2.5 |
| Methallenoestril | 1 | 0.500 | 2.5 |

## TABLE 1B

### PROGESTOGENS

| | Preferred | Dosage Minimum | (mg/day) Maximum |
|---|---|---|---|
| Laevo-norgestrel | 0.050 | 0.025 | 0.075 |
| dl-norgestrel | 0.100 | 0.050 | 0.150 |
| Norethindrone (norethisterone) | 0.30 | 0.15 | 1.0 |
| Norethindrone (norethisterone) acetate | 0.20 | 0.10 | 1.0 |
| Dydrogesterone | 10 | 5 | 30 |
| Medroxyprogesterone acetate | 2.5 | 1 | 15 |
| Norethynodrel | 1 | 0.200 | 5 |
| Allylestrenol | 2 | 1 | 30 |
| Lynoestrenol | 0.200 | 0.100 | 2 |
| Quingestanol acetate | 0.200 | 0.050 | 1 |
| Medrogestone | 2 | 1 | 10 |
| Norgestrienone | 0.050 | 0.020 | 0.200 |
| Dimethisterone | 1 | 0.500 | 15 |
| Ethisterone | 2.5 | 1 | 25 |
| Cyproterone acetate | 0.500 | 0.100 | 10 |
| Chlormadinone acetate | 0.300 | 0.100 | 1 |
| Megestrol acetate | 1 | 0.100 | 10 |

Although chlormadinone acetate and megestrol are useful in the context of this invention, it has been speculated that these progestogens may pre-dispose breast tumors, although no clinical proof exists to that effect. However, unless and until such suspicions are proven to be without foundation, these compounds are clearly of lower preference.

6

The estrogen/progestogen combinations may be administered non-orally by implants or intramuscular injections. Generally speaking, the required dosages are based upon somewhat lower daily dosage levels that those required for the orally administered estrogens and progestogens, for the simple reason that the former are directly released into the bloodstream with consequently greater activity than the same compounds when orally ingested.

Estradiol, estradiol valerate and estradiol 17-β are suitable candidates for estrogen implants, in maximum and minimum amounts of 100 mg and 20 mg, with 100 mg preferred. These quantities will be suitable for slow-release implants intended for replacement every 3 to 12 months.

Suitable progestogen implants and intramuscular injections are set forth in Table 1C.

## TABLE 1C

| | | Total Quantity (mg) | | |
|---|---|---|---|---|
| | Period | Pre-ferred | Min-imum | Max-imum |
| Progestogen implants | | | | |
| Loevonorgestrel | every 2–5 yr. | 50 | 25 | 100 |
| dl-norgestrel | every 2–5 yr. | 100 | 50 | 200 |
| Norgestrienone | every 1–2 yr. | 100 | 25 | 200 |
| Norethindrone acetate | every 2–4 mon. | 100 | 25 | 200 |
| Intramuscular progestogen depots | | | | |
| Medroxyprogesterone acetate | every 3 mon. | 150 | 50 | 500 |
| Norethindrone enanthate | every 3 mon. | 50 | 20 | 400 |
| Gestrocol hexanoate | every 3 mon. | 100 | 50 | 400 |
| Algestone acetophenide | monthly | 50 | 20 | 300 |
| Hydroxyprogesterone hexanoate | weekly | 100 | 50 | 250 |
| Hydroxyprogesterone caproate | bi-weekly | 100 | 50 | 250 |

dl-Norgestrel, laevo norgestrel (the common name for d-13β-ethyl-17α-ethinyl-17β-hydroxygon-4-en-3-one), norethindrone (common name for 17-hydroxy-19-nor-17α-pregn-4-en-20-yn-3-one), ethynodiol diacetate (common name for 19-nor-17α-pregn-4-en-20-yne-3β, 17-diol diacetate), norethindrone acetate, and cyproterone acetate may also be administered by injection. It will be readily appreciated by those skilled in the art thay any other synthetic progestogen which is orally active or effective for use in conjunction with contraception is also suitable for use in this invention.

Any of the suitable estrogens and progestogens (particularly those listed in the foregoing tables) may be combined with one another in the quantities recited to give estrogen/progestogen combinations within the purview of the invention. Especially preferred combinations are those containing the estradiols or conjugated equine estrogens and the norgestrels norethindrones, or medroxyprogesterones. Thus, especially preferred combinations are:

Estradiol/Laevo-norgestrel
Estradiol 17β/Laevo-norgestrel
Estradiol valerate/Laevo-norgestrel
Conjugated equine estrogens/Laevo-norgestrel
Estradiol/dl-norgestrel
Estradiol 17β/dl-norgestrel
Estradiol valerate/dl-norgestrel
Conjugated equine estrogens/dl-norgestrel
Estradiol/Norethindrone (norethisteron)
Estradiol 17β/Norethindrone (norethisterone)
Estradiol valerate/Norethindrone (norethisterone)
Conjugated equine estrogens/Norethindrone (norethisterone)

Re. 36,247

7

Estradiol/Norethindrone (norethisterone) acetate
Estradiol 17β/Norethindrone (norethisterone) acetate
Estradiol valerate/Norethindrone (norethisterone) acetate
Conjugated equine estrogen/Norethindrone
    (norethisterone) acetate
Estradiol/Medroxyprogesterone acetate
Estradiol 17β/Medroxyprogesterone acetate
Estradiol valerate/medroxyprogesterone acetate
Conjugated equine estrogen/Medroxyprogesterone
    acetate

The maximum, minimum and preferred dosage levels for the respective estrogens and progestogens in the foregoing combinations are as recited in the tables.

The comparison of the invention is usually administered orally in admixture with a pharmaceutically acceptable inert carrier. The estrogen and progestogen can be compounded in any pharmaceutically acceptable inert (non-toxic) form. The packaging can be any system convenient for proper delivery. With the preferred orally administrable form, the pharmaceutical carrier can be of any of the conventionally employed carriers, for example pharmaceutically grades of mannitol, lactose, starch, magnesium stearate, sodium saccharin, talcum cellulose, glucose, sucrose, magnesium carbonate, and similar substances. The compositions may be formulated into solutions, suspensions, tablets, pills, capsules, powders, sustained release formulations, etc.

One of the unique aspects of this invention is the adaptation of the multi-preparation pact to the continuous uninterrupted administration of a progestogen and an estrogen is administered in a cyclic fashion. The duration of the estrogen cycle can be very variable, with continuous administration ranging between 20 and 120 days followed by a break (i.e. interruption) in estrogen administration ranging anywhere from about 3 to about 7 days. However, if the estrogen is discontinued for a period longer than 5 days, recurrence of hot flushes is most likely to occur, in a number of patients.

The multi-pack dispensing system may be accommodated by conventional packaging equipment, e.g. transparent strip foil packages continuously arranged in daily dosages or other conventional means in the art. Where the multi-pack is employed for the cyclical administration of an estrogen in combination with a progestogen, the pack would conveniently comprise a transparent strip foil package with the combined unit daily dosages arranged continuously with, for example, up to a total of 120 such dosages, the 3 to 7 unit dosages of progestogen being located at the end of the combined daily unit dosages whereby they would be taken at the end of the series.

The inventors have been developed clinical evidence from this routine that the amounts of estrogen and progestogen required to control flushes, vaginal symptoms and associated subjective symptoms are very small. Preliminary metabolic responses of the subjects indicative favourable changes toward the lower blood lipid levels found in younger pre-menopausal women.

## EXAMPLE 1

An experimental study of thirty women was instituted under a randomized double blind protocol with crossover and involved the administration of placebos, progestogen only, estrogen only and the combination of the continuous, uninterrupted progestogen/cyclic estrogen treatment. Treatment comprised administering each hormone and the combination as follows: (1) estrogen alone for two months; (2) progestogen alone for two months; (3) combination therapy using (1) and (2) for six months. Each period of adminis-

8

tering a hormone of the combination was followed by a one month period of placebo (substance with no endocrine activity) administration. The estrogen was micronized 17β-estradiol administered at a daily dosage level of 1 milligram, while the progestogen was dl-norgestrel administered at a dosage level of 75 micrograms.

Of 30 women who have completed this study, 22, on the basis of their responses throughout the fourteen months of observation, selected the combination treatment and requested to continue it. This represents a high level of acceptability.

## EXAMPLE 2

In a follow-up phase of observation, 17 subjects (with intact uterus) have completed a total of 125 lunar months of the combination therapy (continuous, uninterrupted administration of dl-norgestrel, cyclic administration of 17β-estradiol). None of the patients experienced "bleeding" which required protection. 1.6 percent of the cycles involved spotting requiring no protection. 98.4 percent of the cycles were completely clear.

The combination therapy has been associated with no evidence whatsoever of endometrial hyperplasia (overstimulation of the lining of the uterus). One patient, after the 2-month phase of taking estrogen only (in the double blind study) did show evidence not only of hyperplasia of the endometrium but also had a typical findings which could be interpreted as indicative of a premalignant change. Addition of the small (75 microgram) dosage level of progestogen (dl-norgestrel) for two weeks only followed by full dilatation and curettage revealed that the endometrium had become completely atrophic once again and a total reversal of the previous findings were noted.

As an alternative to dl-norgtrestrel, laevo-norgestral may be used. Since the dl-norgestrol consists of equal parts of the dextro (inactive) and laevo (active) forms, only half the quantity of laevo-norgestrol is used with the same effect. Thus, if laevo-norgestrol is substituted for dl-norgestrol in the foregoing examples, the laevo-norgestrol dosage level is 37.5 micrograms.

At least five cases of young women who required removal of ovaries and uterus because of severe endometriosis have also been successfully treated by the above combination. These women rarely have total removal of the endometriotic tissue. It is important to treat these patients with estrogen replacement therapy to prevent the early appearance of bone demineralization (osteoporosis), elevation of cholesterol and triglycerides and to control sever hot flushes and vaginal atrophy. If patients such as these are treated with estrogen alone, they frequently develop recurrence of pain symptoms due to residual endometriosis being restimulated by the administered estrogen. Because the inventors' combination therapy tends to promote atrophy of the lining of the uterus (endometrium) no matter whether it is located normally within the uterus or in the endometriotic tissue in the pelvis, it is found that these patients tolerate the treatment very well and do not have a recurrence or reactive of their endometriosis. Furthermore, even small doses of progestogen in combination with the continuous progestogen routine is sufficient to control the severe hot flushes which such patients experience.

Thus this invention permits control of menopausal disorders including hot flushes and vaginal atrophy along with many of the subjective symptoms. Further, given that both components of the combination therapy are considered to be effective in retarding osteoporosis, long term therapy to prevent this disabling disease should be effective.

Re. 36,247

**9**

Additionally, the risk of developing endometrial (uterine) cancer from the combination therapy should, at a minimum, be reduced to the normal incidence of the general population as opposed to the increased risk which has in fact been demonstrated to occur using estrogen-only treatment. The inventors have in fact developed some evidence suggestive that the combination therapy reduces the risk of premalignant endometrial changes, which may reduce the risk of developing endometrial cancer. The reduction in bleeding or spotting in patients taking the combination therapy makes it much more desirable relative to known treatments, particularly to older women.

The following describes directions which may be applied to a multi-preparation pack specifically adapted to the cyclical administration of estrogen together with the continuous administration of progestogen in accordance with one embodiment of the invention:

### ABOUT THESE TABLETS

(The tablet set herein) is used to control menopausal symptoms. It is not a birth control pill and cannot be relied upon to prevent pregnancy.

Oral contraceptives should not be taken at the same time as these tablets and, if necessary, you should therefore ask your doctor about alternative means of mechanical protection.

When treatment is first started, tingling of the breasts slight nausea or occasional vaginal bleeding may occur—this should settle after a short time.

If you have any unusual symptoms, contact your doctor.

To be taken under medical supervision.

### HOW TO USE THIS PACK

Whether you are menstrating regularly or not, take the first tablet on a day suitable to yourself until all the tablets have been consumed.

The last seven tablets of the different colour are to be taken only when all others have been consumed.

Alternatively, the foregoing instructions may be printed as a leaflet, and the package instruction modified as follows:

Before commencing treatment please read the enclosed instruction leaflet carefully. If you have any difficulties following the instructions please ask your doctor for assistance.

### DIRECTIONS

To remove a tablet, press firmly with your thumb on the appropriate clear plastic bubble. This may be helped by holding the card so that your fingers surround the aluminum foil through which the tablet will emerge.

### BRIEF DESCRIPTION OF THE DRAWINGS

A multi-preparation pack suitable for administration of tablets in accordance with the regimen described above is illustrated in FIGS. 1 and 2 of the drawings. A bubble pack **10** (which may be folded along the line **10a**) is sold in a protective sleeve **11**, upon the rear of which are printed the directions for use and salient facts concerning the tablets, as indicated at **12** in the drawing. When removed from the protective sleeve by the consumer, the bubble pack contains as many tablets as the number of days which the pack is intended to cover (in this example, one hundred and twenty days). Optionally, the individual bubble segments may be numbered from one to one hundred and twenty but it is

**10**

important that the last few segments, which contains the progestogen-only tablets, be clearly distinguished from the remainder of these segments. In the present example, the segments **13** containing the first one hundred and thirteen tablets (combination progestogen/estrogen) are a light colour (for example, white) whilst the last seven segments **14**, containing the progestogen-only tablets are a dark colour (red, for example). By following the directions on the sleeve and observing the colours on the bubble pack (and the "day numbers", if present) the consumer will take the combination tablets for the first one hundred and thirteen days and the progestogen tablets for the last seven days. Thereafter, a new package would be opened, whereby the cycle is repeated.

Although only a few exemplary embodiments of this invention have been described in detail above, those skilled in the art will readily appreciate that many modifications are possible in the exemplary embodiments without materially departing from the novel teachings and advantages of this invention.

We claim:

[1. A method of hormonally treating menopausal or postmenopausal disorders in a woman, comprising administering to said woman continuously and uninterrupted both progestogen and estrogen in daily dosage units of progestogen equivalent to laevo-norgestrel dosages of from about 0.025 mg to about 0.075 mg, and of estrogen equivalent to estradiol dosages of about 0.5 mg to about 2.0 mg.]

[2. The method of claim 1 wherein said estrogen is 17 β-estradiol and said progestogen is dl-norgestrel or laevo-norgestrel, the daily dosage level of said 17 β-estradiol being about 1 mg, the daily dosage level of said dl-norgestrel (where present) being about 100 micrograms, and the daily dosage of said laevo-norgestrel (where present being about 50 micrograms.]

3. A method of hormonally treating perimenopausal, menopausal or post-menopausal disorders in a woman, comprising:

A. continuously and uninterruptedly administering a progestogen to said woman in daily dosage units of progestogen equivalent to laevo-norgestrel dosages of from about 0.025 mg to about 0.075 mg, and

B. cyclically administering an estrogen to said woman by repetitively using a dosage regimen comprising:
   (i) administering said estrogen continuously for a period of time between about 20 and about 120 days in daily dosage units of estrogen equivalent to estradiol dosages of from about 0.500 mg to about 2 mg, followed by
   (ii) terminating administering said estrogen for a period of time between about 3 and about 7 days.

4. The method of claim 3 wherein said progestogen is selected from the following group, with respective maximum and minimum daily dosage levels as follows:

|  | Dosage Minimum | (mg/day) Maximum |
|---|---|---|
| Laevo-norgestrel | about 0.025 | about 0.075 |
| dl-norgestrel | about 0.050 | about 0.150 |
| Norethindrone (norethisterone) | about 0.15 | about 1.0 |
| Norethindrone (norethisterone) acetate | about 0.10 | about 1.0 |
| Ethynodiol diacetate | about 0.10 | about 1.0 |
| Dydrogesterone | about 5 | about 30 |
| Medroxyprogesterone acetate | about 1 | abou 15 |

Re. 36.247

## 11

-continued

| | Dosage Minimum | (mg/day) Maximum |
|---|---|---|
| Norethynodrel | about 0.203 | about 5 |
| Allylestrenol | about 1 | about 10 |
| Lynoestrenol | about 0.300 | about 2 |
| Quingestanol acetate | about 0.050 | about 1 |
| Medrogestone | about 1 | about 10 |
| Norgestrienone | about 0.020 | about 0.200 |
| Dimethisterone | about 0.500 | about 15 |
| Ethisterone | about 1 | about 25 |
| Cyproterone acetate | about 0.300 | about 10. |

5. The method of claim 3 wherein said estrogen is selected from the following group, with respective maximum and minimum daily dosage levels as follows:

| | Dosage Minimum | (mg/day) Maximum |
|---|---|---|
| Estradiol | about 0.500 | about 2 |
| Estradiol-17β | about 0.500 | about 2 |
| Estradiol valerate | about 0.500 | about 2 |
| Conjugated equine estrogens | about 0.300 | about 2.5 |
| Estrone | about 0.300 | about 2.5 |
| Piperazine estrone sulphate (estropipate) | about 0.250 | about 2.5 |
| Ethinyl estradiol | about 0.005 | about 0.020 |
| Mestranol | about 0.005 | about 0.030 |
| [Quinestranol] Quinestrol | about 0.005 | about 0.020. |

6. The method of claim 5 or claim 4 wherein said estrogen is selected from the following group, with respective daily dosage levels as follows:

| | Dosage (mg/day) |
|---|---|
| Estradiol | about 1 |
| Estradiol-17β | about 1 |
| Estradiol valerate | about 1 |
| Conjugated equine estrogens | about 0.600 |
| Estrone | about 0.600 |
| Piperazine estrone sulphate (estropipate) | about 0.500 |
| Ethinyl estradiol | about 0.010 |
| Mestranol | about 0.015 |
| [Quinestranol] Quinestrol | about 0.010. |

7. The method of claim 5 wherein said progestogen is selected from the following group, with respective daily dosage levels as follows:

| | Dosage (mg/day) |
|---|---|
| Laevo-norgestrel | about 0.050 |
| dl-norgestrel | about 0.100 |
| Norethindrone (norethisterone) | about 0.30 |
| Norethindrone (norethisterone) | about 0.30 |
| Ethynodiol diacetate | about 0.30 |
| Dydrogestrone | about 10 |
| Medroxyprogesterone acetate | about 2.5 |
| Norethynodrel | about 1 |
| Allylestrenol | about 2 |
| Lynoestrenol | about 0.200 |
| Quingestanol acetate | about 0.200 |
| Medrogestone | about 2 |
| Norgestrienone | about 0.050 |
| Dimethisterone | about 1 |
| Ethisterone | about 2.5. |

8. The method of [any of claims] claim 5 wherein said estrogen and said progestogen are selected from the following combination:

## 12

Estradiol/Laevo-norgestrel
Estradiol 17β/Laevo-norgestrel
Conjugated equine estrogens/Laevo-norgestrel
Estradiol/dl-norgestrel
Estradiol 17β/dl-norgestrel
Estradiol valerate/Laevonorgestrel
Estradiol valerate/dl-norgestrel
Conjugated equine estrogens/dl-norgestrel
Estradiol/Norethindrone (norethisterone)
Estradiol 17β/Norethindrone (norethisterone)
Estradiol valerate/Norethindrone (norethisterone)
Conjugated equine estrogens/Norethindrone (norethisterone)
Estradiol/Norethindrone (norethisterone) acetate
Estradiol 17β/Norethindrone (norethisterone) acetate
Estradiol valerate/Norethindrone (norethisterone) acetate
Conjugated equine estrogen/Norethindrone (norethisterone) acetate
Estradiol/Medroxyprogesterone acetate
Estradiol 17β/Medroxyprogesterone acetate
Estradiol valerate/Medroxyprogesterone acetate
Conjugated equine estrogen/Medroxyprogesterone acetate.

9. The method of claim 8 wherein said estrogen is 17β-estradiol and said progestogen is dl-norgestrel or laevo-norgestrel.

10. The method of claim 9 wherein the daily dosage level of said 17β-estradiol is between about 0.5 mg and about 2 mg, the daily dosage level of said dl-norgestrel, where present, is between about 50 and about 150 micrograms and the daily dosage level of said laevo-norgestrel, where present, is between about 25 and about 75 micrograms.

11. The method of claim 10 wherein the daily dosage level of said dl-norgestrel is about 75 micrograms.

[12. The method of claim 1 or 3 wherein said estrogen is a synthetic estrogen.]

[13. The method of claim 12 wherein said synthetic estrogen is selected from the group consisting of ethinyl estradiol, mestranol and quinestranol.]

[14. The method of claim 1 or 3 wherein said estrogen is a natural estrogen.]

[15. The method of claim 14 wherein said natural estrogen is selected from the group consisting of conjugated equine estrogens, estradiol, estradiol-17β estradiol valerate, estrone, piperazine estrone sulphate, estriol, estriol succinate and polyestriol phosphate.]

[16. The method of claim 1 or 3, wherein said progestogen is selected from the group consisting of laevo-norgestrel, dl-norge, trel, norethindrone (norethisterone), norethindrone (norethisteron) acetate, ethynodiol diacetate, dydrogesterone, medroxyprogesterone acetate, norethynodrel, allylestrenol, lynoestrenol, quingestanol acetate, medrogestone, norgestrienone, dimethisterone, ethisterone, and cyprotecone acetate.]

[17. A pharmaceutical composition for the hormonal treatment of perimenopausal, menopausal and post-menopausal disorders in a woman, said composition being in implantable or intramuscularly injectable form and comprising, in association with a pharmaceutically acceptable barrier, sufficient progestogen and estrogen to provide dosage levels to said woman equivalent to orally administered daily dosages of progestogen equivalent to laevo-norgestrel dosages of from about 0.025 mg to about 0.075 mg and of estrogen equivalent to estradiol dosages of about 0.5 mg to about 2 mg.]

Re. 36,247

13

[18. The pharmaceutical composition of claim 17 in implantable form, wherein said estrogen is selected from the group consisting of estradiol, estradiol-17β, and estradiol valerate.]

[19. The pharmaceutical composition of claim 18 or 17 in implantable form, wherein said progestogen is selected from the group consisting of laevo-norgestrel, dl-norgestrel, norgestrienone, and norethindrone acetate.]

[20. The pharmaceutical composition of claim 17 in injectable form, wherein said progestogen is selected from the group consisting of medroxyprogesterone acetate, norethindrone enanthate, gestronol hexanoate, and algestone acetophenide.]

21. A method of hormonally treating menopausal or postmenopausal disorders in a woman to prevent or retard the demineralization of bone, comprising administering continuously and uninterruptedly over the treatment period, in fixed daily dosages and at dosages and a duration sufficient to effectively retard or prevent the demineralization of bone while minimizing spotting and/or bleeding, both progestogen and estrogen in daily dosage units of progestogen equivalent to laevo-norgestrel dosages of from about 0.025 mg to about 0.05 mg, and of estrogen equivalent to estradiol dosages of about 0.5 mg to about 2.0 mg.

22. A method of hormonally treating menopausal or postmenopausal disorders in a woman to prevent or retard the demineralization of bone, comprising administering continuously and uninterruptedly over the treatment period, in fixed daily dosages and at dosages and a duration sufficient to effectively retard or prevent the demineralization of bone while minimizing spotting and/or bleeding, both progestogen and estrogen in daily dosage units of progestogen equivalent to laevo-norgestrel dosages of from about 0.025 mg to about 0.075 mg, and of estrogen equivalent to estradiol dosages of about 0.5 mg to about 2.0 mg, wherein the progestogen and the estrogen are combined in a single dosage form.

23. A method of hormonally treating menopausal or postmenopausal disorders in a woman, comprising administering continuously and uninterruptedly over the treatment period, in fixed daily dosages which minimize spotting and/or bleeding, both progestogen and estrogen in daily dosage units of progestogen equivalent to laevo-norgestrel dosages of from about 0.025 mg to about 0.05 mg, and of estrogen equivalent to estradiol dosages of about 0.5 mg to about 0.25 mg.

24. A method of hormonally treating menopausal or postmenopausal disorders in a woman, comprising administering continuously and uninterruptedly over the treatment period, in fixed daily dosages which minimize spotting and/or bleeding, both progestogen and estrogen in daily dosage units of progestogen equivalent to laevo-norgestrel dosages of from about 0.025 mg to about 0.075 mg, and of estrogen equivalent to estradiol dosages of about 0.5 mg to about 2.0 mg, wherein the progestogen and the estrogen are combined in a single dose form.

25. The method of claim 21 or 23, wherein the progestogen and the estrogen are combined in a single dosage form.

26. The method of claim 21, 22, 23, 24 or 25, wherein the estrogen consists essentially of a bone-sparing estrogen.

27. The method of claim 21, 22, 23, 24 or 25, wherein the fixed daily dosages are administered over a treatment period of greater than 120 days.

28. The method of claim 21 or 22, wherein the dosages and duration of treatment are effective to prevent or retard osteoporosis.

29. The method of claim 21, 22, 23, 24 or 25, wherein the dosages and duration of treatment are sufficient to prevent

14

or retard changes in blood lipids which might otherwise predispose the woman to cardiovascular disease.

30. The method of claim 21, 22, 23, 24 or 25, wherein said progestogen is selected from the group consisting of laevo-norgestrel, dl-norgestrel, ethynodiol diacetate, dydrogesterone, medroxyprogesterone acetate, norethynodrel, allylestrenol, lynoestrenol, quingestanol acetate, medrogestone, norgestrienone, dimethisterone, ethisterone, and cyproterone acetate.

31. The method of claim 22 or 24, wherein said progestogen is selected from the following group, with respective minimum and maximum daily dosage levels as follows:

| | Dosage (mg/day) Minimum | Dosage (mg/day) Maximum |
|---|---|---|
| Laevo-norgestrel | about 0.025 | about 0.075 |
| dl-norgestrel | about 0.050 | about 0.150 |
| Ethynodiol diacetate | about 0.10 | about 1.0 |
| Dydrogesterone | about 5 | about 30 |
| Medroxyprogesterone acetate | about 1 | about 15 |
| Norethynodrel | about 0.200 | about 5 |
| Allylestrenol | about 1 | about 10 |
| Lynoestrenol | about 0.100 | about 2 |
| Quingestanol acetate | about 0.050 | about 1 |
| Medrogestone | about 1 | about 10 |
| Norgestrienone | about 0.020 | about 0.200 |
| Dimethisterone | about 0.500 | about 15 |
| Ethisterone | about 1 | about 25 |
| Cyproterone acetate | about 0.100 | about 10. |

32. The method of claim 21, 23, 25, wherein said progestogen is selected from the following group, with respective minimum and maximum daily dosage levels as follows:

| | Dosage (mg/day) Minimum | Dosage (mg/day) Maximum |
|---|---|---|
| Laevo-norgestrel | about 0.025 | about 0.050 |
| dl-norgestrel | about 0.050 | about 0.100 |
| Ethynodiol diacetate | about 0.10 | about 0.30 |
| Dydrogesterone | about 5 | about 10 |
| Medroxyprogesterone acetate | about 1 | about 2.5 |
| Norethynodrel | about 0.200 | about 1 |
| Allylestrenol | about 1 | about 2 |
| Lynoestrenol | about 0.100 | about 0.200 |
| Quingestanol acetate | about 0.050 | about 0.200 |
| Medrogestone | about 1 | about 2 |
| Norgestrienone | about 0.020 | about 0.050 |
| Dimethisterone | about 0.500 | about 1 |
| Ethisterone | about 1 | about 2.5 |
| Cyproterone acetate | about 0.100 | about 0.500. |

33. The method of claim 21, 22, 23, 24 or 25, wherein said estrogen is selected from the group consisting of estradiol, estradiol-17β, conjugated equine estrogens, estradiol valerate, estrone, piperazine estrone sulphate, ethinyl estradiol, mestranol, and quinestrol.

34. The method of claim 33, wherein said estrogen is selected from the following group, with respective minimum and maximum daily dosage levels as follows:

| | Dosage (mg/day) Minimum | Dosage (mg/day) Maximum |
|---|---|---|
| Estradiol | about 0.500 | about 2 |
| Estradiol-17β | about 0.500 | about 2 |

Re. 36,247

**15**

-continued

|  | Dosage (mg/day) Minimum | Dosage (mg/day) Maximum |
|---|---|---|
| Estradiol valerate | about 0.500 | about 2 |
| Conjugated equine estrogens | about 0.300 | about 2.5 |
| Estrone | about 0.300 | about 2.5 |
| Piperazine estrone sulphate (estropipate) | about 0.250 | about 2.5 |
| Ethinyl estradiol | about 0.005 | about 0.020 |
| Mestranol | about 0.005 | about 0.040 |
| Quinestrol | about 0.005 | about 0.030. |

35. The method of claim 34, wherein said estrogen is selected from the following group, with respective minimum and maximum daily dosage levels as follows:

|  | Dosage (mg/day) Minimum | Dosage (mg/day) Maximum |
|---|---|---|
| Estradiol | about 0.500 | about 1 |
| Estradiol-17β | about 0.500 | about 1 |
| Estradiol valerate | about 0.500 | about 1 |
| Conjugated equine estrogens | about 0.300 | about 0.600 |
| Estrone | about 0.300 | about 0.600 |
| Piperazine estrone sulphate (estropipate) | about 0.250 | about 0.500 |
| Ethinyl estradiol | about 0.005 | about 0.010 |
| Mestranol | about 0.005 | about 0.015 |
| Quinestrol | about 0.005 | about 0.010. |

36. The method of claim 30, 31, 32, 33, 34 or 35, wherein the fixed daily dosages are administered over a treatment period of greater than 120 days.

37. The method of claim 21, 23 or 25, wherein the progestogen is medroxyprogesterone acetate in an amount of from about 1 mg to about 2.5 mg.

38. The method of claim 21, 22, 23, 24 or 25, wherein the estrogen is conjugated equine estrogens in an amount of from about 0.300 mg to about 2.5 mg.

39. The method of claim 21, 23 or 25, wherein the progestogen is medroxyprogesterone acetate in an amount of from about 1 mg to about 2.5 mg, and the estrogen is conjugated equine estrogens in an amount of from about 0.300 mg to about 2.5 mg.

40. The method of claim 39, wherein the estrogen is conjugated equine estrogens in an amount of from about 0.300 to about 0.600.

41. The method of claim 39, wherein the progestogen is medroxyprogesterone acetate in an amount of about 2.5 mg and the estrogen is conjugated equine estrogens in an amount of 0.600 mg.

42. The method of claim 39, wherein the progestogen is medroxyprogesterone acetate in an amount of about 2.5 mg

**16**

and the estrogen is conjugated equine estrogens in an amount of about 0.300 mg.

43. The method of claim 37, 38, 39, 40, 41 or 42, wherein the fixed daily dosages are administered over a treatment period of greater than 120 days.

44. The method of claim 37, 38, 39, 40, 41 or 42, wherein the dosages and duration of treatment are sufficient to prevent or retard changes in blood lipids which might otherwise predispose the woman to cardiovascular disease.

45. The method of claim 21, 23 or 25, wherein said progestogen is norethindrone (norethisterone) acetate in an amount of from about 0.10 mg to about 0.20 mg.

46. The method of claim 21, 22, 23, 24 or 25, wherein said estrogen is selected from the group consisting of estradiol, estradiol 17-β, or estradiol valerate and is in an amount of from about 0.500 to about 1 mg.

47. The method of claims 22 or 24, wherein the estrogen is estradiol-17β administered in fixed daily dosages of between about 0.500 and about 1 mg and the progestogen is norethindrone acetate.

48. The method of claim 47, wherein the fixed daily dosages are administered over a treatment period of greater than 120 days.

49. The method of claim 47, wherein the dosages and duration of treatment are sufficient to prevent or retard changes in blood lipids which might otherwise predispose the woman to cardiovascular disease.

50. The method of claim 21, 23, 25 or 27, wherein said estrogen is piperazine estrone sulphate (estropipate).

51. The method of claim 21, 23, 25 or 27, wherein said estrogen is 17β-estradiol and said progestogen is dl-norgestrel or laevo-norgestrel, the daily dosage level of said 17β-estradiol being about 1 mg, the daily dosage level of said dl-norgestrel (where present) being about 100 micrograms, and the daily dosage of said laevo-norgestrel (where present) being about 50 micrograms.

52. The method of claim 21, 22, 23, 24 or 25 wherein the selected dosages are the minimum effective quantities of progestogen and estrogen.

53. The method of claim 21 or 23, wherein said daily dosages of progestogen and estrogen are administered once daily.

54. The method of claim 22, 24 or 25, wherein said single dosage form is a tablet.

55. The method of claim 21, 22, 23 or 24, wherein said progestogen is in micronized form.

56. The method of claim 21, 22, 23 or 24, wherein said estrogen is a synthetic estrogen.

57. The method of claim 21, 22, 23 or 24, wherein the estrogen is a natural estrogen.

* * * * *

# EXHIBIT   10



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz Alerts | News | Help

Portal Home    |    Patents    |    Trademarks    |    Other

---

Patent eBusiness    – □

⊞ Electronic Filing
⊞ Patent Application Information (PAIR)
⊞ Patent Ownership
⊞ Fees
⊞ Supplemental Resources & Support

Patent Information

Patent Guidance and General Info
⊞ Codes, Rules & Manuals
⊞ Employee & Office Directories
⊞ Resources & Public Notices

Patent Searches

Patent Official Gazette
⊞ Search Patents & Applications
⊞ Search Biological Sequences
⊞ Copies, Products & Services

Other

Copyrights
Trademarks
Policy & Law
Reports

Patent Application Information Retrieval

ⓘ Order Certified Application As Filed   Order Certified File Wrapper   🛒 View Order List    □

09/508,648        HORMONAL CONTRACEPTIVE

| Select New Case | Application Data | Transaction History | Continuity Data | Foreign Priority | Fees | Published Documents | Address & Attorney/Agent |

## Parent Continuity Data

| Description | Parent Number | Parent Filing or 371(c) Date | Parent Status | Patent Number |
|---|---|---|---|---|
| This application is National Stage Entry of | PCT/DE98/02636 | 09-03-1998 | - | - |

## Child Continuity Data

10/299,628 filed on 11-19-2002 which is Abandoned claims the benefit of 09/508,648
10/841,278 filed on 05-07-2004 which is Pending claims the benefit of 09/508,648
10/867,954 filed on 06-15-2004 which is Pending claims the benefit of 09/508,648

*If you need help:*

- Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).
- Send general questions about USPTO programs to the USPTO Contact Center (UCC) .
- If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.

You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.

---

Home  |  Site Index  |  Search  |  eBusiness  |  Help  |  Privacy Policy

# EXHIBIT  11

*11 20 - 02*

PATENT *A*

Attorney Docket No. BOEHM13.001c1
Date: November 19, 2002
Page 1

United States Patent and Trademark Office
P.O. Box 2327
Arlington, VA 22202

ATTENTION: BOX PATENT APPLICATION

Sir:

Transmitted herewith for filing is the patent application of

Inventor:    **Rolf-Dieter Hesch, a German citizen**
Residence:   **Alpsteinweg 8, 78464 Konstanz, GERMANY**

For:

**HORMONAL CONTRACEPTIVE PRODUCT**

Enclosed are:

(X)     Specification in thirteen (13) pages.

(X)     This application is a continuation of prior application 09/508,648.

(X)     A copy of Declaration from prior application is enclosed.

(X)     Incorporation by Reference. The entire disclosure of the prior application, from which a copy of the oath or declaration is supplied is considered as being part of the disclosure of the accompanying application and is hereby incorporated by reference therein.

    (X)     Return prepaid postcard.

## CLAIMS AS FILED

| FOR | NUMBER FILED | NUMBER EXTRA | RATE | FEE |
|---|---|---|---|---|
| Basic Fee | | | $740 | $740 |
| **TOTAL FILING FEE** | $740 | | | |

(X)     A check in the amount of $ 740.00 to cover the filing fee is enclosed.

(X)     The Commissioner is hereby authorized to charge any additional fees which may be required, now or in the future, or credit any overpayment to Account No. 11-1410.

(X)     Please use Customer No. **20,995** for the correspondence address.

Mark K. Benedict
Registration No. 44,531
Attorney of Record
Customer No. 20,995
(949) 760-0404

H:\DOCS\MRB\MRB-3317 DOC111902

1

# Knobbe Martens Olson & Bear LLP

*Intellectual Property Law*

2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Tel 949-760-0404
Fax 949-760-9502
www.kmob.com

Mark R. Benedict, Ph.D.
949-721-6323
mbenedict@kmob.com

BOX PATENT APPLICATION
United States Patent and Trademark Office
P.O. Box 2327
Arlington, VA 22202

## CERTIFICATE OF MAILING BY "EXPRESS MAIL"

| | | |
|---|---|---|
| **Attorney Docket No.** | : | BOEHM13.001C1 |
| **Applicant** | : | Rolf-Dieter Hesch |
| **For** | : | HORMONAL CONTRACEPTIVE PRODUCT |
| **Attorney** | : | Mark R. Benedict |
| **"Express Mail" Mailing Label No.** | : | EV 075594665 US |
| **Date of Deposit** | : | November 19, 2002 |

I hereby certify that the accompanying

Transmittal letter; specification in 13 pages; a copy of Declaration from prior application is enclosed; Check for Filing Fee; Return Prepaid Postcard

are being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and are addressed to the United States Patent and Trademark Office, P.O. Box 2327, Arlington, VA 22202.

Nelson Merida

H:\DOCS\MRB\MRB-3318 DOC
111902

| San Diego | San Francisco | Los Angeles | Riverside | San Luis Obispo |
|---|---|---|---|---|
| 619-235-8550 | 415-954-4114 | 310-551-3450 | 909-781-9231 | 805-547-5580 |

2

# HORMONAL CONTRACEPTIVE PRODUCT

### Related Applications

[0001]    The application is a continuation of U.S. Application No. 09/508,648, filed June 5, 2000, which is the U.S. National Phase under 35 U.S.C. §371 of International Application PCT/DE98/02636, filed September 11, 1998, which claims priority to German Application No. DE 19739916.9, filed September 11, 1997.

### Background of the Invention

#### Field of the Invention

[0002]    The present invention relates to a hormonal contraceptive product with two hormonal components, the use thereof and a hormonal contraception process.

#### Description of the Related Art

[0003]    Since hormonal contraceptives became available in the 1960's, a number of hormonal components have been investigated with regards to their suitability in the most varied administration diagrams.  A fundamental subdivision into combination and sequential products is possible.

[0004]    For example, if the desired cycle time is 28 days, in the case of the known combination products administration takes place over 21 days in a constant or varying absolute and/or relative dosage of a combination of an estrogen product and a gestagen product, in which the estrogen product can e.g. be natural estrogen or synthetic ethinyl estradiol and the taking of the aforementioned 21 daily units is followed by a seven-day interval where there is a withdrawal bleeding simulating natural menstruation.

[0005]    In the known sequential products, once again for a desired cycle time of 28 days, administration takes place for 7 days of a pure estrogen product and then for 15 days of a combination of an estrogen product and a gestagen product and here again there is then a taking-free period of e.g. 6 days when withdrawal bleeding occurs.  It is admittedly already known to bridge the inherent taking intervals of combination and sequential products in the interest of greater taking security by administering within the days in question placebos.

-1-

3

However, it has hitherto always been assumed that during the roughly one-week taking interval no hormones of the present type should be administered, in order to ensure a reliable withdrawal bleeding. Only in the case of substitution products in the menopause of older women have hormones been administered throughout the cycle, e.g. in the sequence 10 days estrogen product, 11 days combination of estrogen and gestagen product, 7 days estrogen product, 7 days estrogen product in a particularly low dosage, but said substitution products are unsuitable for ovulation inhibition.

[0006]    The sequential products used in substitution therapy are in particular unsuitable for contraception because the natural estradiol does not prevent ovulation in the dosage administered and the phase in which gestagen is administered is too short, being only 11 days. However, in the case of the substitution products, the above-described sequential system guarantees a relatively good cycle control.

[0007]    German patent 43 08 406 discloses a combination contraceptive product, which comprises one or more stages. At least one stage contains the combination of three components, namely a biogenous estrogen, a synthetic estrogen and a gestagen and the further stages in each case comprise a pharmaceutically unobjectionable placebo or a biogenous or synthetic gestagen, or a biogenous or synthetic estrogen, or a combination of two components, namely a biogenous estrogen, a synthetic estrogen and a gestagen or a combination of synthetic estrogen and a gestagen.

[0008]    The description of the above document makes it clear that in the stage concept described therein there is typically a change of state over the period of time. Such a state change can take place in that the composition of the phases forming the stage is modified with respect to the components used and in that only the concentrations of the components used in the phases forming the stage undergo changes.

[0009]    The problem of the invention is to provide a hormonal contraceptive product, which ensures high contraceptive safety or reliability and prevents intermenstrual bleeding. There is also to be a further reduction in the side effects otherwise observed in hormonal contraceptive products.

-2-

4

## Summary of the Invention

[0010]    According to the invention this problem is solved by a hormonal contraceptive product having two hormonal components, the agent comprising for continuous, combined administration a first hormonal component comprising at least one gestagen and a second hormonal component comprising at least one estrogen.

[0011]    The problem is also solved by a hormonal contraception process, in which a product, which comprises at least one first hormonal component, which comprises at least one gestagen, and a second hormonal component comprising at least one estrogen is continuously administered.

[0012]    According to another aspect of the invention the product according to the invention is used for inhibiting ovulation.

[0013]    According to a further aspect of the invention the product according to the invention is used for the treatment and/or prophylaxis of breast tumours.

[0014]    According to another embodiment the invention proposes that gestagen as the first hormonal component is chosen from the group comprising progesterone, chlormadinone acetate, norethisterone acetate, cyproterone acetate, desogestrel, levonorgestrel, other natural and/or synthetic gestagens, antigestagens and hormonal analogs with gestagen or antigestagen action, as well as hormonal compounds which rapidly split off at least one gestagen following taking.

[0015]    In the product according to the invention, the estrogen as the second hormonal component can be selected from the group comprising synthetic estrogens, biogenous estrogens, antiestrogens and hormonal analogs with estrogen or antiestrogen action.

[0016]    In a preferred embodiment the synthetic estrogen is selected from the group comprising ethinyl estradiol, mestranol and the like, as well as hormonal compounds rapidly splitting off at least one synthetic estrogen following taking.

[0017]    In particularly preferred manner the synthetic estrogen is ethinyl estradiol.

[0018]    In preferred embodiments the daily administered ethinyl estradiol quantity is 1 to 20 µg. In particularly preferred manner, the daily administered ethinyl estradiol quantity is 5 to 10 µg.

-3-

5

[0019]    According to the invention the biogenous estrogen is selected from the group comprising estradiol, estriol, estrone, estrane, etc., as well as hormonal compounds rapidly splitting off at least one biogenous estrogen after taking.

[0020]    According to an embodiment the estradiol comprises 17-α-estradiol and/or 17-β-estradiol.

[0021]    According to another embodiment the daily administered biogenous estrogen quantity in the case of estradiol, particularly α and β-estradiol, is 0.1 to 2 mg and in the case of conjugate estrogens 0.05 to 0.5 mg.

[0022]    In an embodiment the product according to the invention can be administered orally.

[0023]    In an alternative embodiment the product according to the invention can be administered transdermally.

[0024]    In a second alternative embodiment the product according to the invention can be administered intravaginally.

[0025]    In a third alternative embodiment the product according to the invention can be in depot injection form.

[0026]    In a fourth alternative embodiment the product according to the invention can be administered as a hormonal implant.

[0027]    Finally, the daily units in each case comprising both hormonal components, are placed in spatially separated and individually removable manner in a packaging unit.

[0028]    In an embodiment of the process according to the invention the first hormonal component can be administered in combination with the second hormonal component.

[0029]    In another embodiment of the process according to the invention the product according to the invention is administered.

<u>Detailed Description of the Preferred Embodiment</u>

[0030]    The invention is based on the surprising finding that as a result of the continuous, combined administration of a product comprising two hormonal components,

-4-

6

namely a first hormonal component comprising at least one gestagen and a second hormonal component comprising at least one estrogen, a high contraceptive reliability can be achieved.

[0031]    In accordance with modern opinion, estrogens are not understood to cover steroid molecules, which preferably evolve their action in that they in different ways exert a biological effect at different cell locations in different organs. Estrogens can act (1) on the cellular membrane, (2) intracellular, cytoplasmic proteins and (3) specific nuclear receptors. It has recently become known that besides the standard estrogen receptor type 1 there is a second estrogen receptor type 2, whose organ distribution is different from that of the estrogen receptor type 1.

[0032]    Thus, the above definition also covers the compounds known as "designer hormones," which have the aforementioned characteristics.

[0033]    Thus, biogenous estrogens are steroid molecules, which evolve an estrogen-like action on the membrane, cytoplasmic proteins and nuclear receptors for hydrophobic ring substances and consequently trigger biological effects corresponding to a hydrophobic steroid ring structure able to initiate an estrogen-like action in cells, organs and the complete organism.

[0034]    The term biogenous estrogens also covers those estrogens which are produced by the human body and consequently include endogenic estrogens. The biogenous estrogens used in specific embodiments of the product according to the invention are typically those which are chemically synthesized. However, it is fundamentally also possible to use compounds isolated from an organism.

[0035]    Biogenous estrogens also cover conjugate, biogenous estrogens such as e.g. estradiol valerate and estrone sulphate.

[0036]    The term antiestrogens is here understood to mean hydrophobic ring structure substances and other substances able to specifically and selectively counteract the above-described estrogen action on cells, organs or the overall organism.

[0037]    Continuous administration is here understood to mean an administration uninterrupted over the use period, in which there are no hormonal component taking-free intervals. This means that there is no interruption of the administration of the product by administering placebos in place of the hormonal product. Thus, over the administration

-5-

7

period typically lasting several months to years there are no changes to the fundamental composition of the hormonal components. Instead over the entire administration period the hormonal components forming the hormonal product according to the invention are administered uninterrupted and unchanged with no modification to the concentration. However, it is conceivable for the concentration of estrogen, understood in the full breadth of the concept defined here, and gestagen, also understood in the full breadth of the term defined here, can be changed for older women compared with younger women. This can also take place in such a way that over the continuous administration period initially there is a start with a specific composition and this is then adapted over a period of weeks, months and years to the changed biological needs of the women through the administration of a subsequent product, but which also comprises a product according to the present invention.

[0038]    As a result of the continuous administration of said hormonal components it is ensured that the natural hormonal processes taking place in the female organism do not interrupt the contraceptive security.

[0039]    As a result of the estrogen component, respectively by specific action of hydrophobic ring substances with an estrogen-like action, there can be a suppression of gonadotropins. This is desirable. The resulting suppression of the ovarial function is compensated by an adequate substitution of estrogen action. This prevents the development of osteoporosis, the favourable vascular effects of estrogens are maintained and there is no unfavourable influence to the lipid metabolism. By interrupting the cycle-dependent instability in the hormone system, the premenstrual syndrome can be favourably influenced. In addition, the physiological equilibrium of the coagulation system is not disturbed, because the unstable equilibrium in which the coagulation system occurs is not activated and deactivated by the up and down of hormone fluctuations. Thus, the hormonal product according to the invention is particularly suitable for women aged more than 40, where the risk of circulatory disturbances is known to increase with increasing age. There is also a reduction in the thrombosis risk, which has of late acquired considerable significance in contraceptive therapy.

[0040]    It has surprisingly also been found that on administering the product according to the invention there is a reliable continuous suppression of the menstrual cycle

-6-

8

and menstruation in the case of a very low dosage. Without wishing to be bound by this explanation, the combination of the two indicated hormonal components and in particular the low estrogen dosage would appear to be suitable for eliminating the otherwise conventional side effects of ethinyl estradiol and to drop below the administrations of more than 15 μg of ethinyl estradiol otherwise considered typically necessary in prior art contraceptives.

[0041]    The low dosages of the two hormonal components and in particular the estrogen component is made possible by the additive action of the two hormonal components, without there being any limitation to the action of the product according to the invention with respect to its contraceptive and ovulation-inhibition properties.

[0042]    The ovulation inhibition and menstrual cycle suppression reliably ensured by the product according to the invention is of great significance for certain patients, such as e.g. for top sports women, dancers and business women, who wish to exclude any reduction in their physical, intellectual and emotional efficiency as a result of the menstrual cycle. As a result of the combined, continuous administration of the two hormonal components of the product according to the invention it is possible to administer the same either orally, transdermally, intravaginally, by depot injections or hormone implants. Here again the advantages observed for the particular administration forms are obtained.

[0043]    Possible oral administration forms are all the forms known from the prior art such as e.g. tablets, dragees, pills or capsules, which are produced using conventional adjuvants and carrier substances.

[0044]    In the transdermal administration of the product according to the invention the two hormonal component forming the product can e.g. be applied to a plaster or also can be applied by transdermal, therapeutic systems and are consequently supplied to the organism. For example an already prepared combination of the two hormonal components or the latter individually can be introduced into such a system, which is based on ionotherapy or diffusion or optionally a combination of these effects.

[0045]    In the case of oral administration it has proved appropriate to place the daily units, which in case comprise a combination of the two hormonal components, in a spatially separated and individually removable manner in a packaging unit, so that it is easy to check whether the typically daily taken, oral administration form has in fact been taken. It

-7-

9

is important to ensure that there are no taking-free days. Depot injections can be administered at 1 to 6 months or longer intervals. Hormonal implants contain both hormonal components and deliver the same over a period of preferably 3 to 6 months.

[0046]    When using the product according to the invention it has surprisingly been found that the treatment and/or prophylaxis of breast tumours is possible. The latest breast cancer risk research has revealed that mutations, which can be hereditary or acquired, occur in certain risk genes. Modern cancer therapy assumes that a cancerogenic mutation is present on one of the two alleles of a gene which is initially controlled by the other, healthy allele. If a further mutation occurs in a specific organ cell on the second allele, then uncontrolled, malignant growth can occur.

[0047]    Mutations on the second allele particularly frequently occur in given phases of the cell cycle, namely in the G1 phase. Every four weeks the menstrual cycle drives the breast cell in a cell cycle, "opens" the genome for mutations, which are either repaired or apoptotically "removed". Under the conditions of the conventional combined or sequential contraception treatment a woman can have 500 to 700 cycles over her life span, whereas under natural conditions a women has a maximum of 20 to 30 cycles. Thus, in an unusually frequently number of cell cycles over in each case 8 days a considerable mutation risk is introduced into the stimulated breast tissue. If the menstrual cycle is suppressed, as is possible with the product according to the invention, the breast cells are brought into a "rest phase" and it is scientifically ensured that in the rest phase less cancerogenic mutations are introduced into a tissue than in a stimulated tissue. This reduces by a multiple mutagenesis, i.e. the breast cancer risk.

[0048]    The aforementioned use of the product according to the invention for the treatment and/or prophylaxis of breast cancers is in particular associated with special advantages if the users of the product are high-risk subjects, such as e.g. those with a high family breast cancer risk.

[0049]    The quantity of administered gestagens and estrogens substantially corresponds to the quantity of comparable prior art products. The examples provide further information concerning the quantities to be administered daily of the different compounds forming the first and/or second hormonal components.

10

[0050]    The invention is explained in greater detail hereinafter relative to examples revealing further features, advantages and embodiments of the present invention.

Example 1

[0051]    For contraceptive treatment use was made of a product which per daily unit in table form contained 5 µg of ethinyl estradiol and 2 mg of norethisterone acetate. It is noteworthy that norethisterone acetate can be used in a concentration range of 0.5 to 5 mg. The product was administered for 9 months and revealed a very good contraceptive reliability whilst completely suppressing the menstrual cycle with no side effects. Within the framework of the present investigation it was ensured that the test persons took the product daily, i.e. without any taking interval, over the entire aforementioned time period.

Example 2

[0052]    For contraceptive treatment use was made of a product which per daily unit in table form contains 0.5 mg of estriol and 2 mg of chlormadinone acetate. It is noteworthy that estriol can be used in a concentration range of 0.5 to 3 mg and chlormadinone acetate in a concentration range of 0.75 to 5 mg. The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

Example 3

[0053]    For contraceptive treatment use was made of a product which in each daily unit in tablet form contained 0.5 mg of estradiol valerate and 2 mg of lynestrenol. It is noteworthy that estradiol valerate can be used in a  concentration range of 0.5 to 5 mg and lynestrenol in a concentration range of 0.5 to 4.5 mg. The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

Example 4

[0054]    For contraceptive treatment use was made of a product containing per daily unit in tablet form 7.5 µg of ethinyl estradiol and 75 µg of desogestrel. It is noteworthy that desogestrel can be used in a concentration range of 50 to 200 µg. The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

11

Example 5

[0055]    For contraceptive treatment use was made of a product containing per daily unit in tablet form 20 mg of tamoxifen 2 mg of lutenyl. It is noteworthy that tamoxifen can be used in a concentration range of 10 to 50 mg and lutenyl in a concentration range of 1 to 5 mg. This product is preferably suitable for contraception in women with a family breast cancer risk. The product was administered for 12 months without any taking interval and the mode of action corresponded to that of example 1.

Example 6

[0056]    For contraceptive treatment use was made of a product containing per daily unit in tablet form 50 mg of raloxifen and 2.5 mg of medroxyprogesterone acetate (MPA). It is noteworthy that raloxifen can be used in a concentration range of 30 to 100 mg and medroxyprogesterone acetate in a concentration range of 2 to 10 mg. This combination is preferably suitable for women with a family breast cancer risk and young women who have suffered breast cancer. The product was administered for 12 months without any taking interval and the mode of action corresponded to that of example 1.

Example 7

[0057]    For contraceptive treatment use was made of an agent containing per daily unit in tablet form 10 μg of ethinyl estradiol and tibolone in a daily concentration of 2 mg. It is noteworthy that tibolone can be used with a concentration of 1 to 10 mg. The product was administered without any taking interval for 12 months and the mode of action corresponded to that of example 1.

Example 8

[0058]    For contraceptive treatment use was made of a product containing per daily unit in table form 10 μg of ethinyl estradiol and as the antiestrogen substance Ro486 in a concentration of 2.5 mg. It is noteworthy that R0486 can be used in a concentration range of 1 to 7.5 mg. The product was administered without any taking interval over a period of 12 months and the mode of action correspond to that of example 1.

[0059]    The features of the invention described in the description and claims can be essential individually and in random combination for the implementation of the different embodiments of the invention.

-10-

WHAT IS CLAIMED IS:

1. A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

2. The method of Claim 1, wherein said ethinyl estradiol is present at a dosage of 1-20 μg per day.

3. The method of Claim 2, wherein the administration is oral.

4. The method of Claim 3, wherein the administration period is 9 months.

5. The method of Claim 3, wherein the administration period is 12 months.

6. A method for continuous suppression of the menstrual cycle in a woman, comprising administering orally, transdermally or via depot to the woman in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

7. The method of Claim 6, wherein said ethinyl estradiol is present at a dosage of 1-20 μg per day.

8. The method of Claim 7, wherein the administration is oral.

9. The method of Claim 8, wherein the administration period is 9 months.

10. The method of Claim 8, wherein the administration period is 12 months.

11. A method for treating or inhibiting premenstrual syndrome, which comprises administering orally, transdermally, or via depot, to a mammal in need thereof, for a continuous and uninterrupted administration period, an effective amount of a gestagen and an estrogen, wherein said gestagen and estrogen are present in unchanged dosages throughout the administration period.

12. The method of Claim 11, wherein said gestagen is selected from the group consisting of progesterone, chlormadinone acetate, northisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and

said estrogen is selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane.

13.    The method of Claim 12, wherein said estrogen is ethinyl estradiol, which is present at a dosage of 1-20 μg per day.

14. The method of Claim 13, wherein said gestagen is levonorgesterel.

15. The method of Claim 14, wherein the administration is oral.

-12-

14

# HORMONAL CONTRACEPTIVE PRODUCT

## Abstract of the Disclosure

[0060]    The present invention relates to a hormonal contraceptive product having two hormonal components, an estrogen and a gestagen, and a method for the continuous suppression of the menstrual cycle by uninterrupted administration of the product of the invention.

\\KMOBNET\FILES\Docs\Mrb\Red Files\Boehm\Boehm13\BOEHM13 001C1-spec-c.doc
111402

 

PATENT

Case Docket No. BOEHM13.001C1
Date: December 18, 2002

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant(s) | : | Rolf-Dieter HESCH | ) |
| | | | ) |
| Appl. No. | : | 10/299,628 | ) |
| | | | ) |
| Filed | : | November 19, 2002 | ) |
| | | | ) |
| For | : | HORMONAL CONTRACEPTIVE PRODUCT | ) |
| | | | ) |
| Examiner | : | Unknown | ) |
| | | | ) |
| Group Art Unit : | | Unknown | ) |

I hereby certify that this correspondence and all marked attachments are being deposited with the United States Postal Service as first class mail in an envelope addressed to: United States Patent and Trademark Office, P.O. Box 2327, Arlington, VA 22202, on

12/18/02
(Date)

Mark R. Benedict, Reg. No. 44,531

## TRANSMITTAL LETTER

United States Patent and Trademark Office
P.O. Box 2327
Arlington, VA 22202

Dear Sir:

Enclosed for filing in the above-identified application are:

(X)    An Information Disclosure Statement.

(X)    A PTO Form 1449.

(X)    The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

(X)    Return prepaid postcard.

Mark R. Benedict
Registration No. 44,531
Attorney of Record
Customer No. 20,995
(949) 760-0404

O:\DOCS\MCM\MCM-3377.DOC
121602sev
16



BOEHM003C1

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant | : | Rolf-Dieter HESCH | ) Group Art Unit Unknown |
| | | | ) |
| App. No. | : | 10/299,628 | ) |
| | | | ) |
| Filed | : | November 19, 2002 | ) |
| | | | ) |
| For | : | HORMONAL | ) |
| | | CONTRACEPTIVE PRODUCT | ) |
| | | | ) |
| Examiner | : | Unknown | ) |

### INFORMATION DISCLOSURE STATEMENT

United States Patent and Trademark Office
P.O. Box 2327
Arlington, VA 22202

Dear Sir:

    Enclosed is form PTO-1449 listing 15 references.  The listed references are of record in related Application Serial No. 09/508,648 filed June 5, 2000.  Therefore, copies of these references are not enclosed.  This Information Disclosure Statement is being filed before the receipt of a first Office Action on the merits, and presumably no fee is required in accordance with 37 C.F.R. § 1.97(b)(3).  If a first Office Action on the merits was mailed before the mailing date of this Statement, the Commissioner is authorized to charge the fee set forth in 37 C.F.R. § 1.17(p) to Deposit Account No. 11-1410.

                        Respectfully submitted,

                        KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: ___12/18/02___          By: _____
                        Mark R. Benedict
                        Registration No. 44,531
                        Attorney of Record
                        Customer No. 20,995
                        (949) 760-0404

O:\DOCS\MCM\MCM-3375.DOC 121602sev
17

| FORM PTO-1449 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. BOEHM13.001C1 | | APPLICATION NO. 10/299,628 |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | APPLICANT Hesch | | |
| (USE SEVERAL SHEETS IF NECESSARY) | | FILING DATE November 19, 2002 | | GROUP Unknown |

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE (IF APPROPRIATE) |
|---|---|---|---|---|---|---|---|
| | 1. | 4,855,305 | 08/08/89 | Cohen | | | |
| | 2. | 5,418,228 | 05/23/95 | Bennik | | | |
| | 3. | 5,898,032 | 04/27/99 | Hodgen | | | |
| | 4. | Re. 36,247 | 07/06/99 | Plunkett, et al | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | YES | NO |
| | 5. | DE 37 33 478 A1 | 4/13/89 | GERMANY | | | | X |
| | 6. | DE 39 16381 A1 | 11/22/90 | GERMANY | | | | X |
| | 7. | DE 40 19 670 A1 | 1/9/92 | GERMANY | | | | X |
| | 8. | DE 43 08 406 C1 | 6/16/94 | GERMANY | | | | X |
| | 9. | DE 44 05 591 C1 | 7/20/95 | GERMANY | | | | X |
| | 10. | DE 44 05 898 A1 | 8/24/95 | GERMANY | | | | X |
| | 11. | EP 0 628 312 A1 | 12/14/94 | EUROPEAN PATENT OFFICE | | | | X |
| | 12. | EP 0 309 263 A1 | 3/29/89 | EUROPEAN PATENT OFFICE | | | X | |

| EXAMINER INITIAL | | OTHER DOCUMENTS (INCLUDING AUTHOR, TITLE, DATE, PERTINENT PAGES, ETC.) |
|---|---|---|
| | 13. | Coutinho, E.M., et al. (1995) Comparative Study on Intermittent Versus Continuous use of a Contraceptive Pill Administered by Vaginal Route. Contraception 51(6):355-8 |
| | 14. | Davies, Graham C., et al. (1992) Ovarian Activity and Bleeding Patterns During Extended Continuous Use of a Combined Contraceptive Vaginal Ring. Contraception 46(3):269-278 |
| | 15. | Rizk, Diaa E.E., and Kumar, Rachana M., (1996) Congenital Afibrinogenemia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive. American J. Hematology 52(3):237-238 |

O:\DOCS\MCM\MCM-3332.DOC
120902sev

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

*EXAMINER: INITIAL IF CITATION CONSIDERED, WHETHER OR NOT CITATION IS IN CONFORMANCE WITH MPEP 609; DRAW LINE THROUGH CITATION IF NOT IN CONFORMANCE AND NOT CONSIDERED, INCLUDE COPY OF THIS FORM WITH NEXT COMMUNICATION TO APPLICANT.

18



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/299,628 | 11/19/2002 | Rolf-Dieter Hesch | BOEHM13.001c1 | 6182 |

25291      7590      12/15/2003

WYETH
PATENT LAW GROUP
FIVE GIRALDA FARMS
MADISON, NJ  07940

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1616 | |

DATE MAILED: 12/15/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

19

PTO-90C (Rev. 10/03)

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 10/299,628 | HESCH, ROLF-DIETER |
| | Examiner | Art Unit |
| | Barbara P. Badio, Ph.D. | 1616 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.

2a) ☐ This action is **FINAL**.       2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-15* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-15* is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. §§ 119 and 120**

12) ☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☒ All b) ☐ Some * c) ☐ None of:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☒ Certified copies of the priority documents have been received in Application No. <u>09/508,648</u>.

        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

13) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application) since a specific reference was included in the first sentence of the specification or in an Application Data Sheet. 37 CFR 1.78.

    a) ☐ The translation of the foreign language provisional application has been received.

14) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121 since a specific reference was included in the first sentence of the specification or in an Application Data Sheet. 37 CFR 1.78.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____.

4) ☐ Interview Summary (PTO-413) Paper No(s). _____.

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: .

Application/Control Number: 10/299,628                                    Page 2
Art Unit: 1616

## First Office Action on the Merits

### Double Patenting

1.      The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

2.      Claims 1-15 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-3 of U.S. Patent No. 6,500,814. Although the conflicting claims are not identical, they are not patentably distinct from each other because they are both drawn to the use of a contraceptive product comprising an estrogen and a progestin for hormonal contraception. The difference between the two is in the recitation of an administration period of greater than 110 days in U.S. Patent No. 6,500,814.

### Claim Rejections - 35 USC § 103

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

21

Application/Control Number: 10/299,628                                    Page 3
Art Unit: 1616

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4.      Claims 1-3, 6-8 and 11-15 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Hodgen (US Patent No. 5,898,032) and Casper (EP 0 309 263) in

combination.

Hodgen teaches a contraceptive composition comprising an estrogen and a

progestin given monophasically for 60-110 consecutive days (see the entire article,

especially col. 3, lines 35-65). The reference teaches (a) estrogens such as mestranol,

estradiol and ethinyl estradiol and progestins such as norethindrone acetate and

levonorgestrel (see col. 3, line 58 – col. 4, line 9; examples 1-5 and claims 1-11) and

(b) ethinyl estradiol as the preferred estrogen used preferably in an amount of about 10-

20 mcg (see col. 3, lines 58-64).

Casper teaches a contraceptive composition comprising a combination of an

estrogen and a progestin (see the entire article, especially col. 13, lines 15-48;

examples 1-24 and claims 1-15). The reference teaches estrogens such as ethinyl

estradiol, mestranol, estradiol and quinestranol and progestins such as progesterone,

cyproterone acetate, norethindrone acetate and levonorgestrel (see col. 12, lines 5-35;

especially example 10). The reference also teaches that monophasic contraceptive

formulations are known in the art (see col. 3, lines 10-15).

The combined teachings of the Hodgen and Casper make obvious the utilization

of a composition comprising an estrogen such as ethinyl estradiol and a progestin such

22

Application/Control Number: 10/299,628                              Page 4
Art Unit: 1616

as levonorgestrel monophasically as a contraceptive composition (see especially

Casper, example 10). The motivation to use a combination of an estrogen and a

progestin is based on teachings of the above cited prior art that said composition is

characterized by a reduced number of withdrawal bleeding (see '032, col. 3, lines 25-

37; '263, col. 11, lines 35-37).

Claims 11-15 differ from the reference by reciting the treatment or inhibition of

premenstrual syndrome. However, administration of the prior art composition as a

contraceptive would inherently inhibit or treat premenstrual syndrome in said individual.

Thus, the claimed method is prima facie obvious.

### *Telephone Inquiry*

5.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

703-308-4595. The examiner can normally be reached on M-F from 6:00am-3:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Thurman Page can be reached on 703-308- 2927. The fax phone number

for the organization where this application or proceeding is assigned is (703) 872-9306.

23

Application/Control Number: 10/299,628                                    Page 5
Art Unit: 1616

Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is 703-308-

1235.

Barbara P. Badio, Ph.D.
Primary Examiner
Art Unit 1616

BB
December 10, 2003

24

SHEET 1 OF 1

| FORM PTO-1449 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. BOEHM13.001C1 | APPLICATION NO. 10/299,628 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (USE SEVERAL SHEETS IF NECESSARY) | | APPLICANT Hesch | |
| | | FILING DATE November 19, 2002 | GROUP Unknown |

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE (IF APPROPRIATE) |
|---|---|---|---|---|---|---|---|
| BB | 1. | 4,855,305 | 08/08/89 | Cohen | | | |
| | 2. | 5,418,228 | 05/23/95 | Bennik | | | |
| | 3. | 5,898,032 | 04/27/99 | Hodgen | | | |
| BB | 4. | Re. 36,247 | 07/06/99 | Plunkett, et al | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | 5. | DE 37 33 478 A1 | 4/13/89 | GERMANY | | | | X |
| | 6. | DE 39 16381 A1 | 11/22/90 | GERMANY | | | | X |
| | 7. | DE 40 19 670 A1 | 1/9/92 | GERMANY | | | | X |
| | 8. | DE 43 08 406 C1 | 6/16/94 | GERMANY | | | | X |
| | 9. | DE 44 05 591 C1 | 7/20/95 | GERMANY | | | | X |
| | 10. | DE 44 05 898 A1 | 8/24/95 | GERMANY | | | | X |
| BB | 11. | EP 0 626 312 A1 | 12/14/94 | EUROPEAN PATENT OFFICE (to the extent considered by IPEA) | | | | X |
| BB | 12. | EP 0 309 263 A1 | 3/29/89 | EUROPEAN PATENT OFFICE | | | X | |

| EXAMINER INITIAL | | OTHER DOCUMENTS (INCLUDING AUTHOR, TITLE, DATE, PERTINENT PAGES, ETC.) |
|---|---|---|
| | 13. | Coutinho, E.M., et al. (1995)  Comparative Study on Intermittent Versus Continuous use of a Contraceptive Pill Administered by Vaginal Route.  Contraception 51(6):355-8 |
| | 14. | Davies, Graham C., et al. (1992) Ovarian Activity and Bleeding Patterns During Extended Continuous Use of a Combined Contraceptive Vaginal Ring.  Contraception 45(3):269-278 |
| | 15. | Rizk, Disa E.E., and Kumar, Rachana M., (1996) Congenital Afibrinogenemia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive.  American J. Hematology 52(3):237-238 |

O:\DOCS\MCM\MCM-3332.DOC
120902sev

| EXAMINER | Dadio | DATE CONSIDERED | 12/10/03 |
|---|---|---|---|

*EXAMINER: INITIAL IF CITATION CONSIDERED, WHETHER OR NOT CITATION IS IN CONFORMANCE WITH MPEP 609; DRAW LINE THROUGH CITATION IF NOT IN CONFORMANCE AND NOT CONSIDERED, INCLUDE COPY OF THIS FORM WITH NEXT COMMUNICATION TO APPLICANT.

*English translation needed.*

| *Notice of References Cited* | Application/Control No.<br>10/299,628 | Applicant(s)/Patent Under Reexamination<br>HESCH, ROLF-DIETER | |
|---|---|---|---|
| | Examiner<br>Barbara P. Badio, Ph.D. | Art Unit<br>1616 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| X | N | 0,309,263 | 03-1989 | EP | Casper | - |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited                    Part of Paper No. 12102003

26

# EXHIBIT  12

DOCKET NO.: WYNC-0955/AM101403C2
                              PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of:

**Rolf-Dieter Hesch**

For: **HORMONAL CONTRACEPTIVE PRODUCT**

EXPRESS MAIL LABEL NO: EL998516904US
DATE OF DEPOSIT: May 7, 2004

> ⟨ EL998516904US ⟩

☒ Mail Stop Patent Application ☐ Mail Stop Design ☐ Mail Stop Sequence
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## PATENT APPLICATION TRANSMITTAL LETTER

**Transmitted herewith for filing, please find:**

☒     A Continuation Application under 37 CFR § 1.53(b).

**The above-identified application includes the following:**

☐     A Request for Nonpublication

☒     A Specification including claims and abstract on pages 1 to 13.

☒     A copy of the specification including claims and abstract (pages 1-13) and drawings and appendixes (if any) of earlier Application No. 10/299,628 filed November 19, 2002, to which no new matter has been added. Such earlier application is hereby incorporated into the present application by reference.

☐     A New Unexecuted Declaration or Oath and Power of Attorney.

☐     A New Executed Declaration or Oath and Power of Attorney.

        ☐     A copy of the executed oath or declaration filed in the earlier application identified above is attached.

1                              Page 1 of 4

DOCKET NO.: WYNC-0955/AM101403C2
PATENT

☐    An Associate Power of Attorney executed by         who is listed in the copy
of the executed Declaration and Power of Attorney filed herewith.

☒    A Copy of the Power of Attorney with Revocation filed in prior Application
No. 10/299,628

☐    Signed Statement deleting inventor(s) named in the prior application.

☒    This application claims foreign priority under 35 U.S.C. § 119 of Application No.
DE19739916.9 filed September 11, 1997 in Germany (Country).

☒    A Certified Copy of each of the above applications for which priority is
claimed:

☐    is enclosed.

☒    has been filed in prior Application No. 10/299,628 filed November 19,
2002.

☐    Sheets of Formal Drawings and/or Photographs.

☐    Figure         should be published.

☐    Petition to Accept Color Photographs is enclosed.

☐    This continuation/divisional application is assigned of record to         as evidenced
by the assignment recorded on         at Reel No.         and Frame No.         .

☐    A newly Executed Assignment transferring rights to         .

☐    A Recordation Form Cover Sheet.

☐    Recordation Fee - $40.00.

☒    A Preliminary Amendment is enclosed .

☐    A Sequence Listing consisting of pages 1-         .

☐    Diskette containing Sequence Listing is enclosed.

☐    The computer readable form in the above-identified application is identical
with that filed in Application Number         , filed         . In accordance with
37 CFR § 1.821(e), please use the sequence listing filed on         and
received by the PTO on         as the computer readable form filed in that
application as the computer readable form for the instant application. It is
understood that the Patent and Trademark Office will make the necessary
change in application number and filing date for the computer readable form
that will be used for the instant application.

☐    A paper copy of the Sequence Listing:

DOCKET NO.: WYNC-0955/AM101403C2
PATENT

☐    was filed in the above-identified parent application on       and received by the PTO on    .

☐    is included herewith in a separately filed preliminary amendment for incorporation into the specification.

☐    A Statement to Support Submission of Sequence Information is enclosed.

☐    Information Disclosure Statement including:

     ☐    Form 1449.

     ☐    Copies of References     -     listed on the attached Form PTO-1449.

☐    A copy of Petition for Extension of Time as filed in the prior case for copendency.

☐    Appended Material as follows:    .

☒    Return Receipt Postcard (should be specifically itemized).

FEE CALCULATION:

☐    Applicant(s) by its/their undersigned attorney, claims small entity status under 37 CFR § 1.27 as    *(CHOOSE ONE: an Independent Inventor, a Small Business Concern, or a Nonprofit Organization).*

| | | SMALL ENTITY | | NOT SMALL ENTITY | |
|---|---|---|---|---|---|
| | | RATE | FEE | RATE | FEE |
| DESIGN APPLICATION BASE FEE | | $170.00 | | $340.00 | |
| UTILITY APPLICATION BASE FEE | | $385.00 | | $770.00 | $770.00 |
| UTILITY APPLICATION; ALL CLAIMS CALCULATED AFTER ENTRY OF ALL AMENDMENTS | | | | | |
| | No. Filed | No. Extra | | | |
| TOTAL NO. OF CLAIMS | - 20 = 16 | 0 | $9 each | $18 each | |
| NO. OF INDEPENDENT CLAIMS | - 3 = 4 | 1 | $43 each | $86 each | $86.00 |
| MULTIPLE DEPENDENT CLAIM FEE | | $145 | | $290 | |
| ADDITIONAL FILING FEE | | | | | |
| TOTAL FILING FEE DUE | | | | | $856.00 |

☒    A Check in the amount of **$856.00** is attached. Please charge any deficiency or credit any overpayment to Deposit Account No. 23-3050.

**DOCKET NO.: WYNC-0955/AM101403C2**
**PATENT**

☐    Please charge Deposit Account No. 23-3050 in the amount of $_____.00. This sheet is attached in duplicate.

☒    The Commissioner is hereby requested to grant an extension of time for the appropriate length of time, should one be necessary, in connection with this filing or any future filing submitted to the U.S. Patent and Trademark Office in the above-identified application during the pendency of this application. The Commissioner is further authorized to charge any fees related to any such extension of time to Deposit Account No. 23-3050. This sheet is provided in duplicate.

☒    **Address all correspondence to Customer No. 23377.**

23377
PATENT TRADEMARK OFFICE

☒    Direct all telephone calls to:

Leslie E. Aberman
WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia PA 19103
Telephone No.: (215) 568-3100
Facsimile No.: (215) 568-3439


**SHOULD ANY DEFICIENCIES APPEAR** with respect to this application, including deficiencies in payment of fees, missing parts of the application or otherwise, the United States Patent and Trademark Office is respectfully requested to promptly notify the undersigned.


Date: May 7, 2004

_____
Leslie E. Aberman
Registration No. 54,836

© 2004 WW

BOEHM13.001C1                                                        PATENT

## HORMONAL CONTRACEPTIVE PRODUCT

### Related Applications

[0001]    The application is a continuation of U.S. Application No. 09/508,648, filed June 5, 2000, which is the U.S. National Phase under 35 U.S.C. §371 of International Application PCT/DE98/02636, filed September 11, 1998, which claims priority to German Application No. DE 19739916.9, filed September 11, 1997.

### Background of the Invention

Field of the Invention

[0002]    The present invention relates to a hormonal contraceptive product with two hormonal components, the use thereof and a hormonal contraception process.

Description of the Related Art

[0003]    Since hormonal contraceptives became available in the 1960's, a number of hormonal components have been investigated with regards to their suitability in the most varied administration diagrams. A fundamental subdivision into combination and sequential products is possible.

[0004]    For example, if the desired cycle time is 28 days, in the case of the known combination products administration takes place over 21 days in a constant or varying absolute and/or relative dosage of a combination of an estrogen product and a gestagen product, in which the estrogen product can e.g. be natural estrogen or synthetic ethinyl estradiol and the taking of the aforementioned 21 daily units is followed by a seven-day interval where there is a withdrawal bleeding simulating natural menstruation.

[0005]    In the known sequential products, once again for a desired cycle time of 28 days, administration takes place for 7 days of a pure estrogen product and then for 15 days of a combination of an estrogen product and a gestagen product and here again there is then a taking-free period of e.g. 6 days when withdrawal bleeding occurs. It is admittedly already known to bridge the inherent taking intervals of combination and sequential products in the interest of greater taking security by administering within the days in question placebos.

-1-

5

However, it has hitherto always been assumed that during the roughly one-week taking interval no hormones of the present type should be administered, in order to ensure a reliable withdrawal bleeding.  Only in the case of substitution products in the menopause of older women have hormones been administered throughout the cycle, e.g. in the sequence 10 days estrogen product, 11 days combination of estrogen and gestagen product, 7 days estrogen product, 7 days estrogen product in a particularly low dosage, but said substitution products are unsuitable for ovulation inhibition.

[0006]    The sequential products used in substitution therapy are in particular unsuitable for contraception because the natural estradiol does not prevent ovulation in the dosage administered and the phase in which gestagen is administered is too short, being only 11 days.  However, in the case of the substitution products, the above-described sequential system guarantees a relatively good cycle control.

[0007]    German patent 43 08 406 discloses a combination contraceptive product, which comprises one or more stages.  At least one stage contains the combination of three components, namely a biogenous estrogen, a synthetic estrogen and a gestagen and the further stages in each case comprise a pharmaceutically unobjectionable placebo or a biogenous or synthetic gestagen, or a biogenous or synthetic estrogen, or a combination of two components, namely a biogenous estrogen, a synthetic estrogen and a gestagen or a combination of synthetic estrogen and a gestagen.

[0008]    The description of the above document makes it clear that in the stage concept described therein there is typically a change of state over the period of time.  Such a state change can take place in that the composition of the phases forming the stage is modified with respect to the components used and in that only the concentrations of the components used in the phases forming the stage undergo changes.

[0009]    The problem of the invention is to provide a hormonal contraceptive product, which ensures high contraceptive safety or reliability and prevents intermenstrual bleeding.  There is also to be a further reduction in the side effects otherwise observed in hormonal contraceptive products.

-2-

6

## Summary of the Invention

[0010]     According to the invention this problem is solved by a hormonal contraceptive product having two hormonal components, the agent comprising for continuous, combined administration a first hormonal component comprising at least one gestagen and a second hormonal component comprising at least one estrogen.

[0011]     The problem is also solved by a hormonal contraception process, in which a product, which comprises at least one first hormonal component, which comprises at least one gestagen, and a second hormonal component comprising at least one estrogen is continuously administered.

[0012]     According to another aspect of the invention the product according to the invention is used for inhibiting ovulation.

[0013]     According to a further aspect of the invention the product according to the invention is used for the treatment and/or prophylaxis of breast tumours.

[0014]     According to another embodiment the invention proposes that gestagen as the first hormonal component is chosen from the group comprising progesterone, chlormadinone acetate, norethisterone acetate, cyproterone acetate, desogestrel, levonorgestrel, other natural and/or synthetic gestagens, antigestagens and hormonal analogs with gestagen or antigestagen action, as well as hormonal compounds which rapidly split off at least one gestagen following taking.

[0015]     In the product according to the invention, the estrogen as the second hormonal component can be selected from the group comprising synthetic estrogens, biogenous estrogens, antiestrogens and hormonal analogs with estrogen or antiestrogen action.

[0016]     In a preferred embodiment the synthetic estrogen is selected from the group comprising ethinyl estradiol, mestranol and the like, as well as hormonal compounds rapidly splitting off at least one synthetic estrogen following taking.

[0017]     In particularly preferred manner the synthetic estrogen is ethinyl estradiol.

[0018]·     In preferred embodiments the daily administered ethinyl estradiol quantity is 1 to 20 µg.  In particularly preferred manner, the daily administered ethinyl estradiol quantity is 5 to 10 µg.

-3-

7

[0019]    According to the invention the biogenous estrogen is selected from the group comprising estradiol, estriol, estrone, estrane, etc., as well as hormonal compounds rapidly splitting off at least one biogenous estrogen after taking.

[0020]    According to an embodiment the estradiol comprises 17-$\alpha$-estradiol and/or 17-$\beta$-estradiol.

[0021]    According to another embodiment the daily administered biogenous estrogen quantity in the case of estradiol, particularly $\alpha$ and $\beta$-estradiol, is 0.1 to 2 mg and in the case of conjugate estrogens 0.05 to 0.5 mg.

[0022]    In an embodiment the product according to the invention can be administered orally.

[0023]    In an alternative embodiment the product according to the invention can be administered transdermally.

[0024]    In a second alternative embodiment the product according to the invention can be administered intravaginally.

[0025]    In a third alternative embodiment the product according to the invention can be in depot injection form.

[0026]    In a fourth alternative embodiment the product according to the invention can be administered as a hormonal implant.

[0027]    Finally, the daily units in each case comprising both hormonal components, are placed in spatially separated and individually removable manner in a packaging unit.

[0028]    In an embodiment of the process according to the invention the first hormonal component can be administered in combination with the second hormonal component.

[0029]    In another embodiment of the process according to the invention the product according to the invention is administered.

## Detailed Description of the Preferred Embodiment

[0030]    The invention is based on the surprising finding that as a result of the continuous, combined administration of a product comprising two hormonal components,

-4-

8

namely a first hormonal component comprising at least one gestagen and a second hormonal component comprising at least one estrogen, a high contraceptive reliability can be achieved.

[0031]    In accordance with modern opinion, estrogens are not understood to cover steroid molecules, which preferably evolve their action in that they in different ways exert a biological effect at different cell locations in different organs. Estrogens can act (1) on the cellular membrane, (2) intracellular, cytoplasmic proteins and (3) specific nuclear receptors. It has recently become known that besides the standard estrogen receptor type 1 there is a second estrogen receptor type 2, whose organ distribution is different from that of the estrogen receptor type 1.

[0032]    Thus, the above definition also covers the compounds known as "designer hormones," which have the aforementioned characteristics.

[0033]    Thus, biogenous estrogens are steroid molecules, which evolve an estrogen-like action on the membrane, cytoplasmic proteins and nuclear receptors for hydrophobic ring substances and consequently trigger biological effects corresponding to a hydrophobic steroid ring structure able to initiate an estrogen-like action in cells, organs and the complete organism.

[0034]    The term biogenous estrogens also covers those estrogens which are produced by the human body and consequently include endogenic estrogens. The biogenous estrogens used in specific embodiments of the product according to the invention are typically those which are chemically synthesized. However, it is fundamentally also possible to use compounds isolated from an organism.

[0035]    Biogenous estrogens also cover conjugate, biogenous estrogens such as e.g. estradiol valerate and estrone sulphate.

[0036]    The term antiestrogens is here understood to mean hydrophobic ring structure substances and other substances able to specifically and selectively counteract the above-described estrogen action on cells, organs or the overall organism.

[0037]    Continuous administration is here understood to mean an administration uninterrupted over the use period, in which there are no hormonal component taking-free intervals. This means that there is no interruption of the administration of the product by administering placebos in place of the hormonal product. Thus, over the administration

-5-

9

period typically lasting several months to years there are no changes to the fundamental composition of the hormonal components. Instead over the entire administration period the hormonal components forming the hormonal product according to the invention are administered uninterrupted and unchanged with no modification to the concentration. However, it is conceivable for the concentration of estrogen, understood in the full breadth of the concept defined here, and gestagen, also understood in the full breadth of the term defined here, can be changed for older women compared with younger women. This can also take place in such a way that over the continuous administration period initially there is a start with a specific composition and this is then adapted over a period of weeks, months and years to the changed biological needs of the women through the administration of a subsequent product, but which also comprises a product according to the present invention.

[0038]    As a result of the continuous administration of said hormonal components it is ensured that the natural hormonal processes taking place in the female organism do not interrupt the contraceptive security.

[0039]    As a result of the estrogen component, respectively by specific action of hydrophobic ring substances with an estrogen-like action, there can be a suppression of gonadotropins. This is desirable. The resulting suppression of the ovarial function is compensated by an adequate substitution of estrogen action. This prevents the development of osteoporosis, the favourable vascular effects of estrogens are maintained and there is no unfavourable influence to the lipid metabolism. By interrupting the cycle-dependent instability in the hormone system, the premenstrual syndrome can be favourably influenced. In addition, the physiological equilibrium of the coagulation system is not disturbed, because the unstable equilibrium in which the coagulation system occurs is not activated and deactivated by the up and down of hormone fluctuations. Thus, the hormonal product according to the invention is particularly suitable for women aged more than 40, where the risk of circulatory disturbances is known to increase with increasing age. There is also a reduction in the thrombosis risk, which has of late acquired considerable significance in contraceptive therapy.

[0040]    It has surprisingly also been found that on administering the product according to the invention there is a reliable continuous suppression of the menstrual cycle

-6-

and menstruation in the case of a very low dosage. Without wishing to be bound by this explanation, the combination of the two indicated hormonal components and in particular the low estrogen dosage would appear to be suitable for eliminating the otherwise conventional side effects of ethinyl estradiol and to drop below the administrations of more than 15 μg of ethinyl estradiol otherwise considered typically necessary in prior art contraceptives.

[0041]    The low dosages of the two hormonal components and in particular the estrogen component is made possible by the additive action of the two hormonal components, without there being any limitation to the action of the product according to the invention with respect to its contraceptive and ovulation-inhibition properties.

[0042]    The ovulation inhibition and menstrual cycle suppression reliably ensured by the product according to the invention is of great significance for certain patients, such as e.g. for top sports women, dancers and business women, who wish to exclude any reduction in their physical, intellectual and emotional efficiency as a result of the menstrual cycle. As a result of the combined, continuous administration of the two hormonal components of the product according to the invention it is possible to administer the same either orally, transdermally, intravaginally, by depot injections or hormone implants. Here again the advantages observed for the particular administration forms are obtained.

[0043]    Possible oral administration forms are all the forms known from the prior art such as e.g. tablets, dragees, pills or capsules, which are produced using conventional adjuvants and carrier substances.

[0044]    In the transdermal administration of the product according to the invention the two hormonal component forming the product can e.g. be applied to a plaster or also can be applied by transdermal, therapeutic systems and are consequently supplied to the organism. For example an already prepared combination of the two hormonal components or the latter individually can be introduced into such a system, which is based on ionotherapy or diffusion or optionally a combination of these effects.

[0045]    In the case of oral administration it has proved appropriate to place the daily units, which in case comprise a combination of the two hormonal components, in a spatially separated and individually removable manner in a packaging unit, so that it is easy to check whether the typically daily taken, oral administration form has in fact been taken. It

-7-

11

is important to ensure that there are no taking-free days. Depot injections can be administered at 1 to 6 months or longer intervals. Hormonal implants contain both hormonal components and deliver the same over a period of preferably 3 to 6 months.

[0046]    When using the product according to the invention it has surprisingly been found that the treatment and/or prophylaxis of breast tumours is possible. The latest breast cancer risk research has revealed that mutations, which can be hereditary or acquired, occur in certain risk genes. Modern cancer therapy assumes that a cancerogenic mutation is present on one of the two alleles of a gene which is initially controlled by the other, healthy allele. If a further mutation occurs in a specific organ cell on the second allele, then uncontrolled, malignant growth can occur.

[0047]    Mutations on the second allele particularly frequently occur in given phases of the cell cycle, namely in the G1 phase. Every four weeks the menstrual cycle drives the breast cell in a cell cycle, "opens" the genome for mutations, which are either repaired or apoptotically "removed". Under the conditions of the conventional combined or sequential contraception treatment a woman can have 500 to 700 cycles over her life span, whereas under natural conditions a women has a maximum of 20 to 30 cycles. Thus, in an unusually frequently number of cell cycles over in each case 8 days a considerable mutation risk is introduced into the stimulated breast tissue. If the menstrual cycle is suppressed, as is possible with the product according to the invention, the breast cells are brought into a "rest phase" and it is scientifically ensured that in the rest phase less cancerogenic mutations are introduced into a tissue than in a stimulated tissue. This reduces by a multiple mutagenesis, i.e. the breast cancer risk.

[0048]    The aforementioned use of the product according to the invention for the treatment and/or prophylaxis of breast cancers is in particular associated with special advantages if the users of the product are high-risk subjects, such as e.g. those with a high family breast cancer risk.

[0049]    The quantity of administered gestagens and estrogens substantially corresponds to the quantity of comparable prior art products. The examples provide further information concerning the quantities to be administered daily of the different compounds forming the first and/or second hormonal components.

-8-

12

[0050]    The invention is explained in greater detail hereinafter relative to examples revealing further features, advantages and embodiments of the present invention.

Example 1

[0051]    For contraceptive treatment use was made of a product which per daily unit in table form contained 5 μg of ethinyl estradiol and 2 mg of norethisterone acetate. It is noteworthy that norethisterone acetate can be used in a concentration range of 0.5 to 5 mg. The product was administered for 9 months and revealed a very good contraceptive reliability whilst completely suppressing the menstrual cycle with no side effects. Within the framework of the present investigation it was ensured that the test persons took the product daily, i.e. without any taking interval, over the entire aforementioned time period.

Example 2

[0052]    For contraceptive treatment use was made of a product which per daily unit in table form contains 0.5 mg of estriol and 2 mg of chlormadinone acetate. It is noteworthy that estriol can be used in a concentration range of 0.5 to 3 mg and chlormadinone acetate in a concentration range of 0.75 to 5 mg. The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

Example 3

[0053]    For contraceptive treatment use was made of a product which in each daily unit in tablet form contained 0.5 mg of estradiol valerate and 2 mg of lynestrenol. It is noteworthy that estradiol valerate can be used in a concentration range of 0.5 to 5 mg and lynestrenol in a concentration range of 0.5 to 4.5 mg. The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

Example 4

[0054]    For contraceptive treatment use was made of a product containing per daily unit in tablet form 7.5 μg of ethinyl estradiol and 75 μg of desogestrel. It is noteworthy that desogestrel can be used in a concentration range of 50 to 200 μg. The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

-9-

13

Example 5

[0055]     For contraceptive treatment use was made of a product containing per daily unit in tablet form 20 mg of tamoxifen 2 mg of lutenyl. It is noteworthy that tamoxifen can be used in a concentration range of 10 to 50 mg and lutenyl in a concentration range of 1 to 5 mg. This product is preferably suitable for contraception in women with a family breast cancer risk. The product was administered for 12 months without any taking interval and the mode of action corresponded to that of example 1.

Example 6

[0056]     For contraceptive treatment use was made of a product containing per daily unit in tablet form 50 mg of raloxifen and 2.5 mg of medroxyprogesterone acetate (MPA). It is noteworthy that raloxifen can be used in a concentration range of 30 to 100 mg and medroxyprogesterone acetate in a concentration range of 2 to 10 mg. This combination is preferably suitable for women with a family breast cancer risk and young women who have suffered breast cancer. The product was administered for 12 months without any taking interval and the mode of action corresponded to that of example 1.

Example 7

[0057]     For contraceptive treatment use was made of an agent containing per daily unit in tablet form 10 μg of ethinyl estradiol and tibolone in a daily concentration of 2 mg. It is noteworthy that tibolone can be used with a concentration of 1 to 10 mg. The product was administered without any taking interval for 12 months and the mode of action corresponded to that of example 1.

Example 8

[0058]     For contraceptive treatment use was made of a product containing per daily unit in table form 10 μg of ethinyl estradiol and as the antiestrogen substance Ro486 in a concentration of 2.5 mg. It is noteworthy that R0486 can be used in a concentration range of 1 to 7.5 mg. The product was administered without any taking interval over a period of 12 months and the mode of action correspond to that of example 1.

[0059]     The features of the invention described in the description and claims can be essential individually and in random combination for the implementation of the different embodiments of the invention.

-10-

14

WHAT IS CLAIMED IS:

1. A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

2. The method of Claim 1, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

3. The method of Claim 2, wherein the administration is oral.

4. The method of Claim 3, wherein the administration period is 9 months.

5. The method of Claim 3, wherein the administration period is 12 months.

6. A method for continuous suppression of the menstrual cycle in a woman, comprising administering orally, transdermally or via depot to the woman in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

7. The method of Claim 6, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

8. The method of Claim 7, wherein the administration is oral.

9. The method of Claim 8, wherein the administration period is 9 months.

10. The method of Claim 8, wherein the administration period is 12 months.

11. A method for treating or inhibiting premenstrual syndrome, which comprises administering orally, transdermally, or via depot, to a mammal in need thereof, for a continuous and uninterupted administration period, an effective amount of a gestagen and an estrogen, wherein said gestagen and estrogen are present in unchanged dosages throughout the administration period.

12. The method of Claim 11, wherein said gestagen is selected from the group consisting of progesterone, chlormadinone acetate, northisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and

-11-

said estrogen is selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane.

13.    The method of Claim 12, wherein said estrogen is ethinyl estradiol, which is present at a dosage of 1-20 µg per day.

14. The method of Claim 13, wherein said gestagen is levonorgesterel.

15. The method of Claim 14, wherein the administration is oral.

-12-

16

# HORMONAL CONTRACEPTIVE PRODUCT

## Abstract of the Disclosure

[0060]     The present invention relates to a hormonal contraceptive product having two hormonal components, an estrogen and a gestagen, and a method for the continuous suppression of the menstrual cycle by uninterrupted administration of the product of the invention.

\\KMOBNET\FILES\Docs\Mrb\Red Files\Boehm\Boehm13\BOEHM13.001C1-spec-c.doc
111402

-13-

17

DOCKET NO.: WYNC-0955/AM101403C2                                    PATENT
Application No.: To be assigned
Preliminary Amendment – First Action Not Yet Received


## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
**Rolf-Dieter Hesch**                    Confirmation No.: **To be assigned**

Application No.: **To be assigned**      Group Art Unit: **To be assigned**

Filing Date: **Herewith**                Examiner: **To be assigned**

For:    **Hormonal Contraceptive Product**

                         EXPRESS MAIL LABEL NO: **EL998516904US**
                         DATE OF DEPOSIT: May 7, 2004


Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:


### PRELIMINARY AMENDMENT PURSUANT TO 37 CFR § 1.115


        Preliminary to examination of the above-captioned patent application, please amend
the application as follows:

☒    **Amendments to the Specification** begin on page 2 of this paper.

☒    **Amendments to the Claims** are reflected in the listing of the claims which
      begins on page 3 of this paper.

☐    **Amendments to the Drawings**

☒    **Remarks/Arguments** begin on page 6 of this paper.


Page 1 of 6

18

DOCKET NO.: WYNC-0955/AM101403C2                                    PATENT
Application No.: To be assigned
Preliminary Amendment – First Action Not Yet Received

**Amendments to the Specification:**

      Please amend the paragraph beginning on page 1, line 3 as follows:

      This application is a continuation of U.S. Application No. 10/299,628, filed
November 19, 2002 which is a continuation of U.S. Application No. 09/508,648, now U.S.
Patent No. 6,500,814, issued December 31, 2002, which is the U.S. National Phase under
§371 of International Application PCT/DE98/02636, filed September 11, 1998, which claims
priority to German Application No. DE 19739916,9, filed September 11, 1997, each of which
is incorporated herein by reference in its entirety.

19

DOCKET NO.: WYNC-0955/AM101403C2                                    PATENT
Application No.: To be assigned
Preliminary Amendment - First Action Not Yet Received

This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1.      (Presently amended) A method for ~~hormonal contraception~~ treating or inhibiting premenstrual syndrome, comprises administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a ~~contraceptive~~ product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are administered ~~present in said contraceptive product~~ at unchanged dosages throughout the administration period.

2.      (Presently amended) The method of Claim 1 wherein said ethinyl estradiol is administered ~~present~~ at a dosage of 1-20 µg per day.

3.      (Original) The method of Claim 2 , wherein the administration is oral.

4.      (Original) The method of Claim 3 wherein the administration period is 9 months.

5.      (Original) The method of Claim 3 wherein the administration period is 12 months.

6-10.   (Cancelled)

11.     (Presently amended) A method for treating or inhibiting premenstrual syndrome, which comprises administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, an effective amount of a gestagen and an estrogen, wherein said gestagen and said estrogen are administered ~~present~~ at unchanged dosages throughout the administration period.

12.     (Original) The method of Claim 11 wherein said gestagen is selected from the group consisting of progesterone, chlormadinone acetate, norethisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and said estrogen is selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane.

DOCKET NO.: WYNC-0955/AM101403C2                                    PATENT
Application No.: To be assigned
Preliminary Amendment - First Action Not Yet Received

13.    (Presently amended) The method of Claim 12 wherein said estrogen is ethinyl estradiol, which is ~~present~~ administered at a dosage of 1-20 µg per day.

14.    (Original) The method of Claim 13 wherein said gestagen is levonorgestrel.

15.    (Original) The method of Claim 14 wherein the administration is oral.

16.    (New)  The method of Claim 11 wherein said gestagen is progesterone, chlormadinone acetate, norethisterone acetate, cyprotherone acetate, desogestrel, or levonorgestrel.

17.     (New)  The method of Claim 11 wherein said estrogen is ethinyl estradiol, mestranol, estradiol, estriol, estrone, or estrane.

18.    (New) A method for treating or inhibiting premenstrual syndrome, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising ethinyl estradiol and at least one of a gestagen that is progesterone, chlormadinone acetate, norethisterone acetate, cyprotherone acetate, desogestrel, or levonorgestrel, wherein said gestagen and said ethinyl estradiol are administered at unchanged dosages throughout the administration period.

19.    (New) The method of Claim 18 wherein said ethinyl estradiol is administered at a dosage of 1-20 µg per day.

20.    (New) The method of Claim 18 wherein said ethinyl estradiol is administered at a dosage of 5-10 µg per day.

21.    (New) A method for treating or inhibiting premenstrual syndrome, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising levonorgestrel and at least one of an estrogen that is ethinyl estradiol, mestranol, estradiol, estriol, estrone, or

Page 4 of 6

**DOCKET NO.:** WYNC-0955/AM101403C2                                   **PATENT**
**Application No.:** To be assigned
**Preliminary Amendment – First Action Not Yet Received**

estrane, wherein said gestagen and said ethinyl estradiol are administered at unchanged

dosages throughout the administration period.

22

**DOCKET NO.:** WYNC-0955/AM101403C2                                    PATENT
**Application No.:** To be assigned
**Preliminary Amendment - First Action Not Yet Received**

## REMARKS/ARGUMENTS

With the entry of the present amendment, claims 1-5 and 11-21 are pending in the present application. Claims 1-2, 11 and 13 have been amended. Claims 6-10 have been cancelled. Applicant reserves the right to pursue the subject matter of claims 6-10 at a later date.

The specification has been amended to reflect the priority claim.

In view of the foregoing, Applicant respectfully requests consideration of the above-identified application and preliminary amendment. Early and favorable notification of allowance is earnestly solicited.

Date: May 7, 2004

Leslie E. Aberman
Registration No. 54,836

Woodcock Washburn LLP
One Liberty Place - 46th Floor
Philadelphia PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Page 6 of 6

23

*IFW*

DOCKET NO.: AM101403C2/WYNC-0955                                    PATENT



**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

**In Re Application of:**

**Rolf-Dieter Hesch**                    Confirmation No.: Not yet known

**Application No.: 10/841,278**          **Group Art Unit: Not yet known**

**Filing Date: May 7, 2004**             **Examiner: Not yet assigned**

**For:   HORMONAL CONTRACEPTIVE PRODUCT**

DATE OF DEPOSIT: August 6, 2004

I HEREBY CERTIFY THAT THIS PAPER IS BEING
DEPOSITED WITH THE UNITED STATES POSTAL
SERVICE AS FIRST CLASS MAIL, POSTAGE PREPAID,
ON THE DATE INDICATED ABOVE AND IS
ADDRESSED TO THE UNITED STATES PATENT AND
TRADEMARK OFFICE, P.O. BOX 1450, ALEXANDRIA,
VA 22313-1450.

TYPED NAME: Heather Kite

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

**INFORMATION DISCLOSURE STATEMENT**

Pursuant to 37 CFR § 1.56 and in accordance with 37 CFR §§ 1.97-1.98, information

relating to the above-identified application is hereby disclosed.  Inclusion of information in

this statement is not to be construed as an admission that this information is material as that

term is defined in 37 CFR § 1.56(b).

⊠      In accordance with § 1.97(b), since this Information Disclosure Statement is

being filed either within three months of the filing date of the above-identified

application, within three months of the date of entry into the national stage of

the above identified application as set forth in § 1.491, before the mailing date

24

**DOCKET NO.: AM101403C2/WYNC-0955- 2 -**                    **PATENT**

of a first Office Action on the merits of the above-identified application, or before the mailing date of a first Office Action after the filing of request for continued examination under § 1.114, no additional fee is required.

☐ In accordance with § 1.97(c), this Information Disclosure Statement is being filed after the period set forth in § 1.97(b) above but before the mailing date of either a Final Action under § 1.113 or a Notice of Allowance under § 1.311, or before an action that otherwise closes prosecution in the application, therefore:

☐ Certification in Accordance with § 1.97(e) is attached; or

☐ The fee of **$180.00** as set forth in § 1.17(p) is attached.

☐ In accordance with § 1.97(d), this Information Disclosure Statement is being filed after the mailing date of either a Final Action under § 1.113 or a Notice of Allowance under § 1.311 but before, or simultaneously with, the payment of the Issue Fee, therefore included are: Certification in Accordance with § 1.97(e); and the submission fee of **$180.00** as set forth in § 1.17(p).

☐ Copies of each of the references listed on the attached Form PTO-1449 are enclosed herewith.

☒ Copies of references listed on the attached Form PTO-1449 are enclosed herewith EXCEPT THAT:

☒ Copies of references **1-6** listed on the attached Form PTO 1449 are not required to be submitted pursuant to the June 30, 2003 recent revisions to 37 CFR § 1.98(a)(2)(i).

25

DOCKET NO.: AM101403C2/WYNC-0955- 3 -                    PATENT

☐       In view of the voluminous nature of references [list as appropriate], and the likelihood that these references are available to the Examiner, copies are not enclosed herewith.

☒       In accordance with § 1.98(d), copies of the following references listed on the attached Form PTO-1449 are not enclosed herewith because they were previously cited by or submitted to the U.S. Patent and Trademark Office in patent application(s) for which a claim for priority under 35 U.S.C.§ 120 have been made in the instant application:

☒       Copies of references **7, 8 and 17-19** listed on the attached Form PTO-1449 were previously cited by or submitted to the Patent and Trademark Office in prior Application No. **10/299,628**, filed **November 19, 2002**.

Please charge any deficiency or credit any overpayment to Deposit Account No. 23-3050. This form is submitted in duplicate.

English language equivalents or abstracts have been provided for those listed references which are not in the English language.

Date:  August 6, 2004

Leslie E. Aberman
Registration No. 54,836

WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia, PA  19103
Telephone:  (215) 568-3100
Facsimile:  (215) 568-3439

© 2004 WW

26



| **Form PTO-1449 Modified**<br><br>List of Patent and Publications<br>Cited by Applicant<br>(Use several sheets if necessary)<br><br>U.S. Department of Commerce<br>Patent and Trademark Office | Docket No.<br>AM101403C2/<br>WYNC-0955 | Application No.<br>10/841,278 | |
|---|---|---|---|
| | Applicant<br>Rolf-Dieter Hesch | | |
| | Filing Date<br>May 7, 2004 | Group | Confirmation No. |

### U. S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| | 1 | 4,855,305 | 08/08/89 | Cohen | 514 | 171 |
| | 2 | 4,888,331 | 12/19/89 | Elger et al. | 514 | 170 |
| | 3 | 5,418,228 | 05/23/95 | Bennik | 514 | 182 |
| | 4 | 5,898,032 | 04/27/99 | Hodgen | 514 | 178 |
| | 5 | 5,904,931 | 05/18/99 | Lipp et al. | 424 | 449 |
| | 6 | Re. 36,247 | 07/06/99 | Plunkett et al. | 514 | 170 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | NO |
|---|---|---|---|---|---|---|
| | 7 | EP 0 309 263 A1 | 03/29/89 | Europe | X | |
| | 8 | EP 0 628 312 A1 | 12/14/94 | Europe | | X |
| | 9 | EP 0 399 631 B1 | 09/16/94 | Europe | X | |
| | 10 | DE 39 16381 A1 | 11/22/90 | Germany (EP 0 399 631) | | X |
| | 11 | DE 37 33 478 A1 | 04/13/89 | Germany (US 4,888,331) | | X |
| | 12 | DE 40 19 670 A1 | 01/09/92 | Germany | X<br>abstract only | |
| | 13 | DE 43 08 406 C1 | 06/16/94 | Germany | X<br>abstract only | |
| | 14 | DE 44 05 591 C1 | 07/20/95 | Germany (WO 95/22332) | | X |
| | 15 | DE 44 05 898 A1 | 08/24/95 | Germany (US 5,904,931) | | X |
| | 16 | WO 95/22332 A1 | 08/24/95 | PCT | X<br>abstract only | |

| Examiner Initial | | OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) |
|---|---|---|
| | 17 | Coutinho, E.M. et al., (1995) Comparative Study on Intermittent Versus Continuous use of a Contraceptive Pill Administered by Vaginal Route. Contraception 51(6):355-8 |
| | 18 | Davies, Graham C., et al. (1992) Ovarian Activity and Bleeding Patterns During Extended Continuous Use of a Combined Contraceptive Vaginal Ring. Contraception 46(3):269-278 |
| | 19 | Rizk, Diaa E. E., et al. (1996) Congenital Afibrinogenemia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive. Am J. Hematol 52(3):237-8 |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

© 2004 WW

DOCKET NO.: AM101403C2/WYNC-0955                           PATENT



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Re Application of:

Rolf-Dieter Hesch                          Confirmation No.: 2591

Application No.: 10/841,278                 Group Art Unit: 1614

Filing Date: May 7, 2004                    Examiner: Not yet assigned

For:   Hormonal Contraceptive Product

DATE OF DEPOSIT: February 3, 2005

I HEREBY CERTIFY THAT THIS PAPER IS BEING
DEPOSITED WITH THE UNITED STATES POSTAL
SERVICE AS FIRST CLASS MAIL, POSTAGE PREPAID,
ON THE DATE INDICATED ABOVE AND IS
ADDRESSED TO THE UNITED STATES PATENT AND
TRADEMARK OFFICE, P.O. BOX 1450, ALEXANDRIA,
VA 22313-1450.

TYPED NAME:  Heather Kite

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

## SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Pursuant to 37 CFR § 1.56 and in accordance with 37 CFR §§ 1.97-1.98, information relating to the above-identified application is hereby disclosed. Inclusion of information in this statement is not to be construed as an admission that this information is material as that term is defined in 37 CFR § 1.56(b).

☒      In accordance with § 1.97(b), since this Information Disclosure Statement is
       being filed either within three months of the filing date of the above-identified
       application, within three months of the date of entry into the national stage of

28

the above identified application as set forth in § 1.491, before the mailing date of a first Office Action on the merits of the above-identified application, or before the mailing date of a first Office Action after the filing of request for continued examination under § 1.114, no additional fee is required.

☐  In accordance with § 1.97(c), this Information Disclosure Statement is being filed after the period set forth in § 1.97(b) above but before the mailing date of either a Final Action under § 1.116 or a Notice of Allowance under § 1.311, or before an action that otherwise closes prosecution in the application, therefore:

☐  Certification in Accordance with § 1.97(e) is attached; or

☐  The fee of **$180.00** as set forth in § 1.17(p) is attached.

☐  In accordance with § 1.97(d), this Information Disclosure Statement is being filed after the mailing date of either a Final Action under § 1.113 or a Notice of Allowance under § 1.311 but before, or simultaneously with, the payment of the Issue Fee, therefore included are: Certification in Accordance with § 1.97(e); and the submission fee of **$180.00** as set forth in § 1.17(p).

☒  Copies of reference numbers 20-26 listed on the attached Form PTO-1449 are enclosed herewith.

☐  Copies of reference numbers        -       on the attached Form PTO 1449 are not required to be submitted pursuant to 37 CFR § 1.98(a)(2)(i).

☐  Copies of references        -       are not being submitted because they were previously cited by or submitted to the U.S. Patent and Trademark Office in patent application number        , filed        for which a claim for priority under 35 U.S.C. § 120 has been made in the instant application.

29

**DOCKET NO.: AM101403C2/WYNC-0955- 3 -**                    **PATENT**

☒    The relevance of those listed references which are not in the English language is as follows:

English language translations have been provided for those listed references which are not in the English language.

Please charge any deficiency or credit any overpayment to Deposit Account No. 23-3050. This form is submitted in duplicate.

Date: February 3, 2005

Leslie E. Aberman
Registration No. 54,836

WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

© 2005 WW

30

| Form PTO-1449 Modified<br><br>List of Patent and Publications<br>Cited by Applicant<br>(Use several sheets if necessary)<br><br>U.S. Department of Commerce<br>Patent and Trademark Office | Docket No.<br>AM101403C2/<br>WYNC-0955 | Application No.<br>10/841,278 |
|---|---|---|
| | Applicant<br>Rolf-Dieter Hesch | |
| | Filing Date<br>May 7, 2004 | Group<br>1614 |
| | Confirmation No.<br>2591 | |

## U. S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | Translation NO |
|---|---|---|---|---|---|---|
| | 20 | DE 40 19 670 A1 | 01/09/92 | Germany | X | |
| | 21 | DE 44 05 898 A1 | 08/24/95 | Germany | X | |
| | 22 | DE 43 08 406 C1 | 06/16/94 | Germany | X | |
| | 23 | DE 44 05 591 C1 | 07/20/95 | Germany | X | |
| | 24 | DE 37 33 478 A1 | 04/13/89 | Germany | X | |
| | 25 | DE 39 16 381 A1 | 11/22/90 | Germany | X | |
| | 26 | EP 0 628 312 B1 | 04/27/00 | Europe | X | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

© 2005 WW



 Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/841,278 | 05/07/2004 | Rolf-Dieter Hesch | AM101403 C2 (WYNC-0955) | 2591 |

| 38791          7590          03/09/2006 | EXAMINER |
|---|---|
| WOODCOCK WASHBURN LLP | BADIO, BARBARA P |

WOODCOCK WASHBURN LLP
ONE LIBERTY PLACE - 46TH FLOOR
PHILADELPHIA, PA  19103

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 03/09/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 10/841,278 | HESCH, ROLF-DIETER |
| | Examiner | Art Unit |
| | Barbara P. Badio, Ph.D. | 1617 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____ .

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-5 and 11-21* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-5 and 11-21* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☒ All  b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☒ Certified copies of the priority documents have been received in Application No. <u>09/508,648</u>.

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date <u>08/2004; 02/2005</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____ .

Application/Control Number: 10/841,278                                    Page 2
Art Unit: 1617

## First Office Action on the Merits

### *Double Patenting*

1.     A rejection based on double patenting of the "same invention" type finds its support in the language of 35 U.S.C. 101 which states that "whoever invents or discovers any new and useful process ... may obtain a patent therefor ..." (Emphasis added).  Thus, the term "same invention," in this context, means an invention drawn to identical subject matter.  See *Miller v. Eagle Mfg. Co.*, 151 U.S. 186 (1894); *In re Ockert*, 245 F.2d 467, 114 USPQ 330 (CCPA 1957); and *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970).

A statutory type (35 U.S.C. 101) double patenting rejection can be overcome by canceling or amending the conflicting claims so they are no longer coextensive in scope.  The filing of a terminal disclaimer cannot overcome a double patenting rejection based upon 35 U.S.C. 101.

2.     Claims 11-15 are provisionally rejected under 35 U.S.C. 101 as claiming the

same invention as that of claims 11-15 of copending Application No. 10/867,954.  This

is a provisional double patenting rejection since the conflicting claims have not in fact

been patented.

3.     The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees.   A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

34

Application/Control Number: 10/841,278                                        Page 3
Art Unit: 1617

    A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

    Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

4.    Claims 1-5 and 16-21 are provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 11-15 of copending Application No. 10/867,954. Although the conflicting claims are not identical, they are not patentably distinct from each other because they are both drawn to a method of treating or inhibiting premenstrual syndrome by administering a combination of an estrogen and a gestagen, wherein said estrogen and gestagen are administered at unchanged dosages throughout the administration period. The instant claims differ from the cited copending Application by reciting specific estrogens and gestagens. However, the specific compounds recited by the instant claims are disclosed by the cited copending Application (see for example, claim 12 of the cited copending Application). Therefore, it would have been obvious to the skilled artisan to use a combination of compounds as recited by claim 12 of the cited copending Application with the reasonable expectation that said combination would be useful in treating or inhibiting premenstrual syndrome as recited by both applications.

    This is a provisional obviousness-type double patenting rejection because the conflicting claims have not in fact been patented.

35

Application/Control Number: 10/841,278                                    Page 4

Art Unit: 1617

### *Claim Rejections - 35 USC § 103*

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

6.      Claims 1-3 and 11-21 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Hodgen (US Patent No. 5,898,032) and Casper (EP 0,309,263).

        Hodgen teaches a contraceptive composition comprising an estrogen and a

progestin given monophasically for 60-110 consecutive days (see the entire article,

especially col. 3, lines 35-65).  The reference teaches (a) estrogens such as mestranol,

estradiol and ethinyl estradiol and progestins such as norethindrone acetate and

levonorgestrel (see col. 3, line 58 – col. 4, line 9; examples 1-5 and claims 1-11) and

(b) ethinyl estradiol as the preferred estrogen used preferably in an amount of about 10-

20 mcg (see col. 3, lines 58-64).

        Casper teaches a contraceptive composition comprising a combination of an

estrogen and a progestin (see the entire article, especially col. 13, lines 15-48;

examples 1-24 and claims 1-15).  The reference teaches estrogens such as ethinyl

estradiol, mestranol, estradiol and quinestranol and progestins such as progesterone,

cyproterone acetate, norethindrone acetate and levonorgestrel (see col. 12, lines 5-35;

especially example 10).  The reference also teaches that monophasic contraceptive

formulations are known in the art (see col. 3, lines 10-15).

36

Application/Control Number: 10/841,278                                      Page 5
Art Unit: 1617

The combined teachings of the Hodgen and Casper make obvious the utilization

of a composition comprising an estrogen such as ethinyl estradiol and a progestin such

as levonorgestrel monophasically as a contraceptive composition (see especially

Casper, example 10). The motivation to use a combination of an estrogen and a

progestin is based on teachings of the above cited prior art that said composition is

characterized by a reduced number of withdrawal bleeding (see '032, col. 3, lines 25-

37; '263, col. 11, lines 35-37).

The instant claims differ from the reference by reciting the treatment or inhibition

of premenstrual syndrome. However, the administration of the prior art composition as

a contraceptive would inherently inhibit or treat premenstrual syndrome in said

individual. Thus, the claimed method is prima facie obvious.


### Telephone Inquiry

7.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

571-272-0609. The examiner can normally be reached on M-F from 6:30am-4:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sreenivasan Padmanabhan can be reached on 571-272-0629. The fax

phone number for the organization where this application or proceeding is assigned is

571-273-8300.


37

Application/Control Number: 10/841,278                    Page 6
Art Unit: 1617

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

*Barbara Badio*
Barbara P. Badio, Ph.D.
Primary Examiner
Art Unit 1617

BB
March 6, 2006

38



Sheet 1 of 1

| Form PTO-1449 Modified | Docket No. AM101403C2/ WYNC-0955 | Application No. 10/841,278 | |
|---|---|---|---|
| List of Patent and Publications Cited by Applicant (Use several sheets if necessary) | Applicant Rolf-Dieter Hesch | | |
| U.S. Department of Commerce Patent and Trademark Office | Filing Date May 7, 2004 | Group | Confirmation No. |

### U. S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| BB | 1 | 4,855,305 | 08/08/89 | Cohen | 514 | 171 |
| | 2 | 4,888,331 | 12/19/89 | Elger et al. | 514 | 170 |
| | 3 | 5,418,228 | 05/23/95 | Bennik | 514 | 182 |
| | 4 | 5,898,032 | 04/27/99 | Hodgen | 514 | 178 |
| | 5 | 5,904,931 | 05/18/99 | Lipp et al. | 424 | 449 |
| BB | 6 | Re. 36,247 | 07/06/99 | Plunkett et al. | 514 | 170 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | Translation NO |
|---|---|---|---|---|---|---|
| BB | 7 | EP 0 309 263 A1 | 03/29/89 | Europe | X | |
| | 8 | EP 0 628 312 A1 | 12/14/94 | Europe | | X |
| | 9 | EP 0 399 631 B1 | 09/16/94 | Europe | X | |
| | 10 | DE 39 16381 A1 | 11/22/90 | Germany (EP 0 399 631) | | X |
| | 11 | DE 37 33 478 A1 | 04/13/89 | Germany (US 4,888,331) | | X |
| | 12 | DE 40 19 670 A1 | 01/09/92 | Germany | X abstract only | |
| | 13 | DE 43 08 406 C1 | 06/16/94 | Germany | X abstract only | |
| | 14 | DE 44 05 591 C1 | 07/20/95 | Germany (WO 95/22332) | | X |
| | 15 | DE 44 05 898 A1 | 08/24/95 | Germany (US 5,904,931) | | X |
| BB | 16 | WO 95/22332 A1 | 08/24/95 | PCT | X abstract only | |

| Examiner Initial | | OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) |
|---|---|---|
| BB | 17 | Coutinho, E.M. et al., (1995) Comparative Study on Intermittent Versus Continuous use of a Contraceptive Pill Administered by Vaginal Route. Contraception 51(6):355-8 |
| | 18 | Davies, Graham C., et al. (1992) Ovarian Activity and Bleeding Patterns During Extended Continuous Use of a Combined Contraceptive Vaginal Ring. Contraception 46(3):269-278 |
| BB | 19 | Rizk, Diaa E. E., et al. (1996) Congenital Afibrinogenemia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive. Am J. Hematol 52(3):237-8 |

| EXAMINER Badco | DATE CONSIDERED 3/5/06 |
|---|---|

© 2004 WW

39



| **Form PTO-1449 Modified**<br><br>List of Patent and Publications<br>Cited by Applicant<br>(Use several sheets if necessary)<br><br>U.S. Department of Commerce<br>Patent and Trademark Office | Docket No.<br>AM101403C2/<br>WYNC-0955 | Application No.<br>10/841,278 |
|---|---|---|
| | Applicant<br>Rolf-Dieter Hesch | |
| | Filing Date<br>May 7, 2004 | Group<br>1614 |
| | Confirmation No.<br>2591 | |

### U. S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | NO |
|---|---|---|---|---|---|---|
| BB | 20 | DE 40 19 670 A1 | 01/09/92 | Germany | X | |
| | 21 | DE 44 05 898 A1 | 08/24/95 | Germany | X | |
| | 22 | DE 43 08 406 C1 | 06/16/94 | Germany | X | |
| | 23 | DE 44 05 591 C1 | 07/20/95 | Germany | X | |
| | 24 | DE 37 33 478 A1 | 04/13/89 | Germany | X | |
| | 25 | DE 39 16 381 A1 | 11/22/90 | Germany | X | |
| BB | 26 | EP 0 628 312 B1 | 04/27/00 | Europe | X | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER *Badeo* | DATE CONSIDERED *3/5/06* |
|---|---|

© 2005 WW

40

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **Notice of References Cited** | 10/841,278 | HESCH, ROLF-DIETER |
| | Examiner | Art Unit | |
| | Barbara P. Badio, Ph.D. | 1617 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,898,032 | 04-1999 | Hodgen, Gary D. | 514/178 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| * | N | 0309263A1 | 03-1989 | EP | Casper | - |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited                    Part of Paper No. 03052006

DOCKET NO.: AM101403 C2 (WYNC-0955)                                    **PATENT**

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application of:                              Confirmation No.: **2591**

**Rolf-Dieter Hesch**                        Group Art Unit: **1617**

Application No.: **10/841,278**              Examiner: **Barbara P. Badio**

Filing Date: **May 7, 2004**

For:     **Hormonal Contraceptive Product**

> DATE OF DEPOSIT: June 2, 2006
>
> I HEREBY CERTIFY THAT THIS PAPER IS BEING DEPOSITED WITH THE UNITED STATES POSTAL SERVICE AS FIRST CLASS MAIL, POSTAGE PREPAID, ON THE DATE INDICATED ABOVE AND IS ADDRESSED TO THE COMMISSIONER FOR PATENTS, P.O. BOX 1450, ALEXANDRIA, VA 22313-1450.
>
> TYPED NAME: Wendy A. Choi
> REGISTRATION NO. 36,697

☒ MS Amendment ☐ MS AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## REPLY TRANSMITTAL LETTER

☐     A Preliminary Amendment.

☒     An Amendment Responsive to the Office Action Dated March 9, 2006.

☐     An Amendment Supplemental to the Paper filed            .

☐     A Substitute Specification (pages 1 -        ) in clean form.

    ☐     A substitute specification (pages 1 -        ) with markings.

☐     An Abstract is enclosed.

☐         replacement sheets of drawings are enclosed comprising figures        .

☐     Request is hereby made to accept black and white photograph(s) in this case, as they are the only practicable medium for illustrating the claimed invention. One (1) set of black and white photographs comprising figure(s)        is submitted herewith.

42                              Page 1 of 4

DOCKET NO.: AM101403 C2 (WYNC-0955)                    PATENT

☐    Petition is hereby made to accept drawing(s)/photograph(s) in this case.

     ☐    Three (3) sets of color drawing(s)/photograph(s) and black and white photocopy that accurately depicts to the extent possible, the subject matter shown in the color drawing(s)/photograph(s), are enclosed, comprising figures

     ☐    An amendment to the first paragraph in that portion of the Brief Description of the Drawings is also enclosed herewith advising that the patent contains at least one drawing/photograph in color.

☐    A Certified Copy of each of the following applications:      is enclosed.

☐    An Assignee Power of Attorney is enclosed.

☐    Information Disclosure Statement.

     ☐    Attached Form 1449.

     ☐    A copy of each reference as listed on the attached Form PTO-1449 is enclosed herewith.

☐    A Terminal Disclaimer is attached.

☐    Appendices as follows:    .

☒    Other: Request for Corrected Filing Receipt with marked up copy of the filing receipt

☒    **No Additional Fee is Due.**

☐    Applicant(s) has previously claimed small entity status under 37 CFR § 1.27.

☐    Applicant(s) by its/their undersigned attorney, claims small entity status under 37 CFR § 1.27 as    .

☐    This application is no longer entitled to small entity status. It is requested that this be noted in the files of the U.S. Patent and Trademark Office.

**DOCKET NO.:  AM101403 C2 (WYNC-0955)**     **PATENT**

| | REMAINING AFTER AMENDMENT | HIGHEST PAID FOR | EXTRA | SMALL ENTITY | | NOT SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| | | | | RATE | FEE | RATE | FEE |
| TOTAL CLAIMS | 16 | 20 (20 MINIMUM) | 0 | $25 EACH | $ | $50 EACH | $0 |
| INDEP. CLAIMS | 4 | 5 (3 MINIMUM) | 0 | $100 EACH | $ | $200 EACH | $0 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT | | | | $180 | $ | $360 | $0 |
| ☐ ONE MONTH EXTENSION OF TIME | | | | $60 | $ | $120 | $0 |
| ☐ TWO MONTH EXTENSION OF TIME | | | | $225 | $ | $450 | $0 |
| ☐ THREE MONTH EXTENSION OF TIME | | | | $510 | $ | $1020 | $0 |
| ☐ FOUR MONTH EXTENSION OF TIME | | | | $795 | $ | $1590 | $0 |
| ☐ FIVE MONTH EXTENSION OF TIME | | | | $1080 | $ | $2160 | $0 |
| ☐ LESS ANY EXTENSION FEE ALREADY PAID | | | | minus | ($     ) | minus | ($0) |
| ☐ TERMINAL DISCLAIMER | | | | $65 | $ | $130 | $0 |
| ☐ OTHER FEE OR SURCHARGE AS FOLLOWS: | | | | | | | |
| TOTAL FEE DUE | | | | | $ | | $0 |

☐   A check in the amount of $____.00 is attached.  Please charge any deficiency or credit any overpayment to Deposit Account 23-3050.

☐   Please charge Deposit Account No. 23-3050 in the amount of ____.00.  This sheet is attached in duplicate.

☒   The Commissioner is hereby authorized to charge any deficiency or credit any overpayment of the fees associated with this communication to Deposit Account No. 23-3050.

☐   Petition is hereby made under 37 CFR § 1.136(a) (fees: 37 CFR § 1.17(a)(1)-(4)) to extend the time for response to the Office Action of ____ to and through ____ comprising an extension of the shortened statutory period of ____ month(s).

44                    Page 3 of 4

**DOCKET NO.: AM101403 C2 (WYNC-0955)**    **PATENT**

☒    The Commissioner is hereby requested to grant an extension of time for the appropriate length of time, should one be necessary, in connection with this filing or any future filing submitted to the U.S. Patent and Trademark Office in the above-identified application during the pendency of this application. The Commissioner is further authorized to charge any fees related to any such extension of time to Deposit Account 23-3050. This sheet is provided in duplicate.

Date: June 2, 2006

Wendy X. Choi
Registration No. 36,697

Woodcock Washburn LLP
One Liberty Place - 46th Floor
Philadelphia PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

© 2006 WW

45                              Page 4 of 4

DOCKET NO.: AM101403 C2 (WYNC-0955)                          **PATENT**
Application No.: 10/841,278
Office Action Dated: March 9, 2006

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    Confirmation No.: 2591
**Rolf-Dieter Hesch**

Application No.: **10/841,278**          Group Art Unit: **1617**

Filing Date: **May 7, 2004**            Examiner: **Barbara P. Badio**

For:    **Hormonal Contraceptive Product**

DATE OF DEPOSIT: June 2, 2006

I HEREBY CERTIFY THAT THIS PAPER IS BEING
DEPOSITED WITH THE UNITED STATES POSTAL
SERVICE AS FIRST CLASS MAIL, POSTAGE PREPAID,
ON THE DATE INDICATED ABOVE AND IS
ADDRESSED TO THE COMMISSIONER FOR PATENTS,
P.O. BOX 1450, ALEXANDRIA, VA 22313-1450.

TYPED NAME: Wendy A. Choi
REGISTRATION NO.: 36,697

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

## REPLY PURSUANT TO 37 C.F.R. § 1.111

In response to the Official Action dated **March 9, 2006**, reconsideration is
respectfully requested in view of the amendments and/or remarks as indicated below:

☒    **Amendments to the Specification** begin on page 2 of this paper.

☒    **Amendments to the Claims** are reflected in the listing of the claims that
begins on page 3 of this paper.

☐    **Amendments to the Drawings** begin on page          of this paper and include
an attached replacement sheet.

☒    **Remarks** begin on page 6 of this paper.

Page 1 of 10

46

DOCKET NO.: AM101403 C2 (WYNC-0955)                                      PATENT
Application No.: 10/841,278
Office Action Dated: March 9, 2006

**Amendments to the Specification:**

Please amend the paragraph [0001], as follows:

[0001]      The application is a continuation of U.S. Application No. 10/299,628, filed November 19, 2002, **now abandoned,** which is a continuation of U.S. Application No. 09/508,648, **filed June 5, 2000,** now U.S. Patent No. 6,500,814, issued December 31, 2002, which is the U.S. National Phase under §371 of International Application PCT/DE98/02636, filed September ~~11~~ **3**, 1998, which claims priority to German Application No. DE ~~19739916,9~~ **19739916.9**, filed September 11, 1997.

Page 2 of 10

47

DOCKET NO.: AM101403 C2 (WYNC-0955)                    PATENT
Application No.: 10/841,278
Office Action Dated: March 9, 2006

This listing of claims will replace all prior versions, and listings, of claims in the application.

## Listing of Claims

1. *(previously presented)*    A method for treating or inhibiting premenstrual syndrome, comprises administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are administered at unchanged dosages throughout the administration period.

2. *(previously presented)*    The method of Claim 1 wherein said ethinyl estradiol is administered at a dosage of 1-20 µg per day.

3. *(original)*  The method of Claim 2 , wherein the administration is oral.

4. *(original)*  The method of Claim 3 wherein the administration period is 9 months.

5. *(original)*  The method of Claim 3 wherein the administration period is 12 months.

Claims 6-10    *(cancelled)*

11. *(previously presented)*    A method for treating or inhibiting premenstrual syndrome, which comprises administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, an effective amount of a gestagen and an estrogen, wherein said gestagen and said estrogen are administered at unchanged dosages throughout the administration period.

12. *(original)* The method of Claim 11 wherein said gestagen is selected from the group consisting of progesterone, chlormadinone acetate, norethisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and said estrogen is selected

Page 3 of 10

48

DOCKET NO.: AM101403 C2 (WYNC-0955)                    PATENT
Application No.: 10/841,278
Office Action Dated: March 9, 2006

from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane.

13. *(previously presented)*     The method of Claim 12 wherein said estrogen is ethinyl estradiol, which is administered at a dosage of 1-20 μg per day.

14. *(original)* The method of Claim 13 wherein said gestagen is levonorgestrel.

15. *(original)* The method of Claim 14 wherein the administration is oral.

16. *(previously presented)*     The method of Claim 11 wherein said gestagen is progesterone, chlormadinone acetate, norethisterone acetate, cyprotherone acetate, desogestrel, or levonorgestrel.

17. *(previously presented)*     The method of Claim 11 wherein said estrogen is ethinyl estradiol, mestranol, estradiol, estriol, estrone, or estrane.

18. *(previously presented)*     A method for treating or inhibiting premenstrual syndrome, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising ethinyl estradiol and at least one of a gestagen that is progesterone, chlormadinone acetate, norethisterone acetate, cyprotherone acetate, desogestrel, or levonorgestrel, wherein said gestagen and said ethinyl estradiol are administered at unchanged dosages throughout the administration period.

19. *(previously presented)*     The method of Claim 18 wherein said ethinyl estradiol is administered at a dosage of 1-20 μg per day.

20. *(previously presented)*     The method of Claim 18 wherein said ethinyl estradiol is administered at a dosage of 5-10 μg per day.

DOCKET NO.: AM101403 C2 (WYNC-0955)                    PATENT
Application No.: 10/841,278
Office Action Dated: March 9, 2006

21. *(previously presented)*    A method for treating or inhibiting premenstrual syndrome, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising levonorgestrel and at least one of an estrogen that is ethinyl estradiol, mestranol, estradiol, estriol, estrone, or estrane, wherein said gestagen and said ethinyl estradiol are administered at unchanged dosages throughout the administration period.

DOCKET NO.: AM101403 C2 (WYNC-0955)                                    PATENT
Application No.: 10/841,278
Office Action Dated: March 9, 2006

## REMARKS

Claims 1 to 5 and 11 to 21 are pending in this application and rejected. Applicant is herein amending the specification. Applicant requests reconsideration of the rejections in light of the following remarks.

## Amendments to Specification

Applicant is herein amending the specification to correct typographical errors in the filing date of the international application and the punctuation in the application number of the German priority application in the cross-reference to related applications. Applicant submits that no new matter is introduced by the amendment to the specification. Applicant is submitting herewith a Request for a Corrected Filing Receipt.

## Double Patenting Rejection under 35 U.S.C. § 101

Claims 11 to 15 are provisionally rejected under 35 U.S.C. § 101 as claiming the same invention as that of claims 11 to 15 of copending Application No. 10/867,954. Applicant requests that this rejection be held in abeyance pending the cancellation of the claims from the copending application.

## Obviousness-Type Double Patenting Rejection

Claims 1 to 5 and 16 to 21 are provisionally rejected on the ground of non-statutory obviousness-type double patenting as allegedly being unpatentable over claims 11 to 15 of claims 11 to 15 of copending Application No. 10/867,954. Again, applicant requests that this rejection be held in abeyance pending the cancellation of the claims from the copending application.

Page 6 of 10

51

DOCKET NO.: AM101403 C2 (WYNC-0955)                    PATENT
Application No.: 10/841,278
Office Action Dated: March 9, 2006

## Rejection under 35 U.S.C. § 103(a)

Claims 1 to 3 and 11 to 21 are rejected under 35 U.S.C. § 103(a) as allegedly unpatentable over US-A-5,898,032 (hereinafter referred to as "Hodgen patent") and EP-B-0,309,263 (hereinafter referred to as "Casper patent"). The Office alleges that Hodgen patent discloses a contraceptive composition comprising estrogen and progestin given monophasically for 60 to 110 days and that the Casper patent discloses a contraceptive composition comprising estrogen and progestin, including monophasic compositions. It is the Office's position that it would have been obvious to combine the references because both teach the reduced number of withdrawal bleeding. The Office acknowledges that the combination of references does not disclose, teach, or suggest any method of treating or inhibiting premenstrual syndrome. However, the Office asserts that the compositions disclosed in the Hodgen patent and the Casper patent would inherently inhibit or treat premenstrual syndrome of any individual administered the composition. Applicant traverses the rejection because the Hodgen patent and Casper patent are not properly combinable, but even if they were, they would not inherently disclose the claimed methods of treating premenstrual syndrome. Applicant respectfully submits that the Office is engaging in impermissible hindsight to reconstruct applicant's claimed method.

Applicant submits that the Office has not established that the claimed invention is *prima facie* obvious. To establish a proper *prima facie* rejection, the Office must show:

(1)    the references are available as prior art against the claimed invention;

(2)    the motivation (explicit or implicit) provided by the references that would have rendered the claimed invention obvious to one of ordinary skill in the art at the time of the invention;

(3)    a reasonable expectation of success;

(4)    the basis for concluding that the claimed invention would have been obvious to do, not merely obvious to try; and

(5)    the references teach the claimed invention as a whole.

Applicant submits that the Office has not established elements 2, 3, 4 and 5. If the Office fails to establish *any* one of these elements, a proper *prima facie* obviousness rejection has

Page 7 of 10

**DOCKET NO.:** AM101403 C2 (WYNC-0955)                                    **PATENT**
**Application No.:** 10/841,278
**Office Action Dated:** March 9, 2006

not been made and the applicant is entitled to a patent. *In re Grabiak*, 769 F.2d 729, 733, 226 U.S.P.Q. 870, 873 (Fed. Cir. 1983).

There is no motivation to combine the teachings of the Hodgen patents and Casper patents. The Hodgen patent is directed to contraceptive methods (column 3, lines 35 to 37) for ovulating females. The Casper patent is directed to hormone replacement therapy for menopausal and castrate women (column 1, lines 8 to 9), *i.e.*, non-ovulating females. A skilled artisan would not have been motivated to combine the patents to reach applicant's claimed method of inhibiting or treating premenstrual syndrome because both patents are silent with respect to treating premenstrual syndrome and because both patents seek to achieve different goals. The Hodgen patent seeks to provide an efficacious oral contraceptive with enhanced control of endometrial bleeding in ovulating females (column 3, lines 23 to 26), whereas the Casper patent seeks to provide hormone replacement therapy for, *inter alia*, relieving hot flushes, reducing skeletal calcium loss, reducing the risk of death from ischemic heart disease, and providing protection against endometrial hyperplasia and adenocarcinoma in menopausal and castrate women (column 1, lines 8 to 9; column 4, line 9 to column 5, line 17; column 7, lines 15 to 17).

Even if the two references were properly combinable, the teachings of the individual references and their combined teachings would not inherently describe any method for treating premenstrual syndrome, as the standard is applied by the Federal Circuit.

The Federal Circuit has addressed inherency in the context of anticipation and obviousness. If the prior art reference does not expressly set forth a particular element of the claim, that reference still may anticipate if that element is "inherent" in its disclosure. *In re Robertson*, 169 F.3d 743, 49 USPQ2d 1949 (Fed. Cir. 1999). To establish inherency in the anticipation context, the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991). "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Id.* at 1269, 20

Page 8 of 10

53

DOCKET NO.: AM101403 C2 (WYNC-0955)                    PATENT
Application No.: 10/841,278
Office Action Dated: March 9, 2006

U.S.P.Q.2D (BNA) at 1749 (quoting *In re Oelrich*, 666 F.2d 578, 581, 212 U.S.P.Q. 323, 326 (C.C.P.A. 1981); *Ex parte Skinner*, 2 USPQ 2d 1788, 1789 (B.P.A.I. 1986). (*See also* M.P.E.P. §2112 (IV)). The inherent feature must *necessarily* lead one skilled in the art to the claimed subject matter. *Hyatt v. Boone*, 146 F.3d 1348, 47 USPQ.2d 1128 (Fed. Cir. 1998). *Kennecott Corporation v. Kyocera International, Inc. and Kyoto Ceramic Co., Ltd.*, 835 F.2d 1419, 5 USPQ.2d 1194 (Fed. Cir. 1987). The fact that a method might have been carried out is insufficient.

In the context of new matter in amendments, an applicant may by amendment make explicit a disclosure that was implicit in the application as filed. However, the structural or operational element must have been *necessarily* present or implicit in the original disclosure. It is not enough that it might have been present. Consistent with this conclusion is the standard of inherency in the context of interference practice, namely, that an element is inherently disclosed if the *necessary and only reasonable construction* to be given the disclosure by one skilled in the art is one that lends clear support to the element. *Kennecott Corp. v. Kyocera Int'l, Inc.* 835 F.2d 1419, 5 USPQ2d 1194 (Fed. Cir. 1987). The evidence must show that the alleged inherent limitation must necessarily and inevitably flow from the disclosure. *Chubb & Son's Lock & Safe Co. v. Omron Tateisi Elec. Co.*, 196 USPQ 677 (D. D.C. 1976); *Interchemical Corp. v. Watson*, 145 F. Supp. 179, 182, 111 USPQ 78, 79 (D. D.C. 1956), *aff'd*, 251 F.2d 390, 116 USPQ 119 (D.C. Cir. 1958).

Applicant does not deny that some females administered the composition comprising estrogen and progestin of Hodgen *may* possibly suffer premenstrual syndrome.[1] However, this is insufficient to establish inherency. Applicant submits that, even if females taking contraceptive compositions often experience premenstrual syndrome (and applicant is not conceding that they do), this frequency would be insufficient to establish inherency. *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991) (to establish inherent anticipation, extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference").

---

[1] Applicant also submit that menopausal and castrate females would clearly not suffer from premenstrual syndrome.

Rather, females taking contraceptive compositions *must necessarily,* in each and every occurrence, also be suffering premenstrual syndrome. *Glaxo Inc v. Novopharm Ltd.*, 52 F.3d 1043 (Fed. Cir. 1995) (prior art that falls within the patent claims even frequently, but not invariably, is not an inherent anticipation); *MEHL/Biophile Intern. Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("occasional results are not inherent"). Accordingly, the Office has not established that the Hodgen patent or the Casper patent, alone or in combination, inherently disclose, suggest, or teach the administration of a composition comprising a select estrogen and a select gestagen for treating or inhibiting premenstrual syndrome.

Accordingly, the rejection for alleged inherent obviousness is improper and should be withdrawn.

## Conclusions

Applicant respectfully request reconsideration of the rejections of the pending claims. If the Examiner believes a telephone conference would expedite prosecution of this application, she is invited to contact the undersigned at (404) 459-5642.

Date: **June 2, 2006**

Wendy A. Choi
Registration No. 36,697

WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Page 10 of 10



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/841,278 | 05/07/2004 | Rolf-Dieter Hesch | AM101403 C2 (WYNC-0955) | 2591 |

38791      7590      08/21/2006
WOODCOCK WASHBURN LLP
ONE LIBERTY PLACE - 46TH FLOOR
PHILADELPHIA, PA  19103

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 08/21/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

56

| ***Office Action Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 10/841,278 | HESCH, ROLF-DIETER |
| | Examiner | Art Unit | |
| | Barbara P. Badio, Ph.D. | 1617 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.

2a) ☐ This action is **FINAL.**    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-5 and 11-21* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-5 and 11-21* is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____ .

Application/Control Number: 10/841,278                                    Page 2
Art Unit: 1617

## NonFinal Office Action on the Merits

1.     The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

### Specification

2.     The title of the invention is not descriptive.  A new title is required that is clearly

indicative of the invention to which the claims are directed.

### Double Patenting

3.     The provisional rejection of claims 11-15 under 35 USC 101 over claims of

copending Application No. 10/867,954 is maintained.

     Applicant's statement that the rejection be held in abeyance is noted.

4.     The provisional rejection of claims 1-5 and 16-21 on the ground of

nonstatutory obviousness-type double patenting as being unpatentable over

claims of copending Application No. 10/867,954 is maintained.

     Applicant's statement that the rejection be held in abeyance is noted.

### Claim Rejections - 35 USC § 112

5.     The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of
making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the

art to which it pertains, or with which it is most nearly connected, to make and use the same and shall
set forth the best mode contemplated by the inventor of carrying out his invention.

6.    Claims 1-5 and 11-21 are rejected under 35 U.S.C. 112, first paragraph, as

failing to comply with the written description requirement. The claim(s) contains subject

matter which was not described in the specification in such a way as to reasonably

convey to one skilled in the relevant art that the inventor(s), at the time the application

was filed, had possession of the claimed invention.

The claimed invention is a method of treating or inhibiting premenstrual

syndrome utilizing a combination of a gestagen and an estrogen. The only mention of

"premenstrual syndrome" in the present specification is a statement that "by interrupting

the cycle-dependent instability in the hormone system, the premenstrual syndrome can

be favourably influenced" (see section 0039). Adequate written description requires

more than a mere indication that premenstrual syndrome "can be" favourable

influenced. Some correlation between the interruption of cycle-dependent instability in

the hormone system utilizing the claimed combination and the treatment/inhibition of

premenstrual syndrome is required.


7.    Claims 1-5 and 11-21 are rejected under 35 U.S.C. 112, first paragraph, as

failing to comply with the enablement requirement. The claim(s) contains subject matter

which was not described in the specification in such a way as to enable one skilled in

the art to which it pertains, or with which it is most nearly connected, to make and/or use

the invention.

59

The factors to be considered in determining whether a disclosure meets the enablement requirement of 35 USC 112, first paragraph, have been described in In re Wands, 8 USPQ2d 1400 (Fed. Cir. 1988). Among these factors are (1) the nature of the invention, (2) the breadth of the claims, (3) the state of the prior art, (4) the predictability or unpredictability of the art, (5) the amount of guidance or direction presented, (6) the presence or absence of working examples, (7) the relative skill in the art and (8) the quantity of experimentation necessary. When the above factors are taken into consideration, the examiner's position is that one skilled in the art could not perform the invention commensurate in scope with the instant claim without undue experimentation.

The claimed invention is a method of "treating or inhibiting premenstrual syndrome". The present specification discloses that interruption of cycle-dependent instability in the hormone system that "premenstrual syndrome can be favourably influenced" (see section 0039). It is also noted that "inhibition" implies "prevention" of the claimed condition. In order to prevent any condition, the skilled artisan in the relevant art needs to be able to determine a patient that is susceptible to said condition and, thus, in need of preventative therapy. However, the present specification lacks guidance and/or working examples of the utilization of the claimed combination in the actual treatment/inhibition of said premenstrual syndrome as well as means by which the skilled artisan in the art would determine a patient in need of preventative therapy. Therefore, in order to practice the claimed invention, the skilled artisan would have to first determine the effect of the claimed combination on premenstrual syndrome as well

Application/Control Number: 10/841,278                                    Page 5
Art Unit: 1617

as find a model useful for determining a patient susceptible to premenstrual syndrome

and, thus, in need of preventative therapy. 112, first paragraph requires that the

specification describes the claimed invention in such as way as to enable the skilled

artisan in the art to use the invention. Because of the lack of guidance and/or working

examples in the present specification, the amount of experimentation necessary to

practice the claimed invention is undue.

### Claim Rejections - 35 USC § 103

8.      The rejection of claims 1-3 and 11-21 under 35 USC 103(a) over Hodgen (US

Patent No. 5,898,032) and Casper (EP 0,309,263) is withdrawn.

### Telephone Inquiry

9.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

571-272-0609. The examiner can normally be reached on M-F from 6:30am-4:00pm.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sreenivasan Padmanabhan can be reached on 571-272-0629. The fax

phone number for the organization where this application or proceeding is assigned is

571-273-8300.

61

Application/Control Number: 10/841,278                                    Page 6
Art Unit: 1617

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

                                                    Barbara Badio
                                                    {Barbara P. Badio, Ph.D.
                                                    Primary Examiner
                                                    Art Unit 1617

BB
August 17, 2006

62

DOCKET NO.: AM101403 C2 (WYNC-0955)                          PATENT
Application No.: 10/841,278
Office Action Dated: August 21, 2006


## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    Confirmation No.: **2591**
**Rolf-Dieter Hesch**

Application No.: **10/841,278**          Group Art Unit: **1617**

Filing Date: **May 7, 2004**            Examiner: **Barbara P. Badio**

For:    **Hormonal Contraceptive Product**


Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:


### REPLY PURSUANT TO 37 CFR § 1.111


In response to the Official Action dated **August 21, 2006**, reconsideration is respectfully requested in view of the amendments and/or remarks as indicated below:

☒    **Amendments to the Specification** are on page 2 of this paper.

☒    **Amendments to the Claims** are reflected in the listing of the claims which begins on page 3 of this paper.

☐    **Amendments to the Drawings**.

☒    **Remarks** begin on page 5 of this paper.


Page 1 of 7

**DOCKET NO.:** AM101403 C2 (WYNC-0955)                    **PATENT**
**Application No.:** 10/841,278
**Office Action Dated:** August 21, 2006

**Amendments to the Specification:**

Please amend the title of the application on page 1, line 1, of the application as

follows:

-- ~~Hormonal Contraceptive Product~~ <u>Methods For Treating Or Inhibiting Premenstrual</u>

<u>Syndrome</u> --

Page 2 of 7

64

DOCKET NO.: AM101403 C2 (WYNC-0955)                    PATENT
Application No.: 10/841,278
Office Action Dated: August 21, 2006

This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1. *(previously presented)*    A method for treating or inhibiting premenstrual syndrome, comprises administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are administered at unchanged dosages throughout the administration period.

2. *(previously presented)*    The method of Claim 1 wherein said ethinyl estradiol is administered at a dosage of 1-20 µg per day.

3. *(original)*  The method of Claim 2 , wherein the administration is oral.

4. *(original)*  The method of Claim 3 wherein the administration period is 9 months.

5. *(original)*  The method of Claim 3 wherein the administration period is 12 months.

Claims 6-10   *(cancelled)*

11. *(previously presented)*   A method for treating or inhibiting premenstrual syndrome, which comprises administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, an effective amount of a gestagen and an estrogen, wherein said gestagen and said estrogen are administered at unchanged dosages throughout the administration period.

12. *(original)* The method of Claim 11 wherein said gestagen is selected from the group consisting of progesterone, chlormadinone acetate, norethisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and said estrogen is selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane.

13. *(previously presented)*   The method of Claim 12 wherein said estrogen is ethinyl estradiol, which is administered at a dosage of 1-20 µg per day.

Page 3 of 7

DOCKET NO.: AM101403 C2 (WYNC-0955)                                    PATENT
Application No.: 10/841,278
Office Action Dated: August 21, 2006

14. *(original)* The method of Claim 13 wherein said gestagen is levonorgestrel.

15. *(original)* The method of Claim 14 wherein the administration is oral.

16. *(previously presented)*    The method of Claim 11 wherein said gestagen is progesterone, chlormadinone acetate, norethisterone acetate, cyproterone acetate, desogestrel, or levonorgestrel.

17. *(previously presented)*    The method of Claim 11 wherein said estrogen is ethinyl estradiol, mestranol, estradiol, estriol, estrone, or estrane.

18. *(previously presented)*    A method for treating or inhibiting premenstrual syndrome, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising ethinyl estradiol and at least one of a gestagen that is progesterone, chlormadinone acetate, norethisterone acetate, cyproterone acetate, desogestrel, or levonorgestrel, wherein said gestagen and said ethinyl estradiol are administered at unchanged dosages throughout the administration period.

19. *(previously presented)*    The method of Claim 18 wherein said ethinyl estradiol is administered at a dosage of 1-20 µg per day.

20. *(previously presented)*    The method of Claim 18 wherein said ethinyl estradiol is administered at a dosage of 5-10 µg per day.

21. *(previously presented)*    A method for treating or inhibiting premenstrual syndrome, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a product comprising levonorgestrel and at least one of an estrogen that is ethinyl estradiol, mestranol, estradiol, estriol, estrone, or estrane, wherein said gestagen and said ethinyl estradiol are administered at unchanged dosages throughout the administration period.

DOCKET NO.: AM101403 C2 (WYNC-0955)                              PATENT
Application No.: 10/841,278
Office Action Dated: August 21, 2006

## REMARKS

Claims 1-5 and 11-21 are pending in the present application. Applicant requests reconsideration of the rejections in light of the following remarks.

### Double Patenting Rejection under 35 U.S.C. § 101

Claims 11 to 15 are provisionally rejected under 35 U.S.C. § 101 as claiming the same invention as that of claims 11 to 15 of copending Application No. 10/867,954. Applicant requests that this rejection be held in abeyance pending the cancellation of the claims from the copending application.

### Obviousness-Type Double Patenting Rejection

Claims 1 to 5 and 16 to 21 are provisionally rejected on the ground of non-statutory obviousness-type double patenting as allegedly being unpatentable over claims 11 to 15 of claims 11 to 15 of copending Application No. 10/867,954. Again, applicant requests that this rejection be held in abeyance pending the cancellation of the claims from the copending application.

### Rejection Under 35 U.S.C. § 112, Written Description

Claims 1-5 and 11-21 are rejected under 35 U.S.C. § 112, first paragraph, as allegedly failing to comply with the written description requirement. The applicant respectfully traverses and requests reconsideration of the rejection at least because the knowledge and level of skill in the art of delivering pharmaceuticals is such that the skilled artisan would easily recognize that applicant was in possession of the claimed inventions.

To satisfy the written description requirement, a patent specification need only describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor has possession of the claimed invention. It is well accepted that a satisfactory description may be provided by the claims or any other portion of the originally filed specification. MPEP 2163.I.

The present patent application was filed with claims directed to methods of treating or inhibiting premenstrual syndrome by administering, for a continuous and uninterrupted time,

Page 5 of 7

67

DOCKET NO.:  AM101403 C2 (WYNC-0955)                                    PATENT
Application No.:  10/841,278
Office Action Dated:  August 21, 2006

a gestagen and an estrogen at unchanged dosages throughout the administration period.  The application describes in great detail how to use a combination of a gestagen and an estrogen to inhibit ovulation and suppress the menstrual cycle.  The examples provided in the application demonstrate that the described methods can effectively suppress the menstrual cycle with no side effects.  The patent application teaches in paragraph [0039] that the described methods also suppress gonadotropins and that by interrupting the cycle dependent instability in the hormone system, premenstrual system can be favorably influenced.  Accordingly, the application teaches that the described methods for inhibiting ovulation and suppressing the menstrual cycle can also be used for treating or inhibiting premenstrual syndrome.

Although the Office Action notes that applicant's disclosure does not include working examples demonstrating practice of the claimed methods, applicant submits that he need not provide working examples to satisfy the written description requirement.  Indeed, the Office Action fails to cite any evidence or legal authority supporting the proposition that "[a]dequate written description requires more than a mere indication that premenstrual syndrome 'can be' [favorably] influenced" (Office Action at 3), or that "[s]ome correlation between the interruption of cycle-dependent instability in the hormone system utilizing the claimed combination and the treatment/inhibition of premenstrual syndrome is required" (*id.*).  Because there is no reason to believe that the skilled artisan would somehow not be able to recognize that the applicant was in possession of the claimed inventions, particularly given their description in both the specification and claims, the applicant respectfully requests that the rejection be withdrawn.

### Rejection Under 35 U.S.C. § 112, Enablement

Claims 1-5 and 11-21 are rejected under 35 U.S.C. § 112, first paragraph, as allegedly nonenabled.  The applicant respectfully traverses and request reconsideration of the rejection for the following reasons.

According to the Action, the specification lacks not only guidance and/or working examples relating to treatment/inhibition of said premenstrual syndrome, but also means by which the skilled artisan would identify a patient in need of preventative therapy.  Applicant's disclosure, however, is replete with specific gestagens and estrogens that can be

Page 6 of 7

DOCKET NO.: AM101403 C2 (WYNC-0955)          **PATENT**
Application No.: 10/841,278
Office Action Dated: August 21, 2006

used in the present methods, as well as dosage ranges that can be used. *See, for example*, paragraphs [0015]-[0029]. The Action provides no reason to believe that a clinician skilled in the art, after reading the specification, would have any difficulty providing the described drugs in the described dosage amounts to treat or inhibit premenstrual syndrome. With respect to identifying a person that is susceptible to premenstrual syndrome, at the time of filing it was well known that certain women suffer from premenstrual syndrome on a cyclical basis. The Action provides no reason to believe that a clinician would need any guidance from the specification to be able to routinely identify such a subject. Applicant therefore respectfully requests that the rejection of the claims under 35 U.S.C. § 112 for lack of enablement be withdrawn.

Applicant respectfully submits that the present application is in condition for allowance. If the Examiner believes that personal communication will expedite prosecution of this application, the Examiner is invited to telephone the undersigned at the number provided. Favorable consideration and an early notice of allowance are respectfully requested.

Date: November 21, 2006

/Leslie E. Aberman/
Leslie E. Aberman
Registration No. 54,836

Woodcock Washburn LLP
One Liberty Place - 46th Floor
Philadelphia PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/841,278 | 05/07/2004 | Rolf-Dieter Hesch | AM101403 C2 (WYNC-0955) | 2591 |

38791    7590    01/30/2007
WOODCOCK WASHBURN LLP
CIRA CENTRE, 12TH FLOOR
2929 ARCH STREET
PHILADELPHIA, PA 19104-2891

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

| SHORTENED STATUTORY PERIOD OF RESPONSE | MAIL DATE | DELIVERY MODE |
|---|---|---|
| 3 MONTHS | 01/30/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

If NO period for reply is specified above, the maximum statutory period will apply and will expire 6 MONTHS from the mailing date of this communication.

70

PTOL-90A (Rev. 10/06)

| | Application No. | Applicant(s) |
|---|---|---|
| *Office Action Summary* | 10/841,278 | HESCH, ROLF-DIETER |
| | Examiner | Art Unit | |
| | Barbara P. Badio, Ph.D. | 1617 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____.

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-5 and 11-21* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-5 and 11-21* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____.

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 10/841,278                                    Page 2
Art Unit: 1617

### Final Office Action on the Merits

1.     The text of those sections of Title 35, U.S. Code not included in this action can
be found in a prior Office action.

### Double Patenting

2.     The provisional rejection of claims 11-15 under 35 USC 101 over claims of
copending Application No. 10/867,954 is maintained.

Applicant's statement that the rejection be held in abeyance is noted.

3.     The provisional rejection of claims 1-5 and 16-21 on the ground of
nonstatutory obviousness-type double patenting as being unpatentable over
claims of copending Application No. 10/867,954 is maintained.

Applicant's statement that the rejection be held in abeyance is noted.

### Claim Rejections - 35 USC § 112

4.     The rejection of claims 1-5 and 11-21 under 35 USC 112, first paragraph, as
failing to comply with the written description requirement is withdrawn.

5.     The rejection of claims 1-5 and 11-21 under 35 USC 112, first paragraph, as
failing to comply with the enablement requirement is maintained.

72

Application/Control Number: 10/841,278                                    Page 3
Art Unit: 1617

Applicant argues the present disclosure is replete with specific gestagens and

estrogens as well as dosage ranges useful in the claimed methods and there is no

reason given to believe the skilled artisan would have difficulty providing the described

drugs in the described dosages to treat or inhibit premenstrual syndrome. Applicant

also argues that certain women are known to suffer from premenstrual syndrome on a

cyclical basis and, thus, a clinician would be able to routinely identify a subject in need

of preventative therapy. Applicant's argument was considered but not persuasive for

the following reasons.

The issue is not the disclosure of specific active ingredients and/or dosage

ranges. The issue is whether the present specification provides the skilled artisan in the

art with sufficient guidance to enable said to practice the claimed invention.

The art teaches various symptoms are encompassed by the term "premenstrual

syndrome". For example, it is well known in the art that premenstrual syndrome

involves symptoms such as mood swings, headaches, bloating, water retention, breast

tenderness, etc. The only reference to premenstrual syndrome in the present

specification is in section 0039 where it is stated that by interrupting cycle-dependent

instability in the hormone system, premenstrual syndrome can be favourably influenced.

However, the present specification lacks identification of symptoms influenced by said

interruption and, thus, does not enable the skilled artisan in the art with the ability to

utilization the claimed combination in the treatment/inhibition of any of the symptoms

encompassed by said premenstrual syndrome. Therefore, the present specification

does not provide enablement of the claimed invention.

73

Application/Control Number: 10/841,278                    Page 4
Art Unit: 1617

Applicant's argues that premenstrual syndrome occurs on a cyclical basis in certain women and, therefore, the skilled artisan would be able to identify said subject. Is the examiner to assume that the claimed method is limited to women known to have one or more of the symptoms associated with premenstrual syndrome or is it inclusive of women in which said symptoms have not been identified? The claimed invention is interpreted broadly and, thus, is inclusive of both groups of women. As stated in the previous Office Action, the present specification does not provide guidance as to the identification of women susceptible to said condition.

Even if one focuses on those subjects known to suffer from one or more of the symptoms associated with said premenstrual syndrome, the present specification lacks a showing that any of the symptoms associated with premenstrual syndrome can be prevented, i.e., stopped from occurring, utilizing the claimed combination. In essence, the present specification does not enable the skilled artisan in the art to utilize the claimed combination in the prevention of premenstrual syndrome.

For these reasons and those given in the previous Office Action, the rejection of claims 1-5 and 11-21 under 35 USC 112, first paragraph, as failing to comply with the enablement requirement is maintained.

### Conclusion

6.    **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

74

Application/Control Number: 10/841,278                                Page 5
Art Unit: 1617

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.


### *Telephone Inquiry*

7.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

571-272-0609. The examiner can normally be reached on M-F from 6:30am-4:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sreenivasan Padmanabhan can be reached on 571-272-0629. The fax

phone number for the organization where this application or proceeding is assigned is

571-273-8300.

75

Application/Control Number: 10/841,278                                Page 6
Art Unit: 1617

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

*Barbara Padio*

Barbara P. Badio, Ph.D.
Primary Examiner
Art Unit 1617

BB
January 23, 2007

76

<table>
<tr><td rowspan="7"><strong>REQUEST<br>FOR<br>CONTINUED EXAMINATION (RCE)<br>TRANSMITTAL</strong><br><br>Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450</td></tr>
</table>

| | | |
|---|---|---|
| **REQUEST**<br>**FOR**<br>**CONTINUED EXAMINATION (RCE)**<br>**TRANSMITTAL**<br><br>Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | *Application Number* | **10/841,278** |
| | *Filing Date* | May 7, 2004 |
| | *First Named Inventor* | Rolf-Dieter HESCH |
| | *Art Unit* | 1617 |
| | *Examiner Name* | Barbara Badio |
| | *Attorney Docket Number* | 2004658-0967 (AM101403C2) |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. Submission required under 37 CFR 1.114 Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).
   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.
      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____
      ii. ☐ Other _____
   b. ☒ Enclosed
      i. ☒ Amendment/Reply          iii. ☐ Information Disclosure Statement (IDS)
      ii. ☐ Affidavit(s)/Declaration(s)    iv. ☐ Other

2. Miscellaneous
   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)
   b. ☐ Other _____

3. Fees  The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.
   a. ☒ The Director is hereby authorized to charge the following fees, or credit any overpayments to Deposit Account No. **03-1721** .
      i. ☒ RCE fee required under 37 CFR 1.17(e)
      ii. ☒ Extension of time fee (37 CFR 1.136 and 1.17)
      iii. ☐ Other _)_____
   b. ☐ Check in the amount of $_____ enclosed
   c. ☒ Payment by credit card (Form PTO-2038 enclosed)
      **WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

***SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED***

| Name *(Print/Type)* | **Andrea L. C. Robidoux** | Registration No. (Attorney/Agent) | **47,902** |
|---|---|---|---|
| Signature | /Andrea L.C. Robidoux/ | Date | **February 25, 2008** |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

4304163v1

ATTORNEY'S DOCKET NUMBER:  2004658-0967 (AM101403C2)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Rolf-Dieter HESCH | Examiner:  Barbara Badio | |
| Serial No.: | 10/841,278 | Art Unit:  1617 | |
| Filed: | May 7, 2004 | Confirmation No.:  2591 | |
| For: | HORMONAL CONTRACEPTIVE PRODUCT | | |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450


Sir:

### RESPONSE TO FINAL OFFICE ACTION

In response to the Office Action mailed January 30, 2007, Applicants respectfully request consideration of the following Remarks.  The deadline for responding to the Office Action was April 30, 2007.  Applicants submitted a Petition for a three month extension of time and a Notice of Appeal on July 25, 2007.  Applicants submit herewith a Petition for a four month extension of time up to, and including, February 25, 2008 and a Request for Continued Examination. Accordingly, Applicants respectfully submit that the present Response is timely filed on February 25, 2008.


**Remarks** begin on page 2 of this paper.

# REMARKS

*Miscellaneous*

Applicants thank the Examiner for withdrawing her rejection of claims 1-5 and 11-21 are rejected under 35 USC §112, first paragraph as failing to comply with the written description requirement.

*Rejections under 35 USC §112, first paragraph*

Claims 1-5 and 11-21 are rejected under 35 USC §112, first paragraph as failing to comply with the enablement requirement. The Examiner indicates that the present specification does not provide the skilled artisan with sufficient guidance to practice the claimed invention. Specifically, the Examiner indicates that "[t]he only reference to premenstrual syndrome in the present specification is in section 0039 where it is stated that by interrupting the cycle-dependent instability in the hormone system, premenstrual syndrome can be favorably influenced" and that **"the present specification lacks identification of symptoms influenced by said interruption and, thus, does not enable the skilled artisan in the art with the ability to utilization the claimed combination in the treatment/inhibition of any of the symptoms encompasses by said premenstrual syndrome."** (Emphasis added). Applicants respectfully traverse.

As an initial matter, Applicants respectfully submit that the symptoms of premenstrual syndrome ("PMS") are well known to one of ordinary skill in the art and need not be articulated within Applicants' specification. Indeed, the Examiner indicates that "[t]he art teaches various symptoms are encompassed by the term "premenstrual syndrome."" The Examiner further specifies that "*it is well known in the art that* **premenstrual syndrome involves symptoms such as mood swings, headaches, bloating, water retention, breast tenderness, etc.**" (Emphasis added). Thus, Applicants respectfully submit that the symptoms of PMS are well established and known to one of ordinary skill in the art.

Applicants respectfully remind the Examiner that enablement under U.S.C. § 112, first paragraph requires that the specification teach those skilled in the art how to make and use the invention without undue experimentation. *Atlas Powder Co. v. E.I. duPont de Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984). The Examiner indicates that "the present specification lacks a showing that any of the symptoms associated with premenstrual syndrome can be

Application No.: 10/841,278
Attorney Docket No.: 2004658-0967 (AM101403C2)

prevented, i.e., stopped from occurring, utilizing the claimed combination." Applicants respectfully remind the Examiner that working examples are not required by U.S.C. § 112, first paragraph, and that an Applicants' claim scope is not limited to those embodiments actually disclosed in the specification. Indeed, broad claims may be supported without even a single disclosed embodiment (*In re Strahilevitz*, 668 F.2d 1229, 212 U.S.P.Q. 561 (C.C.P.A 1982).

Applicants respectfully submit that the Examiner appears to be applying an overly strict enablement requirement which is akin to reduction to practice instead of the proper standard which allows for experimentation as long as it is not undue. A considerable amount of experimentation is permissible, if it is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed. *In re Wands*, 858 F.2d at 737, 8 U.S.P.Q.2d at 1404 (quoting *Ex parte Jackson*, 217 U.S.P.Q. 804, 807 (Bd. App. 1982)).

Applicants emphasize that case law holds that a specification disclosure which contains a teaching of the manner and process of making and using the invention in terms which correspond in scope to those used in describing and defining the subject matter sought to be patented *must be taken as in compliance with the enabling requirement of the first paragraph of U.S.C. § 112 unless there is reason to doubt the objective truth of the statements contained therein which must be relied on for enabling support.*" *See e.g., Fiers v. Revel*, 25 USPQ2d 1601, 1607 (Fed. Cir. 1993). Here, Applicants' provide ample teaching of hormonal combinations for use in the present invention. Moreover, there is no reason to doubt nor has the office action provided evidence to doubt the statements contained in the specification concerning the effectiveness of the methods of the present invention for treating the PMS as set forth in the claims. Thus, Applicants respectfully submit that they have fully complied with U.S.C. § 112, first paragraph and request that the Examiner reconsider and withdraw her rejection of claims 1-5 and 11-21.

*Double Patenting*

Applicants respectfully submit that the rejection of 1-5 and 11-21 under the judicially created doctrine of obviousness-type double patenting is premature because no claim of USSN 10/867,954 has been patented. Accordingly, Applicants hold this rejection in abeyance.

Regarding the rejection of claims 11-15 under 35 USC § 101 over the claims of copending application USSN 10/867,954, Applicants reiterate that this rejection is premature

because no claim of USSN 10/867,954 has been patented.   Accordingly, Applicants hold this rejection in abeyance.

No new matter has been added.

Applicants invite the Examiner to call their attorney, Andrea L.C. Robidoux, at (617) 248-5124 with any questions pertaining to the above-identified application in order to expedite prosecution of this case.


                                        Respectfully Submitted,

                                        /Andrea L.C. Robidoux/

Dated: February 25, 2008                _____
                                        Andrea L.C. Robidoux
Choate, Hall & Stewart                  Registration No. 47,902
Patent Department
Two International Place
Boston, MA  02110
Tel: (617) 248-5124
Fax: (617) 248-4000

Application No.: 10/841,278
Attorney Docket No.:  2004658-0967 (AM101403C2)



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/841,278 | 05/07/2004 | Rolf-Dieter Hesch | 2004658-0967 (AM101403C2) | 2591 |

7590          03/26/2008

Choate, Hall & Stewart LLP
Patent Department
Attn: Andrea L.C. Robidoux
Two International Place
Boston, MA 02110

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1612 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/26/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

82

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/841,278 | HESCH, ROLF-DIETER |
| | **Examiner** | **Art Unit** |
| | Barbara P. Badio, Ph.D. | 1612 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS,
WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐  Responsive to communication(s) filed on _____ .

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
     closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) *1-5 and 11-21* is/are pending in the application.

     4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☒  Claim(s) *1-5 and 11-21* is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☐  Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

     Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

     Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a)☐ All   b)☐ Some * c)☐ None of:

     1.☐  Certified copies of the priority documents have been received.

     2.☐  Certified copies of the priority documents have been received in Application No. _____ .

     3.☐  Copies of the certified copies of the priority documents have been received in this National Stage
          application from the International Bureau (PCT Rule 17.2(a)).

     * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)                    4)☐ Interview Summary (PTO-413)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)        Paper No(s)/Mail Date. _____ .
3)☐ Information Disclosure Statement(s) (PTO/SB/08)         5)☐ Notice of Informal Patent Application
     Paper No(s)/Mail Date _____ .                          6)☐ Other: _____ .

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06)                    **Office Action Summary**                    Part of Paper No./Mail Date 20080319

Application/Control Number: 10/841,278                                    Page 2
Art Unit: 1612

### First Action Final on the Merits of a RCE

### Continued Examination Under 37 CFR 1.114

1.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection. Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114. Applicant's submission filed on

February 25, 2008 has been entered.

### Double Patenting

2.      **The provisional rejection of claims 11-15 under 35 USC 101 as being**

**unpatentable over claims of copending Application No. 10/867,954 is maintained.**

   Applicant's statement that the rejection be held in abeyance is noted.

3.      **The provisional rejection of claims 1-5 and 16-21 on the ground of**

**nonstatutory obviousness-type double patenting as being unpatentable over**

**claims of copending Application No. 10/867,954 is maintained.**

   Applicant's statement that the rejection be held in abeyance is noted.

84

### Claim Rejections - 35 USC § 112

4.      **The rejection of claims 1-5 and 11-21 under 35 USC 112, first paragraph, as
failing to comply with the enablement requirement is maintained.**

Applicant states that 35 USC § 112, first paragraph requires that the specification
teach those skilled in the art how to make and use the invention without undue
experimentation and does not require working examples.  Applicant argues the present
specification provide ample teaching of hormonal combinations for use in the present
invention and there is no reason to doubt the effectiveness of the methods of the
present invention for treating PMS as set forth in the claims.  Applicant's argument was
considered but not persuasive for the following reasons.

The examiner agrees that 35 USC 112, first paragraph requires the specification
to teach how to make and use the claimed invention and that working examples are not
required.  However, 35 USC 112, first paragraph also states the specification should
describe the claimed invention in "**full, clear, concise, and exact terms as to enable
any person skilled in the art to which it pertains, or with which it is most nearly
connected, to make and use the same**".  The present specification lacks description
of the instant invention in full, clear, concise and exact terms that would enable the
skilled artisan to use the invention as defined by the instant claims.  As stated in the
previous Office Action, the only reference to PMS is in section 0039 where it is stated
that **premenstrual syndrome can be favourably influenced** by interrupting cycle-
dependent instability in the hormone system.  Also as stated in the previous Office
Action, premenstrual syndrome is inclusive of mood swings, headaches, bloating, water

Application/Control Number: 10/841,278                                    Page 4
Art Unit: 1612

retention, breast tenderness, etc. and, the present specification does not teach how the

claimed composition can be utilized to treat or inhibit any of these syndromes.

Additionally, the skilled artisan would doubt that the claimed composition would be

effective in treating and/or inhibiting all of the syndromes encompassed by the term

"premenstrual syndrome" because of the differences in the underlining cause(s) of

each.

   For these reasons and those given in the previous Office Actions, the rejection of

claims 1-5 and 11-21 under 35 USC 112, first paragraph, as failing to comply with the

enablement requirement is maintained.


### Conclusion

5.     All claims are drawn to the same invention claimed in the application prior to the

entry of the submission under 37 CFR 1.114 and could have been finally rejected on the

grounds and art of record in the next Office action if they had been entered in the

application prior to entry under 37 CFR 1.114.  Accordingly, **THIS ACTION IS MADE

FINAL** even though it is a first action after the filing of a request for continued

examination and the submission under 37 CFR 1.114.  See MPEP § 706.07(b).

Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

   A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

Application/Control Number: 10/841,278                                      Page 5
Art Unit: 1612

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

### *Telephone Inquiry*

6.       Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

571-272-0609.  The examiner can normally be reached on M-F from 6:30am-4:00pm.

         If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Frederick Krass can be reached on 571-272-0580.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

         Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

                                         /Barbara P. Badio, Ph.D./
                                         Primary Examiner, Art Unit 1612

87

# EXHIBIT   13

DOCKET NO.: AM101403/WYNC-0963                                    PATENT



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of:

**Rolf-Dieter Hesch**

For: **HORMONAL CONTRACEPTIVE PRODUCT**

EXPRESS MAIL LABEL NO: EL999286399US
DATE OF DEPOSIT: June 15, 2004

EL999286399US

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## PATENT APPLICATION TRANSMITTAL LETTER

**Transmitted herewith for filing, please find:**

☒   A Continuation Application under 37 CFR § 1.53(b).

**The above-identified application includes the following:**

☐   A Request for Nonpublication

☐   A Specification including claims and abstract on pages 1 to          .

☒   A copy of the specification including claims and abstract (pages 1-13) and drawings
    and appendixes (if any) of earlier Application No. 10/299,628 filed November 19,
    2002, to which no new matter has been added.  Such earlier application is hereby
    incorporated into the present application by reference.

☐   A New Unexecuted Declaration or Oath and Power of Attorney.

☐   A New Executed Declaration or Oath and Power of Attorney.

    ☒   A copy of the executed oath or declaration filed in the earlier application
        identified above is attached.

    ☐   An Associate Power of Attorney executed by          who is listed in the copy
        of the executed Declaration and Power of Attorney filed herewith.

1

**DOCKET NO.: AM101403/WYNC-0963**                                    **PATENT**

☒     A Copy of the Power of Attorney with Revocation filed in prior Application No. 10/299,628.

☐     Signed Statement deleting inventor(s) named in the prior application.

☒     This application claims foreign priority under 35 U.S.C. § 119 of Application No. 197 39 916.9 filed September 11, 1997 in Germany (Country).

☒     A Certified Copy of each of the above applications for which priority is claimed:

☐     is enclosed.

☒     has been filed in prior Application No. 10/299,628 filed November 19, 2002.

☒     0 Sheets of Formal Drawings and/or Photographs.

☐     Figure          should be published.

☐     Petition to Accept Color Photographs is enclosed.

☒     This continuation application is assigned of record to Wyeth as evidenced by the assignment recorded on August 4, 2003 at Reel No. 014337 and Frame No. 0871.

☐     A newly Executed Assignment transferring rights to          .

☐     A Recordation Form Cover Sheet.

☐     Recordation Fee - $40.00.

☒     A Preliminary Amendment is enclosed .

☐     A Sequence Listing consisting of pages 1-          .

☐     Diskette containing Sequence Listing is enclosed.

☐     The computer readable form in the above-identified application is identical with that filed in Application Number          , filed          . In accordance with 37 CFR § 1.821(e), please use the sequence listing filed on          and received by the PTO on          as the computer readable form filed in that application as the computer readable form for the instant application. It is understood that the Patent and Trademark Office will make the necessary change in application number and filing date for the computer readable form that will be used for the instant application.

☐     A paper copy of the Sequence Listing:

☐     was filed in the above-identified parent application on          and received by the PTO on          .

2                                    Page 2 of 4

DOCKET NO.: AM101403/WYNC-0963                                      PATENT

☐      is included herewith in a separately filed preliminary amendment for incorporation into the specification.

☐    A Statement to Support Submission of Sequence Information is enclosed.

☐ Information Disclosure Statement including:

☐    Form 1449.

☐    Copies of References      -      listed on the attached Form PTO-1449.

☒ A copy of Petition for Extension of Time as filed in the prior case for copendency.

☒ Appended Material as follows: Application Data Sheet.

☒ Return Receipt Postcard (should be specifically itemized).

FEE CALCULATION:

☐ Applicant(s) by its/their undersigned attorney, claims small entity status under 37 CFR § 1.27 as      *(CHOOSE ONE: an Independent Inventor, a Small Business Concern, or a Nonprofit Organization).*

| | | | SMALL ENTITY | | NOT SMALL ENTITY | |
|---|---|---|---|---|---|---|
| | | | RATE | FEE | RATE | FEE |
| DESIGN APPLICATION BASE FEE | | | $170.00 | | $340.00 | |
| UTILITY APPLICATION BASE FEE | | | $385.00 | | $770.00 | $770.00 |
| UTILITY APPLICATION; ALL CLAIMS CALCULATED AFTER ENTRY OF ALL AMENDMENTS | | | | | | |
| | No. Filed | No. Extra | | | | |
| TOTAL NO. OF CLAIMS | - 20 = 15 | 0 | $9 each | | $18 each | |
| NO. OF INDEPENDENT CLAIMS | - 3 = 3 | 0 | $43 each | | $86 each | |
| MULTIPLE DEPENDENT CLAIM FEE | | | $145 | | $290 | |
| ADDITIONAL FILING FEE | | | | | | |
| TOTAL FILING FEE DUE | | | | | | |

☒ A Check in the amount of **$770.00** is attached.  Please charge any deficiency or credit any overpayment to Deposit Account No. 23-3050.

☐ Please charge Deposit Account No. 23-3050 in the amount of **$      .00**.  This sheet is attached in duplicate.

☒ The Commissioner is hereby requested to grant an extension of time for the appropriate length of time, should one be necessary, in connection with this filing or

3               Page 3 of 4

**DOCKET NO.: AM101403/WYNC-0963**                                **PATENT**

any future filing submitted to the U.S. Patent and Trademark Office in the above-identified application during the pendency of this application. The Commissioner is further authorized to charge any fees related to any such extension of time to Deposit Account No. 23-3050. This sheet is provided in duplicate.

☒     **Address all correspondence to Customer No. 23377.**

**23377**

PATENT TRADEMARK OFFICE

☒     Direct all telephone calls to:

Leslie E. Aberman
WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia PA 19103
Telephone No.: (215) 568-3100
Facsimile No.: (215) 568-3439

**SHOULD ANY DEFICIENCIES APPEAR** with respect to this application, including deficiencies in payment of fees, missing parts of the application or otherwise, the United States Patent and Trademark Office is respectfully requested to promptly notify the undersigned.

Date: June 15, 2004                        *Leslie Aberman*
                                            Leslie E. Aberman
                                            Registration No. 54,836

4                              Page 4 of 4

BOEHM13.001C1                                              PATENT

## HORMONAL CONTRACEPTIVE PRODUCT

### Related Applications

[0001]     The application is a continuation of U.S. Application No. 09/508,648, filed June 5, 2000, which is the U.S. National Phase under 35 U.S.C. §371 of International Application PCT/DE98/02636, filed September 11, 1998, which claims priority to German Application No. DE 19739916.9, filed September 11, 1997.

### Background of the Invention

Field of the Invention

[0002]     The present invention relates to a hormonal contraceptive product with two hormonal components, the use thereof and a hormonal contraception process.

Description of the Related Art

[0003]     Since hormonal contraceptives became available in the 1960's, a number of hormonal components have been investigated with regards to their suitability in the most varied administration diagrams.  A fundamental subdivision into combination and sequential products is possible.

[0004]     For example, if the desired cycle time is 28 days, in the case of the known combination products administration takes place over 21 days in a constant or varying absolute and/or relative dosage of a combination of an estrogen product and a gestagen product, in which the estrogen product can e.g. be natural estrogen or synthetic ethinyl estradiol and the taking of the aforementioned 21 daily units is followed by a seven-day interval where there is a withdrawal bleeding simulating natural menstruation.

[0005]     In the known sequential products, once again for a desired cycle time of 28 days, administration takes place for 7 days of a pure estrogen product and then for 15 days of a combination of an estrogen product and a gestagen product and here again there is then a taking-free period of e.g. 6 days when withdrawal bleeding occurs.  It is admittedly already known to bridge the inherent taking intervals of combination and sequential products in the interest of greater taking security by administering within the days in question placebos.

-1-

However, it has hitherto always been assumed that during the roughly one-week taking interval no hormones of the present type should be administered, in order to ensure a reliable withdrawal bleeding. Only in the case of substitution products in the menopause of older women have hormones been administered throughout the cycle, e.g. in the sequence 10 days estrogen product, 11 days combination of estrogen and gestagen product, 7 days estrogen product, 7 days estrogen product in a particularly low dosage, but said substitution products are unsuitable for ovulation inhibition.

[0006]    The sequential products used in substitution therapy are in particular unsuitable for contraception because the natural estradiol does not prevent ovulation in the dosage administered and the phase in which gestagen is administered is too short, being only 11 days. However, in the case of the substitution products, the above-described sequential system guarantees a relatively good cycle control.

[0007]    German patent 43 08 406 discloses a combination contraceptive product, which comprises one or more stages. At least one stage contains the combination of three components, namely a biogenous estrogen, a synthetic estrogen and a gestagen and the further stages in each case comprise a pharmaceutically unobjectionable placebo or a biogenous or synthetic gestagen, or a biogenous or synthetic estrogen, or a combination of two components, namely a biogenous estrogen, a synthetic estrogen and a gestagen or a combination of synthetic estrogen and a gestagen.

[0008]    The description of the above document makes it clear that in the stage concept described therein there is typically a change of state over the period of time. Such a state change can take place in that the composition of the phases forming the stage is modified with respect to the components used and in that only the concentrations of the components used in the phases forming the stage undergo changes.

[0009]    The problem of the invention is to provide a hormonal contraceptive product, which ensures high contraceptive safety or reliability and prevents intermenstrual bleeding. There is also to be a further reduction in the side effects otherwise observed in hormonal contraceptive products.

-2-

6

## Summary of the Invention

[0010]     According to the invention this problem is solved by a hormonal contraceptive product having two hormonal components, the agent comprising for continuous, combined administration a first hormonal component comprising at least one gestagen and a second hormonal component comprising at least one estrogen.

[0011]     The problem is also solved by a hormonal contraception process, in which a product, which comprises at least one first hormonal component, which comprises at least one gestagen, and a second hormonal component comprising at least one estrogen is continuously administered.

[0012]     According to another aspect of the invention the product according to the invention is used for inhibiting ovulation.

[0013]     According to a further aspect of the invention the product according to the invention is used for the treatment and/or prophylaxis of breast tumours.

[0014]     According to another embodiment the invention proposes that gestagen as the first hormonal component is chosen from the group comprising progesterone, chlormadinone acetate, norethisterone acetate, cyproterone acetate, desogestrel, levonorgestrel, other natural and/or synthetic gestagens, antigestagens and hormonal analogs with gestagen or antigestagen action, as well as hormonal compounds which rapidly split off at least one gestagen following taking.

[0015]     In the product according to the invention, the estrogen as the second hormonal component can be selected from the group comprising synthetic estrogens, biogenous estrogens, antiestrogens and hormonal analogs with estrogen or antiestrogen action.

[0016]     In a preferred embodiment the synthetic estrogen is selected from the group comprising ethinyl estradiol, mestranol and the like, as well as hormonal compounds rapidly splitting off at least one synthetic estrogen following taking.

[0017]     In particularly preferred manner the synthetic estrogen is ethinyl estradiol.

[0018]     In preferred embodiments the daily administered ethinyl estradiol quantity is 1 to 20 μg.  In particularly preferred manner, the daily administered ethinyl estradiol quantity is 5 to 10 μg.

-3-

7

[0019]    According to the invention the biogenous estrogen is selected from the group comprising estradiol, estriol, estrone, estrane, etc., as well as hormonal compounds rapidly splitting off at least one biogenous estrogen after taking.

[0020]    According to an embodiment the estradiol comprises 17-α-estradiol and/or 17-β-estradiol.

[0021]    According to another embodiment the daily administered biogenous estrogen quantity in the case of estradiol, particularly α and β-estradiol, is 0.1 to 2 mg and in the case of conjugate estrogens 0.05 to 0.5 mg.

[0022]    In an embodiment the product according to the invention can be administered orally.

[0023]    In an alternative embodiment the product according to the invention can be administered transdermally.

[0024]    In a second alternative embodiment the product according to the invention can be administered intravaginally.

[0025]    In a third alternative embodiment the product according to the invention can be in depot injection form.

[0026]    In a fourth alternative embodiment the product according to the invention can be administered as a hormonal implant.

[0027]    Finally, the daily units in each case comprising both hormonal components, are placed in spatially separated and individually removable manner in a packaging unit.

[0028]    In an embodiment of the process according to the invention the first hormonal component can be administered in combination with the second hormonal component.

[0029]    In another embodiment of the process according to the invention the product according to the invention is administered.

## Detailed Description of the Preferred Embodiment

[0030]    The invention is based on the surprising finding that as a result of the continuous, combined administration of a product comprising two hormonal components,

-4-

8

namely a first hormonal component comprising at least one gestagen and a second hormonal component comprising at least one estrogen, a high contraceptive reliability can be achieved.

[0031]    In accordance with modern opinion, estrogens are not understood to cover steroid molecules, which preferably evolve their action in that they in different ways exert a biological effect at different cell locations in different organs. Estrogens can act (1) on the cellular membrane, (2) intracellular, cytoplasmic proteins and (3) specific nuclear receptors. It has recently become known that besides the standard estrogen receptor type 1 there is a second estrogen receptor type 2, whose organ distribution is different from that of the estrogen receptor type 1.

[0032]    Thus, the above definition also covers the compounds known as "designer hormones," which have the aforementioned characteristics.

[0033]    Thus, biogenous estrogens are steroid molecules, which evolve an estrogen-like action on the membrane, cytoplasmic proteins and nuclear receptors for hydrophobic ring substances and consequently trigger biological effects corresponding to a hydrophobic steroid ring structure able to initiate an estrogen-like action in cells, organs and the complete organism.

[0034]    The term biogenous estrogens also covers those estrogens which are produced by the human body and consequently include endogenic estrogens. The biogenous estrogens used in specific embodiments of the product according to the invention are typically those which are chemically synthesized. However, it is fundamentally also possible to use compounds isolated from an organism.

[0035]    Biogenous estrogens also cover conjugate, biogenous estrogens such as e.g. estradiol valerate and estrone sulphate.

[0036]    The term antiestrogens is here understood to mean hydrophobic ring structure substances and other substances able to specifically and selectively counteract the above-described estrogen action on cells, organs or the overall organism.

[0037]    Continuous administration is here understood to mean an administration uninterrupted over the use period, in which there are no hormonal component taking-free intervals. This means that there is no interruption of the administration of the product by administering placebos in place of the hormonal product. Thus, over the administration

-5-

9

period typically lasting several months to years there are no changes to the fundamental composition of the hormonal components. Instead over the entire administration period the hormonal components forming the hormonal product according to the invention are administered uninterrupted and unchanged with no modification to the concentration. However, it is conceivable for the concentration of estrogen, understood in the full breadth of the concept defined here, and gestagen, also understood in the full breadth of the term defined here, can be changed for older women compared with younger women. This can also take place in such a way that over the continuous administration period initially there is a start with a specific composition and this is then adapted over a period of weeks, months and years to the changed biological needs of the women through the administration of a subsequent product, but which also comprises a product according to the present invention.

[0038]    As a result of the continuous administration of said hormonal components it is ensured that the natural hormonal processes taking place in the female organism do not interrupt the contraceptive security.

[0039]    As a result of the estrogen component, respectively by specific action of hydrophobic ring substances with an estrogen-like action, there can be a suppression of gonadotropins. This is desirable. The resulting suppression of the ovarial function is compensated by an adequate substitution of estrogen action. This prevents the development of osteoporosis, the favourable vascular effects of estrogens are maintained and there is no unfavourable influence to the lipid metabolism. By interrupting the cycle-dependent instability in the hormone system, the premenstrual syndrome can be favourably influenced. In addition, the physiological equilibrium of the coagulation system is not disturbed, because the unstable equilibrium in which the coagulation system occurs is not activated and deactivated by the up and down of hormone fluctuations. Thus, the hormonal product according to the invention is particularly suitable for women aged more than 40, where the risk of circulatory disturbances is known to increase with increasing age. There is also a reduction in the thrombosis risk, which has of late acquired considerable significance in contraceptive therapy.

[0040]    It has surprisingly also been found that on administering the product according to the invention there is a reliable continuous suppression of the menstrual cycle

-6-

10

and menstruation in the case of a very low dosage. Without wishing to be bound by this explanation, the combination of the two indicated hormonal components and in particular the low estrogen dosage would appear to be suitable for eliminating the otherwise conventional side effects of ethinyl estradiol and to drop below the administrations of more than 15 µg of ethinyl estradiol otherwise considered typically necessary in prior art contraceptives.

[0041]    The low dosages of the two hormonal components and in particular the estrogen component is made possible by the additive action of the two hormonal components, without there being any limitation to the action of the product according to the invention with respect to its contraceptive and ovulation-inhibition properties.

[0042]    The ovulation inhibition and menstrual cycle suppression reliably ensured by the product according to the invention is of great significance for certain patients, such as e.g. for top sports women, dancers and business women, who wish to exclude any reduction in their physical, intellectual and emotional efficiency as a result of the menstrual cycle. As a result of the combined, continuous administration of the two hormonal components of the product according to the invention it is possible to administer the same either orally, transdermally, intravaginally, by depot injections or hormone implants. Here again the advantages observed for the particular administration forms are obtained.

[0043]    Possible oral administration forms are all the forms known from the prior art such as e.g. tablets, dragees, pills or capsules, which are produced using conventional adjuvants and carrier substances.

[0044]    In the transdermal administration of the product according to the invention the two hormonal component forming the product can e.g. be applied to a plaster or also can be applied by transdermal, therapeutic systems and are consequently supplied to the organism. For example an already prepared combination of the two hormonal components or the latter individually can be introduced into such a system, which is based on ionotherapy or diffusion or optionally a combination of these effects.

[0045]    In the case of oral administration it has proved appropriate to place the daily units, which in case comprise a combination of the two hormonal components, in a spatially separated and individually removable manner in a packaging unit, so that it is easy to check whether the typically daily taken, oral administration form has in fact been taken. It

-7-

11

is important to ensure that there are no taking-free days. Depot injections can be administered at 1 to 6 months or longer intervals. Hormonal implants contain both hormonal components and deliver the same over a period of preferably 3 to 6 months.

[0046]    When using the product according to the invention it has surprisingly been found that the treatment and/or prophylaxis of breast tumours is possible. The latest breast cancer risk research has revealed that mutations, which can be hereditary or acquired, occur in certain risk genes. Modern cancer therapy assumes that a cancerogenic mutation is present on one of the two alleles of a gene which is initially controlled by the other, healthy allele. If a further mutation occurs in a specific organ cell on the second allele, then uncontrolled, malignant growth can occur.

[0047]    Mutations on the second allele particularly frequently occur in given phases of the cell cycle, namely in the G1 phase. Every four weeks the menstrual cycle drives the breast cell in a cell cycle, "opens" the genome for mutations, which are either repaired or apoptotically "removed". Under the conditions of the conventional combined or sequential contraception treatment a woman can have 500 to 700 cycles over her life span, whereas under natural conditions a women has a maximum of 20 to 30 cycles. Thus, in an unusually frequently number of cell cycles over in each case 8 days a considerable mutation risk is introduced into the stimulated breast tissue. If the menstrual cycle is suppressed, as is possible with the product according to the invention, the breast cells are brought into a "rest phase" and it is scientifically ensured that in the rest phase less cancerogenic mutations are introduced into a tissue than in a stimulated tissue. This reduces by a multiple mutagenesis, i.e. the breast cancer risk.

[0048]    The aforementioned use of the product according to the invention for the treatment and/or prophylaxis of breast cancers is in particular associated with special advantages if the users of the product are high-risk subjects, such as e.g. those with a high family breast cancer risk.

[0049]    The quantity of administered gestagens and estrogens substantially corresponds to the quantity of comparable prior art products. The examples provide further information concerning the quantities to be administered daily of the different compounds forming the first and/or second hormonal components.

-8-

12

[0050]    The invention is explained in greater detail hereinafter relative to examples revealing further features, advantages and embodiments of the present invention.

Example 1

[0051]    For contraceptive treatment use was made of a product which per daily unit in table form contained 5 μg of ethinyl estradiol and 2 mg of norethisterone acetate. It is noteworthy that norethisterone acetate can be used in a concentration range of 0.5 to 5 mg. The product was administered for 9 months and revealed a very good contraceptive reliability whilst completely suppressing the menstrual cycle with no side effects.    Within the framework of the present investigation it was ensured that the test persons took the product daily, i.e. without any taking interval, over the entire aforementioned time period.

Example 2

[0052]    For contraceptive treatment use was made of a product which per daily unit in table form contains 0.5 mg of estriol and 2 mg of chlormadinone acetate. It is noteworthy that estriol can be used in a concentration range of 0.5 to 3 mg and chlormadinone acetate in a concentration range of 0.75 to 5 mg.    The product was administered for 12 months without any taking interval.  The mode of action corresponded to that of example 1.

Example 3

[0053]    For contraceptive treatment use was made of a product which in each daily unit in tablet form contained 0.5 mg of estradiol valerate and 2 mg of lynestrenol. It is noteworthy that estradiol valerate can be used in a  concentration range of 0.5 to 5 mg and lynestrenol in a concentration range of 0.5 to 4.5 mg.  The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

Example 4

[0054]    For contraceptive treatment use was made of a product containing per daily unit in tablet form 7.5 μg of ethinyl estradiol and 75 μg of desogestrel. It is noteworthy that desogestrel can be used in a concentration range of 50 to 200 μg.  The product was administered for 12 months without any taking interval. The mode of action corresponded to that of example 1.

-9-

Example 5

[0055]    For contraceptive treatment use was made of a product containing per daily unit in tablet form 20 mg of tamoxifen 2 mg of lutenyl. It is noteworthy that tamoxifen can be used in a concentration range of 10 to 50 mg and lutenyl in a concentration range of 1 to 5 mg. This product is preferably suitable for contraception in women with a family breast cancer risk. The product was administered for 12 months without any taking interval and the mode of action corresponded to that of example 1.

Example 6

[0056]    For contraceptive treatment use was made of a product containing per daily unit in tablet form 50 mg of raloxifen and 2.5 mg of medroxyprogesterone acetate (MPA). It is noteworthy that raloxifen can be used in a concentration range of 30 to 100 mg and medroxyprogesterone acetate in a concentration range of 2 to 10 mg. This combination is preferably suitable for women with a family breast cancer risk and young women who have suffered breast cancer. The product was administered for 12 months without any taking interval and the mode of action corresponded to that of example 1.

Example 7

[0057]    For contraceptive treatment use was made of an agent containing per daily unit in tablet form 10 μg of ethinyl estradiol and tibolone in a daily concentration of 2 mg. It is noteworthy that tibolone can be used with a concentration of 1 to 10 mg. The product was administered without any taking interval for 12 months and the mode of action corresponded to that of example 1.

Example 8

[0058]    For contraceptive treatment use was made of a product containing per daily unit in table form 10 μg of ethinyl estradiol and as the antiestrogen substance Ro486 in a concentration of 2.5 mg. It is noteworthy that R0486 can be used in a concentration range of 1 to 7.5 mg. The product was administered without any taking interval over a period of 12 months and the mode of action correspond to that of example 1.

[0059]    The features of the invention described in the description and claims can be essential individually and in random combination for the implementation of the different embodiments of the invention.

-10-

14

WHAT IS CLAIMED IS:

1. A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

2. The method of Claim 1, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

3. The method of Claim 2, wherein the administration is oral.

4. The method of Claim 3, wherein the administration period is 9 months.

5. The method of Claim 3, wherein the administration period is 12 months.

6. A method for continuous suppression of the menstrual cycle in a woman, comprising administering orally, transdermally or via depot to the woman in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

7. The method of Claim 6, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

8. The method of Claim 7, wherein the administration is oral.

9. The method of Claim 8, wherein the administration period is 9 months.

10. The method of Claim 8, wherein the administration period is 12 months.

11. A method for treating or inhibiting premenstrual syndrome, which comprises administering orally, transdermally, or via depot, to a mammal in need thereof, for a continuous and uninterupted administration period, an effective amount of a gestagen and an estrogen, wherein said gestagen and estrogen are present in unchanged dosages throughout the administration period.

12. The method of Claim 11, wherein said gestagen is selected from the group consisting of progesterone, chlormadinone acetate, northisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and

-11-

15

said estrogen is selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane.

13.    The method of Claim 12, wherein said estrogen is ethinyl estradiol, which is present at a dosage of 1-20 µg per day.

14. The method of Claim 13, wherein said gestagen is levonorgesterel.

15. The method of Claim 14, wherein the administration is oral.

-12-

16

# HORMONAL CONTRACEPTIVE PRODUCT

### Abstract of the Disclosure

[0060]    The present invention relates to a hormonal contraceptive product having two hormonal components, an estrogen and a gestagen, and a method for the continuous suppression of the menstrual cycle by uninterrupted administration of the product of the invention.

\\KMOBNET\FILES\Docs\Mrb\Red Files\Boehm\Boehm13\BOEHM13.001C1-spec-c.doc
111402

17

$\mathcal{I} \, \mathcal{FW}$

DOCKET NO.: AM101403/WYNC-0963                                    PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of:

Rolf-Dieter Hesch                          Confirmation No.: Not yet known

Application No.: 10/867,954                 Group Art Unit: Not yet known

Filing Date: June 15, 2004                  Examiner: Not yet assigned

For:   HORMONAL CONTRACEPTIVE PRODUCT

DATE OF DEPOSIT: August 19, 2004

I HEREBY CERTIFY THAT THIS PAPER IS BEING
DEPOSITED WITH THE UNITED STATES POSTAL
SERVICE AS FIRST CLASS MAIL, POSTAGE PREPAID,
ON THE DATE INDICATED ABOVE AND IS
ADDRESSED TO THE UNITED STATES PATENT AND
TRADEMARK OFFICE, P.O. BOX 1450, ALEXANDRIA,
VA 22313-1450.

TYPED NAME: Heather Kite

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

## INFORMATION DISCLOSURE STATEMENT

Pursuant to 37 CFR § 1.56 and in accordance with 37 CFR §§ 1.97-1.98, information relating to the above-identified application is hereby disclosed. Inclusion of information in this statement is not to be construed as an admission that this information is material as that term is defined in 37 CFR § 1.56(b).

☒   In accordance with § 1.97(b), since this Information Disclosure Statement is being filed either within three months of the filing date of the above-identified application, within three months of the date of entry into the national stage of the above identified application as set forth in § 1.491, before the mailing date

18

DOCKET NO.: AM101403/WYNC-0963 - 2 -                    PATENT

of a first Office Action on the merits of the above-identified application, or before the mailing date of a first Office Action after the filing of request for continued examination under § 1.114, no additional fee is required.

☐    In accordance with § 1.97(c), this Information Disclosure Statement is being filed after the period set forth in § 1.97(b) above but before the mailing date of either a Final Action under § 1.113 or a Notice of Allowance under § 1.311, or before an action that otherwise closes prosecution in the application, therefore:

       ☐    Certification in Accordance with § 1.97(e) is attached; or

       ☐    The fee of **$180.00** as set forth in § 1.17(p) is attached.

☐    In accordance with § 1.97(d), this Information Disclosure Statement is being filed after the mailing date of either a Final Action under § 1.113 or a Notice of Allowance under § 1.311 but before, or simultaneously with, the payment of the Issue Fee, therefore included are: Certification in Accordance with § 1.97(e); and the submission fee of **$180.00** as set forth in § 1.17(p).

☐    Copies of each of the references listed on the attached Form PTO-1449 are enclosed herewith.

☒    Copies of references listed on the attached Form PTO-1449 are enclosed herewith EXCEPT THAT:

☒    Copies of references **1-6** listed on the attached Form PTO 1449 are not required to be submitted pursuant to the June 30, 2003 recent revisions to 37 CFR § 1.98(a)(2)(i).

19

**DOCKET NO.: AM101403/WYNC-0963  - 3 -**                                    **PATENT**

☐        In view of the voluminous nature of references [list as appropriate], and the likelihood that these references are available to the Examiner, copies are not enclosed herewith.

☒        In accordance with § 1.98(d), copies of the following references listed on the attached Form PTO-1449 are not enclosed herewith because they were previously cited by or submitted to the U.S. Patent and Trademark Office in patent application(s) for which a claim for priority under 35 U.S.C.§ 120 have been made in the instant application:

☒        Copies of references **7, 8 and 17-19** listed on the attached Form PTO-1449 were previously cited by or submitted to the Patent and Trademark Office in prior Application No. **10/299,628**, filed **November 19, 2002.**

Please charge any deficiency or credit any overpayment to Deposit Account No. 23-3050. This form is submitted in duplicate.

English language equivalents or abstracts have been provided for those listed references which are not in the English language.

Date: August 19, 2004

Leslie E. Aberman
Registration No. 54,836

WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia, PA  19103
Telephone:  (215) 568-3100
Facsimile:  (215) 568-3439

© 2004 WW

20



Sheet 1 of 1

| **Form PTO-1449 Modified**<br><br>List of Patent and Publications<br>Cited by Applicant<br>(Use several sheets if necessary)<br><br>U.S. Department of Commerce<br>Patent and Trademark Office | | Docket No.<br>AM101403/<br>WYNC-0963 | | Application No.<br>10/867,954 |
|---|---|---|---|---|
| | | Applicant<br>Rolf-Dieter Hesch | | |
| | | Filing Date<br>June 15, 2004 | Group | Confirmation No. |

### U. S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| | 1 | 4,855,305 | 08/08/89 | Cohen | 514 | 171 |
| | 2 | 4,888,331 | 12/19/89 | Elger et al. | 514 | 170 |
| | 3 | 5,418,228 | 05/23/95 | Bennik | 514 | 182 |
| | 4 | 5,898,032 | 04/27/99 | Hodgen | 514 | 178 |
| | 5 | 5,904,931 | 05/18/99 | Lipp et al. | 424 | 449 |
| | 6 | Re. 36,247 | 07/06/99 | Plunkett et al. | 514 | 170 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | Translation NO |
|---|---|---|---|---|---|---|
| | 7 | EP 0 309 263 A1 | 03/29/89 | Europe | X | |
| | 8 | EP 0 628 312 A1 | 12/14/94 | Europe | | X |
| | 9 | EP 0 399 631 B1 | 09/16/94 | Europe | X | |
| | 10 | DE 39 16381 A1 | 11/22/90 | Germany (EP 0 399 631) | | X |
| | 11 | DE 37 33 478 A1 | 04/13/89 | Germany (US 4,888,331) | | X |
| | 12 | DE 40 19 670 A1 | 01/09/92 | Germany | X<br>abstract only | |
| | 13 | DE 43 08 406 C1 | 06/16/94 | Germany | X<br>abstract only | |
| | 14 | DE 44 05 591 C1 | 07/20/95 | Germany (WO 95/22332) | | X |
| | 15 | DE 44 05 898 A1 | 08/24/95 | Germany (US 5,904,931) | | X |
| | 16 | WO 95/22332 A1 | 08/24/95 | PCT | X<br>abstract only | |

| Examiner Initial | | OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) |
|---|---|---|
| | 17 | Coutinho, E.M. et al., (1995) Comparative Study on Intermittent Versus Continuous use of a Contraceptive Pill Administered by Vaginal Route. Contraception 51(6):355-8 |
| | 18 | Davies, Graham C., et al. (1992) Ovarian Activity and Bleeding Patterns During Extended Continuous Use of a Combined Contraceptive Vaginal Ring. Contraception 46(3):269-278 |
| | 19 | Rizk, Diaa E. E., et al. (1996) Congenital Afibrinogenemia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive. Am J. Hematol 52(3):237-8 |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

© 2004 WW

DOCKET NO.: AM101403C3/WYNC-0963                    **PATENT**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In Re Application of:

Rolf-Dieter Hesch                              Confirmation No.: 5211

Application No.: 10/867,954                    Group Art Unit: 2171

Filing Date: June 15, 2004                     Examiner: Not yet assigned

For:   HORMONAL CONTRACEPTIVE PRODUCT

DATE OF DEPOSIT: February 3, 2005

I HEREBY CERTIFY THAT THIS PAPER IS BEING
DEPOSITED WITH THE UNITED STATES POSTAL
SERVICE AS FIRST CLASS MAIL, POSTAGE PREPAID,
ON THE DATE INDICATED ABOVE AND IS
ADDRESSED TO THE UNITED STATES PATENT AND
TRADEMARK OFFICE, P.O. BOX 1450, ALEXANDRIA,
VA 22313-1450.

TYPED NAME: Heather Kite

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Pursuant to 37 CFR § 1.56 and in accordance with 37 CFR §§ 1.97-1.98, information relating to the above-identified application is hereby disclosed. Inclusion of information in this statement is not to be construed as an admission that this information is material as that term is defined in 37 CFR § 1.56(b).

☒      In accordance with § 1.97(b), since this Information Disclosure Statement is being filed either within three months of the filing date of the above-identified application, within three months of the date of entry into the national stage of

22

**DOCKET NO.: AM101403/WYNC-0963- 2 -**    *6*    **PATENT**

the above identified application as set forth in § 1.491, before the mailing date

of a first Office Action on the merits of the above-identified application, or

before the mailing date of a first Office Action after the filing of request for

continued examination under § 1.114, no additional fee is required.

☐    In accordance with § 1.97(c), this Information Disclosure Statement is being

filed after the period set forth in § 1.97(b) above but before the mailing date of

either a Final Action under § 1.116 or a Notice of Allowance under § 1.311, or

before an action that otherwise closes prosecution in the application, therefore:

☐    Certification in Accordance with § 1.97(e) is attached; or

☐    The fee of **$180.00** as set forth in § 1.17(p) is attached.

☐    In accordance with § 1.97(d), this Information Disclosure Statement is being

filed after the mailing date of either a Final Action under § 1.113 or a Notice

of Allowance under § 1.311 but before, or simultaneously with, the payment

of the Issue Fee, therefore included are: Certification in Accordance with §

1.97(e); and the submission fee of **$180.00** as set forth in § 1.17(p).

☒    Copies of reference numbers 20-26 listed on the attached Form PTO-1449 are

enclosed herewith.

☐    Copies of reference numbers          -          on the attached Form PTO 1449

are not required to be submitted pursuant to 37 CFR § 1.98(a)(2)(i).

☐    Copies of references          -          are not being submitted because

they were previously cited by or submitted to the U.S. Patent and

Trademark Office in patent application number          , filed          for

which a claim for priority under 35 U.S.C. § 120 has been made in the

instant application.

23

**DOCKET NO.:  AM101403/WYNC-0963- 3 -**                                    **PATENT**

☒      The relevance of those listed references which are not in the English language is as

follows:

English language translations have been provided for those listed   references which

are not in the English language.

Please charge any deficiency or credit any overpayment to Deposit Account No. 23-

3050.  This form is submitted in duplicate.

Date:  February 3, 2005

Leslie E. Aberman
Registration No. 54,836

WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia, PA  19103
Telephone:  (215) 568-3100
Facsimile:  (215) 568-3439

© 2005 WW

24



Sheet 1 of 1

| **Form PTO-1449 Modified**<br><br>List of Patent and Publications<br>Cited by Applicant<br>(Use several sheets if necessary)<br><br>U.S. Department of Commerce<br>Patent and Trademark Office | Docket No.<br>AM101403C3/<br>WYNC-0963 | Application No.<br>10/867,954 |
|---|---|---|
| | Applicant<br>Rolf-Dieter Hesch | |
| | Filing Date<br>June 15, 2004 | Group<br>2171 |
| | Confirmation No.<br>5211 | |

### U. S. PATENT DOCUMENTS

| Examiner Initial | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | NO |
|---|---|---|---|---|---|---|
| | 20 | DE 40 19 670 A1 | 01/09/92 | Germany | X | |
| | 21 | DE 44 05 898 A1 | 08/24/95 | Germany | X | |
| | 22 | DE 43 08 406 C1 | 06/16/94 | Germany | X | |
| | 23 | DE 44 05 591 C1 | 07/20/95 | Germany | X | |
| | 24 | DE 37 33 478 A1 | 04/13/89 | Germany | X | |
| | 25 | DE 39 16 381 A1 | 11/22/90 | Germany | X | |
| | 26 | EP 0 628 312 B1 | 04/27/00 | Europe | X | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|

© 2005 WW

25



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/867,954 | 06/15/2004 | Rolf-Dieter Hesch | WYNC-0963 | 5211 |

38791          7590          06/01/2006
WOODCOCK WASHBURN LLP
ONE LIBERTY PLACE - 46TH FLOOR
PHILADELPHIA, PA 19103

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 06/01/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

26

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 10/867,954 | HESCH, ROLF-DIETER |
| | **Examiner** | **Art Unit** | |
| | Barbara P. Badio, Ph.D. | 1617 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____.

2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-15</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-15</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☒ All   b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☒ Certified copies of the priority documents have been received in Application No. <u>09/508,648</u>.

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date <u>8/23/04; 2/05</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

Application/Control Number: 10/867,954                                          Page 2
Art Unit: 1617

### First Office Action on the Merits

### *Double Patenting*

1.      The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees.   A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).
        A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.
        Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

2.      Claims 1-15 are rejected on the ground of nonstatutory obviousness-type double

patenting as being unpatentable over claims 1-3 of U.S. Patent No. 6,500,814.

Although the conflicting claims are not identical, they are not patentably distinct from

each other because they are both drawn to the use of a contraceptive product

comprising an estrogen and a progestin for hormonal contraception.  The difference

between the two is in the recitation of an administration period of greater than 110 days

in U.S. Patent No. 6,500,814.  However, the present specification discloses

administration of the claimed product for greater than 110 days (see Examples 1-8 of

28

Application/Control Number: 10/867,954                          Page 3
Art Unit: 1617

the present specification).  Therefore, the administration period recited by the cited

patent is anticipated by the instant invention.


3.    Claims 1-15 are rejected on the ground of nonstatutory obviousness-type double

patenting as being unpatentable over claims 1-17 of U.S. Patent No. 6,481,779.

Although the conflicting claims are not identical, they are not patentably distinct from

each other because they are both drawn to the use of a contraceptive product

comprising an estrogen and a progestin for hormonal contraception.  The difference

between the two is in the scope of the claimed composition.  Unlike the cited patent, the

instant claims recite a composition comprising levonorgestrel and ethinyl estradiol.

However, the cited patent discloses the utilization of both levonorgestrel and ethinyl

estradiol (see Examples 1-5 and claim 17 of the cited reference).  Therefore, the skilled

artisan would have motivated to modify the exemplified composition taught by the cited

patent utilizing levonorgestrel instead of norethisterone acetate or chlormadinone

acetate with the reasonable expectation that the composition(s) obtained would be

useful as taught by the reference.


### Claim Rejections - 35 USC § 103

4.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

29

5.      Claims 1-3, 6-8 and 11-15 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Hodgen (US Patent No. 5,898,032) and Casper (EP 0 309 263) in

combination.

        Hodgen teaches a contraceptive composition comprising an estrogen and a

progestin given monophasically for 60-110 consecutive days (see the entire article,

especially col. 3, lines 35-65).  The reference teaches (a) estrogens such as mestranol,

estradiol and ethinyl estradiol and progestins such as norethindrone acetate and

levonorgestrel (see col. 3, line 58 – col. 4, line 9; examples 1-5 and claims 1-11) and

(b) ethinyl estradiol as the preferred estrogen used preferably in an amount of about 10-

20 mcg (see col. 3, lines 58-64).

        Casper teaches a contraceptive composition comprising a combination of an

estrogen and a progestin (see the entire article, especially col. 13, lines 15-48;

examples 1-24 and claims 1-15).  The reference teaches estrogens such as ethinyl

estradiol, mestranol, estradiol and quinestranol and progestins such as progesterone,

cyproterone acetate, norethindrone acetate and levonorgestrel (see col. 12, lines 5-35;

especially example 10).  The reference also teaches that monophasic contraceptive

formulations are known in the art (see col. 3, lines 10-15).

        The combined teachings of the Hodgen and Casper make obvious the utilization

of a composition comprising an estrogen such as ethinyl estradiol and a progestin such

as levonorgestrel monophasically as a contraceptive composition (see especially

Casper, example 10).  The motivation to use a combination of an estrogen and a

30

progestin is based on teachings of the above cited prior art that said composition is

characterized by a reduced number of withdrawal bleeding (see '032, col. 3, lines 25-

37; '263, col. 11, lines 35-37).

Claims 11-15 differ from the reference by reciting the treatment or inhibition of

premenstrual syndrome. However, administration of the prior art composition as a

contraceptive would inherently inhibit or treat premenstrual syndrome in said individual.

Thus, the claimed method is prima facie obvious.

### *Telephone Inquiry*

6.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

571-272-0609. The examiner can normally be reached on M-F from 6:30am-4:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sreenivasan Padmanabhan can be reached on 571-272-0629. The fax

phone number for the organization where this application or proceeding is assigned is

571-273-8300.

31

Application/Control Number: 10/867,954                          Page 6
Art Unit: 1617

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Barbara Badio
Barbara P. Badio, Ph.D.
Primary Examiner
Art Unit 1617

BB
May 30, 2006

32



Sheet 1 of 1

| **Form PTO-1449 Modified** | Docket No.<br>AM101403/<br>WYNC-0963 | Application No.<br>10/867,954 | |
|---|---|---|---|
| List of Patent and Publications<br>Cited by Applicant<br>(Use several sheets if necessary) | Applicant<br>Rolf-Dieter Hesch | | |
| U.S. Department of Commerce<br>Patent and Trademark Office | Filing Date<br>June 15, 2004 | Group | Confirmation No. |

### U. S. PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| DD | 1 | 4,855,305 | 08/08/89 | Cohen | 514 | 171 |
| | 2 | 4,888,331 | 12/19/89 | Elger et al. | 514 | 170 |
| | 3 | 5,418,228 | 05/23/95 | Bennik | 514 | 182 |
| | 4 | 5,898,032 | 04/27/99 | Hodgen | 514 | 178 |
| | 5 | 5,904,931 | 05/18/99 | Lipp et al. | 424 | 449 |
| DD | 6 | Re. 36,247 | 07/06/99 | Plunkett et al. | 514 | 170 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | | Document No. | Date | Country | Translation YES | Translation NO |
|---|---|---|---|---|---|---|
| DD | 7 | EP 0 309 263 A1 | 03/29/89 | Europe | X | |
| | 8 | EP 0 628 312 A1 | 12/14/94 | Europe | | X |
| | 9 | EP 0 399 631 B1 | 09/16/94 | Europe | X | |
| | 10 | DE 39 16381 A1 | 11/22/90 | Germany (EP 0 399 631) | | X |
| | 11 | DE 37 33 478 A1 | 04/13/89 | Germany (US 4,888,331) | | X |
| | 12 | DE 40 19 670 A1 | 01/09/92 | Germany | X<br>abstract only | |
| | 13 | DE 43 08 406 C1 | 06/16/94 | Germany | X<br>abstract only | |
| | 14 | DE 44 05 591 C1 | 07/20/95 | Germany (WO 95/22332) | | X |
| | 15 | DE 44 05 898 A1 | 08/24/95 | Germany (US 5,904,931) | | X |
| DD | 16 | WO 95/22332 A1 | 08/24/95 | PCT | X<br>abstract only | |

| Examiner Initial | | OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) |
|---|---|---|
| DD | 17 | Coutinho, E.M. et al., (1995) Comparative Study on Intermittent Versus Continuous use of a Contraceptive Pill Administered by Vaginal Route. Contraception 51(6):355-8 |
| | 18 | Davies, Graham C., et al. (1992) Ovarian Activity and Bleeding Patterns During Extended Continuous Use of a Combined Contraceptive Vaginal Ring. Contraception 46(3):269-278 |
| DD | 19 | Rizk, Diaa E. E., et al. (1996) Congenital Afibrinogenemia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive. Am J. Hematol 52(3):237-8 |

| EXAMINER    *Dadio* | DATE CONSIDERED    5/30/06 |
|---|---|

© 2004 WW

33

Sheet 1 of 1

| Form PTO-1449 Modified | Docket No.<br>AM101403C3/<br>WYNC-0963 | Application No.<br>10/867,954 |
|---|---|---|
| List of Patent and Publications<br>Cited by Applicant<br>(Use several sheets if necessary) | Applicant<br>Rolf-Dieter Hesch | |
| U.S. Department of Commerce<br>Patent and Trademark Office | Filing Date<br>June 15, 2004 | Group<br>2171 |
| | Confirmation No.<br>5211 | |

## U. S. PATENT DOCUMENTS

| Examiner<br>Initial | | Document<br>No. | Date | Name | Class | Subclass |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner<br>Initial | | Document No. | Date | Country | Translation | |
|---|---|---|---|---|---|---|
| | | | | | YES | NO |
| BB | 20 | DE 40 19 670 A1 | 01/09/92 | Germany | X | |
| | 21 | DE 44 05 898 A1 | 08/24/95 | Germany | X | |
| | 22 | DE 43 08 406 C1 | 06/16/94 | Germany | X | |
| | 23 | DE 44 05 591 C1 | 07/20/95 | Germany | X | |
| | 24 | DE 37 33 478 A1 | 04/13/89 | Germany | X | |
| | 25 | DE 39 16 381 A1 | 11/22/90 | Germany | X | |
| BB | 26 | EP 0 628 312 B1 | 04/27/00 | Europe | X | |
| | | | | | | |
| | | | | | | |

| EXAMINER    *Badio* | DATE CONSIDERED    5/30/06 |
|---|---|

© 2005 WW

34

| *Notice of References Cited* | Application/Control No. 10/867,954 | Applicant(s)/Patent Under Reexamination HESCH, ROLF-DIETER | |
|---|---|---|---|
| | Examiner Barbara P. Badio, Ph.D. | Art Unit 1617 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,898,032 | 04-1999 | Hodgen, Gary D. | 514/178 |
| * | B | US-6,451,779 | 09-2002 | Hesch, Rolf-Dieter | 514/171 |
| * | C | US-6,500,814 | 12-2002 | Hesch, Rolf-Dieter | 514/170 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| * | N | EP0,309,263 | 03-1989 | EP | Casper | - |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited                    Part of Paper No. 20060530

09 - 05 - 06

DOCKET NO.: AM101403C3 (WYNC-0963)                    **PATENT**

SEP 0 1 2006

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In Re Application of:                    Confirmation No.: **5211**
**Rolf-Dieter Hesch**

Application No.: **10/867,954**          Group Art Unit: **1617**

Filing Date: **June 15, 2004**          Examiner: **Barbara P. Badio**

For:    **HORMONAL CONTRACEPTIVE PRODUCT**

EXPRESS MAIL LABEL NO: EV 765638241 US
DATE OF DEPOSIT: September 1, 2006

EV765638241US

☒ MS Amendment ☐ MS AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

### REPLY TRANSMITTAL LETTER

☐    A Preliminary Amendment.

☒    Reply Responsive to the Office Action Dated June 1, 2006.

☐        Supplemental to the Paper filed            .

☐    A Substitute Specification (pages 1 -         ) in clean form.

    ☐    A substitute specification (pages 1 -         ) with markings.

☐    An Abstract is enclosed.

☐        replacement sheets of drawings are enclosed comprising figures        .

☐    Request is hereby made to accept black and white photograph(s) in this case, as they
    are the only practicable medium for illustrating the claimed invention. One (1) set of
    black and white photographs comprising figure(s)        is submitted herewith.

☐    Petition is hereby made to accept drawing(s)/photograph(s) in this case.

36                    Page 1 of 4

**DOCKET NO.: AM101403C3 (WYNC-0963)**                    **PATENT**

☐   Three (3) sets of color drawing(s)/photograph(s) and black and white photocopy that accurately depicts to the extent possible, the subject matter shown in the color drawing(s)/photograph(s), are enclosed, comprising figures

☐   An amendment to the first paragraph in that portion of the Brief Description of the Drawings is also enclosed herewith advising that the patent contains at least one drawing/photograph in color.

☐ A Certified Copy of each of the following applications:      is enclosed.

☐ An Assignee Power of Attorney is enclosed.

☐ Information Disclosure Statement.

    ☐   Attached Form 1449.

    ☐   A copy of each reference as listed on the attached Form PTO-1449 is enclosed herewith.

☐ A Terminal Disclaimer is attached.

☐ Appendices as follows:

☐ Other

☒ **No Additional Fee is Due.**

☐ Applicant(s) has previously claimed small entity status under 37 CFR § 1.27.

☐ Applicant(s) by its/their undersigned attorney, claims small entity status under 37 CFR § 1.27 as

☐ This application is no longer entitled to small entity status. It is requested that this be noted in the files of the U.S. Patent and Trademark Office.

37                      Page 2 of 4

DOCKET NO.: AM101403C3 (WYNC-0963)                    **PATENT**

| | REMAINING AFTER AMENDMENT | HIGHEST PAID FOR | EXTRA | SMALL ENTITY | | NOT SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| | | | | RATE | FEE | RATE | FEE |
| TOTAL CLAIMS | 15 | 20 | 0 | $25 EACH | $ | $50 EACH | $0 |
| INDEP. CLAIMS | 3 | 3 | 0 | $100 EACH | $ | $200 EACH | $0 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT | | | | $180 | $ | $360 | $0 |
| ☐ ONE MONTH EXTENSION OF TIME | | | | $60 | $ | $120 | $0 |
| ☐ TWO MONTH EXTENSION OF TIME | | | | $225 | $ | $450 | $0 |
| ☐ THREE MONTH EXTENSION OF TIME | | | | $510 | $ | $1020 | $0 |
| ☐ FOUR MONTH EXTENSION OF TIME | | | | $795 | $ | $1590 | $0 |
| ☐ FIVE MONTH EXTENSION OF TIME | | | | $1080 | $ | $2160 | $0 |
| ☐ LESS ANY EXTENSION FEE ALREADY PAID | | | | minus | ($        ) | minus | ($0) |
| ☐ TERMINAL DISCLAIMER | | | | $65 | $ | $130 | $0 |
| ☐ OTHER FEE OR SURCHARGE AS FOLLOWS: | | | | | | | |
| TOTAL FEE DUE | | | | | $ | | $0 |

☐    A check in the amount of **$_____.00** is attached.  Please charge any deficiency or credit any overpayment to Deposit Account 23-3050.

☐    Please charge Deposit Account No. 23-3050 in the amount of _____.00.  This sheet is attached in duplicate.

☒    The Commissioner is hereby authorized to charge any deficiency or credit any overpayment of the fees associated with this communication to Deposit Account No. 23-3050.

☐    Petition is hereby made under 37 CFR § 1.136(a) (fees: 37 CFR § 1.17(a)(1)-(4)) to extend the time for response to the Office Action of        to and through comprising an extension of the shortened statutory period of        month(s).

38                                        Page 3 of 4

**DOCKET NO.: AM101403C3 (WYNC-0963)**                    **PATENT**

☒       The Commissioner is hereby requested to grant an extension of time for the appropriate length of time, should one be necessary, in connection with this filing or any future filing submitted to the U.S. Patent and Trademark Office in the above-identified application during the pendency of this application. The Commissioner is further authorized to charge any fees related to any such extension of time to Deposit Account 23-3050. This sheet is provided in duplicate.

Date: September 1, 2006

Wendy A. Choi
Registration No. 36,697

Woodcock Washburn LLP
One Liberty Place - 46th Floor
Philadelphia PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

© 2006 WW

39                              Page 4 of 4

DOCKET NO.: AM101403 C3/WYNC-0963                                    **PATENT**
**Application No.:** 10/867,954
**Office Action Dated:** June 1, 2006

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                          Confirmation No.: **5211**
**Rolf-Dieter Hesch**

Application No.: **10/867,954**                Group Art Unit: **1617**

Filing Date: **June 15, 2004**                Examiner: **Barbara P. Badio**

For:    **Hormonal Contraceptive Product**

                              EXPRESS MAIL LABEL NO: EV765638241US
                              DATE OF DEPOSIT: September 1, 2006

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

## REPLY PURSUANT TO 37 C.F.R. § 1.111

In response to the Official Action dated **June 1, 2006**, reconsideration is respectfully requested in view of the amendments and/or remarks as indicated below:

☐    **Amendments to the Specification** begin on page    of this paper.

☒    **Amendments to the Claims** are reflected in the listing of the claims that begins on page 2 of this paper.

☐    **Amendments to the Drawings** begin on page          of this paper and include an attached replacement sheet.

☒    **Remarks** begin on page 6 of this paper.

Page 1 of 9

40

DOCKET NO.: AM101403 C3/WYNC-0963                                    PATENT
Application No.: 10/867,954
Office Action Dated: June 1, 2006

This listing of claims will replace all prior versions, and listings, of claims in the application.

*Listing of Claims*

1. *(original)*    A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

2. *(original)*    The method of claim 1, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

3. *(original)*    The method of claim 2, wherein the administration is oral.

4. *(original)*    The method of claim 3, wherein the administration period is 9 months.

5. *(original)*    The method of claim 3, wherein the administration period is 12 months.

6. *(original)*    A method for continuous suppression of the menstrual cycle in a woman, comprising administering orally, transdermally or via depot to the woman in need thereof, for a continuous and uninterrupted administration period, a contraceptive product comprising levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

7. *(original)*    The method of claim 6, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

8. *(original)*    The method of claim 7, wherein the administration is oral.

Page 2 of 9

DOCKET NO.: AM101403 C3/WYNC-0963                    PATENT
Application No.: 10/867,954
Office Action Dated: June 1, 2006

9. *(original)*    The method of claim 8, wherein the administration period is 9 months.

10. *(original)*    The method of claim 8, wherein the administration period is 12 months.

11. *(currently amended)*        A method for treating or inhibiting premenstrual syndrome,
which comprises administering orally, transdermally, or via depot, to a mammal in
need thereof, for a continuous and ~~uninterupted~~ uninterrupted administration
period, an effective amount of a gestagen and an estrogen, wherein said gestagen and
estrogen are present in unchanged dosages throughout the administration period.

12. *(original)*    The method of claim 11, wherein said gestagen is selected from the group
consisting of progesterone, chlormadinone acetate, northisterone acetate,
cyprotherone acetate, desogestrel, and levonorgestrel; and said estrogen is selected
from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone,
and estrane.

13. *(original)*    The method of claim 12, wherein said estrogen is ethinyl estradiol, which is
present at a dosage of 1-20 µg per day.

14. *(original)*    The method of claim 13, wherein said gestagen is levonorgesterel.

15. *(original)*    The method of claim 14, wherein the administration is oral.

DOCKET NO.: AM101403 C3/WYNC-0963                      **PATENT**
Application No.: 10/867,954
Office Action Dated: June 1, 2006

REMARKS

Claims 1 to 15 are pending in this application and rejected. Applicant is herein amending claim 11. Applicant requests reconsideration of the rejections in light of the amendments and following remarks.

## Amendments to the Claims

Applicant is herein amending claim 11 to correct a typographical error. No new matter is introduced by the amendment to the claim.

## Obviousness-type Double Patenting Rejections

Claims 1 to 15 are rejected on the grounds of non-statutory obviousness-type double patenting as allegedly being unpatentable over claims 1 to 3 of US-B-6,500,814 and claims 1 to 17 of US-B-6,481,779.

Applicants request that these rejections be held in abeyance pending the reconsideration of the obviousness rejection of claims 1 to 3, 6 to 8, and 11 to 15, discussed below. Applicants note that it appears that claims 4, 5, 9, and 10 would be allowable, if written in independent form and if suitable terminal disclaimers were submitted.

## Rejection under 35 U.S.C. § 103(a)

Claims 1 to 3, 6 to 8, and 11 to 15 are rejected under 35 U.S.C. § 103(a) as allegedly unpatentable over US-A-5,898,032 (hereinafter referred to as "Hodgen patent") and EP-B-0,309,263 (hereinafter referred to as "Casper patent"). The Office alleges that Hodgen patent discloses a contraceptive composition comprising estrogen and progestin given monophasically for 60 to 110 days and that the Casper patent discloses a contraceptive composition comprising estrogen and progestin, including monophasic compositions. It is the Office's position that it would have been obvious to combine the patents because both

Page 4 of 9

43

DOCKET NO.: AM101403 C3/WYNC-0963                                                                    PATENT
Application No.: 10/867,954
Office Action Dated: June 1, 2006

teach the reduced number of withdrawal bleeding. The Office asserts that the compositions disclosed in the Hodgen patent and the Casper patent, and Example 10 of the Casper patent, in particular, would make obvious the utilization of a composition comprising an estrogen such as ethinyl estradiol and a progestin such as levonorgestrel monophasically as a contraceptive composition. Applicant traverses the rejection because the Hodgen patent and Casper patent are not properly combinable. Even if they were properly combinable (and applicant is not conceding that they are), the combined teachings would not disclose, teach, or suggest either the method for hormonal conception set forth in claims 1 to 3 and 6 to 8 or the method for treating or inhibiting premenstrual syndrome set forth in claims 11 to 15.

Applicant submits that the Office has not established that the claimed invention is *prima facie* obvious. To establish a proper *prima facie* rejection, the Office must show:

(1)     the references are available as prior art against the claimed invention;

(2)     the motivation (explicit or implicit) provided by the references that would have rendered the claimed invention obvious to one of ordinary skill in the art at the time of the invention;

(3)     a reasonable expectation of success;

(4)     the basis for concluding that the claimed invention would have been obvious to do, not merely obvious to try; and

(5)     the references teach the claimed invention as a whole.

Applicant submits that the Office has not established elements 2, 3, 4 and 5. If the Office fails to establish *any* one of these elements, a proper *prima facie* obviousness rejection has not been made and the applicant is entitled to a patent. *In re Grabiak*, 769 F.2d 729, 733, 226 U.S.P.Q. 870, 873 (Fed. Cir. 1983).

There is no motivation to combine the teachings of the Hodgen patents and Casper patents. The Hodgen patent is directed to contraceptive methods (column 3, lines 35 to 37) for ovulating females. The Casper patent is directed to hormone replacement therapy for menopausal and castrate women (column 1, lines 8 to 9), *i.e.*, non-ovulating females. A skilled artisan would not have been motivated to combine the patents to reach applicant's claimed method of inhibiting or treating premenstrual syndrome because both patents are

Page 5 of 9

44

DOCKET NO.: AM101403 C3/WYNC-0963                                    **PATENT**
Application No.: 10/867,954
Office Action Dated: June 1, 2006

silent with respect to treating premenstrual syndrome and because both patents seek to achieve different goals. The Hodgen patent seeks to provide an efficacious oral contraceptive with enhanced control of endometrial bleeding in ovulating females (column 3, lines 23 to 26), whereas the Casper patent seeks to provide hormone replacement therapy for, *inter alia*, relieving hot flushes, reducing skeletal calcium loss, reducing the risk of death from ischemic heart disease, and providing protection against endometrial hyperplasia and adenocarcinoma in menopausal and castrate women (column 1, lines 8 to 9; column 4, line 9 to column 5, line 17; column 7, lines 15 to 17).

Even if the two patents were properly combinable (and applicant is not conceding that they are), the teachings of the individual patents and their combined teachings would not explicitly or inherently describe:

- a method for hormonal conception by orally administering levonorgestrel and ethinyl estradiol at an unchanged dosage throughout the period of administration (claims 1 to 3 and 6 to 8); and

- a method for treating or inhibiting premenstrual syndrome by orally administering a gestagen and an estrogen at an unchanged dosage throughout the period of administration (claims 11 to 15).

Combinations of the teachings of the Hodgen patent and the Casper patent do not result in either of these above-described methods.

The Hodgen patent discloses in column 3, lines 35 to 44 a method of female contraception involving the monophasic administration of estrogen and progestin for 60 to 110 consecutive days followed by 3 to 10 days of no administration, *i.e.,* interrupted administration. The Casper patent discloses in column 1, lines 1 to 9 a hormone replacement formulation that employs a combination of estrogen and progestin and wherein a short period of relatively dominant estrogenic activity alternates with a short period of relatively dominate progestagenic activity, *i.e.,* non-monophasic administration, for hormonal replacement therapy for menopausal or castrate women. Any combination of the reference would be either non-monophasic and/or include periods of interrupted administration. Thus, the combination actually teaches away from the two method claims that both require "continuous

Page 6 of 9

45

DOCKET NO.: AM101403 C3/WYNC-0963                    PATENT
Application No.: 10/867,954
Office Action Dated:  June 1, 2006

and uninterrupted administration" at "unchanged dosages throughout the administration period."

With respect to the inherency of treating premenstrual syndrome, the Federal Circuit has addressed inherency in the context of anticipation and obviousness.  If the prior art reference does not expressly set forth a particular element of the claim, that reference still may anticipate if that element is "inherent" in its disclosure.  *In re Robertson*, 169 F.3d 743, 49 USPQ2d 1949 (Fed. Cir. 1999).  To establish inherency in the anticipation context, the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference."  *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991).  "Inherency, however, may not be established by probabilities or possibilities.  The mere fact that a certain thing may result from a given set of circumstances is not sufficient."  *Id.* at 1269, 20 U.S.P.Q.2D (BNA) at 1749 (quoting *In re Oelrich*, 666 F.2d 578, 581, 212 U.S.P.Q. 323, 326 (C.C.P.A. 1981); *Ex parte Skinner*, 2 USPQ 2d 1788, 1789 (B.P.A.I. 1986).  (*See also* M.P.E.P. §2112 (IV)).  The inherent feature must *necessarily* lead one skilled in the art to the claimed subject matter.  *Hyatt v. Boone*, 146 F.3d 1348, 47 USPQ2d 1128 (Fed. Cir. 1998).  *Kennecott Corporation v. Kyocera International, Inc. and Kyoto Ceramic Co., Ltd.*, 835 F.2d 1419, 5 USPQ.2d 1194 (Fed. Cir. 1987).  The fact that a method might have been carried out is insufficient.

In the context of new matter in amendments, an applicant may by amendment make explicit a disclosure that was implicit in the application as filed.  However, the structural or operational element must have been *necessarily* present or implicit in the original disclosure.  It is not enough that it might have been present.  Consistent with this conclusion is the standard of inherency in the context of interference practice, namely, that an element is inherently disclosed if the *necessary and only reasonable construction* to be given the disclosure by one skilled in the art is one that lends clear support to the element.  *Kennecott Corp. v. Kyocera Int'l, Inc.* 835 F.2d 1419, 5 USPQ2d 1194 (Fed. Cir. 1987).  The evidence must show that the alleged inherent limitation must necessarily and inevitably flow from the disclosure.  *Chubb & Son's Lock & Safe Co. v. Omron Tateisi Elec. Co.*, 196 USPQ 677 (D.

DOCKET NO.: AM101403 C3/WYNC-0963                    PATENT
Application No.: 10/867,954
Office Action Dated: June 1, 2006

D.C. 1976); *Interchemical Corp. v. Watson*, 145 F. Supp. 179, 182, 111 USPQ 78, 79 (D. D. 1956), *aff'd*, 251 F.2d 390, 116 USPQ 119 (D.C. Cir. 1958).

Applicant does not deny that some females administered the composition comprising estrogen and progestin of the Hodgen patent *may* possibly suffer premenstrual syndrome. [1] However, this is insufficient to establish inherency. Applicant submits that, even if females taking contraceptive compositions often experience premenstrual syndrome (and applicant is not conceding that they do), this frequency would be insufficient to establish inherency. *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991) (to establish inherent anticipation, extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference"). Rather, females taking contraceptive compositions *must necessarily,* in each and every occurrence, also be suffering premenstrual syndrome. *Glaxo Inc v. Novopharm Ltd.*, 52 F.3d 1043 (Fed. Cir. 1995) (prior art that falls within the patent claims even frequently, but not invariably, is not an inherent anticipation); *MEHL/Biophile Intern. Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("occasional results are not inherent"). Accordingly, the Office has not established that the Hodgen patent or the Casper patent, alone or in combination, inherently disclose, suggest, or teach the administration of a composition comprising a select estrogen and a select gestagen for treating or inhibiting premenstrual syndrome.

Accordingly, the rejection for alleged obviousness of claims 1 to 3, 6 to 8, and 11 to 15 is improper and should be withdrawn.

## Conclusions

Applicant respectfully requests:

(1)    entry of the amendments to the claims; and

(2)    reconsideration of the rejections of the pending claims.

---

[1] Applicant also submits that menopausal and castrate females would clearly not suffer from premenstrual syndrome.

**DOCKET NO.:** AM101403 C3/WYNC-0963                                      **PATENT**
**Application No.:** 10/867,954
**Office Action Dated:** June 1, 2006

If the Examiner believes a telephone conference would expedite prosecution of this application, she is invited to contact the undersigned at (404) 459-5642.

Date: **September 1, 2006**

_(signature)_

**Wendy A. Choi**
**Registration No. 36,697**

WOODCOCK WASHBURN LLP
One Liberty Place - 46th Floor
Philadelphia PA  19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/867,954 | 06/15/2004 | Rolf-Dieter Hesch | WYNC-0963 | 5211 |

| 38791 | 7590 | 11/07/2006 |
|---|---|---|
WOODCOCK WASHBURN LLP
ONE LIBERTY PLACE - 46TH FLOOR
PHILADELPHIA, PA  19103

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 11/07/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

49

PTO-90C (Rev. 10/03)

| | **Application No.** | **Applicant(s)** |
|---|---|---|
| ***Office Action Summary*** | 10/867,954 | HESCH, ROLF-DIETER |
| | **Examiner** | **Art Unit** | |
| | Barbara P. Badio, Ph.D. | 1617 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____ .

2a)☒ This action is **FINAL**.          2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-15* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-15* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____ .

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____ .

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

U.S. Patent and Trademark Office

PTOL-326 (Rev. 08-06)          **Office Action Summary**          Part of Paper No./Mail Date 20061102

Application/Control Number: 10/867,954                                    Page 2
Art Unit: 1617

### Final Office Action on the Merits

1.      The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

### *Double Patenting*

2.      **The rejections of claims 1-15 on the ground of nonstatutory obviousness-**

**type double patenting over claims of US Patent Nos. 6,500,814 and 6,481,779 are**

**maintained.**

Applicant's statement that the rejections be held in abeyance is noted.

### *Claim Rejections - 35 USC § 103*

3.      **The rejection of claims 11-15 under 35 USC 103(a) over Hodgen (US Patent**

**No. 5,898,032) and Casper (EP 0309 263) in combination is withdrawn.**

4.      **The rejection of claims 1-3 and 6-8 under 35 USC 103(a) over Hodgen (US**

**Patent No. 5,898,032) and Casper (EP 0309 263) in combination is maintained.**

Applicant argues there is no motivation to combine the teachings of Hodgen and

Casper because Hodgen seeks to provide an efficacious oral contraceptive with

enhanced control of endometrial bleeding in ovulating females whereas Casper seeks

to provide hormone replacement therapy.  Applicant also argues even if they were

properly combined, the combined teachings would not disclose, teach or suggest the

51

claimed invention because any combination would be either non-monophasic and/or include periods of interrupted administration. Thus, according to applicant, the combination actually teaches away from the claimed invention. Applicant's argument was considered but not persuasive for the following reasons.

First, applicant's summaries of the cited references are noted. However, in addition to providing hormone replacement therapy, Casper like Hodgen is directed to contraceptive compositions comprising an estrogen and a progestin as discussed in the previous Office Action. Therefore, the combination of Casper and Hodgen makes obvious the claimed contraceptive composition (see the previous Office Action).

Applicant's argument against the combination of Hodgen and Casper is also noted. According to applicant, any combination taught by the cited references would be either non-monophasic and/or include periods of interrupted administration. However, according to present specification, an administration period is several months to years as long as there is no modification to the concentration of the hormonal components forming the composition (see section 0037 of the present specification). The fact that the prior art teaches a break between administration periods is not relevant and is not a teaching away from the claimed invention. The prior art makes clear that the composition is administered continuously and uninterrupted for a period of time and during said administration period there is no change in the concentration of estrogen and progestin making up said composition, i.e., monophasic administration.

52

Application/Control Number: 10/867,954                                    Page 4
Art Unit: 1617

    For these reasons and those given in the previous Office Action, the rejection of

claims 1-3, 6-8 and 11-15 under 35 USC 103(a) over Hodgen (US Patent No.

5,898,032) and Casper (EP 0309 263) in combination is maintained.


### Conclusion

5.      **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

    A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.


### Telephone Inquiry

6.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

571-272-0609. The examiner can normally be reached on M-F from 6:30am-4:00pm.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sreenivasan Padmanabhan can be reached on 571-272-0629. The fax

53

Application/Control Number: 10/867,954                                    Page 5
Art Unit: 1617

phone number for the organization where this application or proceeding is assigned is

571-273-8300.

      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Barbara P. Badio, Ph.D.
Primary Examiner
Art Unit 1617

BB
November 2, 2006

54

<table>
<tr><td rowspan="6"><strong>REQUEST<br>FOR<br>CONTINUED EXAMINATION (RCE)<br>TRANSMITTAL</strong><br><br>Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450</td><td><em>Application Number</em></td><td>10/867,954</td></tr>
<tr><td><em>Filing Date</em></td><td>June 15, 2004</td></tr>
<tr><td><em>First Named Inventor</em></td><td>Rolf-Dieter HESCH</td></tr>
<tr><td><em>Art Unit</em></td><td>1617</td></tr>
<tr><td><em>Examiner Name</em></td><td>Barbara Badio</td></tr>
<tr><td><em>Attorney Docket Number</em></td><td>2004658-0968 (AM101403C3)</td></tr>
</table>

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. Submission required under 37 CFR 1.114 Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

      ii. ☐ Other _____

   b. ☒ Enclosed

      i. ☒ Amendment/Reply        iii. ☒ Information Disclosure Statement (IDS)

      ii. ☐ Affidavit(s)/Declaration(s)        iv. ☒ Other  Terminal Disclaimer

2. Miscellaneous

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of ____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. Fees  The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☒ The Director is hereby authorized to charge the following fees, or credit any overpayments to Deposit Account No.  03-1721 .

      i. ☒ RCE fee required under 37 CFR 1.17(e)

      ii. ☐ Extension of time fee (37 CFR 1.136 and 1.17)

      iii. ☒ Other  Terminal Disclaimer Fee under 37 CFR 1.20(d) _____

   b. ☐ Check in the amount of $_____ enclosed

   c. ☒ Payment by credit card (Form PTO-2038 enclosed)

      **WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

<table>
<tr><td colspan="4" align="center"><strong><em>SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED</em></strong></td></tr>
<tr><td>Name <em>(Print/Type)</em></td><td><strong>Andrea L. C. Robidoux</strong></td><td>Registration No. (Attorney/Agent)</td><td>47,902</td></tr>
<tr><td>Signature</td><td>/Andrea L.C. Robidoux/</td><td>Date</td><td><strong>October 26, 2007</strong></td></tr>
<tr><td colspan="4" align="center"><strong><em>CERTIFICATE OF MAILING OR TRANSMISSION</em></strong></td></tr>
<tr><td colspan="4">I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.</td></tr>
<tr><td>Name <em>(Print/Type)</em></td><td colspan="3"><strong>Andrea L.C. Robidoux</strong></td></tr>
<tr><td>Signature</td><td>/Andrea L.C. Robidoux/</td><td>Date</td><td><strong>October 26, 2007</strong></td></tr>
</table>

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

55

4263824v1

ATTORNEY'S DOCKET NUMBER: 2004658-0968 (AM101403C3)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant: | Rolf-Dieter HESCH | Examiner: Barbara Badio |
| Serial No.: | 10/867,954 | Art Unit: 1617 |
| Filed: | June 15, 2004 | Confirmation No.: 5211 |
| For: | HORMONAL CONTRACEPTIVE PRODUCT | |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

### RESPONSE TO FINAL OFFICE ACTION

In response to the Office Action mailed November 7, 2006, Applicants respectfully request entrance of the Amendments filed herewith and consideration of the following Remarks. The deadline for responding to the Office Action was February 7, 2007. Applicants submitted a Petition for a three month extension of time and a Notice of Appeal on May 1, 2007. Applicants submit herewith a Petition for a four month extension of time up to, and including, November 1, 2007. Accordingly, Applicants respectfully submit that the present Response is timely filed on October 26, 2007.

Please amend the above-identified application as follows:

**Amendments to the Claims** begin on page 2 of this paper; and

**Remarks** begin on page 4 of this paper.

## AMENDMENTS TO THE CLAIMS

The following **Listing of Claims** will replace all prior versions, and listings, of claims in the application.

## Listing of Claims:

1. (**Currently amended**) A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period of greater than 110 days, a contraceptive product comprising a first hormonal component and a second hormonal component, wherein the first hormonal component is levonorgestrel and the second hormonal component is ethinyl estradiol, wherein the contraceptive product is free from other hormonal components and wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

2. (**Original**) The method of claim 1, wherein said ethinyl estradiol is present at a dosage of 1-20 μg per day.

3. (**Original**) The method of claim 2, wherein the administration is oral.

4. (**Original**) The method of claim 3, wherein the administration period is 9 months.

5. (**Original**) The method of claim 3, wherein the administration period is 12 months.

6. (**Currently amended**) A method for continuous suppression of the menstrual cycle in a woman, comprising administering orally, transdermally or via depot to the woman in need thereof, for a continuous and uninterrupted administration period of greater than 110 days, a contraceptive product comprising a first hormonal component and a second hormonal component, wherein the first hormonal component is levonorgestrel and the second hormonal component is ethinyl estradiol, wherein the contraceptive product is free from other hormonal components and wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

7. (**Original**) The method of claim 6, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

8. (**Original**) The method of claim 7, wherein the administration is oral.

9. (**Original**) The method of claim 8, wherein the administration period is 9 months.

10. (**Original**) The method of claim 8, wherein the administration period is 12 months.

11. (**Previously presented**) A method for treating or inhibiting premenstrual syndrome, which comprises administering orally, transdermally, or via depot, to a mammal in need thereof, for a continuous and uninterrupted administration period, an effective amount of a gestagen and an estrogen, wherein said gestagen and estrogen are present in unchanged dosages throughout the administration period.

12. (**Original**) The method of claim 11, wherein said gestagen is selected from the group consisting of progesterone, chlormadinone acetate, northisterone acetate, cyprotherone acetate, desogestrel, and levonorgestrel; and said estrogen is selected from the group consisting of ethinyl estradiol, mestranol, estradiol, estriol, estrone, and estrane.

13. (**Original**) The method of claim 12, wherein said estrogen is ethinyl estradiol, which is present at a dosage of 1-20 µg per day.

14. (**Original**) The method of claim 13, wherein said gestagen is levonorgesterel.

15. (**Original**) The method of claim 14, wherein the administration is oral.

16. (**New**) A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period of at least 6 months, a contraceptive product comprising a first hormonal component and a

second hormonal component, wherein the first hormonal component is levonorgestrel and the second hormonal component is ethinyl estradiol, wherein the contraceptive product is free from other hormonal components and wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

17. (**New**) The method of claim 16, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

18. (**New**) The method of claim 17, wherein the administration is oral.

19. (**New**) A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period of at least 9 months, a contraceptive product comprising a first hormonal component and a second hormonal component, wherein the first hormonal component is levonorgestrel and the second hormonal component is ethinyl estradiol, wherein the contraceptive product is free from other hormonal components and wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

20. (**New**) The method of claim 19, wherein said ethinyl estradiol is present at a dosage of 1-20 µg per day.

21. (**New**) The method of claim 20, wherein the administration is oral.

22. (**New**) A method for hormonal contraception, comprising administering orally, transdermally or via depot to a mammal in need thereof, for a continuous and uninterrupted administration period of at least 12 months, a contraceptive product comprising a first hormonal component and a second hormonal component, wherein the first hormonal component is levonorgestrel and the second hormonal component is ethinyl estradiol, wherein the contraceptive product is free from other hormonal components and wherein said levonorgestrel and ethinyl estradiol are present in said contraceptive product at unchanged dosages throughout the administration period.

23. (**New**) The method of claim 22, wherein said ethinyl estradiol is present at a dosage of 1-20 μg per day.

24. (**New**) The method of claim 23, wherein the administration is oral.

## REMARKS

### *Double Patenting*

Claims 1-15 are rejected on the ground of nonstatutory obviousness-type double patenting over US 6,500,814 and US 6,481,779. Applicants respectfully point out that US 6,481,779 is not commonly owned by Applicants and assume that the Examiner intended to cite US 6,451,779 in this rejection. Accordingly, Applicants address their remarks with respect to US 6,451,779 ("the '779 patent").

With respect to the rejection over the '779 patent, the Examiner maintains her position that the claims are not patentably distinct because "they are both drawn to the use of a contraceptive product comprising an estrogen and a progestin for hormonal contraception." The Examiner also asserts that the '779 patent discloses the utilization of both levonorgestrel and ethinyl estradiol and, therefore, "the skilled artisan would have [been] motivated to modify the exemplified composition taught by the cited patent . . . with the reasonable expectation that the composition(s) obtained would be useful as taught by the reference." Applicants respectfully traverse.

Applicants respectfully point out to the Examiner that the present claims relate to a contraceptive product comprising **only two** hormonal components, i.e. levonorgestrel and ethinyl estradiol. In contrast, the '779 patent claims a composition comprising "at least one synthetic estrogen, at least one biogenetic estrogen, and at least one gestagen." Thus, all claims of the '779 patent require **three** hormonal components. Moreover, there is no claim in the '779 patent that encompasses or suggests the presently claimed **two** component combination of levonorgestrel and ethinyl estradiol.

Applicants respectfully point out to the Examiner that an obviousness-type double patenting rejection is a claim-to-claim analysis. As stated by the MPEP at § 804, "[w]hen considering whether the invention defined in a **claim** of an application would have been an obvious variation of the invention defined in the **claim** of a patent, *the disclosure of the patent may not be used as prior art*." (Emphasis added). In her rejection, the Examiner points to Examples 1-5 and claim 17 of the '779 patent to demonstrate a teaching of both levonorgestrel and ethinyl estradiol. Applicants respectfully submit that this reliance on the Examples of the '779 patent to support an obviousness-type double patenting rejection is improper. Notwithstanding, none of these Examples teaches the combination of **two** hormonal components,

levonorgestrel and ethinyl estradiol, of the present claims. Reliance on claim 17 of the '779 patent does not remedy this deficiency. That claim also fails to teach the presently claimed combination. Indeed, claim 17 of the '779 patent teaches the **three** component combination where the gestagen is selected from a group of 6 possible gestagens, one of which is levonorgestrel.

With respect to the Examiner's assertion that the skilled artisan would be "motivated to modify the exemplified composition taught by the cited patent utilizing levonorgestrel instead of norethisterone acetate or chlormadinone acetate with the reasonable expectation that the composition(s) obtained would be useful as taught by the reference," Applicants respectfully traverse. Applicants respectfully point out to the Examiner that even if a skilled artisan was motivated to use levonorgestrel instead of norethisterone acetate or chlormadinone acetate as utilized in the '779 patent, the result would be a **three** component combination and *not* the **two** component combination of the present claims.

Notwithstanding Applicants' position set forth above, and solely to expedite prosecution, Applicants submit herewith a Terminal Disclaimer of the instant application over US 6,500,814 and US 6,481,779 thus obviating this rejection.

### *Claim Rejections Under 35 U.S.C. § 103*

Applicants thank the Examiner for withdrawing her rejection of claims 11-15 under 35 U.S.C. § 103(a). The rejection of claims 1-3 and 6-8 under 35 U.S.C. § 103(a) over US 5,898,032 ("the Hodgen patent") and EP 0309263 ("the Casper patent") in combination is maintained.

In order to expedite prosecution, Applicants amend claims 1 and 6 to specify that the inventive hormonal contraceptive is administered "for a continuous and uninterrupted administration period of greater than 110 days." In addition, Applicants add new claims 16-21 further specifying administration periods of the present invention. Support for these new claims is found in the application as filed at paragraph [0045] bridging onto page 8.

Applicants remind the Examiner that the present invention provides "reliable and continuous suppression of the menstrual cycle." *See* paragraph [0040]. In contrast to amended claims 1 and 6, the invention of the Hodgen patent is to provide "fewer menstrual intervals." *See* column 3, line 28. Indeed, Hodgen describes an administration period of **at most** 60-110 days

followed by 3-10 days of no administration. Applicants respectfully submit that this teaching of Hodgen cannot render the present claims directed to administration of a period of greater than 110 days, indeed at least 6 months, 9 months, or 12 months obvious.

Furthermore, Applicants respectfully point out that as recited in the MPEP § 2143, "to establish a *prima facie* case of obviousness, three basic criteria must be met. First, there must be some suggestion or motivation ... to modify the reference ... Second, there must be a reasonable expectation of success. Finally, the prior art reference must teach or suggest all the claim limitations." For the reasons set forth below, Applicants respectfully submit that the Examiner has not established a *prima facie* case of obviousness.

Applicants respectfully submit that the Examiner has failed to show that the references teach or suggest all of the claim limitations, as required to support a *prima facie* case of obviousness. Specifically, and as discussed above, Hodgen does not teach or suggest the specified administration period of amended claims 1 and 6. Moreover, Applicants respectfully submit that the Examiner has not established that there exists the required reasonable expectation of success within the references. The teachings, suggestions, and expectation of success must come from the prior art, not applicants' disclosure. See *In re Vaeck*, 947 F.2d 488, 493 (Fed. Cir. 1991). Here, Hodgen teaches only that a **maximum** administration period of 60-110 days would be useful. One of ordinary skill in the art reading Hodgen would not be led to believe that the administration period of amended claims 1 and 6 would be successful.

Applicants further submit that the disclosure of the Casper patent fails to remedy the deficiencies in Hodgen. That patent only teaches the **alternating** administration of progestin and estrogen to a female in need of hormone replacement therapy. *See* column 8, lines 2-16. Moreover, the invention of Casper is specifically tailored to women for whom "ovarian estrogen and progesterone production has been interrupted either because of natural menopause, surgical, radiation, or chemical ovarian ablation or extirpation or premature ovarian failure." *See* column 8 lines 45-52. Nowhere does the Casper patent teach the use of its **alternating** administration of progestin and estrogen for *contraception* (claim 1) or *suppression of the menstrual cycle* (claim 6). Nor does the Casper patent teach the "a *continuous and uninterrupted administration period* of greater than 110 days, a contraceptive product comprising a hormonal component consisting of levonorgestrel and ethinyl estradiol, wherein said levonorgestrel and ethinyl estradiol *are present in said contraceptive product at unchanged dosages throughout the*

*administration period*" as required by the present claims. Thus, Applicants respectfully submit that the combination of Hodgen and Casper does not teach all of the claim limitations as required to support a case of obviousness. Because Hodgen and Casper do not teach all of the elements of amended claims 1 and 6, nor do these references provide the necessary motivation to arrive at the present claims, Applicants respectfully submit that claims 1-3 and 6-8 are patentable over Hodgen and Casper and respectfully request that the Examiner withdraw the rejection.

No new matter has been added.

Applicants respectfully submit the above amendments and arguments and respectfully request that the Examiner acknowledge patentability of pending claims 1-21. Applicants invite the Examiner to call their attorney, Andrea L. C. Robidoux, at (617) 248-5124 with any questions pertaining to the above-identified application in order to expedite prosecution of this case.

Respectfully Submitted,

/Andrea L.C. Robidoux/

Dated: <u>October 26, 2007</u>

Andrea L.C. Robidoux
Registration No. 47,902

Choate, Hall & Stewart
Patent Department
Two International Place
Boston, MA 02110
Tel: (617) 248-5124
Fax: (617) 248-4000

Docket No: 2004658-0968 (AM101403 C3)
Patent

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicants: | Rolf-Dieter HESCH | | |
| Application No.: | 10/867,954 | Examiner: | Barbara Badio |
| Filed: | June 15, 2004 | Art Unit: | 1617 |
| For: | HORMONAL CONTRACEPTIVE PRODUCT | | |
| Confirmation No.: | 5211 | | |
| Customer Number: | 53170 | | |

Mail Stop Amendment
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:

### TERMINAL DISCLAIMER

I, William T. King, represent that I am an attorney and am empowered to act on behalf of Wyeth. Wyeth is the assignee of record, Recordation of Assignment Reel Number 018532, Frame 0139, of the entire right, title, and interest in and to the invention in the subject application. Wyeth is also the assignee of record of United States Patent number 6,500,814, Recordation of Assignment Reel Number 014337, Frame 0871, and United States Patent number 6,451,779, Recordation of Assignment Reel Number 014337, Frame 0867.

On behalf of Wyeth, I hereby disclaim, except as otherwise provided herein, the terminal part of any patent granted on the subject application which would extend beyond the expiration date of the full statutory term, including statutory extensions thereof of US 6,500,814 and US 6,451,779, except to the extent that the term of this application Application No. 10/867,954 might be extended pursuant to the Drug Price Competition and Patent Term Restoration Act of 1984 (35 USC §156) or any other applicable act of Congress, and hereby agree that any patent so granted on the subject application shall be enforceable only for and during such period that the legal title to said patent shall be the same as the legal title to US 6,500,814 and US 6,451,779, this agreement to run with any patent granted on the subject application and to be binding upon the grantee, its successors or assigns.

Wyeth, does not disclaim any terminal part of any patent granted on the subject application prior to the expiration date of the full statutory term of US 6,500,814 and US 6,451,779 in the event that such patent later: expires for failure to pay a maintenance fee; is held unenforceable; is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321(a); has all claims cancelled by a reexamination certificate; is reissued; or is otherwise terminated prior to the expiration of its statutory term, except for the separation of legal title stated above.

### CERTIFICATE OF MAILING 37 CFR §1.10

I hereby certify that this paper and the documents referred to as enclosed therein are being deposited with the United States Postal Service on the date written below in an envelope as "Express Mail Post Office to Addressee" Mailing Label Number addressed to the Mail Stop Amendment. Commissioner for Patents, PO Box 1450, Alexandria, VA 22313-1450.

_____    _____
Date

Docket No: 2004658-0968 (AM101403 C3)
Patent

Pursuant to 37 CFR 3.73(b), I have reviewed all the recordation information above or all documents in the chain of title of the subject patent application and, to the best of my knowledge and belief, title is in the assignee identified above.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001, Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Petitioner submits herewith a Credit Card Payment Form in the amount of One Hundred and Thirty Dollars ($130.00) fee for this Terminal Disclaimer pursuant to 37 CFR 1.20 (d). Petitioner hereby authorizes payment of any additional charge or credit of overpayment of the same by charging Deposit Account No. 03-1721. A duplicate copy of the transmittal letter is enclosed for deposit account charging purposes.

Date: October 24, 2007

William V. King
Assistant Secretary, Wyeth
Reg. No. 30,954

PATENT GROUP
CHOATE, HALL & STEWART
Two International Place
Boston, MA 02110
Tel: (617) 248-5124
Fax: (617) 248-4000
arobidoux@choate.com



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | |
|---|---|---|---|
| 7590 | 12/13/2007 | | |

Choate,,Hall & Stewart LLP
Attn; Andrea L.C. Robidoux
Two International Place
Boston, MA 02110

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 12/13/2007

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/867,954 | 06/15/2004 | Rolf-Dieter Hesch | WYNC-0963 | 5211 |

TITLE OF INVENTION: HORMONAL CONTRACEPTIVE PRODUCT

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1440 | $300 | $0 | $1740 | 03/13/2008 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE
MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS
STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES
NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS
PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM
WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW
DUE.

HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current
SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown
above.

B. If the status above is to be removed, check box 5b on Part B -
Fee(s) Transmittal and pay the PUBLICATION FEE (if required)
and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now
claiming SMALL ENTITY status, check box 5a on Part B - Fee(s)
Transmittal and pay the PUBLICATION FEE (if required) and 1/2
the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office
(USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b"
of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a
request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing
the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to
Mail Stop ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

67

Page 1 of 3

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: <u>Mail</u>     Mail Stop ISSUE FEE
                                                                                Commissioner for Patents
                                                                                P.O. Box 1450
                                                                                Alexandria, Virginia 22313-1450
                                                              or <u>Fax</u>     (571) 273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

| CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address) | Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission. |
|---|---|
| 7590              12/13/2007<br><br>Choate,,Hall & Stewart LLP<br>Attn; Andrea L.C. Robidoux<br>Two International Place<br>Boston, MA 02110 | **Certificate of Mailing or Transmission**<br>I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.<br><br>_____ (Depositor's name)<br>_____ (Signature)<br>_____ (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/867,954 | 06/15/2004 | Rolf-Dieter Hesch | WYNC-0963 | 5211 |

TITLE OF INVENTION: HORMONAL CONTRACEPTIVE PRODUCT

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1440 | $300 | $0 | $1740 | 03/13/2008 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BADIO, BARBARA P | 1617 | 514-170000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**
PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                          (B) RESIDENCE: (CITY and STATE OR COUNTRY)


Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or any credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.     ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/867,954 | 06/15/2004 | Rolf-Dieter Hesch | WYNC-0963 | 5211 |

7590     12/13/2007

Choate,,Hall & Stewart LLP
Attn; Andrea L.C. Robidoux
Two International Place
Boston, MA 02110

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 12/13/2007

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 207 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 207 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

69

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

| | Application No. | Applicant(s) |
|---|---|---|
| ***Notice of Allowability*** | 10/867,954 | HESCH, ROLF-DIETER |
| | Examiner | Art Unit | |
| | Barbara P. Badio, Ph.D. | 1617 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>10/26/2007</u>.

2. ☒ The allowed claim(s) is/are <u>1-24</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the

            International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

      Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit
    of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413),
    Paper No./Mail Date _____ .

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

                Barbara P. Badio, Ph.D.
                Primary Examiner
                Art Unit: 1617

Application/Control Number: 10/867,954                                      Page 2
Art Unit: 1617

### EXAMINER'S AMENDMENT

1.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

        The application has been amended as follows:

        Paragraph 0001 has been rewritten as follows: --

        The application is a continuation of U.S. Application No. 10/299,628, filed

November 19, 2002, now abandoned, which is a continuation of U.S. Application No.

09/508,648, now U.S. Patent No. 6,500,814, issued December 31, 2002, which is the

U.S. National Phase under §371 of International Application PCT/DE98/02636, filed

September 3, 1998, which claims priority to German Application No. DE 19739916.9,

filed September 11, 1997, each of which is incorporated herein by reference in its

entirety.

--

2.      The following is an examiner's statement of reasons for allowance:

        The instant claims are allowed for the reasons of record in the parent case.

        Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

71

Application/Control Number: 10/867,954                                    Page 3
Art Unit: 1617

### *Telephone Inquiry*

3.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Barbara P. Badio, Ph.D. whose telephone number is

571-272-0609. The examiner can normally be reached on M-F from 6:30am-4:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sreenivasan Padmanabhan can be reached on 571-272-0629. The fax

phone number for the organization where this application or proceeding is assigned is

571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Barbara P. Badio, Ph.D.
Primary Examiner
Art Unit 1617

BB
December 10, 2007

72

| REQUEST FOR CONTINUED EXAMINATION (RCE) TRANSMITTAL | *Application Number* | 10/867,954 |
|---|---|---|
| | *Filing Date* | June 15, 2004 |
| | *First Named Inventor* | Rolf-Dieter HESCH |
| Address to: Mail Stop RCE Commissioner for Patents P.O. Box 1450 Alexandria, VA 22313-1450 | *Art Unit* | 1617 |
| | *Examiner Name* | Barbara Badio |
| | *Attorney Docket Number* | 2004658-0968 (AM101403C3) |

This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. Submission required under 37 CFR 1.114  Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).
   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.
      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____
      ii. ☐ Other _____
   b. ☒ Enclosed
      i. ☐ Amendment/Reply          iii. ☒ Information Disclosure Statement (IDS)
      ii. ☐ Affidavit(s)/Declaration(s)    iv. ☐ Other  Terminal Disclaimer

2. Miscellaneous
   a. ☒ **Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of THREE months.** (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)
   b. ☐ Other _____

3. Fees  The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.
   a. ☒ The Director is hereby authorized to charge the following fees, or credit any overpayments to Deposit Account No.  03-1721  .
      i. ☒ RCE fee required under 37 CFR 1.17(e)
      ii. ☐ Extension of time fee (37 CFR 1.136 and 1.17)
      iii. ☒ Other  Suspension Fee under 37 CFR 1.17(i)  _____
   b. ☐ Check in the amount of $_____ enclosed
   c. ☒ Payment by credit card (Form PTO-2038 enclosed)
      **WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED | | | |
|---|---|---|---|
| Name *(Print/Type)* | Andrea L. C. Robidoux | Registration No. (Attorney/Agent) | 47,902 |
| Signature | /Andrea L.C. Robidoux/ | Date | March 12, 2008 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

4310300v1

Docket No: 2004658-0968 (AM101403C3)
Patent

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re of Application of:    Rolf-Dieter HESCH
Application No.:    10/867,954     Group Art No.:    1617
Filed:    June 15, 2004     Examiner:    Barbara Badio
For:    HORMONAL CONTRACEPTIVE PRODUCT
Confirmation No.:    5211
Customer Number:    53170

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

INFORMATION DISCLOSURE STATEMENT

1.    Preliminary Statements
In accordance with 37 CFR 1.97 and 1.98, Applicants submit herewith patents, publications, or other information of which they are aware, which they believe may be material to the examination of this application and in respect of which there may be a duty to disclose in accordance with 37 CFR 1.56. This Information Disclosure Statement is not to be construed as a representation that: (i) a search has been made; (ii) the information is material to the examination of this application; (iii) additional information material to the examination of this application does not exist; (iv) the information, protocols, results and the like reported by third parties are accurate or enabling; or (v) the information constitutes prior art to the subject invention.

Docket No: 2004658-0968 (AM101403C3)
Patent

2.     Identification of Time of Filing
This Information Disclosure Statement

    a.    ☐    is filed within three months of the filing date of the application.

    b.    ☐    is filed before the mailing date of a first Office Action on the merits.

    c.    ☒    is filed before the mailing date of a first Office Action after the filing of a request for continued examination under 37 CFR 1.114.

    d.    ☐    is filed after the period specified in 2(a), 2(b) or 2(c) above, but before the mailing date of a final action under 37 CFR 1.311. This statement includes a certification under 37 CFR 1.97(e) <u>or</u> the fee set forth in 37 CFR 1.17(p).

    e.    ☐    is filed after the mailing date of a final action or Notice of Allowance but before payment of the issue fee. This statement includes (i) a certification under 37 CFR 1.97(e), <u>and</u> (ii) the fee set forth in 37 CFR 1.17(p).

3.     ☐    Certification under 37 CFR 1.97(e) and 1.704(d)
The undersigned attorney certifies

    a.    ☐    that each item of information contained in the Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the statement, or

    b.    ☐    that no item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign application or, to the knowledge of the person signing the certification after making reasonable inquiry, was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the statement.

    c.    ☐    certifies that each item of information contained in the Information Disclosure Statement was cited in a communication from a foreign application patent office in a counterpart foreign application and was not received by any individual designated in 37 CFR 1.56(c) more than thirty (30) days prior to the filing of the statement.

4.     **X**    Newly Cited Information
A legible copy of the patents, publications or other information cited on the attached forms PTO SB08A and SB08B is enclosed, except that no copy of a pending U.S. application is enclosed, and if this patent application was filed or entered the national stage after June 30, 2003, no copy of a U.S. patent or U.S. patent application publication is enclosed.

5.     ☐    Previously Cited Information
No copy of the patents, publications or other information cited on the attached forms PTO SB08A and SB08B is enclosed because it has been previously cited by or submitted to the Office in a prior application which is relied upon for an earlier filing date under 35 USC 120.
Prior application is Application Number      , filed on      of      for
.

Docket No: 2004658-0968 (AM101403C3)
Patent

6.  ☐   Concise Explanation
        Documents cited above which are not in the English Language
    a.  ☐   have been explained in the specification.
    b.  ☐   have an abstract (or other concise explanation) in English enclosed or if
            readily available a translation into English of the document is enclosed.

    Forms PTO-SB08A and PTO-SB08B are enclosed.

7.  ☐   Fees
        ☐   Fee for filing under 37 CFR 1.97(c) or (d)     Fee:  $180.00

    Instructions as to Overpayment/Underpayment:
    Credit any overpayment and charge any underpayment to Deposit Account No. 03-
    1721.


                                        /Andrea L.C. Robidoux/
                                        _____

                                        Andrea L.C. Robidoux, Reg. No. 47,902


Choate, Hall & Stewart LLP
Patent Department
Two International Place
Boston, MA 02110
Tel. No. (617) 248-5000

March 12, 2008

PTO/SB/08A (07-06)
Approved for use through 09/30/2006. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB number.

| Substitute for form 1449/PTO<br><br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>*(Use as many sheets as necessary)* | **Complete if Known** | |
|---|---|---|
| | Application Number | 10867954 |
| | Filing Date | June 15, 2004 |
| | First Named Inventor | HESCH, Rolf-Dieter |
| | Art Unit | 1617 |
| | Examiner Name | BADIO, Barbara P. |
| Sheet        Of | Attorney Docket Number | 2004658-0968 (AM101403 C3) |

**U.S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2 (if known)] | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] –Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | WO 1993/17686 | 09/06/1993 | Schering | | |
| | | EP 0911029 B1 | 04/28/1999 | Medical College of Hampton Roads | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08B (07-06)
Approved for use through 09/30/2006.  OMB 0651-0031
U.S. Patent and Trademark Office:  U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 10867954 |
| | Filing Date | June 15, 2004 |
| | First Named Inventor | HESCH, Rolf-Dieter |
| | Art Unit | 1617 |
| | Examiner Name | BADIO, Barbara P. |
| Sheet | Attorney Docket Number | 2004658-0968 (AM101403 C3) |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials[*] | Cite No.[1] | Include the name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | | Notification of Certification of Invalidity, Unenforceability and/or Non-infringement for US Patent 6,500,814 Pursuant to Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act, dated February 1, 2008. | |
| | | CASTAMAN, G., et al., "Congenital Afibrinogenemmia: Successful Prevention of Recurrent Hemoperitoneum during Ovulation by Oral Contraceptive," American J. Hematology, 49:363 (1995). | |
| | | LUNELL, et al., "Ovulation Inhibition with a Combined Oral Contraceptive Containing 20 μg Ethinyl Estradiol and 250 μg Levonorgestrel," Acta. Obstet. Gynecol. Scand. Suppl., 88:17-21 (1979). | |
| | | TUIMALA, et al., "A Clinical Comparison in Finland of Two Oral Contraceptives Containing 0.150 mg Desogestrel in Combination with 0.020 mg or 0.030 mg Ethinyl Estradiol," Acta. Obstet. Gynecol. Scand. Suppl., 144:7-12 (1987). | |
| | | Notice of Opposition for European Patent No. 1011682 B1, dated February 5, 2004. | |
| | | D1:  SZAREWSKI and GUILLEBAUD, Contraception: A User's Handbook, Oxford University Press, Great Britain,  pages 46, 53-54, and 84-87,1994. | |
| | | D3: OMTZIGT, et al., (1996) European Journal of Contraception and Reproductive Health Care 1, 155. | |
| | | D4: CACHRIMANIDOU, et al., (1993) "Long-interval treatment regimen with a dosegestrel-containing oral contraceptive," Contraception, 48, 205-216. | |
| | | D5: KOVACS, G.T., (1994) "A trimonthly regimen for oral contraceptives," The British Journal of Family Planning 19:274-275. | |

| | | | |
|---|---|---|---|
| | | D6: VOLLEBREGT, et al., (1985) "A study on postponement of menses with low-dose combined oral contraceptives – outcome and acceptability," Adv. Contraception 1, 207. | |
| | | D7: SULAK, et al., (February 1997) "Extending the Duration of Active Oral Contraceptive Pills to Manage Hormone Withdrawal Symptoms," Obstetrics & Gynecology 89: 179-182. | |
| | | Proprietor's response to Notice of Opposition, dated December 13, 2004. | |
| | | D8: Declaration of Dr. Anne Szarewski, dated April, 2004. | |
| | | D9: MILLER and HUGHES, "Continuous Combination Oral Contraceptive Pills to Eliminate Withdrawal Bleeding: A Randomized Trial," Obstreticians and Gynecologists, 101: 4 (2003). | |
| | | D10: JOHN GUILLEBAUD, "Contraception – Your questions answered." 2nd Edition, 1993, Churchill Livingstone, pp 108-111 and 222-223. | |
| | | D11: LOUDON, et al., "Acceptability of an oral contraceptive that reduces the frequency of mensturation: the tricycle regimen," BMJ 1997; 2:487-490. | |
| | | D12: "A consensus statement: enhancing patient compliance and oral contraceptive efficacy," The British Journal of Family Planning 1993; 18: 126-129. | |
| | | D13: Declaration of Professor John Guillebaud, dated December 12, 2004. | |
| | | D14: Seasonale® patient brochure. | |
| | | Proprietor's response to Summons to Oral Proceedings, dated November 30, 2006. | |
| | | Opponent's submission of new documents, dated November 30, 2006, which includes attached documents E15, E16, E17, and E18. | |
| | | E15: FDA marketing authorization for Seasonale® | |
| | | E16: Press release of Reuters dated December 30, 2004 | |
| | | E17: Letter from FDA to Barr dated December 29, 2004 | |
| | | E18: www.seasonale.com excerpt. | |

| | | | |
|---|---|---|---|
| | | Opponent's submission of new documents, dated December 13, 2006, which includes attached document E19. | |
| | | E19: Press release dated December 5, 2006 titled "Suppressing your period: Drug makers offer new pills to manage monthly cycle." | |
| | | Proprietor's response to Opponent's submissions November 30 and December 13, 2006, dated January 17, 2007. | |
| | | D20: "Contraception – Your questions answered" | |
| | | D21: Copy of Finnish registration certificate and Summary of Product Characteristics including Patient Information Leaflet for Anya. | |
| | | Minutes of oral proceedings dated January 30, 2007. | |
| | | Proprietor's Notice of Appeal, dated May 18, 2007. | |
| | | Opponent's Notice of Appeal, dated May 28, 2007. | |
| | | Opponent's Grounds of Appeal, dated July 29, 2007, which includes attached documents E22, E23, E24, E25, E26, and E27. | |
| | | E22: SZAREWSKI and GUILLEBAUD, Contraception: A User's Handbook, Oxford University Press, Great Britain, 1994. | |
| | | E23: US drug approval package for Lybrel. | |
| | | E24: "A double-blind study comparing the contraceptive efficacy, acceptability and safety of two progestogen-only pills containing desogestrel 75 µg/day or levonorgestrel 30 µg/day," European Journal of Contraception and Reproductive Health Care 1998, 169-178. | |
| | | E25: Declaration of Anne Szarewski, dated May 15, 2005. | |
| | | E26: Decision of opposition division T1063/04-332. | |
| | | E27: Norgeston® product information. | |
| | | Proprietor's Grounds of Appeal, dated July 30, 2007. | |

| | | Seasonale® NDA. | | |
|---|---|---|---|---|
| | | Lybrel® Labeling | | |
| | | Lybrel® Patient Information | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 2313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/867,954 | 06/15/2004 | Rolf-Dieter Hesch | WYNC-0963 | 5211 |

| 7590 | 04/08/2008 |
|---|---|

Choate,,Hall & Stewart LLP
Attn; Andrea L.C. Robidoux
Two International Place
Boston, MA 02110

| EXAMINER |
|---|
| BADIO, BARBARA P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1612 | |

DATE MAILED: 04/08/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

The request for deferral/suspension of action under 37 CFR 1.103 has been approved.

82

Docket No: 2004658-0968 (AM101403C3)
Patent

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re of Application of:     Rolf-Dieter HESCH
Application No.:             10/867,954          Group Art No.:    1617
Filed:                      June 15, 2004       Examiner:         Barbara Badio
For:                        HORMONAL CONTRACEPTIVE PRODUCT
Confirmation No.:           5211
Customer Number:            53170

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

INFORMATION DISCLOSURE STATEMENT

1.    Preliminary Statements
      In accordance with 37 CFR 1.97 and 1.98, Applicants submit herewith patents,
      publications, or other information of which they are aware, which they believe may be
      material to the examination of this application and in respect of which there may be a
      duty to disclose in accordance with 37 CFR 1.56.  This Information Disclosure
      Statement is not to be construed as a representation that:  (i)  a search has been
      made; (ii) the information is material to the examination of this application; (iii)
      additional information material to the examination of this application does not exist; (iv)
      the information, protocols, results and the like reported by third parties are accurate or
      enabling; or (v) the information constitutes prior art to the subject invention.

Docket No: 2004658-0968 (AM101403C3)
Patent

2.  Identification of Time of Filing
    This Information Disclosure Statement
    a.  ☐   is filed within three months of the filing date of the application.
    b.  ☐   is filed before the mailing date of a first Office Action on the merits.
    c.  ☒   is filed before the mailing date of a first Office Action after the filing of a
            request for continued examination under 37 CFR 1.114.
    d.  ☐   is filed after the period specified in 2(a), 2(b) or 2(c) above, but before the
            mailing date of a final action under 37 CFR 1.311.  This statement includes
            a certification under 37 CFR 1.97(e) or the fee set forth in 37 CFR 1.17(p).
    e.  ☐   is filed after the mailing date of a final action or Notice of Allowance but
            before payment of the issue fee.  This statement includes (i) a certification
            under 37 CFR 1.97(e), and (ii) the fee set forth in 37 CFR 1.17(p).

3.  ☐   Certification under 37 CFR 1.97(e) and 1.704(d)
        The undersigned attorney certifies

    a.  ☐   that each item of information contained in the Information Disclosure
            Statement was first cited in any communication from a foreign patent office
            in a counterpart foreign application not more than three months prior to the
            filing of the statement, or
    b.  ☐   that no item of information contained in the Information Disclosure
            Statement was cited in a communication from a foreign patent office in a
            counterpart foreign application or, to the knowledge of the person signing
            the certification after making reasonable inquiry, was known to any
            individual designated in 37 CFR 1.56(c) more than three months prior to
            the filing of the statement.
    c.  ☐   certifies that each item of information contained in the Information
            Disclosure Statement was cited in a communication from a foreign
            application patent office in a counterpart foreign application and was not
            received by any individual designated in 37 CFR 1.56(c) more than thirty
            (30) days prior to the filing of the statement.

4.  X   Newly Cited Information
        A legible copy of the patents, publications or other information cited on the
        attached forms PTO SB08A and SB08B is enclosed, except that no copy of a
        pending U.S. application is enclosed, and if this patent application was filed or
        entered the national stage after June 30, 2003, no copy of a U.S. patent or U.S.
        patent application publication is enclosed.

5.  ☐   Previously Cited Information
        No copy of the patents, publications or other information cited on the attached
        forms PTO SB08A and SB08B is enclosed because it has been previously cited
        by or submitted to the Office in a prior application which is relied upon for an
        earlier filing date under 35 USC 120.
        Prior application is Application Number          , filed on          of          for
            .

Docket No: 2004658-0968 (AM101403C3)
Patent

6.　☐　Concise Explanation
　　　　Documents cited above which are not in the English Language
　　a.　☐　have been explained in the specification.
　　b.　☐　have an abstract (or other concise explanation) in English enclosed or if
　　　　　　readily available a translation into English of the document is enclosed.

Forms PTO-SB08A and PTO-SB08B are enclosed.

7.　☐　Fees
　　　　☐　Fee for filing under 37 CFR 1.97(c) or (d)　　Fee: $180.00

Instructions as to Overpayment/Underpayment:
Credit any overpayment and charge any underpayment to Deposit Account No. 03-
1721.

/Andrea L.C. Robidoux/

Andrea L.C. Robidoux, Reg. No. 47,902

Choate, Hall & Stewart LLP
Patent Department
Two International Place
Boston, MA 02110
Tel. No. (617) 248-5000

June 11, 2008

PTO/SB/08B (07-06)
Approved for use through 09/30/2006. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 10867954 |
| | Filing Date | June 15, 2004 |
| | First Named Inventor | HESCH, Rolf-Dieter |
| | Art Unit | 1617 |
| | Examiner Name | BADIO, Barbara P. |
| Sheet | Attorney Docket Number | 2004658-0968 (AM101403 C3) |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include the name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | | Notification of Certification of Invalidity, Unenforceability and/or Non-infringement for US Patent 6,500,814 Pursuant to Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act, dated April 16, 2008. | |
| | | HAMERLYNCK, et al., "Postponement of Withdrawal Bleeding in Women Using Low-dose Combined Oral Contraceptives," Contraception, (1987) pages 199-205. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 2313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

# EXHIBIT 14



(19) Europäisches Patentamt
European Patent Office
Office européen des brevets

(11)  **EP 1 011 682 B1**

(12)  **EUROPÄISCHE PATENTSCHRIFT**

(45) Veröffentlichungstag und Bekanntmachung des Hinweises auf die Patenterteilung:
**28.05.2003  Patentblatt 2003/22**

(21) Anmeldenummer: 98954135.4

(22) Anmeldetag: 03.09.1998

(51) Int Cl.⁷: **A61K 31/565**, A61K 31/57, A61P 19/10

(86) Internationale Anmeldenummer:
**PCT/DE98/02636**

(87) Internationale Veröffentlichungsnummer:
**WO 99/012531 (18.03.1999 Gazette 1999/11)**

(54) **MITTEL ZUR HORMONALEN KONTRAZEPTION**

HORMONAL CONTRACEPTIVE

MOYEN DE CONTRACEPTION HORMONALE

(84) Benannte Vertragsstaaten:
**AT BE CH CY DE DK ES FI FR GB GR IE IT LI LU MC NL PT SE**

(30) Priorität: **11.09.1997  DE 19739916**

(43) Veröffentlichungstag der Anmeldung:
**28.06.2000  Patentblatt 2000/26**

(60) Teilanmeldung:
**03002576.1
03002577.9 / 1 310 257**

(73) Patentinhaber: **HESCH, Rolf Dieter**
**D-78464 Konstanz (DE)**

(72) Erfinder: **HESCH, Rolf Dieter**
**D-78464 Konstanz (DE)**

(74) Vertreter: **Goddar, Heinz J., Dr.**
**FORRESTER & BOEHMERT**
**Pettenkoferstrasse 20-22**
**80336 München (DE)**

(56) Entgegenhaltungen:
**EP-A- 0 309 263        EP-A- 0 628 312**

- **Coutinho et al., Contraception 51, 355-358 (1995)**

Bemerkungen:
Die Akte enthält technische Angaben, die nach dem Eingang der Anmeldung eingereicht wurden und die nicht in dieser Patentschrift enthalten sind.

EP 1 011 682 B1

Anmerkung: Innerhalb von neun Monaten nach der Bekanntmachung des Hinweises auf die Erteilung des europäischen Patents kann jedermann beim Europäischen Patentamt gegen das erteilte europäische Patent Einspruch einlegen. Der Einspruch ist schriftlich einzureichen und zu begründen. Er gilt erst als eingelegt, wenn die Einspruchsgebühr entrichtet worden ist. (Art. 99(1) Europäisches Patentübereinkommen).

1    EP 1 011 682 B1    2

## Beschreibung

[0001]    Die Erfindung betrifft die Verwendung einer Kombination von nur zwei Hormonkomponenten, nämlich eines Gestagens und eines Estrogens, zur Herstellung eines Kontrazeptionsmittels zur Ovulationshemmung und ggf. zur Behandlung und/oder Prophylaxe von Tumoren der Brustdrüsen, zur Prophylaxe der Osteoporose und/oder zur Prophylaxe und/oder Behandlung des prämenstruellen Syndroms.

[0002]    Seit Beginn der Verfügbarkeit hormoneller Kontrazeptiva in den 60er Jahren wurde eine Vielzahl von hormonellen Komponenten hinsichtlich ihrer Eignung in den verschiedensten Darreichungsschemata untersucht. Grundsätzlich ist eine Einteilung in Kombinations- und Sequenzpräparate möglich.

[0003]    Bei bekannten Kombinationspräparaten wird bespielsweise, sofern die gewünschte Zyklusdauer 28 Tage beträgt, 21 Tage lang in konstanter oder wechselnder absoluter und/oder relativer Dosierung eine Kombination aus einem Estrogenpräparat und einem Gestagenpräparat verabreicht, wobei das Estrogenpräparat z.B. natürliches Estrogen oder synthetisches Ethinylestradiol sein kann, und an die Einnahme der vorgenannten 21 Tageseinheiten eine siebentägige Pause anschließt, in der es zu einer die natürliche Monatsblutung simulierenden Entzugsblutung kommt.

[0004]    Bei den bekannten Sequenzpräparaten wird, wiederum bei einer gewünschten Zyklusdauer von 28 Tage, 7 Tage lang ein reines Estrogenpräparat und dann 15 Tage lang eine Kombination aus einem Estrogenpräparat und einem Gestagenpräparat verabreicht, wobei sich auch hier wieder eine einnahmefreie Zeit von z.B. 6 Tagen anschließt, in der es zur Entzugsblutung kommt Es ist zwar bereits bekannt, den Kombinations- und dem Sequenzpräparaten eigenen Einnahmepausen im Interesses einer größeren Einnahmesicherheit dadurch zu überbrücken, daß innerhalb der betreffenden Tage Placebos verabreicht werden, jedoch ist man bisher stets davon ausgegangen, daß während der etwa einwöchigen Einnahmepause keine Hormone der hier in Rede stehenden Art verabreicht werden dürfen, um eine zuverlässige Entzugsblutung zu gewährleisten. Lediglich bei Substitutionspräparaten in der Menopause der älteren Frauen hat man während des Gesamtzyklus Hormone verabreicht, beispielsweise in der Abfolge 10 Tage Estrogenpräparat, 11 Tage Kombination aus Estrogen- und Gestagenpräparat, 7 Estrogenpräparat, 7 Estrogenpräparat in besonders niedriger Dosierung, jedoch sind diese Substitutionspräparate zur Ovulationshemmung nicht geeignet.

[0005]    Die bei Substitutionstherapie verwendeten Sequenzpräparate sind zur Kontrazeption insbesondere deshalb ungeeignet, weil das natürliche Estradiol in der gegebenen Dosierung die Ovulation nicht verhindert und die Phase, in der das Gestagen verabreicht wird, mit nur 11 Tagen zu kurz ist. Die vorstehend beschriebene sequentielle Anordnung gewährleistet bei den Substitutionspräparaten jedoch eine relativ gute Zykluskontrolle.

[0006]    In der EP 0 309 263 A1 ist ein Kontrazeptionsmittel beschrieben, welches im wesentlichen aus Blöcken von Estrogen-Gestagen-Kombinationen besteht, wobei jeder Block entweder Estrogenoder Gestagen-Dominanz aufweist, und während 21- 24 Tagen des 28-Tage-Zyklus der Frau eingenommen wird. An die vorgenannte Hormon-Verabreichungsphase von 21 - 24 Tagen schließt sich zwingend eine 4 - 7 Tage umfassende hormonfreie Einnahmepause an, wobei während dieser hormonfreien Tage beispielsweise ein Placebo verabreicht werden kann. Durch die zwingend vorgeschriebene Einnahmepause wird eine Abbruchblutung bewirkt, die bei der Vorgehensweise nach der EP 0 309 263 A1 als zwingend notwendig angesehen wird.

[0007]    Aus der EP 0 628 312 A1 ist ein Kombinationspräparat zur Kontrazeption bekannt, welches aus einer oder mehreren Stufen besteht. Dabei ist vorgesehen, daß mindestens eine Stufe die Kombination von drei Komponenten, nämlich einem biogenen Estrogen, einem synthetischen Estrogen und einem Gestagen enthält und die weiteren Stufen jeweils aus einem pharmazeutisch unbedenklichen Placebo oder einem biogenen oder synthetischen Gestagen, oder einem biogenen oder synthetischen Estrogen, oder einer Kombination aus zwei Komponenten, nämlich einem biogenen Estrogen, einem synthetischen Estrogen und einem Gestagen oder einer Kombination aus synthetischen Estrogen und einem Gestagen, bestehen. Mit dem darin beschriebenen Stufenkonzept erfolgt typischerweise eine Zustandsänderung über die Zeit. Eine derartige Zustandsänderung kann sowohl dergestalt erfolgen, daß sich die Zusammensetzung der die Stufe ausbildenden Phasen hinsichtlich der eingesetzten Komponenten verändert, als auch dadurch, daß sich lediglich die Konzentrationen der in den die Stufe ausbildenden Phasen eingesetzten Komponenten ändern. Aus der Gesamtoffenbarung der vorgenannten Druckschrift, einschließlich sämtlicher Beispiele, geht hervor, daß dort von der bis dahin als unerläßlich angesehenen Praxis nicht abgegangen werden soll, durch Gestagenentzug ein Abbruchblutung zu bewirken.

[0008]    Auch bei einer aus der DE-OS 44 05 898 bekannten Vorgehensweise wird die Unterdrückung des Menstruationszyklus in der Erwägung gezogen. Die Verwendung eines Estrogens und eines Gestagens in transdermaler Applikation zur Kontrazeption wird zwar diskutiert, jedoch werden in diesem Zusammenhang ausdrücklich die Zyklusregulierung und die Zyklusstabilisierung angesprochen.

[0009]    Schließlich ist in der nicht vorveröffentlichten, aber prioritätsälteren EP 0 911 029 A2 eine Kontrazeptionsbehandlung beschrieben, bei der eine Kombination aus Estrogen und Gestagen, nämlich etwa 5 - 35 µg Ethinylestradiol und etwa 0,025 bis 10 mg Norethindronacetat, für bis zu 110 aufeinander folgender Tage monophasisch verabreicht werden, jedoch ist auch hier

3    EP 1 011 682 B1    4

zwingend eine daran anschließende Einnahmepause von 3 bis 10 Tagen vorgeschrieben, um eine Abbruchblutung hervorzurufen, ehe dann ein neuer Hormon-Einnahmezyklus beginnt.

[0010]   Aus Contraception 51, Seiten 355 - 358, veröffentlicht im Jahr 1995, ist ferner eine Versuchsbeschreibung bekannt, bei der einer Gruppe von Patientinnen über einen Zeitraum von einem Jahr jeweils für 21 Tage eine tägliche Dosis von 0,25 mg Levonorgestrel und 0,05 mg Ethinylestradiol, also eine sehr hohe Dosis, gefolgt von einer siebentägigen Einnahmepause, verabreicht wurden, während eine Vergleichsgruppe für den gesamten Jahreszeitraum die vorgenannte Hormonkombination täglich ohne Einnahmeunterbrechung erhielt, resultierend in einer deutlich höheren Hormonverabreichung auf Monatsbasis bei der letztgenannten kontinuierlichen Vergleichsgruppe im Verhältnis zu der erstgenannten. Die Hormonverabreichung erfolgte bei beiden Gruppen ausschließlich vaginal. Die Untersuchung ergab, daß bei der kontinuierlichen Verabreichung der vorgenannten Hormonkomponenten in erheblichem Maße Zwischenblutungen auftraten, so daß die Akzeptanz der dort beschriebenen Vorgehensweise vor allem bei Frauen des westlichen Kulturkreises - die in der vorgenannten Veröffentlichung diskutierten Untersuchungen wurden in einer Drittweltumgebung vorgenommen - nicht gegeben ist und die vorgenannte Versuchsbeschreibung Aus einem Artikel im American Journal of Hematology 52, 237, veröffentlicht im Jahr 1996, ist ein Vorschlag bekannt, für drei Monate ein orales Kontrazeptionsmittel, welches aus 150 mg Levonorgestrel und 30 μg Ethinylestradiol, also auch hier eine recht hohe Ethinylestradioldosis, zu verabreichen, wobei dies zur Behandlung einer Patientin mit kongenitaler Afibrinogenemie diente, um auf diese Weise sowohl eine Menstruation zu verhindern als auch eine Ovulation zu unterdrücken. In dem Artikel heißt es, daß die vorgeschriebene Kontrazeptionsbehandlung besser kontinuierlich erfolgen soll, um bei Patientinnen mit kongenitaler Afibrinogenemie und dem daraus resultierenden Blutverlust infolge von Menstruation eine Amenorrhö zu beheben. Es handelt sich hierbei um die Verwendung eines Kontrazeptionsmittels zur Behandlung einer spezifischen Erkrankung, für die exzessive Menstruationsblutungen typisch sind, wobei aber selbst zu diesem Zweck keine kontinuierliche Hormonverabreichung für einen längeren Zeitraum als drei Monate empfohlen wird.

[0011]   Insgesamt ist festzustellen, daß es bis zum Vorschlag gemäß der nicht vorveröffentlichten DE-OS 197 05 229, bei der allerdings zwingend die Verwendung von drei Hormonkomponenten zur hormonalen Kontrazeption zur Behandlung und/oder Prophylaxe von Tumoren der Brustdrüsen vorgesehen ist, als unerläßlich angesehen wurde, eine Abbruchblutung herbeizuführen, während eine kontinuierliche Verabreichung von zwei Komponenten, nämlich einem Estrogen und einem Gestagen, wie z.B. in der DE-PS 44 05 591 be-

schrieben, lediglich als zur postmenopausalen Hormonsubstitution geeignet angesehen wurde.

[0012]   Der Erfindung liegt die Aufgabe zugrunde, ein Mittel zur hormonalen Kontrazeption bereitzustellen, welches eine hohe kontrazeptive Sicherheit gewährleistet und, Zwischenblutungen ausschließt. Weiterhin sollen die ansonsten bei hormonalen Mitteln zur Kontrazeption beobachteten Nebenwirkungen weiter reduziert werden.

[0013]   Durch die erfindungsgemäße kontinuierliche und kombinierte Verabreichung eines Mittels, bestehend aus zwei Hormonkomponenten, nämlich einer ersten Hormonkomponente, die mindestens ein Gestagen umfaßt, und einer zweiten Hormonkomponente, die mindestens ein Estrogen umfaßt, kann eine hohe kontrazeptive Sicherheit erreicht werden.

[0014]   Unter Estrogenen sollen gemäß der heutigen Auffassung hierin Steroidmoleküle verstanden sein, die ihre Wirkung vorzugsweise dadurch entfalten, daß sie an verschiedenen Zellorten in verschiedenen Organen in unterschiedlicher Weise biologische Wirkung ausüben. Estrogene können wirken an (1) der Zellmembran, (2) intrazellulären zytoplasmatischen Proteinen und (3) an spezifischen Zellkernrezeptoren. In jüngster Zeit ist bekannt geworden, daß neben dem klassischen Estrogenrezeptortyp 1 ein zweiter Estrogenrezeptortyp 2 beschrieben wurde, dessen Organverteilung anders ist als die des Estrogenrezeptortyp 1.

[0015]   Die vorgenannte Definition umfaßt somit auch jene als "Designerhormone" bezeichneten Verbindungen, die die vorgenannten Eigenschaften aufweisen.

[0016]   Biogene Estrogene sind demzufolge Steroidmoleküle, die eine estrogenartige Wirkung an der Membran, an zytoplasmatischen Proteinen und an Kernrezeptoren für hydrophobe Ringsubstanzen entfalten und dadurch biologische Wirkungen auslösen, die einer hydrophoben Steroidringstruktur entsprechen, die estrogenartige Wirkung in Zellen, Organen und dem Gesamtorganismus auszulösen in der Lage sind.

[0017]   Unter biogenen Estrogenen sollen darüber hinaus auch solche Estrogene verstanden werden, die vom menschlichen Körper erzeugt werden und umfassen somit körpereigene Estrogene. Die in bestimmten Ausführungsformen des erfindungsgemäßen Mittels verwendeten biogenen Estrogene sind typischerweise solche, die chemisch synthetisiert werden. Grundsätzlich ist jedoch auch die Verwendung derartiger, aus einem Organismus isolierter Verbindungen möglich.

[0018]   Desweiteren sollen unter biogenen Estrogenen hierin auch konjugierte biogene Estrogene wie beispielsweise Estradiolvalerat und Estronsulfat verstanden werden.

[0019]   Unter Antiestrogenen sollen hierin hydrophobe Ringstruktursubstanzen und andere Substanzen, die der vorbeschriebenen Estrogenwirkung wiederum an Zellen, Organen oder im Gesamtorganismus spezifisch und selektiv entgegenwirken können, verstanden werden.

3

[0020]  Unter kontinuierlicher Verabreichung wird hierin eine über den Anwendungszeitraum ununterbrochene Verabreichung verstanden, bei der keine bezüglich der Hormonkomponenten einnahmefreien Intervalle vorgesehen sind. Dies bedeutet auch, daß eine Unterbrechung der Verabreichung des Mittels durch Gabe von Placebos anstelle des hormonalen Mittels nicht vorgesehen ist. In der Folge kommt es über die gesamte, typischerweise die Zeitspanne mehrerer Monate bis Jahre umfassenden Verabreichungsdauer zu keinen Veränderungen der grundsätzlichen Zusammensetzung der Hormonkomponenten. Vielmehr werden über die gesamte Verabreichungsdauer ununterbrochen und unverändert die das erfindungsgemäße hormonale Mittel ausbildenden Hormonkomponenten in unveränderter Konzentration verabreicht. Denkbar ist jedoch, daß die Konzentration von Estrogen, verstanden in der gesamten hierin definierten Breite des Begriffs, und Gestagen, ebenfalls verstanden in der gesamten hierin definierten Breite des Begriffs, bei älteren Frauen gegenüber jüngeren verändert wird. Dies kann auch so geschehen, daß entlang der kontinuierlichen Applikation zunächst mit einer bestimmten Zusammensetzung begonnen wird und diese dann im Laufe von Wochen, Monaten und Jahren an die geänderten biologischen Bedürfnisse der Frau durch die Applikation eines Folgepräparates angepaßt wird, das jedoch auch ein Mittel gemäß der vorliegenden Erfindung umfaßt.

[0021]  Infolge der kontinuierlichen Applikation der genannten Hormonkomponenten wird gewährleistet, daß die natürlicherweise im weiblichen Organismus ablaufenden hormonalen Vorgänge die kontrazeptive Sicherheit nicht durchbrechen.

[0022]  Durch die Estrogen-Komponente respektive durch spezifische Wirkung von hydrophoben Ringsubstanzen mit estrogenartiger Wirkung kann es zu einer Suppression der Gonadoprotine kommen. Dies ist erwünscht. Die daraus resultierende Unterdrückung der Ovarialfunktion wird ausgeglichen durch eine adäquate Substitution von Estrogenwirkung. Damit kommt es zu einer Verhütung der Entwicklung einer Osteoporose, die günstigen Gefäßwirkungen von Estrogenen bleiben erhalten, ebenso wird der Lipidostoffwechsel nicht ungünstige beeinflußt. Durch Unterbrechung der zyklusabhängigen Instabilität im Hormonsystem kann das prämenstruelle Syndrom günstig beeinflußt werden, darüber hinaus wird die Homöostase des Gerinnungssystems nicht gestört, da das labile Gleichgewicht, in welchem sich das Gerinnungssystem befindet, nicht durch das Auf und Ab der Hormonschwankungen aktiviert und desaktiviert wird. Deshalb eignet sich das hormonale Mittel der Erfindung insbesondere auch für Frauen im Alter von mehr als 40 Jahren, bei denen die Gefahr von Durchblutungsstörungen mit steigendem Alter bekanntlich zunimmt. Ebenso wird die Thrombosegefahr, die in jüngster Zeit eine erhebliche Bedeutung bei der kontrazeptiven Therapie erlangt hat, vermindert.

[0023]  Überraschenderweise wurde auch festgestellt, daß bei der Verabreichung des erfindungsgemäßen Mittels zuverlässig eine kontinuierliche Unterdrückung des Menstruationszyklus und der Monatsblutung bei ausgesprochen niedriger Dosierung möglich ist. Ohne im folgenden darauf festgelegt werden zu wollen, scheint die Kombination der genannten beiden Hormonkomponenten, und insbesondere die geringe Dosierung der Estrogene darin, geeignet, die sonst üblichen Nebenwirkungen des Ethinylestradiols zu beseitigen und die ansonsten bei Kontrazeptiva nach dem Stand der Technik typischerweise erforderlichen Gaben von mehr als 15 µg Ethinylestradiol zu unterschreiten.

[0024]  Die niedrige Dosierung der beiden Hormonkomponenten, und insbesondere der Estrogenkomponente, wird durch die additive Wirkung der beiden Hormonkomponenten ermöglicht, ohne daß es zu einer Beeinträchtigung der Wirkung des erfindungsgemäßen Mittels hinsichtlich seiner kontrazeptiven sowie ovulationshemmenden Eigenschaften kommt.

[0025]  Die durch das erfindungsgemäße Mittel zuverlässig gewährleistete Ovulationshemmung und Unterdrückung des Menstruationszyklus ist für bestimmte Patientinnen von großer Bedeutung, wie z.B. für Spitzensportlerinnen, Tänzerinnen, und Geschäftsfrauen, die die Beeinträchtigung ihrer körperlichen, geistigen sowie emotionalen Leistungsfähigkeit durch den Menstruationszyklus ausschließen wollen. Infolge der kombinierten und kontinuierlichen Verabreichung der beiden Hormonkomponenten des erfindungsgemäßen Mittels ist es möglich, dieses entweder oral, transdermal, durch Depot-Injektionen oder Hormonimplantate, zu verabreichen. Dabei können an im vorliegenden Fall die für die jeweiligen Applikationsformen beobachtbaren Vorteile realisiert werden.

[0026]  Als orale Darreichungsformen sind all im Stand der Technik bekannten Formen wie beispielsweise Tabletten, Dragees, Pillen oder Kapseln möglich, die unter Verwendung der üblichen Hilfs- und Trägerstoffe hergestellt werden.

[0027]  Bei der transdermalen Verabreichung des erfindungsgemäßen Mittels können die beiden das Mittel ausbildenden Hormonkomponenten beispielsweise auf ein Pflaster aufgebracht werden oder auch mittels transdermaler therapeutischer Systeme appliziert und somit dem Organismus zugeführt werden, wobei beispielsweise eine bereits vorgefertigte Kombination der beiden Hormonkomponenten oder diese einzeln in ein derartiges System eingebracht werden, welches auf Iontophorese oder Diffusion oder ggf. einer Kombination dieser Effekte beruht.

[0028]  Für den Fall der oralen Applikation hat es sich als sinnvoll erwiesen, daß Tageseinheiten, die jeweils eine Kombination der beiden Hormonkomponenten umfassen, räumlich getrennt und einzeln entnehmbar in einer Verpackungseinheit angeordnet sind, so daß ein leichte Kontrolle möglich ist, ob tatsächlich die typischerweise tageweise einzunehmende orale Zubereitungsform bereits eingenommen wurde oder nicht.

7                       EP 1 011 682 B1                       8

Wichtig ist dabei, daß gewährleistet wird, daß keine ein-nahmefreien Tage auftreten können. Depot-Injektionen können im Abstand von 1 bis 6 Monaten oder noch län-ger appliziert werden; Hormonimplantate enthalten die beiden Hormonkomponenten und geben diese über die Dauer von vorzugsweise 3 bis 6 Monaten ab.

[0029]  Bei der Anwendung des erfindungsgemäßen Mittels hat sich dabei weiterhin überraschend gezeigt, daß die Behandlung und/oder Prophylaxe von Tumoren der Brustdrüsen möglich ist. Es ist eine Erkenntnis der jüngsten Risikoforschung für Brustkrebs, daß dieser sich dadurch einstellt, daß in bestimmten Risikogenen Mutationen auftreten, die angeboren oder erworben sein können. Die moderne Krebstherapie geht davon aus, daß auf einem der beiden Allele eines Gens eine krebsauslösende Mutation vorhanden ist, die zunächst von dem anderen gesunden Allel noch kontrolliert wird. Kommt es auch auf dem zweiten Allel im Laufe des Le-bens zu einer weiteren Mutation in einer bestimmten Or-ganzelle, so kann diese zum unkontrollierten, bösarti-gen Wachstum überführt werden.

[0030]  Mutationen auf dem zweiten Allel treten be-sonders häufig zu bestimmten Phasen des Zellzyklus auf, nämlich in der sogenannten G1-Phase. Der Men-struationszyklus treibt die Brustzelle alle vier Wochen in einen Zellzyklus, "öffnet" das Genom für Mutationen, die entweder repariert oder apoptotisch "abgeräumt" wer-den. Unter den Bedingungen der klassischen kombi-nierten oder sequentiellen Kontrazeptionsbehandlung kann eine Frau 500 bis 700 Zyklen im Laufe ihres Le-bens haben, während sozusagen unter "Naturbedin-gungen", d.h. bei Unterlassung jedweder Kontrazepti-onsbehandlung und demzufolge "natürlicher" Aufeinan-derfolge von Schwangerschaften mit biologisch kürze-stem Abstand eine Frau maximal 20 bis 30 Zyklen hat. Damit wird in einer ungewöhnlich häufigen Anzahl von Zellzyklen über jeweils 8 Tage hinweg ein erhebliches Mutationsrisiko in das stimulierende Brustdrüsengewe-be hineingetragen. Unterdrückt man den Menstruati-onszyklus, wie dies mit dem erfindungsgemäßen Mittel möglich ist, so bringt man die Brustzellen in eine "Ru-hephase" und es ist wissenschaftlich gesichert, daß in der Ruhephase weniger Krebs auslösende Mutationen in ein Gewebe hineinkommen, als in einem stimulierten Gewebe. Dadurch wird die Mutagenese, d.h. das Brust-krebsrisiko, um ein Vielfaches verringert.

[0031]  Die vorgenannte Verwendung des erfindungs-gemäßen Mittels zur Behandlung und/oder Prophylaxe von Tumoren der Brustdrüsen ist insbesondere dann mit ganz besonderen Vorteilen verbunden, wenn es sich bei den Anwenderinnen des Mittels um Risikoträgerinnen handelt, wie beispielsweise solche mit familiären Brustdrüsen-krebsrisiko, handelt.

[0032]  Die Menge der verabreichten Gestagene und Estrogene entspricht im wesentlichen der Menge ver-gleichbarer Präparate nach dem Stand der Technik. Weitere Angaben betreffend die - täglich - zu verabrei-chenden Mengen verschiedener, die erste bzw. zweite Hormonkomponente ausbildender Verbindungen fin-den sich in den Beispielen.

[0033]  Nachstehend wird die Erfindung anhand von Ausführungsbeispielen weiter erläutert.

Beispiel 1:

[0034]  Zur kontrazeptiven Behandlung wurde ein Mit-tel verwendet, welches pro in Tablettenform vorliegen-der Tageseinheit 5 μg Ethinylestradiol und 2 mg Nore-thisteronacetat enthielt. Dabei ist beachtlich, daß Nore-thisteronacetat in einem Konzentrationsbereich von 0,5-5 mg zur Anwendung gelangen kann. Das Mittel wurde über 9 Monate verabreicht und zeigte eine sehr gute kontrazeptive Sicherheit unter vollständiger Unter-drückung des Menstruationszyklus und praktisch keine Nebenwirkungen. Im Rahmen der hier vorgestellten Un-tersuchung wurde sichergestellt, daß die Probandinnen das Mittel täglich, d.h. ohne Einnahmepause, über den gesammten obengenannten Zeitraum einnahmen.

Beispiel 2:

[0035]  Zur kontrazeptiven Behandlung wurde ein Mit-tel verwendet, welches pro in Tablettenform vorliegen-der Tageseinheit 0,5 mg Estriol und 2 mg Chlormadino-nacetat enthielt. Dabei ist beachtlich, daß Estriol in ei-nem Konzentrationsbereich von 0,5 bis 3 mg und Chlor-madinonacetat in einem Konzentrationsbereich von 0,75-5 mg zur Anwendung gelangen kann. Das Mittel wurde ohne Einnahmepause über 12 Monate verab-reicht. Die Wirkungsweise entsprach derjenigen von Beispiel 1.

Beispiel 3:

[0036]  Zur kontrazeptiven Behandlung wurde ein Mit-tel verwendet, welches pro in Tablettenform vorliegen-der Tageseinheit 0,5 mg Estradiolvalerat und 2 mg Ly-nestrenol enthielt. Dabei ist beachtlich, daß Estradiol-valerat in einem Konzentrationsbereich von 0,5-5 mg und Lynestrenol in einem Konzentrationsbereich von 0,4-4,5 mg zur Anwendung gelangen kann. Das Mittel wurde ohne Einnahmepause über 12 Monate verab-reicht. Die Wirkungsweise entsprach derjenigen von Beispiel 1.

Beispiel 4:

[0037]  Zur kontrazeptiven Behandlung wurde ein Mit-tel verwendet:, welches pro in Tablettenform vorliegen-der Tageseinheit 7,5 μg Ethinylestradiol und 75 μg De-sogestrel enthielt. Dabei ist beachtlich, daß Desogestrel in einem Konzentrationsbereich von 50-200 μg zur An-wendung gelangen kann. Das Mittel wurde ohne Ein-nahmepause über 12 Monate verabreicht. Die Wir-kungsweise entsprach derjenigen von Beispiel 1.

5

Beispiel 5:

[0038]  Zur kontrazeptiven Behandlung wurde ein Mittel verwendet, welches in Tablettenform vorliegender Tageseinheit 20 mg Tamoxifen und 2 mg Lutenyl enthielt. Dabei ist beachtlich, daß Tamoxifen in einem Konzentrationsbereich von 10-50 mg und Lutenyl in einem Konzentrationsbereich von 1-5 mg zur Anwendung gelangen kann. Dieses Mittel ist vorzugsweise geeignet für eine Kontrazeption bei Frauen mit familiärem Brustdrüsenrisiko. Das Mittel wurde ohne Einnahmepause über 12 Monate verabreicht, die Wirkungsweise entsprach derjenigen von Beispiel 1.

Beispiel 6:

[0039]  Zur kontrazeptiven Behandlung wurde ein Mittel verwendet, welches pro in Tablettenform vorliegender Tageseinheit 50 mg Raloxifen und 2,5 mg Medroxyprogesteronacetat (MPA) enthielt. Dabei ist beachtlich, daß Raloxifen in einem Konzentrationsbereich von 30-100 mg und Medroxyprogesteronacetat in einem Konzentrationsbereich von 2-10 mg zur Anwendung gelangen kann. Dieses Kombination eignet sich vorzugsweise bei Frauen mit familiärem Brustdrüsenrisiko und jungen Frauen nach durchgemachtem Brustdrüsenkrebs. Das Mittel wurde ohne Einnahmepause über 12 Monate verabreicht, die Wirkungsweise entsprach derjenigen von Beispiel 1.

Beispiel 7:

[0040]  Zur kontrazeptiven Behandlung wurde ein Mittel verwendet, welches pro in Tablettenform vorliegender Tageseinheit 10 µg Ethinylestradiol und Tibolon in einer Konzentration von 2 mg täglich enthält. Dabei ist beachtlich, daß Tibolon in einer Konzentration von 1-10 mg zur Anwendung gelangen kann. Das Mittel wurde ohne Einnahmepause über 12 Monate verabreicht. Die Wirkungsweise entsprach derjenigen von Beispiel 1.

Beispiel 8:

[0041]  Zur kontrazeptiven Behandlung wurde ein Mittel verwendet, welches pro in Tablettenform vorliegender Tageseinheit 10 µg Ethinylestradiol enthält und als Antigestagen die Substanz Ro486 in einer Konzentration von 2,5 mg. Dabei ist beachtlich, daß Ro486 in einem Konzentrationsbereich von 1-7,5 mg zur Anwendung gelangen kann. Das Mittel wurde ohne Einnahmepause über 12 Monate verabreicht, die Wirkungsweise entspricht derjenigen von Beispiel 1.

Patentansprüche

1.   Verwendung einer Kombination aus einem einzelnen Gestagen, ausgewählt aus der aus Progeste-

ron, Chlormadinonacetat, Norethisteronacetat, Cyproteronacetat, Desogestrel, Levonorgestrel, Antigestagenen, Hormonanalogen mit Gestagen- oder Antigestagenwirkung und Hormonverbindungen, die mindestens ein Gestagen nach Einnahme rasch abspalten, bestehenden Gruppe, und eines einzelnen Estrogens, ausgewählt aus der aus synthetischem Estrogen, nämlich Ethinylestradiol mit einer täglichen Dosis von 1 - 20 µg, Mestranol oder einer Hormonverbindung, die mindestens ein synthetisches Estrogen nach Einnahme rasch abspaltet und biogenen Estragenen, nämlich Estradiol, Estriol, Estron, Estran oder einer Hormonverbindung, die mindestens ein biogenes Estrogen nach Einnahme rasch abspaltet, bestehenden Gruppe, als alleinigen hormonellen Wirkstoffen zur Herstellung eines Kontrazeptionsmittels zur kontinuierlichen Ovulationshemmung und Unterdrückung des Menstruationszyklus durch ununterbrochene orale, transdermale oder Depot-Verabreichung.

2.   Verwendung nach Anspruch 1, dadurch gekennzeichnet, daß als Estrogen Ethinylestradiol in einer täglichen Dosis von 5 - 10 µg verwendet wird.

3.   Verwendung nach Anspruch 2, dadurch gekennzeichnet, daß das Kontrazeptionsmittel zur oralen Verabreichung bestimmt ist.

4.   Verwendung nach Anspruch 2 oder 3, dadurch gekennzeichnet, daß der bestimmungsgemäße Verabreichungszeitraum neun Monate beträgt.

5.   Verwendung nach Anspruch 4, dadurch gekennzeichnet, daß der bestimmungsgemäße Verabreichungszeitraum zwölf Monate beträgt.

6.   Verwendung der hormonellen Wirkstoffkombination nach einem der vorangehenden Ansprüche zur Herstellung eines Mittels zur Prophylaxe von Osteoporose.

7.   Verwendung der hormonellen Wirkstoffkombination nach einem der Ansprüche 1 bis 5 zur Herstellung eines Mittels zur Behandlung des prämenstruellen Syndroms.

Claims

1.   The use of a combination of a single gestagen, selected from the group consisting of progesterone, chlormadinone acetate, norethisterone acetate, cyproterone acetate, desogestrel, levonorgestrel, antigestagens, hormone analogs with gestagen or antigestagen effect, and hormone compounds which release at least one gestagen quickly after administration, and a single estrogen, selected from the

group consisting of synthetic estrogen, namely ethinyl estradiol used in a daily dosage of 1-20 µg, mestranol, and hormone compounds which quickly release at least one synthetic estrogen after administration, biogenous estrogens, namely estradiol, estriol, estron, estran, and hormone compounds which quickly release at least one biogenous estrogen after administration, as the sole hormone components for the manufacture of a contraceptive means for continuously inhibiting ovulation and suppressing the menstrual cycle by uninterrupted oral, transdermal, or depot administration.

2.  The use of patent claim 1, **characterized in that** as the estrogen ethinyl estradiol is used in a daily dosage of 5 to 10 µg.

3.  The use of claim 2, wherein the contraceptive means is intended for oral administration.

4.  The use of claim 2 or 3, wherein the period of time for administration is 9 months.

5.  The use according to claim 4, wherein the period of time for administration is 12 months.

6.  The use of the hormone components in accordance with any of the preceding claims for the manufacture of a means for the prophylaxis of osteoporosis.

7.  The use of the hormone components of any of the claims 1 - 5 for the manufacture of a means for the treatment of the premenstrual syndrom.

**Revendications**

1.  Utilisation d'une combinaison de gestagènes individuelles, choisies dans le groupe constitué par la progestérone, l'acétate de chlormadinone, l'acétate de noréthistérone, l'acétate de cyprotérone, le désogestrel, le lévonorgestrel, les antigestagènes, les analogues hormonaux avec un effet gestagène ou antigestagène et les composés hormonaux susceptibles de libérer rapidement, après leur administration, au moins une gestagène, ou d'un estrogène individuel, choisi dans le groupe constitué par les estrogènes de synthèse, en l'occurrence l'éthinyloestradiol, à une dose journalière de 1 - 20 µg, le mestranol, un composé hormonal susceptible de libérer rapidement, après son administration au moins un estrogène de synthèse et les estrogènes biologiques, en l'occurrence l'estradiol, l'estriol, l'estrone, l'estrane et un composé d'hormone susceptible de libérer rapidement, après son administration au moins une estrogène biologique, en tant que matières actives hormonales, pour la réalisation d'une préparation contraceptive assurant, de ma-

nière continue, une inhibition de l'ovulation et une atténuation de la menstruation, par une administration continue, qui peut être orale, transdermique ou par introduction.

2.  Utilisation selon la revendication 2, **caractérisée en ce que** l'on utilise l'estrogène éthinyloestradiol en une dose journalière de 5 - 10 µg.

3.  Utilisation selon la revendication 2, **caractérisée en ce que** la préparation contraceptive est destinée à être administrée par voie orale.

4.  Utilisation selon la revendication 2 ou la revendication 3, **caractérisée en ce que** la durée du traitement se prolonge, selon le dosage, jusqu'à neuf mois.

5.  Utilisation selon la revendication 4, **caractérisée en ce que** la durée du traitement se prolonge, selon le dosage, jusqu'à douze mois.

6.  Utilisation de la combinaison de matières actives hormonales selon l'une des revendications précédentes, pour réaliser une préparation servant au traitement prophylactique de l'ostéoporose.

7.  Utilisation de la combinaison de matières actives hormonales selon l'une des revendications, 1 à 5, pour réaliser une préparation servant au traitement du syndrome prémenstruel,