IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WYETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-145 (JJF) |
| | ) | |
| WATSON LABORATORIES, INC., and | ) | **REDACTED - PUBLIC VERSION** |
| WATSON PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF WYETH'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISQUALIFY KENYON & KENYON LLP
AND AMY HULINA AS COUNSEL FOR DEFENDANTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jparrett@mnat.com

OF COUNSEL:

*Attorneys for Plaintiff Wyeth*

Anthony Herman
Jeffrey B. Elikan
Eric R. Sonnenschein
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000

Original Filing Date: August 22, 2008
Redacted Filing Date: August 29, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

I.  The Present Action is Substantially Related to Kenyon's Previous Representations of Wyeth............................................................................................................... 2

   A.  Kenyon's Attempts to Distinguish the Four Prior Matters It Handled for Wyeth Are Misplaced. ........................................................................................ 3

      1.  The Novo Nordisk Litigation and the '247 Patent...................................... 3

      2.  The '878 Application ............................................................................... 5

      3.  The Pickar-Wolfe ........................................................................ 8

      4.  The Ortho Pharmaceuticals Litigation ...................................................... 8

II.  Wyeth Has Been Irreparably Prejudiced by Kenyon's Representation of Watson. ......... 10

III.  Wyeth Has Been Irreparably Prejudiced by Ms. Hulina's Role in This Litigation. ......... 13

IV.  Watson Would Not Suffer Substantial Harm if Kenyon Were Disqualified. ................... 14

CONCLUSION .................................................................................................... 15

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*In re Corrugated Container Antitrust Litigation,*
    659 F.2d 1341 (5th Cir. 1981) ................................................................................7

*Li Second Family Ltd. P'ship v. Toshiba Corp.,*
    231 F.3d 1373 (Fed. Cir. 2000).................................................................................3

*Madukwe v. Delaware State Univ.,*
    552 F. Supp. 2d 452 (D. Del. 2008) ..................................................................5, 13

*Talecris Biotherapeutics, Inc. v. Baxter International Inc.,*
    491 F. Supp. 2d 510 (D.Del. 2007)..........................................................................12

*Webb v. E.I. DuPont de Nemours & Co.,*
    811 F. Supp. 158 (D.Del. 1992)....................................................................8, 12, 13

## INTRODUCTION

Over a period of at least 17 years, Kenyon represented Wyeth in a wide variety of patent matters – **REDACTED**

**REDACTED** A number of these patent matters involved – just as this case does – the continuous and uninterrupted administration of an estrogen/gestagen combination. Kenyon does not, and cannot, dispute these incontrovertible facts. Nor does Kenyon dispute that three of its present or former lawyers who worked on Wyeth patent matters are heavily involved in this litigation, including former Kenyon lawyer Amy Hulina, [1] **REDACTED**

**REDACTED** and current Kenyon partners John Bateman and Kyle Musgrove, who are lead outside counsel representing Watson in this case. Instead, Kenyon strains to deflect these undisputed facts by claiming that there is but a "superficial similarity" between the matters in which Kenyon previously represented Wyeth and this case. In fact, however, the "careful comparison" that Kenyon says is required shows that there is a substantial relationship.

Apparently concerned that the Court may find the required substantial relationship, Kenyon also argues that Wyeth cannot be prejudiced because

**REDACTED**

As a result of Kenyon's 17-year relationship with Wyeth, **REDACTED**

- 1 -

REDACTED                         Kenyon and its former employee Amy

Hulina should be disqualified from representing Watson in this case.

I.    **The Present Action is Substantially Related to Kenyon's Previous Representations of Wyeth.**

        The '814 patent at issue in this case claims a <u>combination</u> of a <u>low-dose estrogen</u> <u>and a gestagen</u> to be <u>administered continuously</u> to a woman for an <u>extended period</u>.  The '247 patent at issue in the Novo Nordisk litigation – where Kenyon represented Wyeth – disclosed a method and composition for continuous administration of a low-dose estrogen and a gestagen to avoid or minimize bleeding.   The '878 application – also handled by Kenyon lawyers representing Wyeth – claimed continuous and uninterrupted administration of an estrogen and a gestagen (1.5 milligrams of medroxyprogesterone acetate), and the Pickar-Wolfe **REDACTED**

        which stemmed from the '878 application, implicated the same claim terms.

        Notwithstanding the similarity of the claim language at issue, Kenyon argues that these prior matters are not substantially related to this case because they do not concern estrogen-gestagen combinations used for contraception.   But Watson's own Notice Letter belies this argument.   In support of its invalidity position, the Notice Letter cites as prior art references directed to estrogen-gestagen combinations <u>not</u> used for contraception.  *See* Ex. E (Notice Letter) (citing, *e.g.*, Rizk *et al.*, *Congenital Afibrinogenemia: Treatment of Excessive Menstrual Bleeding with Continuous Oral Contraceptive*, <u>American J. Hematology</u>, 52(3): 237-238 (July

1996) and Castaman, G. *et al.*, *Congenital Afibrinogenemia: Successful Prevention of Recurrent Hemoperitoneum during Ovulation by Oral Contraceptive*, Am. J. Hematol., 49:363 (1995)).[1]

### A. Kenyon's Attempts to Distinguish the Four Prior Matters It Handled for Wyeth Are Misplaced.

#### 1. The Novo Nordisk Litigation and the '247 Patent

Kenyon cannot dispute the unassailable evidence that the Novo Nordisk litigation and this case are substantially related: the face of the '814 patent lists the '247 patent as prior art; Wyeth thus recognized the relevance of the '247 patent to the '814 patent during prosecution and disclosed it to the Patent and Trademark Office.

Attempting to evade the significance of Wyeth's disclosure, Kenyon chooses to mischaracterize it. Kenyon asserts that the attorneys prosecuting the '814 patent merely "disclosed [the '247 patent] to the PTO out of an excess of caution, while dismissing it as irrelevant." Opposition at 23. Kenyon's assertion is wrong, as it assumes that a prior art reference is irrelevant if it does not actually invalidate the patent. The case law is to the contrary. *See, e.g., Li Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000) ("Applicants for patents have a duty to prosecute patent applications in the PTO with candor, good faith, and honesty. A breach of this duty, which breach can include [...] failure to disclose material information [...] coupled with an intent to deceive, constitutes inequitable conduct.") (internal citations omitted); *id.* at 1380 ("Information concealed from the PTO may be material

---

[1] Congenital afibrinogenemia is a clotting disorder. Both the Rizk and Castaman articles deal with treatment of this clotting disorder, not contraception. Kenyon's own citation from the Castaman reference demonstrates this point: "In particular, the authors state that '[l]ong-term treatment with oral contraceptives, therefore, seems a practical, safe and cost-effective prophylaxys [sic] for hemoperitoneum in menstruating women with congenital afibrinogenemia and, possibly, with other severe inherited coagulopathies." Ex. E at 11 (emphasis in original).

even though it would not invalidate the patent."). What the applicants in fact stated was merely the latter – that the '247 patent needed to be disclosed but did not invalidate the patent. *See* Amendment Filed May 22, 2002 (Watson Ex. 5). Moreover, the fact that Wyeth thought the '247 patent should be disclosed to the PTO neither proves nor disproves that the '247 litigation was substantially related, as the standards for disclosure to the PTO and for disqualification of counsel are fundamentally different. A representation can involve the sharing of confidences – and therefore subject counsel to disqualification – regardless of whether there are communications about material prior art that a patent attorney must disclose.

An analysis of the '247 patent reveals substantially similar subject matter to the patent at issue. The '247 patent discloses a therapeutic method and composition for continuous administration of a low dose of estrogen and a gestagen (progestogen)[2] to avoid or minimize bleeding:

> The present invention provides a novel therapeutic method and composition involving the use of low dosage levels of estrogens and progestogens, which method is designed to avoid or minimize bleeding and prevent overstimulation of the lining of the uterus while producing favorable changes in blood lipids. In particular, the method involves continuous and uninterrupted administration of very small doses of a progestogen along with administration of an estrogen, the latter being cyclical, where required (for example, with perimenopausal women).

'247 patent 2:63-3:5 (emphasis added) (Ex. I). A "careful comparison" of the '814 patent and the '247 patent thus shows that they both claim a combination hormone product including a low dose of estrogen and a gestagen for continuous administration. Kenyon's work in the Novo Nordisk litigation, including its communications with Wyeth about settling the litigation, gave

---

[2]     The terms "gestagen" and "progestogen" are synonymous.

Kenyon inside information about Wyeth's litigation and settlement strategy and its views about the validity of a patent covering a product that, like LYBREL®, is an estrogen-gestagen combination intended for continuous use.

### 2. The '878 Application

Kenyon does not dispute that its attorneys spent **REDACTED** prosecuting the '878 application as Wyeth's lawyers. Instead of discussing its representation of Wyeth as it pursued the '878 application, Kenyon misconstrues the '814 patent as limited to a contraceptive purpose – disregarding Claim 3 in its entirety – and then attempts to dismiss non-contraceptive prior art as irrelevant to this case. However, this tactic ignores the key question of whether Kenyon's experience prosecuting a patent on behalf of Wyeth gave it insight into Wyeth's patent prosecution and litigation strategies and its knowledge of prior art in the field of contraception and hormone therapy. Prior decisions of this Court provide a clear answer. *See, e.g., Madukwe v. Delaware State Univ.*, 552 F. Supp. 2d 452 (D. Del. 2008). This Court found in *Madukwe* that the length and breadth of a law firm's representation of Delaware State University, which extended to representing the University in identical types of employment-related litigation shortly before taking on representation of the Plaintiffs against the University, meant that the matters were substantially related.

As Wyeth emphasized in its Opening Brief, the '878 application and the '814 patent cover substantially similar subject matter. They both are directed to a continuous and uninterrupted administration of an estrogen and a gestagen (specifically, in the case of the '878 application, 1.5 milligrams of medroxyprogesterone acetate). The similarity of the subject matter is further demonstrated, moreover, by the fact that a number of the prior art references submitted or considered during the course of prosecution of the '814 patent were also submitted

during prosecution of the '878 application. The Casper patent (EP0309263A1), for example, which formed the basis for the January 29, 2001 rejection of several proposed claims of the '814 patent, was disclosed by Wyeth in the '878 application. Similarly, the '247 patent[3] at issue in the Novo Nordisk litigation discussed above was disclosed in both the '878 application and during prosecution of the '814 patent.

Not only was there a demonstrable overlap in subject matter, but Kenyon gained inside knowledge of Wyeth's strategy through this representation. Kenyon lawyers, for example, worked closely ›

## REDACTED

- shed light on Wyeth's internal practices for pursuing intellectual property and Wyeth's opinions about potentially relevant prior art references.[6]

---

[3]    The '878 application refers to the original patent number for the Plunkett patent, U.S. Patent No. 4,826,831. Following re-issue, the '831 patent became the '247 patent.

[4]

[5]

## REDACTED

[6]

- 6 -

Kenyon attempts to draw the Court's attention away from its own representation by asserting that there cannot be a substantial relationship because Wyeth did not disclose the '814 patent or the references cited in the European counterpart opposition proceedings to the PTO when prosecuting the '878 application.    This argument again rests on a flawed legal assumption.  As discussed above, the standard for disclosure during prosecution is whether a piece of art is material to the patentability of the patent application under consideration, whereas the standard for disqualification is whether successive representations by the same counsel are substantially related.   A substantial relationship exists, for example, where – as here – counsel seeks to oppose its former client in a case involving the same subject matter.  *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981).  The legal advice need not even rise to a level of "relevance" to be "substantially related."  *Id.*  Rather, "[i]t need only be akin to the present action in a way reasonable persons would understand as important to the issues involved.  *Id.*  This is a far broader standard than the standard for materiality of a prior art reference to patentability.[7]

Kenyon cannot dispute that the same legal issues that were at issue in the '878 prosecution will be at stake in this case.

REDACTED

As a result, given Kenyon's knowledge

---

[7]

REDACTED

of the likely testimony of witnesses from Wyeth, its access to Wyeth's analysis of prior art references that the '878 application and the '814 patent share, and Kenyon's knowledge more generally of Wyeth's patent prosecution and litigation strategy, Kenyon should be disqualified on the basis of Kenyon's handling of the '878 application alone.

### 3.    The Pickar-Wolfe '

Kenyon's argument about the Pickar-Wolfe    **REDACTED**    boils down to

the assertion that·                                                          ·But Kenyon's argument in fact supports

disqualification.                      **REDACTED**


As indicated in ·Wyeth's Opening Brief,


## REDACTED


(under the case law) is presumed.  *See, e.g., Webb v. E.I. DuPont de Nemours & Co.*, 811 F. Supp. 158, 162 (D. Del. 1992) ("Courts may assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation without inquiring into their nature and extent").

### 4.    The Ortho Pharmaceuticals Litigation

Kenyon asserts that the Ortho Pharmaceuticals litigation is not substantially related to this matter because the patents at issue in that case involved a particular class of chemical compounds and a method of using those compounds.  Kenyon makes this assertion

without any evaluation of the similarities of the compound and method claimed in the patents at issue in the Ortho Pharmaceuticals litigation and the claims of the '814 patent.

The patents at issue in the Ortho Pharmaceuticals litigation, U.S. Patent Nos. 4,002,746 and 3,959,322, claimed compositions of norgestrel acetate, a gestagen. The specifications of both the '322 and the '746 patent addressed the benefits of using norgestrel acetate for amenorrhea, dysmenorrhea, and contraception. *See* '746 patent 1:33-54, '322 patent 1:61-2:14 (Watson Exs. 19, 20). The Ortho Pharmaceuticals litigation thus shared several features with the '814 patent: the '746 patent and '322 patent addressed a means of contraception and a means of regulating menstruation by administering a gestagen.

At issue in the Ortho Pharmaceuticals litigation were invalidity and infringement – the same issues that will be addressed in this litigation. One of the primary Kenyon attorneys assigned to this litigation, partner Kyle Musgrove,    **REDACTED** **REDACTED** and thus is presumed to have gained confidences in the course of that representation.

Kenyon also asserts that the Ortho Pharmaceuticals cases are old and the issues distinct, claiming that the invalidity and infringement questions differ from those likely to be asserted in this litigation. But this argument makes no sense; prior art is not rendered obsolete by the passage of time. To the contrary, "prior art" is prior art precisely because of the passage of time.

Kenyon ignores the fact that part of the hormone combination claimed in the '814 patent – the gestagen component – was at issue in the Ortho Pharmaceuticals litigation and that prior art of relevance to the earlier-litigated patents continues to be prior art that might be relevant here. Even if there turns out to be no overlap in the prior art at issue in the Ortho

Pharmaceuticals cases and this case – an issue that cannot be determined now, before the parties have developed their invalidity and validity positions – the fact that the questions may not be precisely the same does not negate the fact that **REDACTED** involved in the company's decisionmaking are likely to overlap and the strategic decisions and the business and financial information underlying those decisions are likely to be similar.[8]

## II.    Wyeth Has Been Irreparably Prejudiced by Kenyon's Representation of Watson.

Wyeth has been irreparably prejudiced in this case as a result of Kenyon's 17 years of serving as Wyeth's lawyers.

- 
- 

**REDACTED**

- 

Through its role as long-term patent counsel for Wyeth    **REDACTED**

Moreover, despite Kenyon's blithe assertion to the contrary,

**REDACTED**

*See* Ex. M

(Kenyon's Updated Objections and Responses to Requests 3 and 4 of Wyeth's Subpoena) at 2-4.

---

[8]    Kenyon also cursorily asserts that the prior litigation was not under the Hatch-Waxman Act. Kenyon does not even attempt to explain how this difference should matter, *see* Opposition at 20, nor can it. The fact that cases are not brought under identical statutes is of no import in determining whether they are substantially related.

**REDACTED**      – after Wyeth had served its motion to

disqualify.  *See* Ex. N


**REDACTED**


Kenyon nonetheless challenges Wyeth to identify specific information, such as the identity of Wyeth witnesses, to substantiate the fact that confidences were disclosed between Kenyon and Wyeth.   Opposition at 31.  But Wyeth is <u>not</u> required to identify these Wyeth employees – which would only add insult to injury by requiring Wyeth to disseminate confidential information that it shared with Kenyon, then under the protective cloak of attorney-

---

9

**REDACTED**

- 11 -

client privilege.  Under the case law, Wyeth can rely simply on the substantial relationship between the four matters described and the current litigation, as the sharing of confidences is therefore presumed. *See, e.g., Webb,* 811 F. Supp. at 162.

Moreover, Kenyon's reliance on *Talecris Biotherapeutics, Inc. v. Baxter International Inc.,* 491 F. Supp. 2d 510 (D. Del. 2007), is misplaced.  In *Talecris,* the plaintiff sought to disqualify counsel for defendant because a member of defendant's counsel and her firm (Townsend) had 15 years earlier worked on patent infringement litigation asserting a patent that was listed as prior art for the patent-in-suit. Townsend had asserted U.S. Patent No. 6,656,191 in the earlier litigation and in the litigation at issue was asserting the '191 patent as an invalidating reference on behalf of a different client.  This Court pointed out the factors that kept the two cases from being substantially related:

> With regard to the nature and scope of the prior representation, the court observes that Townsend's representation of Miles in the prior litigation was <u>brief in nature and distant in time,</u> approximately six months in length and 15 years ago.  The prior litigation concerned the Tenold patent, asserted against Alpha's immunoglobulin product.  In representing Miles, Ms. Spaeth was a third year associate on a team of four lawyers from Townsend.  Ms. Spaeth affirms that she devoted "very little time" to the previous litigation and has "very little recollection of any substantive involvement." [...]  The record reflects that Ms. Spaeth interacted with Miles in the early stages of discovery of the Alpha Action. [...]  The dates of those interactions range from September 17, 1992 to October 13, 1992.  The matter settled on November 30, 1992.

(Emphasis added).

In sharp contrast, here, Kenyon's representation of Wyeth was neither "brief in nature" nor "distant in time."  Kenyon's role as one of Wyeth's principal outside patent firms included not merely representing Wyeth in litigation in which infringement or validity of a patent was contested through the early stages of discovery, as in *Talecris,* but also included the

**REDACTED**                                    over no less than a 17-year period

that ended only one year before this case was filed.

Finally, Kenyon's attempt to argue that any information that it obtained through its earlier representation would be subject to discovery in this case and that as a result there is no prejudice to Wyeth is at odds with the case law. *See Webb*, 811 F. Supp. at 162 (holding that it is "immaterial that [documents the conflicted lawyer drafted and offered in evidence during his subsequent representation] would be available to any attorney in discovery. Rule 1.9(a) is not addressed to the documents but to the representation in general."). Kenyon's assertion is also wrong as a matter of fact. Much of the information Kenyon gathered during its 17-year representation would not be subject to discovery because it is either privileged or irrelevant. This information nonetheless gives Kenyon important insights into Wyeth's strategy and decisionmaking procedures for patent litigation matters like this one.

Under the clearly established case law of this Court, including *Madukwe* and *Webb*, Wyeth's former counsel should be disqualified.

### III.     Wyeth Has Been Irreparably Prejudiced by Ms. Hulina's Role in This Litigation.

Far from being screened from this matter,

**REDACTED**

- 13 -

**REDACTED**     Kenyon tries to dispute both that the '878 application was substantially related – a matter addressed above – and

**REDACTED**

In light of the substantially related nature of the matters handled by Ms. Hulina while at Kenyon and now as in-house counsel for Watson, Ms. Hulina should be disqualified from involvement in this case.

IV.     **Watson Would Not Suffer Substantial Harm if Kenyon Were Disqualified.**

In its Opposition, Kenyon asserts only two sources of harm to Watson if Kenyon is disqualified: (1) Watson would lose the economies of scale that it anticipated from being represented by Kenyon in this case and the factually similar *Duramed Pharmaceuticals* litigation and (2)

**REDACTED**

Kenyon asserts that Watson will lose the "economies of scale" it expected to gain by using the same counsel in two cases involving oral contraceptives. Essentially, this argument is economic in nature: Watson may be forced to pay higher legal bills if it is unable to use Kenyon in both this case and the *Duramed* case. Kenyon points to no case holding that having to pay higher legal bills because of a disqualification is cognizable prejudice that will defeat an otherwise well-founded motion to disqualify, and common sense counsels against such a rule. Indeed, if a party could defeat an otherwise well-grounded motion to disqualify by pointing to

- 14 -

the increased expenditures that would result from disqualification, no motion to disqualify would ever be granted.

# REDACTED

New counsel would not be at any disadvantage in approaching substantive issues on the case's merits, and any prejudice Watson might encounter based on new counsel's need to familiarize itself with the jurisdictional issues could be remedied by an extension of the deadline for the reply brief in support of Watson's Motions to Dismiss.

## CONCLUSION

Based on their involvement in substantially related matters as counsel for Wyeth and in light of the prejudice that Wyeth has already suffered as a result of Kenyon and Ms. Hulina's role in this case, Kenyon and Ms. Hulina should be disqualified.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jparrett@mnat.com

*Attorneys for Plaintiff Wyeth*

- 15 -

OF COUNSEL:

Anthony Herman
Jeffrey B. Elikan
Eric R. Sonnenschein
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000

August 22, 2008
2458455

- 16 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2008 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Richard K. Herrmann, Esquire
>Mary B. Matterer, Esquire
>MORRIS JAMES LLP

I further certify that I caused to be served copies of the foregoing document on

August 29, 2008 upon the following in the manner indicated:

Richard K. Herrmann, Esquire                    *VIA ELECTRONIC MAIL*
Mary B. Matterer, Esquire
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE  19801

John W. Bateman, Esquire                        *VIA ELECTRONIC MAIL*
C. Kyle Musgrove, Esquire
Nicholas J. Nowak, Esquire
Thomas M. Huff, Esquire
KENYON & KENYON LLP
1500 K. Street, N.W.
Washington, DC  20005

                                    */s/ James W. Parrett, Jr.*

                                    James W. Parrett, Jr. (#4292)

EXHIBIT M

REDACTED
IN ITS
ENTIRETY

EXHIBIT N

REDACTED
IN ITS
ENTIRETY

EXHIBIT O

# REDACTED IN ITS ENTIRETY